United States District Court
Southern District of Texas
**FILED**

AUG 3 1 2001

**Michael N. Milby**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **EXEL BOBBINS AND PLASTIC COMPONENTS, INC.** | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. **B-01-148** |
| VS. | § § | |
| **JSW PLASTICS MACHINERY, INC.** | § § | (PLAINTIFF DEMANDS JURY TRIAL) |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES**, EXEL BOBBINS AND PLASTIC COMPONENTS, INC., Plaintiff and files this its

Original Complaint against JSW PLASTICS MACHINERY, INC , Defendant and would show the Court

as follows:

### I.

Exel Bobbins and Plastic Components, Inc., ("Exel") is a Texas corporation with its principal

place of business in Brownsville, Cameron County, Texas.

### II.

JSW Plastics Machinery, Inc., ("JSW") is a Delaware corporation with its principal place of

business in Anaheim, California.  JSW may be served with process by serving it registered agent, The

Apprentice-Hall Corporation Systems, Inc., 2730 Gateway Oakes Drive, Suite 100, Sacramento,

California 95833.

*Plaintiff's Original Complaint*
g \files\moses\becker\pleading\orignl cmp

# III.
# JURISDICTION

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332(a) in that there exists complete diversity of citizenship between Exel and JSW. In addition, the amount in controversy exceeds the amount of $75,000.00.

# IV.
# VENUE

Venue is proper in the Brownsville Division of this Court pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to Exel's claims occurred in Brownsville, Cameron County, Texas

# V.
# FACTUAL BACKGROUND

Beginning in 1999, Exel inquired of JSW whether JSW would sell to Exel certain JSW plastic molding machines. Exel sought to purchase JSW molding machines in order to provide plastic molding services to its customers, including, but not limited to, Sunbeam-Oster. Further, Exel inquired whether JSW would extend a line of credit to Exel specifically for Exel's purchase of certain JSW machines from JSW. Thereafter, on or about February 2000, JSW confirmed, in writing to Exel, that JSW would provide and sell the molding machines needed by Exel to provide services to its customers.

In that connection, JSW knew that the JSW machines which Exel sought to purchase and finance were being purchased by Exel in order that Exel would provide services to its customers. Further, JSW had knowledge of specific customers of Exel for which Exel would provide services by means of the JSW machines. For example, JSW knew that Exel sought to purchase and finance certain JSW machines in order to provide services specifically to Sunbeam-Oster. In that regard, JSW

had knowledge of Exel's ongoing business relationship with Sunbeam-Oster. More significantly, JSW had knowledge of Exel's prospective business and contractual relationship with Sunbeam-Oster. Accordingly, JSW represented to Exel, Sunbeam-Oster and other Exel customers, in writing, that an inventory of JSW machines would remain available to meet Exel's needs and that JSW would provide to Exel "full support on an on-going basis". JSW further represented that JSW had "extended a credit line of $1,500,000.00 to Exel for the purchase of JSW's products and services.. ". Exel relied upon these representations and further acted in reliance upon the same. As a result, Exel incurred expenses, costs and other liabilities including, but not limited to, other contractual obligations.

Thereafter, on or about January 2001, Exel and JSW entered a written agreement ("contract") setting forth, among other things, that JSW would sell certain JSW machines to Exel, would extend a credit line to support the purchase of said machines and that the JSW machines would be delivered to Exel pursuant to the contract. The contract was delivered to Exel by JSW's Vice President of Operations, Jerry Johnson. The contract was prepared by JSW. Further, the contract was executed by Mr. Johnson on behalf of JSW. Nevertheless, on or about May 10, 2001, JSW advised Exel that it would not perform its obligations set forth in the contract. Consequently, Exel has been caused to suffer injury and damages beyond the minimum jurisdictional limits of this Court

## VI.
## BREACH OF CONTRACT

At all times relevant, there exists an enforceable contract between Exel and JSW. There was a valid offer and valid acceptance of said offer. Further, Exel and JSW mutually assented to the contract. In addition, JSW executed the contract and delivered the same with the intent that such contract be mutual and binding. There exist mutual obligations of the parties which support such contract. Further, Exel performed or tendered performance of its obligations set forth in the contract.

Nevertheless, JSW has breached the contract and said breach has caused Exel injury and damages.

Specifically, JSW has breached the contract by failing, without legal justification, to perform one or more of the terms of the contract  That is, JSW breached the contract by failing and refusing to deliver the JSW machines to Exel as set forth in the contract.  Further, JSW has breached the contract by failing and refusing to provide Exel the line of credit as set forth in the contract.  In short, JSW has refused to perform the contractual obligations set forth in the contract.

JSW has further breached the contract by, without legal justification, taking actions inconsistent with the existence of such contract.  That is, JSW failed and refused to deliver JSW machines to Exel and to extend the credit line to Exel as set forth in the contract, thereby acting inconsistent with the existence of the contract and the obligations set forth therein.  Further, JSW received, accepted and retained Exel's performance and tender of down payment made pursuant to the contract and thereafter failed and refused to perform JSW's obligations in the contract inconsistent with the existence of the contract.

JSW has further breached the contract by failing, without legal justification, to recognize the existence of such contract.  That is, JSW by its actions has expressed its refusal to recognize the existence of the contract and its obligations to Exel set forth therein.

JSW has further breached the contract by, without legal justification, expressing its fixed intent to abandon and renounce the contract and by refusing to perform pursuant to the terms of the contract.

As a result of JSW's breaches of the contract, Exel has been caused to suffer injury and damages including, but not limited to, nominal damages and actual damages

# VII.
# TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT

At all times relevant, there was a reasonable probability that Exel would have entered into a business relationship and/or contractual relationship with Sunbeam-Oster, one of Exel's customers. Further, JSW had knowledge of Exel's business relationship with Sunbeam-Oster. In addition, JSW was aware of the reasonable probability of such business relationship and/or the continuing business relationship between Exel and Sunbeam-Oster. Nevertheless, JSW intentionally interfered with such business relationship. That is, JSW desired to bring about the interference and/or knew that JSW's interference was certain or substantially certain to occur as a result of its conduct. Further, JSW's conduct was independently tortious or unlawful. In addition, JSW's interference was the proximate cause of the injury suffered by Exel and Exel has suffered actual damages and losses as a result.

# VIII.
# ATTORNEY'S FEES

In addition to recovery of nominal and actual damages Exel seeks reasonable attorney's fees for JSW's breach of contract pursuant to Texas Civil Practice and Remedies Code, §38.001(8).

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Exel prays that Defendant JSW be cited to answer and appear herein and that upon a trial on the merits, judgement be entered against Defendant, JSW and that Plaintiff, Exel be awarded nominal damages, actual damages, attorney's fees, pre-judgment interest, post-judgment interest and for such other and further relief to which Plaintiff, Exel may show itself justly entitled to receive.

Respectfully submitted,

**GRIFFITH, SAENZ & HILL, L.L.P.**
One Park Place, Suite 620
100 Savannah Avenue
McAllen, Texas  78503
Tel. No  (956) 971-9446
Fax. No. (956) 971-9451

By:

Moises M. Salas, Jr.
State Bar No. 00786217
ATTORNEY-IN-CHARGE

By:

Carla M. Saenz
State Bar No. 17514595
Federal Id. No. 7994
ATTORNEY-IN-CHARGE
**ATTORNEYS FOR PLAINTIFF**

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLF  'ON

EXEL BOBBINS & PLASTIC
COMPONENTS, INC.

v.

JSW PLASTICS MACHINERY, INC

ᴺS IN A CIVIL CASE

B-01-148

TO: (Name and address of defendant)

The Prentice-Hall Corporation System, Inc.
2730 Gateway Oakes Dr., Suite 100
Sacramento, California 95833

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Moises M. Salas, Jr.
**GRIFFITH, SAENZ & HILL, L.L.P.**
1325 Palm Blvd., Suite G
Brownsville, Texas 78520

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N. Milby, Clerk

8-31-01

CLERK                                                     DATE

(BY) DEPUTY CLERK