IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 6 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JSW PLASTICS MACHINERY, INC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO. B-01-148

[Assigned to the Hon. Hilda G. Tagle]

[Defendant JSW Plastics Machinery, Inc.
Specially Appearing]

## APPENDIX OF CALIFORNIA AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE FOR IMPROPER VENUE

Defendant JSW PLASTICS MACHINERY, INC. hereby submits the following

California authorities cited in its Motion to Dismiss for Improper Venue; or, in the alternative, to

Transfer for Improper Venue.

| CASES | EXHIBIT |
|---|---|
| *America Online, Inc. v. Superior Court of Alameda County* (2001) 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 . . . . . . . . . . . . . . . . . . . . | A |
| *Bancomer, S.A. v. Superior Court of Los Angeles County* (1996) 44Cal.App.4th 1450, 1457, 52 Cal.Rptr.2d 435, 439 . . . . . . . . . . . . . . . | B |

*Benefit Association International, Inc. v. Superior Court of Alameda County*
(1996) 46 Cal.App.4th 827, 834, 54 Cal.Rptr.2d 165, 169 . . . . . . . . . . .      C

Dated: December ⌊6⌋ , 2001.

Respectfully submitted

By:_____

DAVID C. GARZA
SBN 07731400
Federal ID No. 3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel: (956) 541-4914
Fax: (956) 542-7403
Attorney-in-Charge for JSW PLASTICS
MACHINERY, INC.

JAMES J. REGAN, ESQ.,
CA SBN 80576
REGAN • BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel: (310) 372-1988
Fax: (310) 318-5894
Attorneys for Defendant JSW PLASTICS
MACHINERY, INC.

**APPENDIX OF CALIFORNIA AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE
ALTERNATIVE, FOR TRANSFER OF VENUE FOR IMPROPER VENUE**

# CERTIFICATE OF SERVICE

This is to certify that the above and foregoing NOTICE OF MOTION AND MOTION OF DEFENDANT JSW PLASTICS MACHINERY, INC. TO DISMISS FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF JAMES J. REGAN has been served on the attorneys of record by delivery of a true copy on the _6 rt_ day of December, 2001, as follows:

Moises M. Salas, Jr.          **CERTIFIED MAIL/RRR**
Carla M. Saenz               **7000 1670 0005 7134 0443**
GRIFFITH, SAENZ & HILL, LLP
One Park Place, Suite 620
100 Savannah Avenue
McAllen, TX 78503

DAVID C. GARZA

APPENDIX OF CALIFORNIA AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE
ALTERNATIVE, FOR TRANSFER OF VENUE FOR IMPROPER VENUE

3

EXHIBIT A

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 5 of 33

108 Cal.Rptr.2d 699                                    **Page 1**
1 Cal. Daily Op. Serv. 5191, 2001 Daily Journal D.A.R. 6367
**(Cite as: 90 Cal.App.4th 1,  108 Cal.Rptr.2d 699)**

**H**

Court of Appeal, First District, Division 2,
California.

AMERICA ONLINE, INC., Petitioner,
v.
The SUPERIOR COURT of Alameda County,
Respondent;
Al Mendoza, Jr. et al., Real Parties in Interest.

No. A092813.

June 21, 2001.
As Modified July 10, 2001.
Review Denied Oct. 17, 2001.

Former subscribers brought class action suit under
the Consumer Legal Remedies Act (CLRA), Unfair
Business Practices Act, and the common law against
internet service provider (ISP) for compensatory and
punitive damages, injunctive relief, and restitution,
alleging that ISP continued to debit their credit cards
for monthly service fees after they terminated their
subscriptions. The Superior Court, Alameda
County, No. 827047-2, Ronald M. Sabraw, J.,
denied ISP's motion to stay or dismiss on ground of
inconvenient forum. ISP petitioned for writ of
mandate. The Court of Appeal denied petition, and
ISP petitioned for review. The Supreme Court
granted review and transferred matter back with
directions to issue order to show cause. Thereafter,
the Court of Appeal, Ruvolo, J., held that: (1) ISP
had burden of proof to show that forum selection
clause, contained in its contracts with subscribers,
did not diminish former subscribers' substantive
rights under CLRA, and (2) CLRA's anti-waiver
provision would be violated if subscribers were
forced to bring their claim in Virginia.

Writ denied.

### West Headnotes

[1] Appeal and Error ☞949
30k949

Trial court's decision regarding whether forum
selection clause was enforceable in contract between
internet service provider (ISP) and its subscribers
was to be reviewed under abuse of discretion
standard, in class action suit by former subscribers

who alleged that ISP continued to debit their credit
cards for monthly service fees after they terminated
their subscriptions

[2] Contracts ☞141(1)
95k141(1)

Internet service provider (ISP) had burden of proof
to show that forum selection clause, contained in its
contracts with subscribers, did not diminish former
subscribers' substantive rights under California
Consumers Legal Remedies Act (CLRA), which
contained anti-waiver provision, in class action suit
for damages, injunctive relief, and restitution by
former subscribers, who alleged that ISP continued
to debit their credit cards for monthly service after
they terminated their subscriptions. West's
Ann.Cal.Civ.Code § 1750 et seq.

[3] Contracts ☞141(1)
95k141(1)

Normally, the burden of proof is on the party
challenging the enforcement of a contractual forum
selection clause.

[4] Contracts ☞127(4)
95k127(4)

Contractual forum selection clauses are favored so
long as they are entered into freely and voluntarily,
and their enforcement would not be unreasonable.

[5] Contracts ☞127(4)
95k127(4)

For forum selection clauses to be enforceable, the
selected jurisdiction must be suitable, available, and
able to accomplish substantial justice.

[6] Contracts ☞127(4)
95k127(4)

Forum selected in a forum selection clause must
have a reasonable connection to the parties or the
dispute.

[7] Contracts ☞127(4)
95k127(4)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

"Suitability" and "availability" of selected jurisdictions, required for enforcement of forum selection clause, means that a valid judgment can be obtained in the selected forum; normally, this is limited to a determination that there is jurisdiction over the dispute and the statute of limitations has not expired as of the time the motion is considered.

[8] Contracts ☞127(4)
95k127(4)

Courts will refuse to defer to the selected forum in a forum selection clause if to do so would substantially diminish the rights of residents in a way that violates public policy.

[9] Contracts ☞127(4)
95k127(4)

Consumer Legal Remedies Act's (CLRA) anti-waiver provision would be violated by enforcement of forum selection clause in service agreement to require former subscribers in California to bring suit in Virginia due to internet service provider's (ISP) alleged conduct in continuing to debit their credit cards for monthly service fees after they terminated their subscriptions, where Virginia law would not allow subscribers to bring class actions, and there would also be limitations regarding injunctive relief, no punitive damages or enhanced remedies for disabled and elderly, reduced recovery for unintentional acts, shorter period of limitations, and use of lodestar formula to calculate attorney fees. West's Ann.Cal.Civ.Code § 1750 et seq.

[10] Consumer Protection ☞3
92Hk3

Purpose of California Consumers Legal Remedies Act (CLRA) is to attempt to alleviate social and economic problems stemming from deceptive business practices. West's Ann.Cal.Civ.Code § 1750 et seq.

[11] Parties ☞35.1
287k35.1

Unless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law.

[12] Contracts ☞127(4)

95k127(4)

Additional cost or inconvenience necessitated by litigation in the forum selected by the forum selection clause is not part of the calculus when considering whether a forum selection clause should be enforced.

[13] Action ☞69(5)
13k69(5)

California trial court was not required to grant internet service provider's (ISP) request for stay so that Virginia court could clarify whether its consumer law complied with California Consumers Legal Remedies Act (CLRA), to determine if ISP's forum selection clause could be enforced against former subscribers who sued ISP for allegedly continuing to debit their credit cards for monthly service fees after they terminated their subscriptions; Virginia law clearly did not offer same benefits to consumer litigants as CLRA, ISP suggested no procedural device which would allow California court to proceed with underlying case after Virginia court has ruled, and stay would make suit even more financially impractical. West's Ann.Cal.Civ.Code § 1750 et seq.

**701 *4 Latham & Watkins, Everett C. Johnson, James K. Lynch, San Francisco, Randall T. Kim, for Petitioner.

Marion's Inn, Kennedy P. Richardson, Mark Palley , Sam Walker, Yvonne M. Pierrou, Oakland, for Real Parties in Interest.

RUVOLO, J.

I.

INTRODUCTION

This petition for writ of mandate was filed by petitioner America Online, Inc. (AOL) following the denial of its motion to stay or dismiss a putative consumer class-action lawsuit. The motion was based on a claim that California is an inconvenient forum in which to litigate the dispute concerning AOL's proprietary Internet service. In support of its motion, AOL exclusively relied on a forum selection clause in its contracts with real parties in interest, Al Mendoza, Jr. (Mendoza) and the potential class members, which designated Virginia as the jurisdiction in which all disputes arising out of

the relationship would **702 be litigated. The agreement also included a choice of law provision requiring that Virginia law be applied to any such dispute.

We conclude the court properly denied AOL's motion. First, one of the causes of action seeks class action relief under the California Consumers *5 Legal Remedies Act (CLRA) (Civ.Code, §§ 1750 et seq.). This act contains a provision that voids any purported waiver of rights under the CLRA as being contrary to California public policy. Enforcement of the contractual forum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the CLRA and, thus, is prohibited under California law.

Second, we conclude that Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those afforded by California law. Accordingly, the rights of Mendoza and the California consumer class members would be substantially diminished if they are required to litigate their dispute in Virginia, thereby violating an important public policy underlying California's consumer protection law. For this independent reason, the forum selection clause is unenforceable.

## II.
## FACTUAL AND PROCEDURAL HISTORY

A class action was filed by Mendoza for himself and others against AOL seeking compensatory and punitive damages, injunctive relief, and restitution. The complaint alleges that real parties are former subscribers to AOL's Internet service who, over the past four years, paid between $5 and $22 each month for the service. Monthly payments were made by allowing AOL to debit automatically the credit cards of class members. The class members terminated their subscriptions to AOL but, without authorization, AOL continued to debit their credit cards for monthly service fees. Mendoza individually alleged that he gave AOL notice of the cancellation of his subscription in October 1999, but AOL continued to charge monthly fees against his credit card at least through February 2000, at which time Mendoza cancelled his credit card in order to stop the debits.

The complaint alleged separate causes of action including violations of California's Unfair Business Practices Act (First Cause of Action) (Bus. & Prof.Code, §§ 17200 et seq.), violations of California's CLRA (Second Cause of Action) (Civ.Code, § 1770, subd (a)(14)), common law conversion/trespass (Third Cause of Action), and common law fraud (Fourth Cause of Action). The complaint also prayed that the action proceed as a class action under Code of Civil Procedure section 382, Civil Code section 1781, and Business and Professions Code section 17204, and that Mendoza and the *6 class be awarded compensatory and punitive damages, [FN1] restitution, prejudgment interest, attorney fees and costs, and a permanent injunction halting AOL's practice, and requiring it to disseminate corrective notices.

> FN1. The "prayer" portion of the complaint does not specifically enumerate punitive damages as a specie of relief, however, the complaint makes it clear that punitive damages are sought.

Shortly thereafter, AOL filed a motion to stay or dismiss the action on the ground of inconvenient forum. As noted, the motion was based on the forum selection clause contained in the "Terms of Service" (TOS) agreement entered into between Mendoza and AOL at the time he subscribed to AOL's proprietary Internet **703 service. The TOS, attached as Exhibit A in support of AOL's motion, is a 4 1/2 -page, single-spaced, unsigned document. Paragraph 8 of the TOS entitled "LAW AND LEGAL NOTICES" states in part the following: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunications providers and content providers...." Additionally, paragraph 8 contained a choice of law provision designating Virginia law as being applicable to any dispute between the parties: "The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership."

In support of its motion, AOL contended the forum

selection clause was presumptively valid under California law, was a rational, voluntary, and conscionable choice, and that its enforcement would not violate any strong public policy of this state. Among the legal authorities on which it relied, AOL referred to several unpublished out-of-state cases in which the clause had been previously enforced. [FN2]

> FN2. Both here and in the trial court, the parties cite *unpublished* out-of-state decisions favoring their respective positions. Rule 977 of the California Rules of Court prohibits citation to our own state's unpublished opinions, thus we are hardly inclined to consider those of the Massachusetts Superior Court, federal district courts in Illinois and New York, or Florida trial courts and its court of appeal.

In response, Mendoza objected to Exhibit A, claiming that the document did not accurately reflect what was displayed to him when he commenced service with AOL. Instead, he described seeing displayed on his home computer monitor a "densely worded, small-size text that was hard to read on the computer screen." This objection formed the leitmotif for Mendoza's claim that the TOS was an unconscionable adhesion contract, and that under applicable rules of contract construction, the forum selection clause was *7 unenforceable. In addition, Mendoza contended the TOS was unreasonable and unenforceable because it necessarily required him and the putative class members to relinquish legal rights in derogation of California public policy.

On September 25, 2000, the court entered its order denying AOL's motion. After discussing several of the pertinent cases bearing on the issue, the court denied the motion finding that: 1) the forum selection clause was unfair and unreasonable because it was not negotiated, it was contained in a standard form contract, and was in a format that was not readily identifiable by Mendoza; 2) AOL had failed to carry its burden of proving that the consumer rights afforded under California law would not be diminished by enforcement of the clause; and 3) the remedies available to consumers in Virginia were not comparable to those in California.

AOL filed a petition for writ of mandamus. On November 28, 2000, we issued an order to show cause why a preemptory writ of mandamus should not issue. Thereafter, on January 4, 2001, we discharged the order to show cause as improvidently granted, and denied the petition. AOL then petitioned the Supreme Court for review. On February 28, 2001, the high court granted the petition for review, and transferred the matter back to this court with directions to issue an order to show cause why the relief requested in **704 the petition should not be granted. On March 2, 2001, we issued a new order to show cause as directed by the Supreme Court.

III.
LEGAL DISCUSSION
A. *Standard of Review and Burden of Proof*

[1] We begin by addressing the standard of review and which party had the burden of proof below, for even these threshold issues are disputed, and not without some muddle. In *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206 (*Smith Valentino* ), a decision on a petition for writ of mandamus which will take on even greater importance in later discussion, the Supreme Court denied a request for mandamus concluding that the trial court "acted within its discretion" in upholding a contractual forum selection clause designating Pennsylvania as the proper forum. (*Id.* at p. 493, 131 Cal.Rptr. 374, 551 P.2d 1206.) This statement by our high court clearly implicates a review of the lower court's decision utilizing the most deferential abuse of discretion standard. This standard of review scrutinizes lower court decisions to determine if the ruling made " 'exceed[s] the bounds of reason,' " all circumstances before it being considered. (*Walker v. Superior *8 Court* (1991) 53 Cal.3d 257, 272, 279 Cal.Rptr. 576, 807 P.2d 418.) If not, the ruling will be affirmed regardless of whether the appellate court might have decided the issue differently. (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882, 94 Cal.Rptr.2d 505.) The court in *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 16 Cal.Rptr.2d 417 (*Cal-State* ), described the abuse of discretion standard as one which " measures whether the act of the lower tribunal is within the range of options available under governing legal criteria in light of the evidence before the tribunal." (*Id.* at p. 1680, 16 Cal.Rptr.2d 417.)

Later, in *Furda v. Superior Court* (1984) 161

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Cal.App.3d 418, 207 Cal.Rptr. 646 (*Furda* ), the court began its analysis of the lower court's ruling denying the defendant's motion to stay or dismiss based on forum non conveniens with the following statement: "We next consider whether the superior court abused its discretion in denying Furda's motion to stay or dismiss real parties' action on the ground of forum non conveniens and the forum selection clause." (*Id.* at p. 424, 207 Cal.Rptr. 646.) Citing *Furda,* this division similarly began our uncharacteristically laconic opinion in *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 14 Cal.Rptr.2d 906 (*Lu* ), by saying "[w]e review a trial court's decision to enforce a forum selection clause for an abuse of discretion. [Citation.]" (*Id.* at p. 1493, 14 Cal.Rptr.2d 906.) Thus, all of these decisions, and we trust there may be more, performed the same review with which we are charged using the abuse of discretion standard of review.

However, when faced with this question, the Sixth District, without explanation or citation to authority, commenced its discussion in *Lifeco Services Corp. v. Superior Court* (1990) 222 Cal.App.3d 331, 271 Cal.Rptr. 385 (*Lifeco* ), with this pronouncement: "The issue is whether substantial evidence supports the trial court's finding that enforcement of the forum selection clause is unreasonable." (*Id.* at p. 334, 271 Cal.Rptr. 385.)

This language from *Lifeco* was cited in *Cal-State* in support of the following proposition: "In contrast with the abuse-of-discretion standard of review applicable in a noncontractual forum non conveniens **705 motion, a substantial-evidence standard of review applies where a forum has been selected by contract...." (*Cal-State, supra,* 12 Cal.App.4th at p. 1680, 16 Cal.Rptr.2d 417, citing *Lifeco, supra,* 222 Cal.App.3d at p. 334, 271 Cal.Rptr. 385.) As we note, the *Lifeco* court did not make any distinction in the applicable standard of review based on whether the court was reviewing a contractual forum selection clause or applying traditional forum non conveniens doctrine.

Nevertheless, *Cal-State* went on to explain why a different standard of review applied depending on whether the motion to stay or to dismiss was *9 contractually derived: "While none of the contractual forum non conveniens cases have explicitly stated the standard of review, it is apparent from their discussion that they are de facto applying the substantial-evidence test, and there is a meaningful basis for distinction. In ruling on a forum non conveniens motion where no contract is involved, the lower tribunal decides whether or not to exercise jurisdiction based on the evidence before it in light of legally prescribed criteria. Some criteria may be present, some not; ultimately, the review does not depend upon the sufficiency of the evidence before the lower tribunal but whether it correctly applied the pertinent criteria. On the other hand, in a contractual forum non conveniens motion, the trial court *must* determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present that satisfy these criteria, it must act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied. (Cf. *People v. Jackson* (1992) 10 Cal.App.4th 13, 22, 12 Cal.Rptr.2d 541 ... [deciding between abuse-of-discretion and substantial-evidence standards of review for motions contesting peremptory challenges].)" (*Cal-State, supra,* 12 Cal.App.4th at pp. 1680-1681, 16 Cal.Rptr.2d 417, original italics.)

While we understand the distinction intended by *Cal-State,* we are not persuaded that appellate review of a contract interpretation issue can be properly analogized to review of an unambiguous forum selection clause. Nor, in light of the language contained in *Furda, Lu,* as well as in *Smith Valentino,* do we see justification for the *Cal-State* court's conclusion that no cases have "explicitly stated" what standard of review is applicable. Instead, given existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal-State* 's conclusion that the substantial evidence standard applies instead. Therefore, we review the lower court's decision using the abuse of discretion standard. [FN3]

> FN3. However, we note that while we adhere to the abuse of discretion standard, neither our conclusions, nor the result in this case, would change even were we to apply the less deferential substantial evidence standard.

[2][3] Turning to the question of which side has the

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 10 of 33

burden of proof when a forum selection clause is challenged, as we have noted, the trial court in the case before us found: "[D]efendant AOL did not meet *its burden* of showing that the substantive rights afforded California plaintiffs were not diminished by enforcement of the forum selection clause." (Italics added.) Normally, the burden of proof is on the party challenging the enforcement of a contractual forum selection clause. (*Smith Valentino, supra,* 17 Cal.3d at p. 496, 131 Cal.Rptr. 374, 551 P.2d 1206; see also *Cal-State, supra,* 12 Cal.App.4th at p. 1680, 16 **706 Cal.Rptr.2d 417; *Lu, supra,* 11 Cal.App.4th at p. *10 1493, 14 Cal.Rptr.2d 906.) However, the lower court assigned the burden of proof to AOL based on its conclusion that *Wimsatt v. Beverly Hills Weight Etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 38 Cal.Rptr.2d 612 (*Wimsatt* ), controls this case.

*Wimsatt* was an action by weight-loss center franchisees against their franchisor under California's Franchise Investment Law (FIL) (Corp.Code, §§ 31000 et seq.). The franchisees had signed franchise agreements which, inter alia, required them to sue in Virginia, the home state of the franchisor. (32 Cal.App.4th at p. 1513-1514, 38 Cal.Rptr.2d 612.) The trial court dismissed the complaint finding that the plaintiffs had "failed to meet their 'heavy' burden of making a 'strong' showing that enforcement of the forum selection clause would be 'so gravely difficult and inconvenient' that they would, in practical effect, be deprived of 'their day in court.' " (*Id.* at p. 1514, 38 Cal.Rptr.2d 612.) [FN4]

> FN4. We admit to being mystified by AOL's characterization that *Wimsatt* "applies to choice-of-law issues, not forum selection issues." Clearly, it applies to the latter.

In reversing, the Court of Appeal explained that in the context of that case, the customary rule assigning the burden of proof to the party challenging the enforceability of the forum selection clause did not apply. The court noted that the remedies sought by the franchisees were statutorily enumerated, and were specifically designed to protect the rights of persons purchasing and operating franchise businesses in this state. These protections included a non-waiver statute that voids provisions in a franchise agreement purporting to waive any of the protections under the FIL (Corp.Code, § 31512). (

*Wimsatt, supra,* 32 Cal.App.4th at p. 1520, 38 Cal.Rptr.2d 612.) The court reasoned that a franchise agreement's forum selection clause might subject California franchisees to litigation in a state that does not provide the same level of legal protections afforded by California law. Under those circumstances, enforcing the forum selection clause would effectively waive the remedies of California's FIL, thereby violating the anti-waiver component of that law. Faced with this potential, the burden of proof was on the franchisor to prove that enforcing the clause would not violate the statutory anti-waiver provision of the FIL by "diminish[ing] in any way the substantive rights afforded California franchisees under California law." (*Id.* at p. 1522, 38 Cal.Rptr.2d 612.)

The trial court in this case concluded that because Mendoza seeks recovery, in part, under the CLRA (Civ.Code, §§ 1750 et seq.), which contains a statutory anti-waiver provision like that involved in *Wimsatt,* the burden of proof was on AOL to prove that enforcement of the forum selection clause would not result in a significant diminution of rights to California consumers. We agree. In comparing the purpose and remedies afforded to California franchisees under the FIL to those afforded California *11 consumers under the CLRA, we find identical policy considerations which command shifting the burden of proof here to AOL, the party seeking enforcement of the forum selection clause, as was done in *Wimsatt.*

The FIL and the CLRA were each enacted to protect the statute's beneficiaries from deceptive and unfair business practices. (Corp.Code, §§ 31000 et seq.; *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077, 90 Cal.Rptr.2d 334, 988 P.2d 67 (*Broughton* ).) Each statutory scheme embodies strong remedial provisions for violations of the statute. (For **707 remedies under the FIL, see Corp.Code, §§ 31004, 31300, 31302, 31302.5, and 31400-31405. For remedies under the CRLA, see Civ.Code, §§ 1752, 1780, subds. (a)(1)-(4), (b) & (d), 1781, and 1783.)

Important to the trial court's finding is the fact that the CLRA, like the FIL, embeds in its statutory scheme a provision prohibiting waivers by consumers of any of these remedies. Civil Code section 1751 warns: "Any waiver by a consumer of the provisions of this title is contrary to public

policy and shall be unenforceable and void."

While the remedial aspects of each statutory scheme are indigenous to the business practices regulated, in both cases the Legislature has ensured that the rights afforded to California citizens against unfair practices cannot be diminished or avoided by contract. Where the effect of transfer to a different forum has the potential of stripping California consumers of their legal rights deemed by the Legislature to be non-waivable, the burden must be placed on the party asserting the contractual forum selection clause to prove that the CLRA's anti-waiver provisions are not violated. For this reason we too embrace the rationale of the *Wimsatt* decision and conclude that the CLRA claim pleaded by Mendoza, like the FIL claims asserted in *Wimsatt*, mandates departure from the general rule which normally places the burden of proving unfairness or unreasonableness of the forum selection clause on the party opposed to its enforcement.

B.   *Overview of Forum Selection Clause Enforcement*

[4] AOL correctly posits that California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable. (*Smith Valentino, supra,* 17 Cal.3d at pp. 495-496, 131 Cal.Rptr. 374, 551 P.2d 1206.) This favorable treatment is attributed to our law's devotion to the concept of one's free right to contract, and flows from the important practical effect such contractual rights have on commerce generally. This division has characterized forum selection clauses as "play[ing] an important role in both national and international commerce." (*Lu, supra,* 11 *12 Cal.App.4th at p. 1493, 14 Cal.Rptr.2d 906.) The *Wimsatt* court similarly exhorted that "[f]orum selection clauses *are* important in facilitating national and international commerce, and as a general rule should be welcomed." (*Wimsatt, supra,* 32 Cal.App.4th at p. 1523, 38 Cal.Rptr.2d 612, original italics.)

We agree with these sentiments, and view such clauses as likely to become even more ubiquitous as this state and nation become acculturated to electronic commerce. (See *Carnival Cruise Lines, Inc. v. Shute* (1991) 499 U.S. 585, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622.) Moreover, there are strong economic arguments in support of these agreements, favoring both merchants and consumers, including reduction in the costs of goods and services and the stimulation of e-commerce.

[5][6][7] But this encomium is not boundless. Our law favors forum selection agreements only so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement. Therefore, to be enforceable, the selected jurisdiction must be "suitable," "available," and able to "accomplish substantial justice." (*The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 17, 92 S.Ct. 1907, 32 L.Ed.2d 513; *Smith Valentino, supra,* 17 Cal.3d at **708 p. 494, 131 Cal.Rptr. 374, 551 P.2d 1206.) [FN5] The trial court determined that the circumstances of contract formation did not reflect Mendoza exercised free will, and that the effect of enforcing the forum selection clause here would violate California public policy by eviscerating important legal rights afforded to this state's consumers. Our task, then, is to review the record to determine if there was a rational basis for the court's findings and the choice it made not to enforce the forum selection clause in AOL's TOS agreement.

> FN5. "Suitability" and "availability" in this context mean that a valid judgment can be obtained in the selected forum. (*Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 752, 1 Cal.Rptr.2d 556, 819 P.2d 14.) Normally, this is limited to a determination that there is jurisdiction over the dispute and the statute of limitations has not expired as of the time the motion is considered. (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036-1037, 68 Cal.Rptr.2d 427.) Also, the forum must have a reasonable connection to the parties or the dispute. (*Cal-State, supra,* 12 Cal.App.4th at pp. 1681-1682, 16 Cal.Rptr.2d 417.) Mendoza does not contest the attributes of Virginia as a proposed "suitable" and "available" forum.

C.   *Enforcement of the Forum Selection Clause Violates Strong California Public Policy*

[8] California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy. For example, in *CQL Original Products, Inc. v.*

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

*National Hockey League Players' Assn.* (1995) 39 Cal.App.4th *13 1347, 46 Cal.Rptr.2d 412 (*CQL* ), a dispute arose following the termination of a merchandise licensing agreement between CQL Original Products, Inc. and the National Hockey League (NHL).   The merchandiser's breach of contract suit in California was met with a motion filed by the NHL to dismiss based on a forum selection clause contained in the licensing agreement. (*Id.* at p. 1353, 46 Cal.Rptr.2d 412.) The trial court granted the NHL's motion.   In affirming the trial court's ruling, the appellate court noted that "a forum selection clause will not be enforced if to do so will bring about a result contrary to the public policy of the forum...." (*Id.* at p. 1354, 46 Cal.Rptr.2d 412, citing *Cal-State, supra,* 12 Cal.App.4th at p. 1680, 16 Cal.Rptr.2d 417.)   After reviewing the agreement in question, the court concluded there was no public policy reason to deny enforcement of the provision. (*Id.* at p. 1356, 46 Cal.Rptr.2d 412.)

In *Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 197 Cal.Rptr. 757  (*Hall* ), two California investors exchanged their interests in an oil and gas limited partnership in return for stock in one of their co-investors, Imperial Petroleum, Inc., a Utah corporation.   Closer to the facts of this case, the contract embodying their exchange agreement contained *both* forum selection and choice of law provisions identifying Nevada as the selected forum and governing law.   A dispute arose, and the two investors sued Imperial in California. (*Id.* at pp. 413-415, 197 Cal.Rptr. 757.)   Imperial asserted the forum selection clause, and the trial court found the forum selection clause was enforceable.

In reversing the lower court's decision, the appellate court undertook an examination of both the choice of law clause as well as the forum selection clause noting that the enforceability of these clauses were "inextricably bound up" in one another. (*Hall, supra,* at p. 416, 197 Cal.Rptr. 757.)   The reason for considering them together was that absent a choice of law clause, the selected forum could apply California law to the dispute under the selected forum's conflict of laws principles.   If so, there **709 would be no risk that substantive law might be employed which would materially diminish rights of California residents in violation of California public policy. (*Ibid.*) However, where the effect of the transfer would be otherwise, the forum selection

clause would not be enforced: "While 'California does not have any public policy against a choice of law provision, where it is otherwise appropriate' [citation] and 'choice of law provisions are usually respected by California courts ...' [citing *Smith Valentino, supra,* 17 Cal.3d at p. 494, 131 Cal.Rptr. 374, 551 P.2d 1206] 'an agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy ... [or] 'result in an evasion of ... a statute of the forum protecting its citizens.' [Citation.]" (*Hall, supra,* 150 *14 Cal.App.3d at pp. 416-417, 197 Cal.Rptr. 757; see also *Cal-State, supra,* 12 Cal.App.4th at p. 1680, 16 Cal.Rptr.2d 417.) [FN6]

> FN6.  At oral argument, counsel for AOL suggested for the first time that a Virginia court might apply California's consumer protection law to resolve this dispute.   Not only was this suggestion legally unsupported, but we find it counter-intuitive to believe that a Virginia court would invoke California law to resolve a contract-based consumer dispute against a Virginia domiciliary where the parties agreed to have Virginia law applied, and where Virginia has a statutory consumer protection law of its own.

The *Hall* court determined that if the pending securities litigation were transferred to Nevada where Nevada law would be applied, the plaintiffs would lose the benefit of California's Corporate Securities Law of 1968 which would otherwise govern the transaction in question.   This California law was designed to protect the public from fraud and deception in securities matters, by providing statutory remedies for violations of the California Corporations Code. (*Hall, supra,* 150 Cal.App.3d at p. 417, 197 Cal.Rptr. 757.)   For this reason, the remedial scheme, like the CRLA involved in this case,   contains   an   anti-waiver   provision. (Corp.Code, § 25701; *Hall, supra,* at pp. 417- 418, 197 Cal.Rptr. 757.)   The court concluded: "[W]e believe the right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a 'provision' within the meaning of [Corporations Code] section 25701 which cannot be waived or evaded by stipulation of the   parties   to   a   securities   transaction. Consequently, we hold the choice of Nevada law provision in this agreement violates section 25701 and the public policy of this state [citation] and for that reason deny enforcement of the forum selection

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 13 of 33

clause as unreasonable." (*Id.* at p. 418, 197 Cal.Rptr. 757.) [FN7]

> FN7. The court also noted that the defendant had rejected the notion of a stipulation that, if transferred, the parties would agree to have California substantive law applied. In any case, the court cited to Nevada's own securities law (Nev.Rev.Stat., ch. 90, § 90.200, subd. 7), which itself contained an anti-waiver provision, making it problematic whether such a stipulation would be enforced by Nevada courts once transfer occurred. (*Hall, supra,* 150 Cal.App.3d at p. 419, 197 Cal.Rptr. 757.)

It is important to consider that the *Hall* court denied enforcement of the forum selection clause solely on the inevitability that doing so would eliminate the protections of California's Corporate Securities Law; a result prohibited by the anti-waiver feature of that law. However, it did not compare the California statutory scheme to that afforded by Nevada law to determine if the remedies provided by each were materially different. [FN8]

> FN8. *Hall* has been cited with approval by our Supreme Court in its own recent opinion on the enforceability of contractual choice of law provisions. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464, 11 Cal.Rptr.2d 330, 834 P.2d 1148.)

**\*\*710** [9][10] The CLRA parallels the Corporate Securities Law of 1968, at issue in *Hall,* insofar as the CRLA is a legislative embodiment of a desire to **\*15** protect California consumers and furthers a strong public policy of this state. "The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices, which were identified in the 1969 Report of the National Advisory Commission on Civil Disorders (i.e., the Kerner Commission). [Citation.]  Section 1760 contains an express statement of legislative intent: 'This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " (*Broughton, supra,* 21 Cal.4th at p. 1077, 90 Cal.Rptr.2d 334, 988 P.2d 67.)

Certainly, the CLRA provides remedial protections *at least* as important as those under the Corporate

Securities Law of 1968. Therefore, by parity of reasoning, enforcement of AOL's forum selection clause, which is also accompanied by a choice of law provision favoring Virginia, would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's anti- waiver provision (Civ.Code, § 1751) and California public policy. For this reason alone, we affirm the trial court's ruling.

This conclusion is reinforced by a statutory comparison of California and Virginia consumer protection laws, which reveals Virginia's law provides significantly less consumer protection to its citizens than California law provides for our own. Consumers who prove violations of the CLRA within the three-year limitations period may be entitled to a minimum recovery of $1000, restitution or property, power of injunctive relief, and punitive damages. (Civ.Code, §§ 1780, subd. (a)(1)-(4); 1783.)  Attorney fees and costs are also recoverable if the plaintiffs prevail on their claim under the act. [FN9]  (*Id.* at § 1780, subd. (d).)  In addition to these extraordinary remedies, if the complaining consumer is a senior citizen or disabled person, up to $5000 may be awarded for substantial physical, emotional distress, or economic damage. (*Id.* at § 1780, subd. (b).)  Of course, the CLRA specifies that actions under that act may be prosecuted as class actions. (*Id.* at §§ 1752, 1781.) [FN10]

> FN9. Unlike other provisions of the Civil Code (§ 1717), a defendant's right to recover attorney fees and costs is not reciprocal unless the court finds that the plaintiff did not prosecute the claim against the defendant in good faith (*id.* at § 1780, subd. (d)).

> FN10. The focus of the parties' comparisons appears to relate to the CRLA. Mendoza's complaint also includes a cause of action under California's Unfair Competition Law (Bus. & Prof.Code, §§ 17200 et seq.), which shares some remedial similarities with the CRLA, including a private right to sue as a class action (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 87 Cal.Rptr.2d 346), recovery of restitution and injunctive relief (Bus. & Prof.Code, § 17203; *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 93 Cal.Rptr.2d 439), plus enhanced remedies for senior or disabled persons (Bus. & Prof.Code, § 17206.1). But neither actual damages nor attorney fees are recoverable. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23

Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527.)

**\*16** Virginia also has a statutory scheme denominated the Virginia Consumer Protection Act of 1977 (VCPA) (Va.Code Ann., § 59.1-196). The purpose of the VCPA is to "promote fair and ethical standards of dealings between suppliers and the consuming **\*\*711** public." (*Id.* at § 59.1-197.) The panoply of prohibited acts appears to be as comprehensive as those under the CRLA, and covers the specific misconduct by AOL alleged in Mendoza's complaint. (*Id.* at § 59.1-200.) Under the VCPA, individuals are entitled to sue and recover actual damages, or a minimum of $500, whichever is greater. If willful misconduct is proved, the minimum damages increase to $1000. Attorney fees and costs "may" be awarded. (*Id.* at § 59.1-204, subd. (B).) Restitution is also available. (*Id.* at § 59.1-205.) However, if the violation is determined to be "unintentional," [FN11] the only remedies obtainable are restitution and attorney fees and court costs. (*Id.* at § 59.1-207.) The Virginia act has a two-year limitations period. (*Id.* at § 59.1-204.1, subd. (A).)

FN11. As may be relevant here, "unintentional" for purposes of the VCPA means "the alleged violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid a violation ...." (*Id.* at § 59.1-207.)

The parties disagree whether, and to what extent, private injunctive relief is available under the VCPA. The applicable statute (Va.Code Ann., § 59.1-203) is somewhat ambiguous. However, at bottom we agree with AOL that a more reasonable reading of the statute appears to support injunctive relief for individuals, although we do not agree that the law allows private persons to obtain injunctive relief on behalf of others similarly situated. [FN12] In this respect injunctive relief afforded by the CRLA is unique, as its purpose is not simply to correct future private injury but to remedy a public wrong. As explained by our Supreme Court in *Broughton, supra,* 21 Cal.4th at p. 1080, 90 Cal.Rptr.2d 334, 988 P.2d 67: "Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by

and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered.... In other words, the plaintiff in a CLRA damages action is playing the role of a bona fide private attorney general. [Citation.]" (Fn.omitted.)

FN12. Section 59.1-203 is comprised of four subdivisions, three of which clearly discuss and are limited to the rights of public entities, acting through public counsel, to seek orders restraining violations of the VCPA for the benefit of the public. However, subdivision C states without qualification "[t]he circuit courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of [section] 59.1-200." It would be needless duplication to recite the authority of the courts to enjoin misconduct in subdivision C if it were intended to apply only to public entities and not individual actions. However, we see nothing in the statute that allows private individuals to seek injunctive relief for the benefit of others. That authority appears to be reserved to the discretion of public officers under subdivisions A, B and D.

[11] **\*17** Of greater importance is the absence of any provision in the VCPA that allows suits under the Act to proceed as class actions. Unless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law. (*King v. Va. Birth-Related Neurological Injury Compensation Program* (1990) 22 Va. Cir. 156; *Kuhn v. West Alexandria Properties, Inc.* (1980) 22 Va. Cir. 439. [FN13]

FN13. We disagree with AOL that the omnibus section of the VCRA entitled "Additional Relief" (Va.Code Ann., § 59.1-205), which reserves to the courts the right to make additional orders restoring money or property to "any identifiable person" acquired in violation of the act, can be properly read to allow of consumer class actions. Our conclusion is confirmed by the fact that where the Virginia Legislature intends to allow for class action relief in actions at law, it has done so explicitly. (See *id.* at § 55-79.53; *Kuhn v. West Alexandria Properties, Inc., supra,* 22 Va. Cir.439.)

**\*\*712** In contrast to Virginia consumer law's ostensible hostility to class actions, the right to seek class action relief in consumer cases has been extolled by California courts. A notable example is the opinion in *Vasquez v. Superior Court* (1971) 4

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 15 of 33

Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 ( *Vasquez*), in which the Supreme Court considered the question of whether consumers could pursue a class action for restitution for fraud in connection with a now-infamous installment purchase contract scheme to sell freezers and frozen meat to California consumers. (*Id* at p. 812, 94 Cal.Rptr. 796, 484 P.2d 964.) [FN14] Justice Mosk, writing for a unanimous Supreme Court, first noted that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Id.* at p. 808, 94 Cal.Rptr. 796, 484 P.2d 964.) Using memorable prose, Justice Mosk then explained the importance of class actions as an instrumentality of consumer protection: "Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial." (*Ibid.*)

> FN14. Coincidentally, while that case was pending, the CRLA was passed by the Legislature. (*Id.* at pp. 817-818, 94 Cal.Rptr. 796, 484 P.2d 964.)

That this view has endured over the last 30 years is of little surprise given the importance class action consumer litigation has come to play in this *18 state. In light of that history, we cannot accept AOL's assertion that the elimination of class actions for consumer remedies if the forum selection clause is enforced is a matter of insubstantial moment. [FN15] The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the TOS forum selection clause.

> FN15. AOL argues that the unavailability of class action relief in Virginia is not a material difference as compared to California law, and in support cites

to a published Maryland case. *Gilman v. Wheat, First Securities, Inc* (1997) 345 Md. 361, 692 A.2d 454. which enforced a forum selection clause in favor of Virginia. But this case is of limited value here. First, *Gilman* obviously did not involve California law in the slightest, nor did the Maryland court purport to analyze California public policy. Second, the court found the difference between Maryland law (which allows class actions) and Virginia (which does not) to be inconsequential because the issue of the forum selection arose in the context of an arbitration clause and not a consumer action at law. (692 A.2d 454 at pp. 454-465.)

In addition to the unavailability of class actions and the apparent limitation in injunctive relief, neither punitive damages, nor enhanced remedies for disabled and senior citizens are recoverable under Virginia's law. More nuanced differences are the reduced recovery under the VCPA for "unintentional" acts, a shorter period of limitations, and Virginia's use of a Lodestar formula alone to calculate attorney fees recovery. (*Holmes v. L.G. Marion Corp.* (1999) 258 Va. 473, 521 S.E.2d 528, **713 533-534.) [FN16] Quite apart from the remedial limitations under Virginia law relating to injunctive and class action relief, the cumulative importance of even these less significant differences is substantial. Enforcement of a forum selection clause, which would impair these aggregate rights, would itself violate important California public policy. For this additional reason the trial court was correct in denying AOL's motion to stay or to dismiss. [FN17]

> FN16. California allows for the use of multiples to enhance the fees recovered in consumer litigation (in addition to the greater recovery incident to consumer class actions suits). (*Lealao v. Beneficial California Inc.* (2000) 82 Cal.App.4th 19, 49-50, 97 Cal.Rptr.2d 797) The ability to recover these costs is integral to making the CRLA effective by increasing the financial feasibility of bringing actions under the statute. (*Broughton, supra,* 21 Cal.4th at p. 1086, 90 Cal.Rptr.2d 334, 988 P.2d 67.)

> FN17. Because we affirm on other grounds, we need not decide whether the trial court correctly concluded that the TOS was an unconscionable, adhesion contract (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. 99 Cal.Rptr.2d 745, 6 P.3d 669), or Mendoza's alternative contention that the forum

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

selection clause is unenforceable because it was induced by fraud.

In so holding we reject Mendoza's contention that the clause should not be enforced simply because it would be patently unreasonable to require him or other AOL customers who form the putative class to travel to Virginia to litigate the relatively nominal individual sums at issue. He points out that in 1998 and 1999, not a single suit by a non-Virginia resident appears to have been filed in AOL's Virginia home county, a development Mendoza suggests is directly related to the fact that the cost of prosecuting a claim in *19 Virginia vastly exceeds the amounts normally at issue in individual claims against AOL.

[12] But the additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced. Our Supreme Court has put this matter to rest in *Smith Valentino* when it quoted: " 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things.' [Citation.]" (*Smith Valentino, supra,* 17 Cal.3d at p. 496, 131 Cal.Rptr. 374, 551 P.2d 1206; see also *Furda, supra,* 161 Cal.App.3d at pp. 426-427, 207 Cal.Rptr. 646.)

Yet Mendoza contends that *Smith Valentino* 's admonition not to consider convenience and cost in evaluating the validity of forum selection clauses applies only where there remains a "practical option [of travel to the selected forum] in terms of the expense and value of the controversy." As we understand it, Mendoza is arguing that expense in litigating in the selected forum can be considered if it exceeds the amount in controversy or at least renders the choice to litigate "impractical."

We disagree that *Smith Valentino* can be read so narrowly. No case of which we are aware has interpreted this language as Mendoza suggests we should. Moreover, it is not at all clear what monetary amount was in dispute in that case, or whether it was "practical" to bring the litigation in the selected forum. Although the current dispute between Mendoza and AOL might make it impractical for Mendoza to pursue an individual claim in Virginia, there may be other potential

disputes between Mendoza and AOL arising from their relationship which would have significantly greater value. Are we to parse the enforceability of the forum selection clause, then, based on the economic value of the particular claim in issue, so that the clause can be **714 enforced some of the time (depending on the value of the claim), but not all of the time? If so, should trial courts use an objective standard, or consider the proclivities of the individual claimant who may not feel litigation in the selected forum is worth it? How should trial judges calculate the costs of litigation? [FN18] Should they consider the extent to which the selected forum allows for the recovery of costs, including travel-related expenses? Should courts compute the extent to which extraordinary costs in enforcing contractual rights are included in the consideration paid for the goods or services purchased? (See *Smith Valentino, supra,* 17 Cal.3d at p. 496, 131 Cal.Rptr. 374, 551 P.2d 1206.)

> FN18. While it takes no imagination in this case to see how even a year's worth of wrongful debit charges may not justify a trip to Virginia, should courts consider to what extent expenses can be mitigated by careful litigation management? (See *Smith Valentino, supra,* 17 Cal.3d at p. 496, 131 Cal.Rptr. 374, 551 P.2d 1206.)

*20 As can be seen, in addition to reading a limitation in our Supreme Court's opinion which is not warranted, the practical problems in accepting Mendoza's restricted reading of *Smith Valentino* are formidable, and will ensnare trial courts in endless proceedings during which these factors would be argued and weighed. It was perhaps just such a concern that, in part, moved the Supreme Court to pronounce costs and convenience "[are] not the test of reasonableness [of forum selection clauses]." ( *Smith Valentino, supra,* 17 Cal.3d at p. 496, 131 Cal.Rptr. 374, 551 P.2d 1206.)

We also reject AOL's suggestion made at oral argument that this conclusion is inconsistent with our Supreme Court's decision in *Broughton.* That opinion holds only that remedies under the CRLA are arbitrable so long as the substantive rights of the plaintiffs are not impaired. Indeed, because claims for injunctive relief cannot be arbitrated, the court ordered the arbitrable causes of action severed from the court action. (*Broughton, supra,* 21 Cal.4th at p. 1072, 90 Cal.Rptr.2d 334, 988 P.2d 67.)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Similarly, our holding is unaffected by the recent Supreme Court decision in *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (*Washington Mutual*). That case concerns what procedurally must be done by trial courts considering whether to certify a national class action where the dispute arises out of a contract containing a foreign choice of law provision. Relying on its earlier opinion in *Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, the Supreme Court directed trial courts to perform a choice of law analysis as part of the national class certification process. (*Washington Mutual, supra,* 24 Cal.4th at pp. 915-916, 103 Cal.Rptr.2d 320, 15 P.3d 1071.) As part of that analysis, courts must determine if the substantive law of the selected forum is in conflict with a " 'fundamental public policy of California.' " (*Id.* at p. 916, 103 Cal.Rptr.2d 320, 15 P.3d 1071, italics omitted.) If so, the choice of law provision is not to be enforced if California has an interest in having its own law applied to the dispute. (*Id.* at pp. 916-917, 103 Cal.Rptr.2d 320, 15 P.3d 1071.) If relevant at all, the legal principles underlying both *Nedlloyd* and *Washington Mutual* are entirely consistent with our opinion.

[13] Lastly, we are also unpersuaded by AOL's contention that the trial court erred in not granting AOL's request for a stay of the California action to allow the Virginia court to determine whether the relief available to Mendoza is consistent with California consumer law. AOL **715 claims that if the Virginia court found inconsistency, the California court could then re-assert jurisdiction, deny enforcement of the forum selection clause, and allow Mendoza to proceed in the California forum. We reject this claim because: 1) it is unnecessary for us to defer our decision until a Virginia course clarifies its consumer law, for we do not find Virginia consumer law to be *21 nearly as opaque as suggested by counsel for AOL; 2) AOL suggests no procedural device which would allow a California court to proceed with the underlying case after a Virginia court has ruled (see U.S. Const. art. IV, sec. 1); and 3) a stay would take an already financially impractical legal dispute and compound the expense to resolve it by necessitating perhaps *two* lawsuits.

IV.
DISPOSITION

The order to show cause is discharged and the petition for writ of mandate is denied. Costs are awarded to Mendoza.

HAERLE, Acting P.J., and LAMBDEN, J., concur.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

EXHIBIT B

52 Cal.Rptr.2d 435
96 Cal. Daily Op. Serv. 3088, 96 Daily Journal D.A.R. 5011
**(Cite as: 44 Cal.App.4th 1450, 52 Cal.Rptr.2d 435)**
**C**

Court of Appeal, Second District, Division 3,
California.

BANCOMER, S.A., Petitioner,
v.
The SUPERIOR COURT of the State of California,
in and for the County of Los
Angeles, Respondent.
Terry REILLY, et al., Real Parties in Interest.

No. B089364.

April 30, 1996.

Bank, designated in purchase agreement to establish trust through which interests in Mexico resort would be purchased, sought writ of mandate directing Superior Court to enforce purchase agreement's forum selection clause, requiring litigation of disputes in Mexico, after purchase of leasehold interests became invalid, based on Mexican court determination that developer did not have title to resort property, and purchasers brought fraud action against bank in California. The Court of Appeal, Janavs, J., held that: (1) bank lacked standing as third-party beneficiary to enforce agreement's forum selection clause; (2) bank was not entitled to enforce agreement's forum selection clause on ground bank was closely related to contractual relationship between vendor and purchaser; (3) assuming arguendo that bank had standing to enforce forum selection clause, purchaser's claim that bank fraudulently induced him to enter into written agreement to purchase leasehold interest in resort did not fall within scope of clause; and (4) enforcement of forum selection clause for only north side properties of resort, as sought by bank, would be arbitrary and inconsistent.

Writ denied.

## West Headnotes

[1] Contracts ☞127(4)
95k127(4)

Forum selection clause is valid in absence of resisting party meeting heavy burden of proving enforcement of clause would be unreasonable under circumstances of case.

[2] Appeal and Error ☞949
30k949

Court of Appeal reviews trial court's decision to enforce forum selection clause for an abuse of discretion.

[3] Appeal and Error ☞946
30k946

"Abuse of discretion" standard presumes deference to trial court; such deference makes sense where issue usually involves primarily factual disputes.

[4] Appeal and Error ☞946
30k946

In its emphasis on deference, abuse of discretion standard is similar to substantial evidence rule.

[5] Appeal and Error ☞1010.1(1)
30k1010.1(1)

Sufficiency of evidence standard usually is applied to test evidence supporting a judgment.

[6] Appeal and Error ☞949
30k949

Rulings other than judgments ordinarily are reviewed for abuse of discretion.

[7] Appeal and Error ☞945
30k945

Reviewing court should not disturb exercise of trial court's discretion unless it appears that there has been miscarriage of justice.

[8] Contracts ☞187(1)
95k187(1)

Third party may qualify as beneficiary under contract where contracting parties intended to benefit third party and such intent appears on terms of contract.

[9] Contracts ☞187(1)
95k187(1)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Fact that third party is only incidentally named in contract or that contract, if carried out to its terms, would inure to third party's benefit is insufficient to entitle him or her to demand enforcement pursuant to statute, providing contract made expressly for benefit of third person may be enforced by him at any time before parties thereto rescind it. West's Ann.Cal.Civ.Code § 1559.

[10] Contracts ☞187(1)
95k187(1)

Whether third party is intended beneficiary or merely incidental beneficiary to contract, for purposes of determining whether third party may enforce contract, involves construction of parties' intent, gleaned from reading contract as a whole in light of circumstances under which it was entered. West's Ann.Cal.Civ.Code § 1559.

[11] Contracts ☞175(1)
95k175(1)

Burden is on third party seeking to enforce contract to prove that performance it seeks was actually promised under contract.

[12] Contracts ☞187(1)
95k187(1)

Bank, designated in purchase agreement to establish trust through which interests in Mexico resort would be purchased, lacked standing as third-party beneficiary to enforce agreement's forum selection clause; purchase agreement and circumstances under which it was negotiated and signed failed to demonstrate that vendor and purchaser intended bank to benefit from their transaction. West's Ann.Cal.Civ.Code § 1559.

[13] Contracts ☞185.1
95k185.1

Bank, designated in purchase agreement to establish trust through which interests in Mexico resort would be purchased, was not entitled to enforce agreement's forum selection clause on ground bank was closely related to contractual relationship between vendor and purchaser; bank failed to prove that it agreed to be bound by terms of purchase agreement, that contracting parties intended the bank to benefit from purchase agreement, or that there

was sufficient evidence of defined and intertwining business relationship with contracting party.

[14] Contracts ☞206
95k206

Assuming, arguendo, that bank, designated in purchase agreement to establish trust through which interests in Mexico resort would be purchased, had standing to enforce agreement's forum selection clause, purchaser's claim that bank fraudulently induced him to enter into written agreement to purchase leasehold interest in resort did not fall within scope of clause, providing any conflict which may arise regarding interpretation or fulfillment of contract shall be decided in Mexican court; alleged offending conduct preceded formation of purchase agreement and claims did not relate to rights and responsibilities accorded vendor and purchaser under agreement.

[15] Contracts ☞206
95k206

Forum selection clauses can be equally applicable to contractual and tort causes of action.

[16] Contracts ☞206
95k206

Whether forum selection clause applies to tort claims depends on whether resolution of claims relates to interpretation of contract.

[17] Contracts ☞206
95k206

Enforcement of purchase agreement's forum selection clause for only north side properties of resort, as sought in petition for writ of mandate by bank, designated in purchase agreement to establish trust through which interests in resort would be purchased, would be arbitrary and inconsistent; some purchasers bought interests in both north and south sides of resort.
**437 Petition for Writ of Mandate. Dzintra I. Janavs, Judge. No. BC093285.

*1453 Pillsbury Madison & Sutro, Charles E. Patterson, Los Angeles, Kevin M. Fong, San Francisco and Robert A. Gutkin, Washington, DC, for Petitioner.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

No appearance for Respondent.

Hardy L. Thomas, Los Angeles, for Real Parties in Interest.

KITCHING, Justice.

In this action for mandamus relief, we consider whether a bank, a non- signatory to a purchase agreement between a resort developer and individual purchasers of leasehold interests in the property, is so "closely related to the contractual relationship" between the parties that it can enforce a contractual forum selection clause requiring litigation of disputes in Mexico. We decide it is not.

The forum selection clause appears in an agreement for use and development of land (purchase agreement) at the Baja Beach & Tennis Club (BB & TC) in Mexico, and provides: "Any conflict which may arise regarding the interpretation or fulfillment of this contract, shall be submitted expressly to the courts of the City of Ensenada, B.C."

The action arises out of the purchase of leasehold interests at BB & TC that became invalid after a Mexican court determined that the developer who sold the interests did not have title to the property. [FN1] Individual purchasers brought an action in California for fraud against Bancomer, S.A. (Bancomer), the bank designated in the purchase agreement to establish a trust ***1454** through which the interests would be purchased. Bancomer moved for dismissal on grounds the contractual forum selection clause required "any" conflicts arising out of the agreement to be litigated in Mexico. The motion was denied and the bank seeks a writ of mandate directing the superior court to enforce the clause.

FN1. The plaintiffs and real parties in interest are Terry Reilly, Sharon McCall, Horst Doerzapf, Kenneth W. Hoff, Donald E. Moore, Carol E Moore, Brian Palmer, Hilary Palmer, Carmen Pascua, Romauldo A. Pascua, Herbert Stein, Rita Stein, Jody Vanda, and Jorge Von Son. They purchased leasehold interests and memberships in the "north side" and "south side" of the resort, along with club memberships. *This writ proceeding only involves the superior court's ruling as to the contractual forum selection clause in the agreements of those parties who purchased interests in property on the "north side" of the resort.* Of the plaintiffs/real parties in interest, only Terry Reilly. Sharon McCall, Herbert and Rita Stein, and Donald and Carol Moore purchased property interests on the "north side" and are involved in this writ proceeding.

We find Bancomer unable to enforce the forum selection clause because the bank is neither a third-party beneficiary to the purchase agreement, nor so "closely related to the contractual transactional transaction" to claim a benefit from the clause. We further find the claims against Bancomer for fraudulent inducement are beyond the scope of the forum selection clause. The trial court did not abuse its discretion in denying Bancomer's motion to dismiss. The petition is denied.

FACTUAL AND PROCEDURAL BACKGROUND

In or about 1986, Mexican developer Carlos Teran (Teran), Grupo Koster, S.A. de C.V. (Koster), and CETA, Ltd. (CETA), allegedly acquired the rights to develop land and construct a resort in Baja California, Mexico. Koster entered into an agreement with certain Mexican citizens, the Ejido, for use and development of the land for a period of 30 years. [FN2] Koster and CETA then sold individual purchasers 30-year leasehold interests (or participation rights) in the property and/or memberships in the BB & TC.

FN2. The Ejido are native Mexican citizens who own land subject to grants from the Mexican government. The Ejido have the authority, subject to approval from the Mexican government, to grant other parties the right to use their land for certain purposes for a limited duration of time.

From 1988 to 1992, the real parties in interest (referred to collectively as "Reilly") ****438** purchased leasehold interests and/or memberships in the resort. The terms of the leaseholds were contained in the membership agreement with CETA and the purchase agreement with Koster. The purchase agreement provided, in relevant part, that the interests would be issued under a trust with Bancomer. [FN3] Bancomer was not a party to the agreement. Reilly executed a promissory note in favor of CETA for the balance due on the ***1455** purchase and membership agreements, and sent payments to an address in California. The notes were subsequently assigned to Bancomer.

FN3. Mexico prohibits ownership of certain lands

by "foreign" interests, but permits the leasing of properties for use and enjoyment. Long-term leases of land which exceed 10 years can only be acquired by "foreigners" through a Mexican "bank trust." Where there is a lease subject to a trust, the landowner (lessor) is the trustor, the bank is the trustee and the leasehold purchaser is the beneficiary of the trust. The bank, therefore, holds and guarantees the purchaser's interest in the property and issues these leasehold interest or participation rights.

The membership agreement provided, in relevant part: "A. CETA, LTD., a Cayman Islands, B.W.I. corporation ('CETA'), is the owner of 'C' membership ... in the Baja Beach and Tennis Club, a California nonprofit mutual benefit corporation ('The Club'). The Club has obtained rights to utilize 154 lots on certain real property located in Punta Banda, Ensenada, Baja California, Mexico (the 'Property'). Such property and lots rights ensuing to members are guaranteed to the Members through the establishment of a Bank Trust with BANCOMER, S.N.C. a Mexican Credit and Trust Institution...."

The purchase agreement provided, in relevant part: "VII. That for the purposes of a best legal and administrative regulation, *its representative is in* the process of obtaining a trust that will last the same term of this contract. Mentioned trust will be contracted with BANCOMER, S.N.C., and the purposes also will be to issue individual certification to each one of the individual acquirers of rights on mentioned lots."

The two agreements contained separate forum selection clauses. The membership agreement provided: "If this application is accepted by CETA, all provisions of the agreement formed thereby shall be governed by the laws of the Cayman Islands, and any action arising from or connected with this Application shall be brought in the courts of said jurisdiction at the election of CETA or the courts of the applicable jurisdiction where applicant resides...." The purchase agreement provided: " *Any conflict which may arise regarding the interpretation or fulfillment of this contract, shall be submitted expressly to the courts of the City of Ensenada, B.C.*" (Italics added.) The forum selection clause in the purchase agreement is the subject of this writ petition.

At the time Reilly purchased the leasehold interest, and unknown to her until 1993, litigation ensued in Mexico between the Ejido and other Mexican citizens over ownership rights to the resort property.

This dispute affected the legitimacy of the underlying agreement between Koster and the Ejido, and the validity of the leasehold interests. [FN4] The bank trust was either not established or was ineffective to protect Reilly's investment. Bancomer, however, continued to collect on the notes.

> FN4. A Mexican court later decided the issue adversely to the interests of plaintiffs/real parties in interest and in favor of third parties, who were declared legal owners of the land. Therefore the long-term leaseholds and the memberships are void under Mexican law.

Reilly filed a first amended complaint in Los Angeles County Superior Court against Bancomer alleging causes of action for, inter alia, constructive fraud and intentional and negligent misrepresentation. The gravamen of the action was that Bancomer, with knowledge of the title litigation in Mexico, misrepresented the validity of the leasehold interests and induced Reilly to enter into the purchase agreement. The complaint did not name either Koster *1456 or CETA as parties. Bancomer's answer asserted, among other affirmative defenses, that "[p]laintiffs have waived any right to assert such claims against Bancomer in the United States, by agreeing to a forum selection clause that provides that Mexican law governs all disputes and Ensenada, Mexico is the proper place to resolve any such disputes."

Bancomer moved to dismiss the complaint on the basis of the forum selection clause and Code of Civil Procedure section 410.30, subdivision (a), which states: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum **439 outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." [FN5] Bancomer asserted that Reilly's claims against it arose out of the purchase agreement, and were encompassed within the terms of the forum selection clause which provided that Mexican courts were to resolve "any" conflict. In opposition, Reilly argued that Bancomer, which did not sign the purchase agreement, had no standing to claim the benefit of the forum selection clause. Reilly also argued that enforcement would be unreasonable and a violation of public policy.

> FN5. Bancomer also asserted that four plaintiffs

were already litigating the issue of Koster's fraudulent actions in Mexico and that similar claims against Bancomer should be litigated in that forum. However, Koster initially filed lawsuits in Mexico against Terry Reilly, Sharon McCall, Herbert Stein and Rita Stein. As collect on the promissory notes. Since Mexican law prohibited cross-claims based on "new facts and causes," the plaintiffs hired an attorney in Mexico to file a separate action as a defensive response to Koster's allegations.

The superior court denied Bancomer's motion to dismiss as to the holders of property interests on the "north side" of the resort. [FN6] The court found the forum selection clause inapplicable to the fraud allegations asserted against Bancomer, and stated the claims "[did] not represent 'a conflict which may arise regarding the interpretation or fulfillment of the contract' by the seller. Plaintiffs seek to hold defendant Bancomer liable for its own conduct, not that of the seller." The court also found that Bancomer, as a non-party to the agreement, was not "closely related to the contractual relationship" between Koster and Reilly so as to come within the scope of the forum selection clause.

> FN6. The trial court heard argument on September 23, 1994 and October 28, 1994. On October 28, 1994, the court granted Bancomer's motion as to non-California residents, and denied the motion as to holders of property interests on the "south" side.

Bancomer filed a petition for writ of mandate. We issued an alternative writ directing the respondent court either to grant Bancomer's motion to dismiss or to show cause why it should not be ordered to do so. Respondent court did not comply with our alternative writ. After a series of continuances requested by all parties, we heard oral argument.

### *1457 CONTENTIONS

Bancomer contends the trial court abused its discretion in denying the motion to dismiss because the forum selection clause in the purchase agreement designates Mexico as the proper forum for litigation of claims arising out of the agreement.

### DISCUSSION

1. *Standard of Review*

[1][2][3][4][5][6][7] A forum selection clause is valid in the absence of the resisting party meeting a

heavy burden of proving enforcement of the clause would be unreasonable under the circumstances of the case. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496, 131 Cal.Rptr. 374, 551 P.2d 1206; *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493, 14 Cal.Rptr.2d 906.) "We review a trial court's decision to enforce [or refuse to enforce] a forum selection clause for an abuse of discretion." (11 Cal.App.4th at p. 1493, 14 Cal.Rptr.2d 906; *Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 424, 207 Cal.Rptr. 646.) "The standard of abuse of discretion applies to a broad range of decisions.... [¶].... [T]he standard presumes deference to the trial court. Such deference makes sense where the issue usually involves primarily factual disputes. In its emphasis on deference, the abuse of discretion standard is similar to the substantial evidence rule." (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065, 24 Cal.Rptr.2d 654.) We note "[t]he sufficiency of the evidence standard usually is applied to test evidence supporting a judgment. Rulings other than judgments ordinarily are reviewed for abuse of discretion." (*Id.* at p. 1066, 24 Cal.Rptr.2d 654.) "In *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193 ..., our Supreme Court declared that '... a reviewing court should not disturb the exercise **440 of a trial court's discretion unless it appears that there has been a miscarriage of justice.' " (*Ibid.*) [FN7]

> FN7. We note the Third District in *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680-1681, 16 Cal.Rptr.2d 417 declined to follow the abuse of discretion standard and determined that review of a contractual forum selection clause was subject to a substantial evidence standard of review. The court stated, in relevant part: "... [I]n a contractual forum non conveniens motion, the trial court must determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present which satisfy these criteria, *it must* act in a particular way: there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied." [Citations.] (*Id.* at p. 1681, 16 Cal.Rptr.2d 417.) While we decline to accept this approach, we note our disposition in this case would be the same under either standard.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:01-cv-00148   Document 5   Filed in TXSD on 12/06/2001   Page 24 of 33

We therefore consider the superior court's ruling in light of Reilly's burden to show that enforcement of the clause would be unreasonable.

**\*1458** 2. *Enforcement of the Forum Selection Clause Would be Unreasonable Under the Circumstances of This Case*

Reilly advances three arguments in opposition to enforcement of the forum selection clause. First, she asserts Bancomer was not a party to the purchase agreement and, therefore, unable to claim the benefits of the clause under theories it was either a third-party beneficiary or "closely related to the contractual relationship" between the parties to the agreement. (*Lu v. Dryclean-U.S.A. of California, Inc., supra,* 11 Cal.App.4th at p. 1494, 14 Cal.Rptr.2d 906.) Second, she contends the causes of action alleged against Bancomer did not relate to the "interpretation or fulfillment" of the purchase agreement, but were fraud tort claims independent of the agreement. (See *Manetti-Farrow, Inc. v. Gucci America, Inc.* (9th Cir.1988) 858 F.2d 509, 514.)  Finally, Reilly argues the designated litigation forum arbitrarily depended on the location of an individual's property interest at the resort and would result in conflicting rulings.

a. *Bancomer is Not a Third-Party Beneficiary to the Agreement.*

[8][9][10][11] "Civil Code section 1559 provides: 'A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract. [Citation.] However, it is well settled that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. [Citations.] ' "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others.  He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him...." ' [Citations.]  ... [¶] The fact that the third party is only incidentally named in the contract or that the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement. [Citation.]  Whether a third party is

an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.   [Citation.]"   (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724-1725, 33 Cal.Rptr.2d 291;  see also *Sheppard v. Banner Food Products* (1947) 78 Cal.App.2d 808, 812, 178 P.2d 455) The burden is on Bancomer "to prove that the performance [it] seeks was actually promised." (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436, 204 Cal.Rptr. 435, 682 P.2d 1100.)

[12] It is apparent from the purchase agreement, which recited the rights and responsibilities of and between Koster and Reilly, that Bancomer was **\*1459** not an intended beneficiary.  Incident to the terms of the purchase agreement, Bancomer was named as the trustee.    That is not enough.    A review of the purchase agreement and the circumstances under which it was negotiated and signed fails to demonstrate that Koster and Reilly intended Bancomer to benefit **\*\*441** from their transaction.  Bancomer has failed to meet its burden and prove otherwise.   We agree with the superior court's determination that "there is no evidence that the plaintiffs, against whom the consent clause is sought to be enforced by Bancomer, agreed to its relationship with Bancomer or any other nonparty being included in the clause."    Bancomer has no standing as a third party beneficiary to enforce the forum selection clause.

b. *Bancomer is Not "Closely Related to the Contractual Relationship" Between Koster and Reilly.*

[13] Bancomer is not entitled to enforce the forum selection clause on the ground the bank was "closely related to the contractual relationship" between Koster and Reilly.   In reaching this conclusion, we consider the limited case law in this area.

In *Lu v. Dryclean-U.S.A. of California, Inc., supra,* Eric and Yen Lu entered into a franchise agreement with Dryclean-U.S.A. of California, Inc. (Dryclean-California) that contained a forum selection clause which read: " '[a]ny and all litigation that may arise as a result of this Agreement shall be litigated in Dade County, Florida.'    The corporate parent of Dryclean

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

California, Dryclean-U.S.A. Franchise Company (Dryclean Franchise), maintains its principal place of business in Miami, Florida, as does its corporate parent, Dryclean-U.S.A., Inc. (Dryclean U.S.A.)." (*Id.* at p. 1492, 14 Cal.Rptr.2d 906.) Lu subsequently filed an action for damages and rescission against Dryclean California, Dryclean Franchise, and Dryclean U.S.A. The court granted defendants' motion to dismiss based on the forum selection clause. (*Ibid.*) On appeal, Lu argued that "enforcement of the forum selection clause would be unreasonable because two of the defendants, Dryclean Franchise and Dryclean U.S.A., did not sign the Agreement containing the clause." (*Id.* at pp. 1493-1494, 14 Cal.Rptr.2d 906.) The appellate court disagreed and determined that in this case, "the alleged conduct of Dryclean Franchise and Dryclean U.S.A. is closely related to the contractual relationship. They are alleged to have participated in the fraudulent representations which induced plaintiffs to enter into the Agreement. Indeed, plaintiffs go so far as to allege Dryclean Franchise and Dryclean U.S.A. are the 'alter ego' of Dryclean California, which did sign the Agreement containing the forum selection clause. Under these circumstances, the fact that Dryclean Franchise and Dryclean U.S.A. did not sign the forum selection clause does not render the forum selection clause unenforceable. [Citations.] To hold otherwise would be to **1460** permit a plaintiff to sidestep a valid forum selection clause simply by naming a closely related party who did not sign the clause as a defendant." (*Id.* at p. 1494, 14 Cal.Rptr.2d 906, fn. omitted.)

In *Manetti-Farrow, Inc. v. Gucci America, Inc., supra,* 858 F.2d 509, a case on which Bancomer relies, "Manetti-Farrow entered an exclusive dealership contract with Gucci Parfums [in 1979]. The contract included a forum selection clause which designated Florence, Italy as the forum for resolution of any controversy 'regarding interpretation or fulfillment' of the contract." (*Id.* at p. 510.) "Gucci America, the owner of the American rights to the Gucci trademark, was not a party to the exclusive dealership contract, but entered a separate Consent and Ratification Agreement, consenting to the terms of the contract." (*Id.* at p. 511.) In 1986, Gucci Parfums terminated the dealership agreement and sued Manetti-Farrow in Italy for breach of contract. (*Ibid.*) Manetti-Farrow then sued Guccio Gucci, Gucci America, Gucci Parfums, Dr. Maurizio Gucci, Domenico De

Sole and Dr. Giovanni Pilone in federal court in California alleging various tort claims. The court granted defendants' motion to dismiss. (*Ibid.*) Manetti-Farrow appealed and argued that "the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract." (*Id.* at p. 514, fn. 5.) The court disagreed and noted " 'a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses ' [Citations.] We agree with the district court that the alleged conduct of the nonparties is so closely related to the contractual relationship **442** that the forum selection clause applies to all defendants." (*Ibid.*)

Neither *Lu* and *Manetti-Farrow* provides a basis for Bancomer's enforcement of the forum selection clause. In both matters, the existence of a "close relationship" has a basis not present in this appeal. In *Lu,* the non-signatory defendants were all part of a corporate business structure involved in franchising dry-cleaning establishments, and all the defendants were alleged to have participated in tortuous conduct. In our case, Bancomer was an independent financial conduit used by the development company for the limited purpose of establishing a trust through which the individual leasehold interests could be purchased. The purchase agreement identified Bancomer as the trustee. There is no evidence of any intertwining business arrangement between Koster and Bancomer, or Reilly and Bancomer. The bank, it is alleged, acted alone. There were no assertions of fraudulent conduct by any other person or entity. In *Manetti-Farrow,* Gucci America, Inc. expressly consented to be bound by the terms of the dealership agreement when it signed the Consent and Ratification Agreement. In this appeal, we agree with the superior court's conclusion that "there is no evidence that the plaintiffs, against whom the consent clause is sought to be enforced by **1461** Bancomer, agreed to its relationship with Bancomer or any other nonparty being included in the clause." If the "close relationship" Bancomer asserts is based on the premise it is a third party beneficiary of the purchase agreement, we have already determined that argument is without merit.

For Bancomer to demonstrate that it was "so closely related to the contractual relationship" that it is entitled to enforce the forum selection clause, it must show by specific conduct or express agreement

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

that (1) it agreed to be bound by the terms of the purchase agreement, (2) the contracting parties intended the bank to benefit from the purchase agreement, or (3) there was sufficient evidence of a defined and intertwining business relationship with a contracting party. Bancomer failed to prove, under any of these bases, that it had the required contractual relationship to enforce the forum selection clause.

c. *The Allegations of Fraudulent Conduct Asserted Against Bancomer Do not Relate to the "Interpretation or Fulfillment" of the Purchase Agreement.*

[14] Even were we to assume arguendo that Bancomer had standing to enforce the forum selection clause, the alleged tort causes of action do not fall within the scope of the clause. The relevant language of the clause provides that "[a]ny conflict which may arise regarding the interpretation or fulfillment of this contract" shall be decided in a Mexican court.

[15][16] "We first note that forum selection clauses can be equally applicable to contractual and tort causes of action. [Citations.] Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. [Citations.]" ( *Manetti-Farrow, Inc. v. Gucci America, Inc., supra,* 858 F.2d at p. 514.) We therefore consider whether Reilly's claims required interpretation of the purchase agreement.

Reilly's complaint asserts that Bancomer fraudulently induced her to enter into a written agreement to purchase a leasehold interest in BB & TC. The alleged offending conduct preceded formation of the purchase agreement. Bancomer is being held directly liable for its own conduct, not derivatively liable for that of Koster, the developer. The claims do not concern Bancomer's service as a trustee under the purchase agreement, or any of the bank's post-purchase performance. The claims do not relate to the rights and responsibilities accorded Reilly and Koster under the purchase agreement. Adjudication of Reilly's fraudulent inducement claims do not necessitate consideration of the parties' compliance with the purchase agreement. Since the terms of the purchase agreement, and their interpretation, are irrelevant to *1462 the claims

alleged by Reilly, we conclude the tort causes of action do not relate to "any conflicts" "regarding the interpretation or fulfillment" of the agreement. Accordingly, Reilly's claims do not fall within the scope of the forum selection clause. (Cf. **443 *Manetti-Farrow, Inc. v. Gucci America, Inc., supra,* 858 F.2d at p. 514.)

d. *Enforcement of the Forum Selection Clause Would Result in Arbitrary and Conflicting Rulings.*

[17] As explained, the purchase agreement for the leasehold interests on the "north" side of the resort property contained a forum selection clause that compelled litigation in Mexico. However, those individuals who purchased leasehold interests on the "south" side of the resort property had the option to litigate disputes in either the Cayman Islands or the jurisdiction of their residence, to wit, California. Bancomer is designated as trustee on all of these purchase agreements. Bancomer, by its petition, seeks only to enforce the forum selection clause for the "north" side properties. The relief sought by the bank is arbitrary and inconsistent.

Some of the purchasers bought interests on both the "north" and "south" side of the resort. It would be unreasonable and illogical to have an individual involved in simultaneous litigation in two separate forums, over the same issue, because of nothing more than the location of the leasehold interest within the same resort area. This simultaneous litigation could result in conflicting rulings. Furthermore, Bancomer could also find itself litigating in two separate forums because owners of the "south" side leasehold interests could choose to resolve the resolution of disputes in California. This outcome violates principles of judicial economy. Additionally, we agree with the superior court's conclusion that "[b]ecause Bancomer's role and relationship to all the plaintiffs' purchases of the condominiums and the sellers of the condominiums is the same, namely, that of a trustee, it should reasonably litigate all the claims against it in the same forum."

3. *Conclusion*

We conclude that under the facts of this case, Reilly met her burden of proving that enforcement of the contractual forum selection clause would be unreasonable. Bancomer had no standing to claim

any benefits from the clause. The claims against Bancomer for fraudulent inducement were beyond the scope of the clause. The trial court acted within its discretion in refusing to enforce the forum selection clause.

**\*1463 DISPOSITION**

The petition for writ of mandate is denied. The alternative writ is discharged.

KLEIN, P.J., and CROSKEY, J., concur.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

EXHIBIT C

54 Cal.Rptr.2d 165
96 Cal. Daily Op. Serv. 4506, 96 Daily Journal D.A.R. 7121
(Cite as: 46 Cal.App.4th 827, 54 Cal.Rptr.2d 165)

Court of Appeal, First District, Division 3,
California.

BENEFIT ASSOCIATION INTERNATIONAL,
INC., et al., Petitioners,
v.
The SUPERIOR COURT of Alameda County,
Respondent;
Hersz DRACH, Real Party in Interest.

No. A072165.

June 19, 1996.

After insurer, which issued medical benefits insurance policy covering foreigners traveling in California, refused to pay medical bills of Venezuelan insured, who suffered stroke while traveling in California, insured filed action in California against insurer and its servicing agent, alleging, inter alia, bad faith, breach of contract, fraud, and intentional infliction of emotional distress.   Insurer, which had offices only in Mississippi and Florida, moved to quash service of summons on ground that California court lacked personal jurisdiction over insurer and servicing agent.   The Superior Court, Alameda County, No. 755220-1, James R. Lambden, J., took jurisdiction over insurer and servicing agent, and insurer appealed.   The Court of Appeal, Parrilli, J., held that California court did not have in personam jurisdiction over the insurer.

Order denying motion to quash summons vacated.

West Headnotes

[1] Courts ☞12(2.10)
106k12(2.10)

Minimum contacts test for determining court's in personam jurisdiction is not mechanical or quantitative, but depends upon quality and nature of defendant's activities within the state.

[2] Corporations ☞665(1)
101k665(1)

Under minimum contacts test for determining court's in personam jurisdiction over nonresident corporation, if nonresident corporation's activities are sufficiently wide-ranging, systematic, and continuous, it may be subject to jurisdiction within the state on cause of action unrelated to those activities, and if the activity is less extensive, the cause of action must arise out of or be connected with defendant's forum-related activity.

[3] Courts ☞12(2.10)
106k12(2.10)

When determining if nonresident defendant has minimum contacts with the forum as required to establish in personam jurisdiction, the important question is whether the nonresident defendant has purposefully availed itself of benefits of economic market in the forum state;   under this analysis, "purposeful availment" means an action of defendant purposefully directed toward forum state, but purposeful availment may be established even if defendant maintains no offices, property, or employees in the forum.

[4] Corporations ☞665(1)
101k665(1)

If foreign corporation purposefully avails itself of benefits of economic market in forum state, it may subject itself to state's in personam jurisdiction even if it has no physical presence in state.

[5] Courts ☞12(2.10)
106k12(2.10)

Nonresident defendant who has purposefully directed its activities toward forum state may not defeat personal jurisdiction absent compelling evidence that jurisdiction would be unreasonable.

[6] Insurance ☞3558
217k3558
    (Formerly 217k617)

California court could not exercise in personam jurisdiction over insurer, which had offices only in Mississippi and Florida, and which sold medical benefits insurance policy to Venezuelan insured who suffered stroke in California, where insured failed to present any evidence that insurer has been involved with California or purposely availed itself of California's economic market;   only thing connecting insurer with California was that insurer's agent told

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 30 of 33

insured that policy would cover any medical costs he might incur while in California, and insurer did not purposely avail itself of benefits of economic market in California simply by insuring foreign citizen while knowing he might travel in California.

[7] Contracts ☞127(4)
95k127(4)

Forum-selection clause is prima facie valid and is to be enforced unless resisting party shows enforcement would be unreasonable under the circumstances.
**166 *829 Norman M. Owen Law Offices, Norman M. Owen, P.C., Santa Rosa, California, for petitioners.

No appearance for respondent

H. Tim Hoffman, Arthur M. Lazear, Hoffman & Lazear, Oakland, California, for real party in interest.

PARRILLI, Associate Justice.

This case concerns what "minimum contacts" are needed for in personam jurisdiction over an insurer that sells "medical benefits" *830 policies to foreigners traveling in California. A Venezuelan insured has filed an action in California against two Mississippi companies. Neither the insurance company issuing the policy, which has offices in Jackson, Mississippi and Miami, Florida, nor its servicing agent, whose only office is in Mississippi, conducts business in California. The suit is over a contract for medical insurance obtained through Venezuelan representatives of a Turks and Caicos Island agency. The contract contains a forum-selection clause conferring exclusive jurisdiction on the courts of Mississippi. The litigation is connected to California only because the insured suffered a stroke and was hospitalized in California and incurred bills the companies have refused to pay. We conclude the court erred in taking jurisdiction over the insurance company and its servicing agent.

Facts and Procedures

In August 1994, Hersz Drach, a Venezuelan citizen, was vacationing in Miami, Florida, planning to return briefly to Venezuela and then go to

California to visit family. On August 15, 1994, for an annual premium of $2,850 each, he and his wife purchased medical coverage ($2,000 deductible, $1 million **167 annual per person limit) from Benefit Association International, Inc. (BAI). The policy, issued to Drach in Spanish and English, was available only to persons who were not permanent residents of the United States. The 14-page policy provided various travel-related services, such as worldwide medical information and assistance, emergency evacuation, repatriation of mortal remains, information about contacting embassies, overseas claims assistance, emergency family travel arrangements and return home of minor children left unattended because of a medical emergency. The policy provided that "[t]he insured confers exclusive jurisdiction upon the courts of the State of Mississippi, USA, for determination of any rights to the exclusion of any other jurisdiction."

BAI is a Mississippi corporation with offices only in Jackson, Mississippi, and Miami, Florida. [FN1] It issues policies of insurance only to individuals residing outside of the United States and does no business in California. Morgan-White Ltd. (Morgan-White), servicing agent on the policy, is a Mississippi corporation with its only office in Jackson, Mississippi. It also does no business in California.

> FN1. The record does not reveal whether Drach learned of or contacted BAI while in Miami or whether the Miami conjunction was only coincidental.

Drach purchased his policy through Assist-Med International Ltd. (Assist-Med), a Turks and Caicos Island corporation with representatives in Venezuela. At the time of purchase, insurance agents represented to him that the *831 policy would cover any medical costs he might incur while he was in California.

Drach came to California in late 1994 and on or about February 13, 1995, became disabled by a sudden massive stroke. He remained hospitalized in Alameda County until October 1995. [FN2] Following his stroke, members of his family and representatives of Alta Bates Hospital attempted to collect benefits under the policy. BAI denied the claim, rescinded the policy and returned the premium, asserting Drach had failed to disclose preexisting hypertension.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:01-cv-00148  Document 5  Filed in TXSD on 12/06/2001  Page 31 of 33

FN2. The record does not reveal the date of Drach's return to Venezuela, but it appears he returned in mid-October. His declaration, signed under penalty of perjury on October 13, 1995, in Oakland, California, stated: "I have remained hospitalized in Alameda County since the time of my stroke." BAI and Morgan-White, in their reply to Drach's return to petition, improperly "verified" on information and belief, state that medical records show Drach had received treatment at a Caracas hospital since October 18, 1995. (See *Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201, 151 Cal.Rptr. 721).

On August 4, 1995, Drach filed an action in Alameda County Superior Court against BAI, Morgan-White, and others, alleging breach of the insurance contract, bad faith, fraud, intentional infliction of emotional distress and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). BAI and Morgan-White moved to quash service of summons on the ground the court lacked personal jurisdiction over them. After hearing, the court denied the motion. This petition followed. (Code Civ. Proc., § 418.10, subd. (c).) [FN3]

FN3. All statutory references are to the Code of Civil Procedure.

Minimum Contacts

[1][2] "California's long-arm statute provides that it can exercise jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.' (Code Civ. Proc., § 410.10.) ... [¶] As the United States Supreme Court noted in *International Shoe [Internat. Shoe Co. v. Washington* ], the minimum contacts test is not 'mechanical or quantitative,' but depends upon the 'quality and nature' of the defendant's activities within the state. (*International Shoe, supra,* [1945] 326 U.S. [310] at p. 319, [66 S.Ct. 154 at p. 159, 90 L.Ed. 95].) If a nonresident corporation's activities are sufficiently wide-ranging, systematic, and continuous, it may be subject to jurisdiction within the state on a cause of action unrelated to those activities. [Citations.] Where the activity is less extensive, the cause of action 'must arise out of or be connected with the defendant's forum-related activity.' [Citations.]" (*Asahi Metal Industry Co., Ltd. v. Superior Court* (1985) **168 39 Cal.3d 35, 42, 216 Cal.Rptr. 385, 702 P.2d 543.)

[3][4][5] *832 In deciding the "minimum contacts" issue, "the important question is whether the nonresident defendant has 'purposefully availed' itself of the benefits of an economic market in the forum state. [Citation.]" (*Southeastern Express Systems v. Southern Guaranty Ins. Co.* (1995) 34 Cal.App.4th 1, 10, 40 Cal.Rptr.2d 216 ( *Southeastern Express* ).) " 'Purposeful availment' means 'an action of the defendant purposefully directed toward the forum State.' [Citation.] But 'purposeful availment' may be established even if the nonresident defendant maintains no offices, property, or employees in the forum. '[I]f a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's *in personam* jurisdiction even if it has no physical presence in the State.' [Citations.] A nonresident defendant who has purposefully directed its activities toward the forum state may not defeat personal jurisdiction absent compelling evidence that jurisdiction would be unreasonable. [Citations.]" (*Id.* at p. 6, 40 Cal.Rptr.2d 216, italics in original.)

In *A.I.U. Ins. Co. v. Superior Court* (1986) 177 Cal.App.3d 281, 287-290, 222 Cal.Rptr. 880 ( *A.I.U.*), we noted that "minimum contacts" decisions concerning insurance contracts were scarce, and we summarized the decisions in *Travelers Health Ass'n. v. Virginia* (1950) 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (Virginia had jurisdiction over a Nebraska mail-order health insurer); *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (California had jurisdiction over a Texas company that received life insurance premiums from a California resident and sent a reinsurance approval form to him); and *McClanahan v. Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171, 307 P.2d 1023 (California had jurisdiction over an Alabama company whose automobile policy covered Colombia residents traveling in the United States). In *A.I.U.,* we reversed an order quashing service on a foreign insurance company whose policy covered Shell Oil Company's worldwide assets and activities. We noted that although the insurance company was not obligated to send investigators or employ attorneys to defend actions in California, it had every reason to expect California losses and it derived substantial economic benefit from insuring against such losses. (*A.I.U., supra,* at pp. 291-292,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

222 Cal.Rptr. 880.)

Division One of this court recently permitted jurisdiction over a foreign insurer with no direct contact with California. In *Southeastern Express Systems, supra,* 34 Cal.App.4th 1, 40 Cal.Rptr.2d 216, a Georgia insurance company issued a commercial liability policy to a Georgia partnership engaged in selling and maintaining computers used by auto parts stores in many states, including California. The partnership's computer supplier, located in California, brought an action against the partnership for making and using illegal copies of its software *833 and manuals. After the insurer refused to pay for defending the copyright action, the insured sued it in California for breach of contract and bad faith insurance practices. Division One reversed a trial court order quashing service of process. (*Id.* at pp. 3-5, 11, 40 Cal.Rptr.2d 216.)

*Southeastern Express* noted that the insurer provided nationwide coverage and collected premiums on that basis, knowing its insured faced potential business liability in California. "We believe it neither unreasonable nor unfair to require an insurer who has assumed the responsibility of defending its insured in California to defend itself when it refuses its insured's defense in a suit brought in California. We recognize that an insurer's defense of a bad faith action may necessitate inconveniences exceeding those attending the defense of an insured, since evidence and witnesses from the insurer's home office may have to be produced in a distant forum to refute the plaintiff's allegation of unfair claims handling practices. But a nonresident defendant's inconvenience rarely achieves constitutional magnitude, and fails to do so here. [Citation.] Considerations of convenience may usually be accommodated through a forum non conveniens dismissal or stay. [Citations.]" (34 Cal.App.4th at pp. 6-7, 40 Cal.Rptr.2d 216, fn. omitted.)

**169 *Southeastern Express* also observed that "California has a significant interest in assuring that injuries and losses suffered in the state are afforded insurance coverage. [Citation.] California's interests in encouraging fair claims handling practices and holding insurers answerable for bad faith practices are also significant, and would be compromised were we to deny personal jurisdiction over nonresident insurers in bad faith actions

alleging wrongful refusal *to defend* California losses." (34 Cal.App.4th at p. 7, 40 Cal.Rptr.2d 216, italics added.) The underlying premise of *Southeastern Express* was that the insurer had agreed to defend its insured in California.

[6] The superior court here has gone one step beyond *Southeastern Express* because BAI has agreed only to pay medical expenses, not to provide a legal defense for Drach in California. Drach may be correct that an insurance company's commitment to pay a businesses' legal fees incurred in California is no greater justification for jurisdiction than a company's commitment to pay for medical services for a foreign visitor traveling here. However, the problem with California exercising jurisdiction here is Drach's failure to present any evidence that BAI has been involved with California or "purposely availed" itself of California's economic market.

The only evidence Drach presented connecting BAI with California is his declaration that, when he purchased the policy, BAI's agent told him that *834 policy would cover any medical costs he might incur while in California. Drach presented no evidence that BAI had ever before insured a person traveling to California, paid a California medical bill or otherwise participated in commerce in California. There is nothing in the record that suggests BAI advertised or otherwise marketed its policy in settings that targeted California travelers. We conclude that insuring two foreign citizens, knowing they might travel in California, did not constitute purposefully availing itself of the benefits of the economic market in California.

BAI's situation is akin to that of the east coast regional insurer in *Hunt v. Erie Ins. Group* (9th Cir.1984) 728 F.2d 1244, 1245-1247. In *Hunt*, the auto policyholder's passenger, en route to California, was injured in Colorado. The passenger was then transferred to a rehabilitation center in California, where she received public assistance for her medical care and sued the insurance company. The situation is similar also to other cases, most involving automobile insurance, where plaintiffs' conduct, not defendants', established the connection with the forum state. (See, e.g., *Petrik v. Public Service Mut. Ins. Co.* (9th Cir.1989) 879 F.2d 682; *Davis v. American Family Mut. Ins. Co.* (9th Cir.1988) 861 F.2d 1159, 1161-1162; *Rambo v. American Southern Ins. Co.* (10th Cir.1988) 839

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

F.2d 1415, 1420-1421. But see *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.* (9th Cir.1990) 907 F.2d 911, 914; *Rossman v. State Farm Mut. Auto. Ins. Co.* (4th Cir.1987) 832 F.2d 282, 286.)

Our conclusion is bolstered by balancing the conveniences and California's interest in the proceeding, as a court may do in deciding the jurisdiction question. (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 150-151, 127 Cal.Rptr. 352, 545 P.2d 264.) The convenience of trying the case in Mississippi, where insurance policies were written and claim files maintained, outweighs any inconvenience involved in bringing the medical evidence to Mississippi. California's interest in the action is minimal because Drach is not a California resident.

Our conclusion is further supported by Drach's contractual agreement to Mississippi's jurisdiction over the matter. Although a forum-selection clause does not, ipso facto, defeat jurisdiction, it is one factor considered by a court when deciding whether to stay or dismiss an action under the doctrine of forum non conveniens. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 494-496, 131 Cal.Rptr. 374, 551 P.2d 1206; *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1682-1683, 16 Cal.Rptr.2d 417; *Lifeco Services Corp. v. Superior Court* (1990) 222 Cal.App.3d 331, 334-335, 271 Cal.Rptr. 385; *Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 423-427, 207 Cal.Rptr. 646.)

*835 Although BAI's motion was designated a motion "to quash service of summons" and **170 asserted only lack of jurisdiction, not forum non conveniens, BAI asked the court to stay or dismiss the action and referred to the convenience of witnesses and to the forum-selection clause. While

it was not formally called a forum non conveniens motion, it was cast as one. (Cf. *Martin v. Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 476-477, 108 Cal.Rptr. 23.) Drach's response below did not deny knowledge of the forum-selection clause, challenge it on the ground it was part of a contract of adhesion, or argue that enforcement would be unreasonable. Instead, Drach argued that BAI had the burden of demonstrating notice of the clause and absence of fraud, undue influence or other factors which might defeat enforcement.

[7] Drach is wrong about the burden of proof. A forum-selection clause is prima facie valid and is to be enforced unless the resisting party shows enforcement would be unreasonable under the circumstances. (*The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513; *Appalachian Ins. Company v. Superior Court* (1984) 162 Cal.App.3d 427, 439, 208 Cal.Rptr. 627) BAI met its burden of proof by showing the existence of a forum-selection clause. Drach failed to present any justification for ignoring the clause and the court erred in doing so.

Disposition

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order denying the motion to quash and to issue a new order granting the motion.

CORRIGAN, Acting P.J., and McGUINESS, Judge, [FN*] concur.

FN* Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works