35

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § § | Date:  February 27, 2003 |
| JSW PLASTICS MACHINERY, INC., | § § | Time: 2:00 p.m. |
| Defendant. | § § § § | |

---

**DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED ORDER**
**(Appendix to Motion For Summary Judgment with Supporting Affidavit of Masahiko Taguchi and James J. Regan with Exhibits filed concurrently herewith)**

---

To Plaintiff Exel Bobbins and Plastic Components, Inc., and Plaintiff's attorney of record:

**PLEASE TAKE NOTICE** that on February 27, 2003, at 2:00 p.m. in the Courtroom of Magistrate Felix Recio, located at 600 East Harrison Street, Room 306, Brownsville, Texas 78520, Defendant JAPAN STEEL WORKS AMERICA INC. ("JSWA")  will move, and hereby does move pursuant to Federal Rules of Civil Procedure, Rule 56(c), for Summary Judgment.

---

This Motion is made on the basis that there are no genuine issues of materials fact in this case and that JSWA is entitled to judgment on the Complaint as a matter of law. Specifically, the undisputed facts refute the Plaintiff's contentions that (a) JSWA is a parent corporation to subsidiary JSW-PMI and (b) JSWA, even if it were the parent corporation to subsidiary JSW-PMI, is liable to Plaintiff for the alleged tortuous acts of JSW-PMI.

This Motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, the supporting Affidavits of Masahiko Taguchi and James J. Regan and exhibits filed therewith, all matters of which the Court may take judicial notice, the pleadings and papers on file in this action and any other matters brought to the attention of this Court at the time of hearing on this matter.

DATED: February 7, 2003

GARZA & GARZA, L.L.P..

By: _____
DAVID C. GARZA
Attorneys for Defendant
Japan Steel Works America, Inc.

## TABLE OF CONTENTS

Table of Authorities ............................................................................. ii.

I.      Statement Of The Nature And Stage Of The Proceedings .......................    3

II.     Statement Of Issues To Be Rules Upon By The Court ...........................    3

III.    Summary Of The Argument ..........................................................    4

IV.     Statement Of Facts ..................................................................    5

V.      Argument ...... ........................................................................    6

        A.    A Parent-Subsidiary Relationship Does Not Exist  As Between JSWA And JSW-PMI
              And Consequently JSWA May Not Be Found Liable For The Alleged Tortious Acts
              Of JSW-PMI As To Plaintiff.......................................................    6

        B.    Assuming, Arguendo, A Parent-Subsidiary Relationship Exists Between JSWA And
              JSW-PMI, There Are No Genuine Issues Of Material Fact From Which Plaintiff Can
              Establish That JSWA  Is The Alter Ego Of JSW-PMI And  Is Liable To Plaintiff In
              Tort For The Acts Of JSW-PMI .........................................    7

              1.    Criteria For Piercing the Corporate Veil in Tort and Contract Actions
                    ...............................................................................    7

              2.    There Is Insufficient Evidence to Place the Alter Ego Issue In Dispute
                    ...............................................................................    10

VI.     Conclusion ..........................................................................    15

## TABLE OF AUTHORITIES

**Cases**

Amarillo Oil Co. v. Mapco,Inc. 99 F.R.D. 602, (N.D. Tex. 1983) ..................... 9, 10

American Trading & Productions Corp. v. Fischbach & Moore, Inc.,
311 F.Supp. 412 (N.D. Ill. 1970) ........................................................ 11

Bell Oil & Gas Co. v. Allied Chemical Corp., 431 S.W.2d 336 (Tex. 1968) ......... 8, 10

Edwards Co. v. Monogram Industries, Inc., 730 F.2d 977 (5th Cir. 1984 (en banc) .. 7, 9

First National Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100 (Tex. 1939) 8

Gentry v. Credit Plan Corp., 528 S.W.2d 571 (Tex. 1975), writ ref'd n.r.e ........... 8

Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co., 456 F.Supp, 831 (D.C. Del. 1978)
.......................................................................................... 11-12

Miles v. American Telephone & Telegraph Co., 703 F.2d 193 (5th Cir. 1983) ....... 4, 10

Nelson v. International Paint Co., Inc., 734 F.2d 1084 (5th Cir. 1984) ................. 4, 8

Reul v. Sahara Hotel, 372 F.Supp. 995 (S.D. Tex. 1974) ............................. 14

Rosenthal v. Leaseway of Texas, 544 S.W.2d 180 (Tex. 1976) ........................ 10

Sabine Towing & Transp. Co. v. Merit Ventures, Inc. 575 F.Supp. 1442 (E.D. Tex. 1983)
.......................................................................................... 6, 8, 10

Walker v. Newgent, 583 F.2d 163 (5th Cir. 1978), *cert. denied*, 441 U.S. 906,
99 S.Ct. 1994, 60 L.Ed.2d 374 (1979) ................................................ 5

**Statutes**

28 U.S.C. §1332(a) ..................................................................... 3

**Articles**

Justice Douglas and C.M. Shanks, *Insulation from Liability Through Subsidiary
Corporations*, 39 Yale L.J. 193 (1929) ...... ......................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This is an action for breach of contract and related claims for fraud, negligent misrepresentation, conversion and tortious interference with prospective contract. JSW Plastics Machinery, Inc. ("JSW-PMI") is a named defendant in all causes of action.  Plaintiff Exel Bobbins and Plastic Components, Inc. ("Plaintiff" or "Exel"), claims that JSW-PMI, a Delaware corporation, breached a contract between JSW-PMI and Plaintiff pursuant to which JSW-PMI was to (a) sell to Plaintiff certain plastic molding machines and (b) extend a line of credit to the Plaintiff for the purchase of such machines. Among other remedies, Plaintiff seeks actual and punitive damages.  Plaintiff claims defendant Japan Steel Works America, Inc. ("JSWA"), a New York corporation, is liable to Plaintiff on its tort causes of action as the parent company to JSW-PMI.

Jurisdiction is conferred on this Court by 28 U.S.C. §1332(a) in that there exists diversity of citizenship among each of the parties to this action.  All discovery in the action has been completed.  The parties are currently negotiating an extension of the discovery period to permit the taking of expert witness depositions and the further deposition of percipient witness Steve Becker with respect only to those matters pertaining to the additional causes of action added by the Plaintiff's 1st Amended Complaint.  Trial in this matter is currently set for April 9, 2003.

### II.

## STATEMENT OF ISSUES TO BE RULES UPON BY THE COURT

Issue No. 1:    Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that Defendant JSWA is the parent corporation of Defendant JSW-PMI.

Issue No. 2:    Assuming, arguendo, that JSWA is the parent corporation of JSW-PMI, whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that Defendant JSWA exercised that degree of control over JSW-PMI such that JSWA may be held liable for the alleged torts of JSW-PMI as against Plaintiff.

## III.

## SUMMARY OF THE ARGUMENT

Plaintiff's sole theory of liability as against JSWA is that JSWA is the parent of subsidiary JSW-PMI and that JSW-PMI is so dominated by JSWA that the corporate veil should be pierced and liability should be imposed on JSWA for the acts of JSW-PMI. Defendant JSWA is entitled to summary judgment on the following grounds:

1.    There are no genuine issues of material fact from which a trier of fact could find that a parent-subsidiary relationship exists between JSWA and JSW-PMI. In the absence of evidence of any such a relationship, JSWA may not be held responsible for any liability which JSW-PMI may be found to have to the Plaintiff and JSWA is entitled to judgment as a matter of law.

2.    Assuming, arguendo, that there is a parent-subsidiary relationship between JSWA and JSW-PMI, there are no genuine issues of material fact from which a trier of fact could find that JSWA exercises such control over JSW-PMI that JSWA is the alter ego of JSW-PMI or that treating JSWA and JSW-PMI as separate entities would perpetrate a fraud as to the Plaintiff. In the absence of such evidence, JSWA is entitled to judgment as a matter of law.

In the absence of sufficient evidence to place the alter ego issue in dispute, a corporate defendant may be entitled to summary judgment. *Nelson v. International Paint Co., Inc.*, 734 F.2d 1084, 1092 (5th Cir. 1984) (applying Texas law); *Miles v. American Telephone & Telegraph*

*Co.*, 703 F.2d 193, 194 (5th Cir. 1983); *Walker v. Newgent*, 583 F.2d 163, 165 (5th Cir. 1978)

*cert. Denied*, 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979).

## IV.

## STATEMENT OF FACTS

This is an action for breach of contract and related claims for fraud, negligent

misrepresentation, conversion and tortious interference with prospective contract. JSWA is a

named defendant in all causes of action with the exception of that for breach of contract.

Plaintiff Exel Bobbins and Plastic Components, Inc. ("Plaintiff"), a Texas corporation which

manufactures and sells plastic components, claims that JSW-PMI, a Delaware corporation whose

principal place of business is in Los Angeles County, California (Plaintiff's First Amended

Original Complaint ("1st Amended Complaint"), ¶ 2), breached a contract between JSW-PMI

and Plaintiff pursuant to which JSW-PMI was to (a) sell to Plaintiff certain plastic molding

machines and (b) extend a line of credit to the Plaintiff for the purchase of such machines. The

Plaintiff's sole basis for contending that JSWA is liable to Plaintiff for the acts of JSW-PMI is

that JSWA, a New York corporation with its principal place of business located in New York

City (1st Amended Complaint, ¶ 3), is the parent company to JSW-PMI. [1st Amend. Complaint,

¶¶18 and 22 (claim for fraud and fraudulent inducement); ¶ 27 (negligent misrepresentation); ¶

33 (tortiou interference with prospective contract).] Among other remedies, Plaintiff seeks actual

and punitive damages.

//

## V.

## ARGUMENT

**A.**    **A PARENT-SUBSIDIARY RELATIONSHIP DOES NOT EXIST AS BETWEEN JSWA AND JSW-PMI AND CONSEQUENTLY JSWA MAY NOT BE FOUND LIABLE FOR THE ALLEGED TORTIOUS ACTS OF JSW-PMI AS TO PLAINTIFF**

The law recognizes the broad proposition that a parent corporation will be responsible for the obligations of its subsidiary to third parties when the subsidiary has become a mere instrumentality of the parent corporation. *Sabine, supra,* 575 F.Supp. at 446. The necessary predicate to any such analysis is proof of the existence of a parent-subsidiary relationship between the two corporations under consideration. There is no such relationship between JSWA and JSW-PMI.

Masahiko Taguchi ("Taguchi"), the President of JSWA, states in his affidavit attached to the Appendix in support of this Motion, that (a) JSWA is not the parent corporation of JSW-PMI nor is JSW-PMI a subsidiary of JSWA and (b) JSWA does not own any stock in, and is not a shareholder of, JSW-PMI. (Affidavit of Masahiko Taguchi ("Taguchi Affdt"), ¶¶ 6, 8.) Plaintiff admits that is has no evidence that JSWA owned or controlled any stock in JSW-PMI during the time period relevant to this case. [Plaintiff's Response to Requests for Admissions ("RFA") No. 13, Appendix, Exhibit 3 to the Affidavit of James J. Regan ("Regan Affd't)] In response to interrogatories seeking those facts relating to Plaintiff's contention that JSWA is a parent company of JSW-PMI, Plaintiff's only response was that based upon the 2001 and 2002 Annual Reports of The Japan Steel Works, Ltd. (the sole document produced by Plaintiff in support of its contention that JSW-PMI is a subsidiary of JSWA), Plaintiff "believes" that JSWA, "including the operations of JSW Plastics" [JSW-PMI], is a subsidiary of "JSW Japan" (JSW

Japan is not a name used in connection with any entity identified in either Annual Report nor is any such entity a defendant in this action). (Plaintiff's Answers to JSWA's First Set of Interrogatories ("Interrogatory"), Nos. 1 through 5; Plaintiff's Response to JSWA's Request for Production of Documents ("RFP"), Nos. 1 through 6; Appendix, Exhibits 1 and 2 to Regan Affdt.) Even by Plaintiff's own answer, JSW-PMI is not believed by Plaintiff to be a subsidiary of JSWA but is rather an entity "included" in JSWA. Whatever Plaintiff may mean by claiming that JSWA "includes" the operations of JSW-PMI, this is not evidence from which it may be concluded that JSW-PMI is, as a matter of law, a subsidiary of JSWA.

Based on the foregoing, there is no evidence of a parent-subsidiary relationship between JSWA and JSW-PMI and in its absence there is, as a matter of law, no basis for holding JSWA responsible for any liability which JSW-PMI may be found to have to Plaintiff.

**B.** **ASSUMING, ARGUENDO, A PARENT-SUBSIDIARY RELATIONSHIP EXISTS BETWEEN JSWA AND JSW-PMI, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT FROM WHICH PLAINTIFF CAN ESTABLISH THAT JSWA IS THE ALTER EGO OF JSW-PMI AND IS LIABLE TO PLAINTIFF IN TORT FOR THE ACTS OF JSW-PMI**

**1.** **Criteria For Piercing the Corporate Veil in Tort and Contract Actions**

Under Texas law, the liability of a parent for the acts of its subsidiary depends on whether the plaintiff seeks to hold the parent corporation liable in contract or tort. *Edwards Co. v. Monogram Industries, Inc.*, 730 F.2d 977, 980-982 (5th Cir. 1984 (en banc). In tort cases, a parent is liable for a subsidiary's acts where the parent has so dominated the subsidiary that the subsidiary is found to be a mere agent or conduit through which the parent conducts its business.

*Nelson.,* supra, *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex. 1975), writ ref'd n.r.e;

*Sabine, supra,* 575 F.Supp. at 1446 (To find an alter ego relationship, the evidence must disclose

a pattern of control or domination of a corporation by an individual or corporation, and that this

domination was used to support a corporate fiction."). In contract actions, the corporate form is

not to be disregarded unless "the separateness of the corporation has ceased to exist *and* the facts

are such that adherence to the fiction of the separate existence of the corporation

would...sanction a fraud or promote injustice." *First National Bank in Canyon v. Gamble*, 134

Tex. 112, 132 S.W.2d 100, 103 (1939) (emphasis added); *Bell Oil & Gas Co. v. Allied Chemical*

*Corp.,* 431 S.W.2d 336, 339-340 (Tex. 1968) (it must be shown that the corporate entity is being

"used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws,

protect fraud, or defend crime."; *Sabine, supra* ("[I]t will be appropriate to disregard a corporate

entity when it appears a corporation was organized for fraudulent or illegal

purposes...[or]...when it will prevent manifest injustice to third parties."). The reason for the

additional element of fraud or wrongdoing in contract cases is said by the court in *Bell* to be as

follows: "The attempt to hold a parent corporation where the claim asserted is of contractual

origin presents added difficulties. The very reasonable question must be met and answered why

one who contracted with the subsidiary and received the promise which he bargained form but

who has been disappointed in the fulfillment by the subsidiary of its commitment should be

allowed to look to the parent. As a matter of contract right it is evident he may not. Additional

compelling facts must appear." *Bell, supra,* 431 S.W.2d at 339-40. In this regard, "the corporate

arrangement must be one which is likely to be employed in achieving an inequitable result by

bringing into operation a basically unfair device which in all probability will result in prejudice

to those dealing with [it], or one which has actually resulted in the complaining party's having

been placed in a position of disadvantage by the exercise of inequitable means, of which the corporate arrangement is a part." (*Id.* at 340.) In *Edwards,* the court stated that in the absence of a showing of fraud or injustice on the part of the parent through its use of the subsidiary, it is unnecessary even to address the issue of the separate existence of the parent and subsidiary (although the court *en banc* did so in order to dispel the circuit court panel's decision to the contrary). *Edwards, supra,* 730 F.2d at 984.

The preliminary determination in both tort and contract cases encompasses the range of factors delineated by Justice Douglas and C.M. Shanks in *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929). *Amarillo Oil Co. v. Mapco, Inc.* 99 F.R.D. 602, 603 (N.D. Tex. 1983); *Bell, supra,* 431 S.W.2d at 339-40. Those factors are: (1) whether distinct and adequately capitalized financial units are incorporated and maintained; (2) whether daily operations of the two corporations are separate; (3) whether formal barriers between the management of the two entities are erected, with each functioning in its own best interests; and (4) whether those whom the corporations come in contact are apprised of their separate identity. Other factors considered by the Texas courts are: (1) common or overlapping stock ownership between the parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate offices; (4) inadequate capitalization of the subsidiary; (5) financing of the subsidiary corporation by the parent; (6) whether the parent existed solely as a holding company for its subsidiaries; (7) parent's use of the subsidiary's property and assets as its own; (8) the nature of intercorporate loan transactions; (9) incorporation of the subsidiary being caused by the parent; (10) whether parent and the subsidiary file consolidated income tax returns; (11) decision-making for the subsidiary made by the parent and its principals; (12) whether the directors of the subsidiary act independently in the interest of the subsidiary or in the interest of

the parent; (13) the making of contracts between the parent and subsidiary that are more

favorable to the parent; (14) observance of formal legal requirements; (15) the existence of

fraud, wrong-doing or injustice to third parties. (16) maintenance of separate books and

accounts; (17) common business departments; and (18) connection of parent's employee, officer

or director to subsidiary's tort or contract giving rise to suit. *Miles, supra,* 703 F.2d at 195-196;

*Sabine, supra,* 575 F.Supp. at 1446-1448.

No single factor is determinative. *Amarillo, supra.* "Each case involving disregard of the

corporate entity must rest upon its own special facts." *Rosenthal v. Leaseway of Texas,* 544

S.W.2d 180, 182 (Tex. 1976). "Only if, upon consideration of all these factors, a court finds

'[v]irtually total disregard by the parent of the subsidiary' may it disregard the corporate entity."

*Amarillo, supra,* 99 F.R.D. at 605.

## 2.    There Is Insufficient Evidence to Place the Alter Ego Issue In Dispute

Plaintiff has not adduced any evidence demonstrating that JSWA so dominates JSW-PMI

that JSW-PMI is a mere conduit of JSW-PMI and/or that considering JSWA and JSW-PMI as

separate entities would perpetrate a fraud. Although Plaintiff has sued JSWA only on claims

arising out of tort, each of Plaintiff's tort claims arises directly out of and is intimately related to

the disputed contract. As such, Plaintiff should be held to the more stringent requirements of

contract actions and must show not only that JSW-PMI was mere conduit of JSWA, but that

treating JSWA and JSW-PMI would perpetrate a fraud.

Asked in discovery to state all facts upon which it contended in its 1st Amended

Complaint that JSWA, as the parent company of JSW-PMI, is liable to Plaintiff for each of the

claims against JSWA, Plaintiff responded identically as to each cause of action:

"Defendant [sic] would allege that pursuant to information learned by the Plaintiff through the Annual Report for JSW for 2001 and 2002, Plaintiff believes that JSW America is a subsidiary of JSW Japan which was created to handle all U.S. sales and technical servicing of steel casting and forging, steel plats, structural steel products, injection molding machines, and toxic manufacturing and processing machinery including the operations of JSW Plastics."

(Interrogatory Nos. 1 through 5; Exhibit 1 to Regan Affdt.)

Plaintiff makes no reference to any specific portions of the annual reports on which it relies for this response, offering only a curt and ambiguous summary of two lengthy annual reports. Whatever representations Plaintiff may be referring to, the annual reports should be viewed as less than persuasive in establishing a parent-subsidiary relationship as they "may result from public relations motives or an attempt at simplification.". *Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil Co.*, 456 F.Supp, 831, 845 (D.C. Del. 1978); *American Trading & Productions Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 416 (N.D. Ill. 1970 (boastful advertising and consideration of subsidiaries as "family" do not prove that the corporate identifies were ignored). Moreover, as noted in *Japan Petroleum* with respect to the establishment of subsidiaries in foreign countries, "common sense suggests that such parent corporations should be able to establish certain common management programs which promote administrative convenience without destroying the immunity of the parent from liability for obligations of its foreign subsidiaries, at least when those subsidiaries function as operating entities." (456 F.Supp. at 845.)

Plaintiff admits the following: (1) during the years 1999, 2000 and 2001 (the time period relevant to Plaintiff's claims), Plaintiff had no communications regarding the contract or related disputes with anyone who represented themselves to Plaintiff as, or whom Plaintiff believed was, acting on behalf of JSWA; (2) JSWA is not a signatory of, nor referred to in, the contract; and

(3) JSWA made no representations to Plaintiff regarding the contract during the relevant time

period. (RFA Nos. 1 - 5, 7 – 8.)  Plaintiff admits, in addition, that it has no evidence to support

any of the following contentions: (1) that JSWA influenced or determined the decisions by

JSW—PMI to sell merchandise to Plaintiff, to extend credit to Plaintiff or to abandon or

renounce the contract; (2) that JSWA owned or controlled any stock in JSW-PMI during the

relevant time period; (3) that JSWA officers or members of its board of directors sat on JSW-

PMI's board of directors; (4) that the book and records of JSWA and JSW-PMI were kept other

than separately from one another; (5) that JSWA employees, officer or members of its board of

directors served as an officer of JSW-PMI; (6) that JSWA and JSW-PMI shared corporate

offices or other business facilities with one another; (7) that JSWA existed solely as a holding

company for JSW-PMI; or (8) that JSWA in any manner used the property and assets of JSW-

PMI as it they were JSWA's own property and assets.   (RFA Nos. 10 - 17, 20 – 21, Exhibit 3 to

Regan Affd't.)  Asked to admit that it has no evidence that either JSWA or JSW-PMI were

formed for a fraudulent purpose, that JSWA caused the incorporation of JSW-PMI and that

JSW-PMI was inadequately capitalized, Plaintiff answered that it did not have specific evidence

permitting it to admit or deny the request. (RFA Nos. 22 – 25, Exhibit 3 to Regan Affd't.)

Based on the foregoing, no genuine issue of material fact exists which could support an alter ego

theory of liability as against JSWA,

        The paucity of evidence to support Plaintiff's alter ego claim is all the more apparent

when compared to a case in which the purported parent company exercised extensive control

over the subsidiary and yet the court found that the parent was not the alter ego of the subsidiary.

In *Japan Petroleum, supra,* the appellate court found that AOI, the parent corporation, was not in

an agency relationship with AON (which had entered and allegedly breached the contract with

the plaintiff) and was therefore not liable to the plaintiff on an alter ego theory, despite the existence of a myriad of factors showing control by AOI of AON, including the following: AOI submitted the initial business proposals in issue and its personnel negotiated matters regarding the contract;  AOI set up and financed the two corporations which acted as the incorporators of AOI and became its only two shareholders which in turn financed AON; a division of AOI planned the initial AON drilling programs, placed orders for supplies required by AON's operations and arranged to open AON's bank accounts; AOI recruited AON's general managers, two of whom came from other AOI affiliates; most officers and directors of AON were affiliated with AOI and received no separately identified compensation above and beyond what they received from AOI; AON submitted its budgets to AOI which were reviewed by AON and AOI officials; AOI had to approve any AON expenditures above $250,000; AOI determined whether loans should be made to or arranged for AON; AOI paid a number of AON invoices and the salaries of AON's non-Nigerian employees; AOI guaranteed three major bank loans to AON; AON sold its oil to another AOI subsidiary; AOI's annual reports stated that AON's operations were in fact AOI's operations.

The court held that these indicia of AOI control of AON were outweighed by factors showing the separate nature of AON. Most notable, said the court, was that "AON is an operating company, and not a shell corporation. AON itself is responsible for exploration and production activities, and AON employees conduct many of the day-to-day operations in connection with these activities." (456 F.Supp. at 845.) Among other indicia of separateness found to exist by the court were: AON was not a shell corporation but had its own extensive obligations and rights under the contracts in issue; AON had its own substantial assets and gross income; AON maintained its own bank accounts, prepared its own balance sheets and P& L

statements and employed its own auditors; AON maintained its own offices and hired its own employees; and AON dealt independently with third parties on routine matters. The court held that all of these factors indicated that AON was not completely dominated or controlled by AOI and held that AON could not be regarded as an agent or instrumentality of AOI.

In the absence of some combination of the factors discussed above, liability ordinarily may not be imposed on the parent for the acts of the subsidiary corporation. *Reul v. Sahara Hotel*, 372 F.Supp. 995, 998 (S.D. Tex. 1974). In the instant case, not only is there no combination of any of the required factors, there is no evidence that *any* of the required factors is present.

*//*

*//*

## IV.

### CONCLUSION

Based upon all of the foregoing, Defendant Japan Steel Works, Inc. requests that the

Court grant this motion for summary judgment and enter judgment in its favor.

DATED: February 7, 2003

GARZA & GARZA, L.L.P.

By:_____
     DAVID C. GARZA
     SBN 07731400
     FEDERAL ID #3778
     GARZA & GARZA, L.L.P.
     680 East. St. Charles, Suite 300
     P.O. Box 2025
     Brownsville, Texas 78522-2025
     Tel. (956) 541-4914; Fax: (956) 542-7403
     Attorney-in-Charge for Japan Steel Works
     America, Inc.

     JAMES J. REGAN
     CAL. SBN 80576
     REGAN & BRAUN LAW OFFICES
     2522 Artesia Boulevard, Suite 200
     Redondo Beach, California 90278
     Tel: (310) 372-1988; Fax: (310) 318-5894

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED ORDER (Appendix to Motion For Summary Judgment with Supporting Affidavits Attached)** have been served on attorneys of records to the following addresses on this 7th day of February, 2003.

John R. Griffith                                          Via Hand Delivery
Viola G. Garza
GRIFFITH, HILL & OCHOA, LLP
One Park Place
100 Savannah Avenue, Suite 500
McAllen, Texas 78503

Moises M. Salas, Jr.                                      Via Hand Delivery
LAW OFFICES OF MOISES M. SALAS JR.
847 East Harrison
Brownsville, Texas 78520

_____
DAVID C. GARZA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | Date:  February 27, 2003 Time: 2:00 p.m. |
| Defendant. | § § § § | |

## APPENDIX TO
## DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
## MOTION FOR SUMMARY JUDGMENT

//

## TABLE OF CONTENTS

1.    Affidavit of Masahiko Taguchi ……………………………………..    1

2.    Affidavit of James J. Regan ……………………………………    5

        Exhibit 1 – Plaintiff's Response to First Set of Interrogatories
        Propounded by Defendant Japan Steel Works America, Inc.

        Exhibit 2 -  Plaintiff's Response to First Request for Production
        Of Document Propounded by Defendant Japan Steel Works,
        America, Inc.

        Exhibit 3 – Plaintiff's Response to First Set of Requests for
        Admission Propounded by Defendant Japan Steel Works,
        America, Inc.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | |
| Defendant. | § § § | |

**AFFIDAVIT OF MASAHIKO TAGUCHI IN SUPPORT OF DEFENDANT JAPAN STEEL WORKS AMERICA, INC'S MOTION FOR SUMMARY JUDGMENT**

Before me, the undersigned notary public, personally appeared Masahiko Taguchi, who, after being duly sworn, declares the following under penalty of perjury under the laws of the United States:

1.      My name is Masahiko Taguchi, I am over the age of twenty-one and I submit this Affidavit in support of defendant Japan Steel Works America, Inc's Motion for Summary Judgment.

2.      I am the president of Japan Steel Works America, Inc. (hereinafter "JSWA"), am

located in JSWA's offices at 9801 Westheimer, Suite 1050, Huston, Texas.

      3.      I have personal knowledge of the facts set forth herein and if called upon to do so,

I could and would competently testify to the matters set forth in this Affidavit.

      4.      JSWA is engaged in the sales and servicing of steel castings and forgings, steel

plates, structural steel products and plastics manufacturing and processing machinery while

defendant JSW Plastics Machinery, Inc. ("JSW-PMI") is engaged in sales of injection molding

machines.

      5.      None of the products sold by JSWA are sold or delivered through JSW-PMI.

      6.      JSWA is not the parent corporation of JSW-PMI and, conversely, JSW-PMI is not

a subsidiary of JSWA.

      7.      JSWA and JSW-PMI maintain separate offices, JSWA's main office being

located at 200 Park Avenue, Suite 3520, New York, New York and JSW-PMI's main office

being located at 555 South Promenade Avenue, Unit 104, Corona, California.

      8.      JSWA does not own any stock in, and is not a shareholder of JSW-PMI.

      9.      None of JSWA's officers, employees or members of its board of directors sit on

the Board of Directors of JSW-PMI.

      10.      None of JSWA's officers, employees or members of its board of directors serve

as officers of JSW-PMI.

      11.      JSWA does not have any officers who are employed by both JSWA and JSW-

PMI.

      12.      JSWA and JSW-PMI are operated as separate enterprises.

      13.      JSWA and JSW-PMI do not share any offices or other facilities with one another.

      14.      The books, accounts and records of JSWA are maintained separately and apart

from those maintained by JSW-PMI.

15.    JSWA does not file consolidated income tax return with JSW-PMI.

16.    JSWA and JSW-PMI do not consult one another with regard to their respective day-to-day operations.

17.    JSWA's and JSW-PMI's management and management policies are independent of, and not influenced in any manner by, one another.

18.    JSWA does not finance the operating capital of JSW-PMI.

19.    The respective policies and decisions of JSWA and JSW-PMI with respect to extending, denying or withdrawing credit from, and determining the credit worthiness of, their respective clients are separate and independent of one another.

20.    JSWA does not have any authority to influence, direct, effect or determine any decisions by JSW-PMI to extend, deny or terminate credit with respect to JSW-PMI's customers.

21.    JSWA was not, either directly or indirectly, involved in the transactions between JSW-PMI and Exel Bobbins and Plastic Components, Inc. which are the subject of this lawsuit.


I declare under penalty of perjury under the laws of the United Stated of America that the foregoing is true and correct.

Executed this ___6th___ day of February, 2003, at ___GaRDEnA, CALiFoRniA___ .



_____
Masahiko Taguchi
President, Japan Steel Works America, Inc.

## NOTARY ACKNOWLEDGMENT

State of _CaLiFoRniA_      )     ss.
County of _Los Angeles_      )

      On February _6_, 2003, before me _MichaelAnne Cahill_, [name of notary] personally, appeared MASAHIKO TAGUCHI personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in her/his authorized capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal.

      Signature _MichaelAnne Cahill_

(SEAL)

> MICHAELANNE CAHILL
> Commission # 1312256
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jul 5, 2005

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § § | |
| JSW PLASTICS MACHINERY, INC., | § § § | |
| Defendant. | § § § | |

---

**AFFIDAVIT OF JAMES J. REGAN IN SUPPORT OF DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Before me, the undersigned notary public, personally appeared James J. Regan, who, after being duly sworn, declares the following under penalty of perjury under the laws of the United States:

1.    My name is James J. Regan, I am over the age of twenty-one and I submit this Affidavit in support of defendant Japan Steel Works America, Inc.'s Motion for Summary Judgment.

2.    I am an attorney duly licensed to practice law in all courts of the State of California and in the United States District Court, Central District of California. I am one of the attorneys primarily responsible for representing the Defendant Japan Steel Works America, Inc.

in the above-captioned action and am familiar with the action. I have personal knowledge of the facts set forth herein and if called upon to do so, I could and would competently testify to the matters set forth in this Affidavit.

3.    On January 17, 2003, during the course of discovery in this matter, Plaintiff Exel Bobbins and Plastic Components, Inc. ("Plaintiff") served its responses to Defendant Japan Steel Works America, Inc.'s ("JSWA") First Set of Interrogatories. Attached hereto as EXHIBIT 1 is a true and correct copy of Plaintiff's responses to said discovery which I received.

4.    On January 17, 2003, during the course of discovery in this matter, Plaintiff served its responses to JSWA's Request for Production of Documents (Set One). Attached hereto as EXHIBIT 2 is a true and correct copy of those portions of Plaintiff's responses to said discovery which I received and which are relevant to the JSWA's Motion for Summary Judgment. (I have omitted to include pages from the annual report which do not discuss either JSW-PMI or JSWA)

5.    On January 17, 2003, during the course of discovery in this matter, Plaintiff Exel Bobbins and Plastic Components, Inc. ("Plaintiff") served its responses to JSWA's Requests for Admissions (Set One).  Attached hereto as EXHIBIT 3 is a true and correct copy of Plaintiff's responses to said discovery which I received.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5 day of February, 2003, at Redondo Beach, California.


_____
( James J. Regan(

## NOTARY ACKNOWLEDGMENT

State of California                    )        ss.
County of Los Angeles                  )

On February ___5___, 2003, before me *Michaelanne Cahill*, [name of

notary] personally, appeared JAMES J. REGAN personally known to me (or proved to me on

the basis of satisfactory evidence) to be the person whose name is subscribed to the within

instrument and acknowledged to me that she/he executed the same in her/his authorized

capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of

which the person acted, executed this instrument.


WITNESS my hand and official seal.


Signature *Michaelanne Cahill*


(SEAL)

```
MICHAELANNE CAHILL
Commission # 1312256
Notary Public - California
Los Angeles County
My Comm. Expires Jul 5, 2005
```

**EXHIBIT "1"**

0700.0078.1794

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EXEL BOBBINS AND PLASTIC          §
COMPONENTS, INC.,                 §
  Plaintiff             §
                                  §
vs.                               §          CIVIL ACTION NO. B-01-148
                                  §
JSW PLASTICS MACHINERY, INC.      §          [Assigned to the Hon. Hilda G. Tagle]
  Defendant             §           Stipulated to Magistrate Felix Recio]

---

## PLAINTIFF'S ANSWERS AND/OR OBJECTIONS
## TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
## FIRST SET OF INTERROGATORIES

---

TO: Defendant, JAPAN STEEL WORKS AMERICA, INC., by and through their attorney of
  record:

  David G. Garza
  **Garza & Garza, L.L.P.**
  680 East St. Charles, Suite 300
  P.O. Box 2025
  Brownsville, Texas 78522-2025

  NOW COMES, Plaintiff, EXEL BOBBINS AND PLASTIC COMPONENTS, INC., in the

above-styled and numbered cause, and pursuant to the Federal Rules of Civil Procedure, and make

this their "Answers and/or Objections to Defendant's First Set of Interrogatories" as required by said

rule.

Respectfully submitted,

**GRIFFITH, HILL & OCHOA, L.L.P.**
One Park Place, Suite 500
100 Savannah Avenue
McAllen, Texas 78503
(956) 971-9446
(956) 971-9451 - facsimile

By: _____
Viola G. Garza
State Bar No. 00787518


Moises M. Salas, Jr.
Law Offices of Moises M. Salas, Jr.
847 East Harrison
Brownsville, Texas 78520
(956) 982-0600
(956) 982-0601 (fax)
ATTORNEYS FOR PLAINTIFF
EXEL BOBBINS AND PLASTIC
COMPONENTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument was forwarded to all counsel of record, to wit:

*Attorney-In-Charge for Defendant:*
David G. Garza
**Garza & Garza, L.L.P.**
680 East St. Charles. Suite 300
P.O. Box 2025
Brownsville, Texas  78522-2025
(956) 541-4914
(956) 542-7403 (fax)

James J. Regan
Regan - Braun Law Offices
2522 Artesia Blvd., Suite 200
Redondo Beach, California 90278
(310) 372-1988
(310) 318-5894 (fax)

via CERTIFIED MAIL, return receipt requested, on this ___ day of January, 2003.

By: _____
Viola G. Garza

PLAINTIFF'S ANSWERS AND/OR OBJECTIONS
TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

DESCRIBE WITH PARTICULARITY all facts the RELATE TO YOUR contention that
JSWA is a parent company of JSW/PMI as alleged in YOUR COMPLAINT.

**ANSWER:**

This party objects to this discovery request since it is overly broad and unduly
burdensome.  Subject to the foregoing objection and without waiving the same,
Defendant would allege that pursuant to information learned by the Plaintiff through
the Annual Report of JSW for 2001 and 2002, Plaintiff believes that JSW America is
a subsidiary of JSW Japan which was created to handle all U.S. sales and technical
servicing of steel casting and forging, steel plates, structural steel products, injection
molding machines, and toxic manufacturing and processing machinery.

**INTERROGATORY NO. 2:**

DESCRIBE WITH PARTICULARITY the manner in which JSWA was responsible for
and/or participated in implementing decisions  RELATING TO the CONTRACT.

**ANSWER:**

This party objects to this discovery request since it is overly broad and unduly
burdensome.  Subject to the foregoing objection and without waiving the same,
Defendant would allege that pursuant to information learned by the Plaintiff through
the Annual Report of JSW for 2001 and 2002, Plaintiff believes that JSW America is
a subsidiary of JSW Japan which was created to handle all U.S. sales and technical
servicing of steel casting and forging, steel plates, structural steel products, injection
molding machines, and toxic manufacturing and processing machinery including the
operations of JSW Plastics.

**INTERROGATORY NO. 3:**

DESCRIBE WITH PARTICULARITY all facts that RELATE TO YOUR contention that
"to the extent JSWA is a parent company of JSW, JSWA is also liable to EXEL for this fraudulent
concealment and inducement," as alleged in the COMPLAINT.

**ANSWER:**

       This party objects to this discovery request since it is overly broad and unduly burdensome.  Subject to the foregoing objection and without waiving the same, Defendant would allege that pursuant to information learned by the Plaintiff through the Annual Report of JSW for 2001 and 2002, Plaintiff believes that JSW America is a subsidiary of JSW Japan which was created to handle all U.S. sales and technical servicing of steel casting and forging, steel plates, structural steel products, injection molding machines, and toxic manufacturing and processing machinery.

**INTERROGATORY NO. 4:**

       DESCRIBE WITH PARTICULARITY all facts the RELATE TO YOUR contention that "to the extent JSWA is a parent company of JSW, JSWA is also liable to EXEL for these negligent misrepresentations," as alleged in the COMPLAINT.

**ANSWER:**

       This party objects to this discovery request since it is overly broad and unduly burdensome.  Subject to the foregoing objection and without waiving the same, Defendant would allege that pursuant to information learned by the Plaintiff through the Annual Report of JSW for 2001 and 2002, Plaintiff believes that JSW America is a subsidiary of JSW Japan which was created to handle all U.S. sales and technical servicing of steel casting and forging, steel plates, structural steel products, injection molding machines, and toxic manufacturing and processing machinery.

**INTERROGATORY NO. 5:**

       DESCRIBE WITH PARTICULARITY all facts the RELATE TO YOUR contention that "to the extent JSWA is a parent company of JSW, JSWA is also liable to EXEL for these [sic] tortious interference with prospective contract," as alleged in the COMPLAINT.

**ANSWER:**

       This party objects to this discovery request since it is overly broad and unduly burdensome.  Subject to the foregoing objection and without waiving the same, Defendant would allege that pursuant to information learned by the Plaintiff through the Annual Report of JSW for 2001 and 2002, Plaintiff believes that JSW America is a subsidiary of JSW Japan which was created to handle all U.S. sales and technical servicing of steel casting and forging, steel plates, structural steel products, injection molding machines, and toxic manufacturing and processing machinery.

## INTERROGATORY NO. 6:

IDENTIFY each and every COMMUNICATION between PLAINTIFF and JSWA RELATING TO the CONTRACT during the period January 1, 1999 through December 31, 2001.

## ANSWER:

The Plaintiff never had any communications with any employees or with anyone at JSWA.

## INTERROGATORY NO. 7:

IDENTIFY all PERSONS who at any time during the period January 1, 1999 through the date YOU answer this Interrogatory represented to YOU, either orally or in writing, that with respect to the CONTRACT they were acting on behalf of JSWA.

## ANSWER:

None.

## INTERROGATORY NO. 8:

IDENTIFY each and every employee of YOURS to whom it was represented by any PERSON at any time during the period January 1, 1999 through the date YOU answer this Interrogatory, that such PERSON was acting on behalf of JSWA.

## ANSWER:

None.

## INTERROGATORY NO. 9:

IDENTIFY all COMMUNICATIONS in which any PERSON represented to YOU that were acting on behalf of JSWA RELATING TO the CONTRACT during the period January 1, 1999 through the date YOU answer this Interrogatory.

## ANSWER:

None.

## INTERROGATORY NO. 10:

IDENTIFY all employees, officers and directors of JSWA who are responsible for and/or who participated in making decisions RELATING TO the extensions to YOU by JSW/PMI of the line of credits as alleged in the COMPLAINT at any time during the period January 1, 1999 through the date YOU answer this Interrogatory.

## ANSWER:

**Plaintiff is not aware of any specific employees, officers or directors of JSW who were responsible for and/or who participated in making decisions regarding the extension of credit to Plaintiff. However, based on information learned through the Annual Report of JSW Steel Works of 2001 and 2002, Plaintiff believes that JSW America was involved in this decision making process.**

## INTERROGATORY NO. 11:

IDENTIFY all employees, officers and directors of JSWA who are responsible for and/or who participated in making decisions RELATING TO the sale or delivery to YOU by JSW/PMI of the machines which are the subject of the CONTRACT at any time during the period January 1, 1999 through the date YOU answer this Interrogatory.

## ANSWER:

**Plaintiff is not aware of any specific employees, officers or directors of JSW who were responsible for and/or who participated in making decisions regarding the extension of credit to Plaintiff. However, based on information learned through the Annual Report of JSW Steel Works of 2001 and 2002, Plaintiff believes that JSW America was involved in this decision making process.**

## INTERROGATORY NO. 12:

IDENTIFY any and all DOCUMENTS that YOU contend support any of YOUR responses to any of the foregoing Interrogatories herein.

## ANSWER:

**Please see Exhibit "A" attached to Plaintiff's responses to Request for Production.**

## VERIFICATION

... undersigned authority, on this day personally appeared STEVE BECKER,

known ... ... person whose name is subscribed hereto, and who stated upon oath, duly

given, that he ... ... in all respects to make this affidavit and that the matters contained in the

foregoing ... ... interrogatories are true and correct.

*1/17/03*
Date signed

_____
Steve Becker

... SUBSCRIBED BEFORE ME on this 17th day of January, 2003.

_____
NOTARY PUBLIC
In and for the State of Texas
County of Hidalgo

AMPARO G ORTIZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
FEBRUARY 16, 2005

**EXHIBIT "2"**

0700.0078/1794

## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC | § | |
| COMPONENTS, INC., | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-01-148 |
| | § | |
| JSW PLASTICS MACHINERY, INC. | § | [Assigned to the Hon. Hilda G. Tagle] |
|     Defendant | § | Stipulated to Magistrate Felix Recio] |

_____

### PLAINTIFF'S RESPONSES AND/OR OBJECTIONS
### TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
### REQUEST FOR PRODUCTION OF DOCUMENTS

_____

TO:   Defendant, JAPAN STEEL WORKS AMERICA, INC., by and through their attorney of record:

David G. Garza
**Garza & Garza, L.L.P.**
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025

NOW COMES, Plaintiff, EXEL BOBBINS AND PLASTIC COMPONENTS, INC., in the above-styled and numbered cause, and pursuant to the Federal Rules of Civil Procedure, and make this their "Responses and/or Objections to Defendant's Request for Production of Documents" as required by said rule.

Respectfully submitted,

**GRIFFITH, HILL & OCHOA, L.L.P.**
One Park Place, Suite 500
100 Savannah Avenue
McAllen, Texas 78503
(956) 971-9446
(956) 971-9451 - facsimile

By: _____
    Viola G. Garza
    State Bar No. 00787518


Moises M. Salas, Jr.
Law Offices of Moises M. Salas, Jr.
847 East Harrison
Brownsville, Texas 78520
(956) 982-0600
(956) 982-0601 (fax)
ATTORNEYS FOR PLAINTIFF
EXEL BOBBINS AND PLASTIC
COMPONENTS, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument was forwarded to all counsel of record, to wit:

*Attorney-In-Charge for Defendant:*
David G. Garza
**Garza & Garza, L.L.P.**
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas  78522-2025
(956) 541-4914
(956) 542-7403 (fax)

James J. Regan
Regan - Braun Law Offices
2522 Artesia Blvd., Suite 200
Redondo Beach, California 90278
(310) 372-1988
(310) 318-5894 (fax)

via CERTIFIED MAIL, return receipt requested, on this _____ day of January, 2003.

By:_____
     Viola G. Garza

## PLAINTIFF'S RESPONSES AND/OR OBJECTIONS
## TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for these fraudulent statements" as alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 2:**

All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for these fraudulent concealment and fraudulent inducements based on that concealment" as alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 3:**

All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for negligent misrepresentation" alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 4:**

All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for these negligent misrepresentation" alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 5:**

All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for these negligent misrepresentation" alleged in YOUR COMPLAINT. All DOCUMENTS RELATING TO YOUR contention that "to the extent that JSWA is a parent company to JSW, JSWA is also liable to EXEL for these [sic] tortious interference with prospective contract" alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 6:**

All DOCUMENTS RELATING TO YOUR contention that "JSWA is a parent company to JSW" alleged in YOUR COMPLAINT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 7:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and JSWA RELATING TO the CONTRACT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 8:**

All DOCUMENTS RELATING TO COMMUNICATIONS between JSWA and JSW/PMI RELATING TO JSW/PMI's decision to sell molding machines to YOU.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 9:**

All DOCUMENTS RELATING TO COMMUNICATIONS between JSWA and JSW/PMI RELATING TO JSW/PMI's decision to extend a line of credit to YOU.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 10:**

If you contend that at any time during the period January 1, 1999 through December 31, 2001, JSWA had knowledge that the machines which YOU sought to purchase and finance "were being purchased by EXEL in order that EXEL would provide services to its customers" as alleged in YOUR COMPLAINT, produce all DOCUMENTS RELATING TO JSWA's knowledge thereof.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 11:**

If YOU contend that at any time during the period January 1, 1999 through December 31, 2001, JSWA had knowledge "specific customers of EXEL for which EXEL would provide services by means of the JSW machines" as alleged in YOUR COMPLAINT, produce all DOCUMENTS RELATING TO JSWA's knowledge thereof.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 12:**

If YOU contend that at any time during the period January 1, 1999 through December 31, 2001, JSWA had knowledge "EXEL sought to purchase and finance certain JSW machines in order to provide services specifically to Sunbeam-Oster" as alleged in YOUR COMPLAINT, produce all DOCUMENTS RELATING TO JSWA's knowledge thereof.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.

**REQUEST NO. 13:**

      If YOU contend that at any time during the period January 1, 1999 through December 31, 2001, JSWA had knowledge "EXEL's prospective business and contractual relationship with Sunbeam-Oster" as alleged in YOUR COMPLAINT, produce all DOCUMENTS RELATING TO JSWA's knowledge thereof.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.

**REQUEST NO. 14:**

      With respect to the contention in the COMPLAINT that "JSW has breached the contract by failing and refusing to deliver the JSW machines to EXEL as set forth in the contract," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.

**REQUEST NO. 15:**

      With respect to the contention in the COMPLAINT that "JSW has breached the contract by failing and refusing to provide EXEL the line of credit as set forth in the contract," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.

**REQUEST NO. 16:**

      With respect to the contention in the COMPLAINT that "JSW has further breached the contract by failing without legal justification, to recognize the existence of the contract, "produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.


**REQUEST NO. 17:**

      With respect to the contention in the COMPLAINT that "JSW has breached the contract by, without legal justification, expressing its fixed intent to abandon and renounce the contract and by refusing to perform pursuant tot he terms of the contract, "produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.


**REQUEST NO. 18:**

      If YOU contend that JSWA derived a benefit of any kind from JSW/PMI's breach of contract as alleged in the complaint, produce all DOCUMENTS RELATING TO any such benefit derived by JSWA from the alleged breach of contract.

**RESPONSE:**

      Please see Exhibit "A" attached hereto.


**REQUEST NO. 19:**

      With respect to the contention in the COMPLAINT that "during the negotiations and at the time the contract was entered into, representatives materially misrepresented JSW's intentions and ability to perform the contract," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 20:**

With respect to the contention in the COMPLAINT that All DOCUMENTS RELATING TO JSWA's participation or involvement in and/or awareness that misrepresentation were made by JSW/PMI "with knowledge of their falsity or recklessly without any knowledge of the truth and as a positive assertion, with the intention that they would be relied upon," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 21:**

With respect to the contention in the COMPLAINT that during the negotiations with YOU regarding the CONTRACT, "JSW representatives concealed or failed to disclose material facts, including but not limited to JSW's intentions and ability to perform the contract," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 22:**

With respect to the contention in the COMPLAINT that during the negotiations with YOU regarding the CONTRACT, "JSW representatives supplied false and misleading information to EXEL, directly through it's agent, about JSW's intention and ability to perform the contract," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 23:**

With respect to the contention in the COMPLAINT that "JSW did not exercise reasonable care or competence in communicating its true intentions and abilities to EXEL, acted in reckless disregard of the truth, and knew or should have known that the communications were false," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 24:**

With respect to the contention in the COMPLAINT that with respect to the business relationship between you and Sunbeam-Oster, "JSW intentionally interfered with such business relationship," produce all DOCUMENTS RELATING TO JSWA's involvement or participation in and/or awareness of the foregoing alleged conduct by JSW/PMI.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 25:**

All DOCUMENTS RELATING TO JSWA's control over the business affairs of JSW/PMI at any time during the period January 1, 1999 through December 31, 2001.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 26:**

All DOCUMENTS by which any PERSON represented to YOU or led YOU to believe or understand that JSW/PMI was acting on behalf of or otherwise representing JSWA RELATING TO the CONTRACT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

**REQUEST NO. 27:**

All DOCUMENTS RELATING TO any contention by you that JSWA used JSW/PMI for the purpose of committing a fraud, injustice or other wrongdoing with respect to YOU RELATING TO the CONTRACT.

**RESPONSE:**

Please see Exhibit "A" attached hereto.


**REQUEST NO. 28:**

All DOCUMENTS RELATING TO  contention by YOU that JSWA at any time used JSW/PMI for the purpose of committing a fraud, injustice or other wrongdoing with respect to parties other than YOU.

**RESPONSE:**

Please see Exhibit "A" attached hereto.

# EXHIBIT "A"



**JSW**

THE JAPAN STEEL WORKS, LTD.

Annual Report 2001
April 2000 - March 31, 2001



## Overseas Offices and Subsidiaries



JSW currently has six overseas offices and eight subsidiaries in the United States, Singapore, Hong Kong, and Taiwan.

The Company opened its first overseas office in New York in 1969, followed by the establishment of a subsidiary, Japan Steel Works America, Inc. in 1978 to handle the U.S. sales and technical servicing of steel castings and forgings, steel plates, structural steel products, injection molding machines, and plastics manufacturing and processing machinery. Injection molding machine sales operations were spun off in 1990 with the establishment of JSW Plastics Machinery, Inc.

Japan Steel Works America, Inc. has its head office in New York and a branch office in Houston, Texas. JSW Plastics Machinery, Inc. is headquartered in Anaheim, California, and also has offices in Detroit, Atlanta, and Connecticut as well as a Technical Center in Chicago.

The Singapore Office was set up in 1975 as a sales outlet for the Company's products. In 1992, JSW Plastics Machinery (S) Pte Ltd. was established to take over injection molding machinery sales operations.

The subsidiary JSW Plastics Machinery (M) SDN. BHD was established in Malaysia and JSW Plastics Machinery (T) Co., Ltd. in Thailand in 1996, and in 1997, JSW Plastics Machinery (H.K.) Co., Ltd. was established in Hong Kong. In 2000 we set up JSW Plastics Machinery (Taiwan) Corp., and in 2001 Matrix Inspection & Engineering, Inc. of the United States was made into a subsidiary of the Company. All these subsidiaries handle both sales and services.

The Company also has offices in Düsseldorf, Teheran, and Beijing, and dispatches staff from Japan to the local subsidiaries listed above as well as to their other overseas offices, including those in the Philippines and Indonesia.



# Report of Certified Public Accountants

 Shin Nihon & Co.

**Certified Public Accountants**
Hibiya Kokusai Bldg.
2-2-3, Uchisaiwai-cho,
Chiyoda-ku, Tokyo 100-0011
C.P.O. Box 1196, Tokyo 100-8641

Phone.03 3503-1100
Fax:    03 3503-1197

The Board of Directors and Shareholders
The Japan Steel Works, Ltd.

We have examined the non-consolidated balance sheets of The Japan Steel Works, Ltd. as of March 31, 2002 and 2001, and the related non-consolidated statements of operations and shareholders' equity for the years then ended, all expressed in yen.   Our examinations were made in accordance with auditing standards, procedures and practices generally accepted and applied in Japan and, accordingly, included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.

In our opinion, the non-consolidated financial statements referred to above, expressed in yen, present fairly the financial position of The Japan Steel Works, Ltd. at March 31, 2002 and 2001, and the results of its operations for the years then ended, in conformity with accounting principles and practices generally accepted in Japan applied on a consistent basis.

As described in Note 2 to the non-consolidated financial statements, The Japan Steel Works, Ltd. has adopted a new accounting standards for financial instruments, employees' retirement benefits and foreign currency translation effective the year ended March 31, 2001 in the preparation of its non-consolidated financial statements.

The U.S. dollar amounts in the accompanying non-consolidated financial statements with respect to the year ended March 31, 2002 are presented solely for convenience.   Our examination also included the translation of yen amounts into U.S. dollar amounts and, in our opinion, such translation has been made on the basis described in Note 3 to the non-consolidated financial statements.

Tokyo, Japan
June 27, 2002

*Shin Nihon & Co.*

*See Note 1 to the non-consolidated financial statements which explains the basis of preparation of the non-consolidated financial statements of The Japan Steel Works, Ltd. under Japanese accounting principles and practices.*

30

## Consolidated Subsidiaries

### Domestic

| Company | | | | Business |
|---|---|---|---|---|
| NIKKO SHOJI CO., LTD. | 100 | Apr. 1958 | 100.0 | Sale of plastics forming machinery, general industrial machinery, and others |
| NIPPLA INC. | 50 | Nov. 1963 | 100.0 | Installation, trial operation, and maintenance of injection molding machines |
| NIKKO INSPECTION SERVICE CO., LTD | 50 | Jan. 1979 | 100.0 | Inspection of products during production and prior to shipment |
| NIKKO UNYU CO., LTD. | 50 | Jan. 1979 | 100.0 | Packing and transport |
| NIKKO KOEI CO., LTD. | 60 | Dec. 1978 | 100.0 | Installation and maintenance of plant facilities |
| FINE CRYSTAL CO., LTD. | 880 | Aug. 1988 | 88.6 | No regular transactions |
| NIKKO MATERIALS CO., LTD. | 80 | Apr. 1994 | 100.0 | Sale of cast steel and cast steel parts for machinery |
| SUN·TECHTRO, LTD. | 30 | Feb. 1990 | 100.0 | Design and manufacture of electric and electronics parts for machines |
| KANAKO CO., LTD | 10 | Mar. 1956 | 100.0 | Design and assembly of plastic forming machinery and general industrial machinery |
| NIKKO INFORMATION SYSTEM CO., LTD. | 120 | Apr. 1990 | 100.0 | Information processing, installation of software and information equipment |
| NIKKO SEKKEI CO., LTD. | 25 | Apr. 1979 | 100.0 | Design and assembly of plastic forming, general industrial, and injection molding machines |
| NIKKO KOSAN CO., LTD. | 65 | Apr. 1978 | 100.0 | Clerical support work |
| HOKKAIDO KOSAN CO., LTD. | 30 | Oct. 1986 | 100.0 | Management of welfare facilities and support work |
| THE ARM REAL ESTATE CO., LTD. | 80 | Aug. 1952 | 100.0 | Management of real estate |
| I·TECH CO., LTD. | 20 | Dec. 1960 | 100.0 | Installation and overhaul of machines and products for customers |
| NIKKO MACHINERY CO., LTD. | 40 | Nov. 1986 | 100.0 | Processing and assembling of steel products and equipment |
| NIKKO DESIGN CO., LTD. | 40 | Nov. 1986 | 100.0 | Design of machines and equipment |
| JSW SYSTEM ENGINEERING CO., LTD. | 100 | Nov. 1986 | 100.0 | Manufacture and processing of molds and parts |
| FUCHU URBAN MANAGEMENT, LTD. | 50 | Jun. 1991 | 100.0 | Maintenance and management of real estate |
| NIKKO TRUCK CO., LTD. | 20 | Nov. 1992 | 100.0 (100.0) | Transport of products and various sub-contracted work |
| MG PRECISION CO., LTD. | 90 | Sep. 1996 | 100.0 | Manufacture of metal products by injection molding machines |
| NIKKO TOKKI CO., LTD. | 100 | Feb. 1998 | 100.0 | Maintenance of parts for military equipment |
| JSW MACHINE CENTER CO., LTD. | 100 | Feb. 1998 | 100.0 | Manufacture and maintenance of steel products |
| YOUKOU CO., LTD. | 10 | Jan. 1997 | 100.0 (100.0) | Procurement of electric and electronics parts |
| NIKKO TECHNO CO., LTD. | 200 | Mar. 2000 | 100.0 | Processing, heat-treatment, and manufacture of cans for machines |

### Overseas

| Company | | | | Business |
|---|---|---|---|---|
| Japan Steel Works America, Inc. | US$1,000 | Aug. 1978 | 100.0 | Sale of steel and machinery products |
| JSW Plastics Machinery, Inc. | US$2,500 | Jan. 1990 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (S) Pte Ltd | S$4,000 | Jul. 1992 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (M) SDN. BHD. | RM300 | Jul. 1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (T) Co., Ltd. | BT4,000 | Sep. 1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (H.K.) Co. Ltd. | HK$1,250 | Apr. 1997 | 100.0 (100.0) | Sale of injection molding machines |

Note: Figures in parentheses represent ratio of shares held by the Company's subsidiaries.

31

# Consolidated Subsidiaries

## Domestic

| | | | | |
|---|---|---|---|---|
| NIKKO SHOJI CO., LTD. | 100 | Apr.1958 | 100.0 | Sale of plastics forming machinery, general industrial machinery, and others |
| NIPPLA INC. | 50 | Nov.1963 | 100.0 | Installation, trial operation, and maintenance of injection molding machines |
| NIKKO INSPECTION SERVICE CO., LTD. | 50 | Jan.1979 | 100.0 | Inspection of products during production and prior to shipment |
| NIKKO UNYU CO., LTD. | 50 | Jan.1979 | 100.0 | Packing and transport |
| NIKKO KOEI CO., LTD. | 60 | Dec.1978 | 100.0 | Installation and maintenance of plant facilities |
| FINE CRYSTAL CO., LTD. | 880 | Aug.1988 | 88.6 | No regular transactions |
| NIKKO MATERIALS CO., LTD. | 80 | Apr.1994 | 100.0 | Sale of cast steel and cast steel parts for machinery |
| SUN ·TECHTRO, LTD. | 30 | Feb.1990 | 100.0 | Design and manufacture of electric and electronics parts for machines |
| KANAKO CO., LTD. | 10 | Mar.1956 | 100.0 | Design and assembly of plastic forming machinery and general industrial machinery |
| NIKKO INFORMATION SYSTEM CO., LTD. | 120 | Apr.1990 | 100.0 | Information processing, installation of software and information equipment |
| NIKKO SEKKEI CO., LTD. | 25 | Apr.1979 | 100.0 | Design and assembly of plastic forming, general industrial, and injection molding machines |
| NIKKO KOSAN CO., LTD. | 65 | Apr.1978 | 100.0 | Clerical support work |
| HOKKAIDO KOSAN CO., LTD. | 30 | Oct.1986 | 100.0 | Management of welfare facilities and support work |
| THE ARM REAL ESTATE CO., LTD. | 80 | Aug.1952 | 100.0 | Management of real estate |
| J ·TECH CO., LTD. | 20 | Dec.1960 | 100.0 | Installation and overhaul of machines and products for customers |
| NIKKO MACHINERY CO., LTD. | 40 | Nov.1986 | 100.0 | Processing and assembling of steel products and equipment |
| NIKKO DESIGN CO., LTD. | 40 | Nov.1986 | 100.0 | Design of machines and equipment |
| JSW SYSTEM ENGINEERING CO., LTD. | 100 | Nov.1986 | 100.0 | Manufacture and processing of molds and parts |
| FUCHU URBAN MANAGEMENT, LTD. | 50 | Jun.1991 | 100.0 | Maintenance and management of real estate |
| NIKKO TRUCK CO., LTD. | 20 | Nov.1992 | 100.0 (100.0) | Transport of products and various sub-contracted work |
| MG PRECISION CO., LTD. | 90 | Sep.1996 | 100.0 | Manufacture of metal products by injection molding machines |
| NIKKO TOKKI CO., LTD. | 100 | Feb.1998 | 100.0 | Maintenance of parts for military equipment |
| JSW MACHINE CENTER CO., LTD. | 100 | Feb.1998 | 100.0 | Manufacture and maintenance of steel products |
| YOUKOU CO., LTD. | 10 | Jan.1997 | 100.0 (100.0) | Procurement of electric and electronics parts |
| NIKKO TECHNO CO., LTD. | 200 | Mar.2000 | 100.0 | Processing, heat-treatment, and manufacture of cans for machines |

## Overseas

| | | | | |
|---|---|---|---|---|
| Japan Steel Works America, Inc. | US$1,000 | Aug.1978 | 100.0 | Sale of steel and machinery products |
| JSW Plastics Machinery, Inc. | US$2,500 | Jan. 1990 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (S) Pte Ltd | S$4,000 | Jul. 1992 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (M) SDN. BHD. | RM300 | Jul. 1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (T) Co., Ltd. | BT4,000 | Sep.1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (H.K.) Co. Ltd. | HK$1,250 | Apr.1997 | 100.0 (100.0) | Sale of injection molding machines |

Note: Figures in parentheses represent ratio of shares held by the Company's subsidiaries.

## Consolidated Subsidiaries

### Domestic

| Company | | | | |
|---|---|---|---|---|
| NIKKO SHOJI CO., LTD. | 100 | Apr.1958 | 100.0 | Sale of plastics forming machinery, general industrial machinery, and others |
| NIPPLA INC. | 50 | Nov.1963 | 100.0 | Installation, trial operation, and maintenance of injection molding machines |
| NIKKO INSPECTION SERVICE CO., LTD. | 50 | Jan. 1979 | 100.0 | Inspection of products during production and prior to shipment |
| NIKKO UNYU CO., LTD. | 50 | Jan. 1979 | 100.0 | Packing and transport |
| NIKKO KOEI CO., LTD. | 60 | Dec.1978 | 100.0 | Installation and maintenance of plant facilities |
| FINE CRYSTAL CO., LTD. | 880 | Aug.1988 | 88.6 | No regular transactions |
| NIKKO MATERIALS CO., LTD. | 80 | Apr.1994 | 100.0 | Sale of cast steel and cast steel parts for machinery |
| SUN ·TECHTRO, LTD. | 30 | Feb.1990 | 100.0 | Design and manufacture of electric and electronics parts for machines |
| KANAKO CO., LTD. | 10 | Mar.1956 | 100.0 | Design and assembly of plastic forming machinery and general industrial machinery |
| NIKKO INFORMATION SYSTEM CO., LTD. | 120 | Apr.1990 | 100.0 | Information processing, installation of software and information equipment |
| NIKKO SEKKEI CO., LTD. | 25 | Apr.1979 | 100.0 | Design and assembly of plastic forming, general industrial, and injection molding machines |
| NIKKO KOSAN CO., LTD. | 65 | Apr.1978 | 100.0 | Clerical support work |
| HOKKAIDO KOSAN CO., LTD. | 30 | Oct.1986 | 100.0 | Management of welfare facilities and support work |
| THE ARM REAL ESTATE CO., LTD. | 80 | Aug.1952 | 100.0 | Management of real estate |
| J ·TECH CO., LTD. | 20 | Dec.1960 | 100.0 | Installation and overhaul of machines and products for customers |
| NIKKO MACHINERY CO., LTD. | 40 | Nov.1986 | 100.0 | Processing and assembling of steel products and equipment |
| NIKKO DESIGN CO., LTD. | 40 | Nov.1986 | 100.0 | Design of machines and equipment |
| JSW SYSTEM ENGINEERING CO., LTD. | 100 | Nov.1986 | 100.0 | Manufacture and processing of molds and parts |
| FUCHU URBAN MANAGEMENT, LTD. | 50 | Jun.1991 | 100.0 | Maintenance and management of real estate |
| NIKKO TRUCK CO., LTD. | 20 | Nov.1992 | 100.0 (100.0) | Transport of products and various sub-contracted work |
| MG PRECISION CO., LTD. | 90 | Sep.1996 | 100.0 | Manufacture of metal products by injection molding machines |
| NIKKO TOKKI CO., LTD. | 100 | Feb.1998 | 100.0 | Maintenance of parts for military equipment |
| JSW MACHINE CENTER CO., LTD. | 100 | Feb.1998 | 100.0 | Manufacture and maintenance of steel products |
| YOUKOU CO., LTD. | 10 | Jan. 1997 | 100.0 (100.0) | Procurement of electric and electronics parts |
| NIKKO TECHNO CO., LTD. | 200 | Mar.2000 | 100.0 | Processing, heat-treatment, and manufacture of cans for machines |
| Japan Steel Works America, Inc. | US$1,000 | Aug.1978 | 100.0 | Sale of steel and machinery products |
| JSW Plastics Machinery, Inc. | US$2,500 | Jan. 1990 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (S) Pte Ltd | S$4,000 | Jul. 1992 | 100.0 | Sale of injection molding machines |
| JSW Plastics Machinery (M) SDN. BHD. | RM300 | Jul. 1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (T) Co., Ltd. | BT4,000 | Sep. 1996 | 100.0 (100.0) | Sale of injection molding machines |
| JSW Plastics Machinery (H.K.) Co. Ltd. | HK$1,250 | Apr 1997 | 100.0 (100.0) | Sale of injection molding machines |

Note. Figures in parentheses represent ratio of shares held by the Company's subsidiaries

31

## Office Network

### Domestic



- **•Head Office**
Hibiya Mitsui Bldg., 1-2, Yurakucho
1-chome, Chiyoda-ku, Tokyo 100-8456
Phone: +81-3-3501-6111
Cable: SEIKOSHO TOKYO
Telex: J24256 (JSW)
Facsimile: +81-3-3504-0727
URL: http://www.jsw.co.jp/

- **•J-Tower**
1-1, Nikko-cho, Fuchu-shi, Tokyo
183-8503
Phone: +81-42-330-8000
Facsimile: +81-42-330-8017

- **•Osaka Office**
Shinanobashi Mitsui Bldg., 11-7,
Utsubohonmachi 1-chome, Nishi-ku,
Osaka-shi, Osaka 550-0004
Phone: +81-6-6446-2480
Facsimile: +81-6-6446-2488

- **•Fukuoka Office**
Fukuoka Tenjin Center Bldg., 14-8,
Tenjin 2-chome, Chuo-ku, Fukuoka-shi,
Fukuoka 810-0001
Phone: +81-92-721-0561
Facsimile: +81-92-721-0560

- **•Nagoya Office**
Mitsui Sumitomo Kaijo Nagoya Bldg., 2-1,
Nishiki 1-chome, Naka-ku, Nagoya-shi,
Aichi 460-0003
Phone: +81-52-222-1271
Facsimile: +81-52-222-1275

- **•Hiroshima Office**
6-1, Funakoshi-Minami 1-chome, Aki-ku,
Hiroshima-shi, Hiroshima 736-8602
Phone: +81-82-822-0991
Facsimile: +81-82-822-0997

- **•Sapporo Office**
Kitaichijo Mitsui Bldg., 2-9, Nishi
5-chome, Kita-ichijo, Chuo-ku,
Sapporo-shi, Hokkaido 060-0001
Phone: +81-11-241-2271
Facsimile: +81-11-241-2275

- **•Muroran Plant**
4, Chatsumachi, Muroran-shi,
Hokkaido 051-8505
Phone: +81-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
Facsimile: +81-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

- **•Hiroshima Plant**
6-1, Funakoshi-Minami 1-chome, Aki-ku,
Hiroshima-shi, Hiroshima 736-8602
Phone: +81-82-822-3181
Facsimile: +81-82-285-2038

- **•Yokohama Plant**
2-1, Fukuura 2-chome, Kanazawa-ku,
Yokohama-shi, Kanagawa 236-0004
Phone: +81-45-781-1111
Facsimile: +81-45-787-7200





**K  Düsseldorf Office**
Friedrichstr. 19, 40217 Düsseldorf,
F.R.Germany
Phone: +49-211-3116660
Facsimile: +49-211-31166640

**L  Teheran Office**
Gandi Ave., Corner of Street No.18,
Bldg. No.72, Apartment No.5,
Second Floor, Postal Code 15179,
Teheran, I.R. of Iran
Phone: +98-21-8776685
Telex: 213057 (JSW IR)
Facsimile: +98-21-8791199

**M  Singapore Office**
16 Raffles Quay, #27-01C,
Hong Leong Bldg., Singapore 048581,
Republic of Singapore
Phone: +65-62206227
Facsimile: +65-62240726

**N  Beijing Office**
5 Dong Sanhuan Bei-lu,
Chaoyang District, Beijing,
Beijing Fortune Bldg., Room No.907,
People's Republic of China
Phone: +86-10-6590-8966
Facsimile: +86-10-6590-8968

**O  Japan Steel Works America,
Inc.
     Head Office**
200 Park Ave., Suite 3520, New York,
N.Y. 10166, U.S.A.
Phone: +1-212-490-2630
Facsimile: +1-212-490-2575

**P  Houston Office**
9801 Westheimer, Suite 1050, Houston,
Texas 77042, U.S.A.
Phone: +1-713-953-9151
Facsimile: +1-713-953-1439

**Q  JSW Plastics Machinery, Inc.
     Head Office**
3726 East Miraloma Ave., Anaheim,
California 92806, U.S.A.
Phone: +1-714-630-5651
Facsimile: +1-714-630-1886

**R  Detroit Office**
24404 Catherine Industrial Drive,
Suite 310 Novi, Michigan 48375, U.S.A.
Phone: +1-248-449-5422
Facsimile: +1-248-449-6018

**S  Atlanta Office**
1700 Cumberland Point Drive, Suite 17,
Marietta, Georgia 30067, U.S.A.
Phone: +1-770-952-0269
Facsimile: +1-770-956-9058

**T  Chicago Technical Center**
1300 Landmeire Road, Elk Grove Village,
Illinois 60007, U.S.A.
Phone: +1-847-427-1100
Facsimile: +1-847-427-1131

**U  JSW Plastics Machinery (S)
     Pte Ltd
     Head Office**
17 Gul Lane, Jurong Town,
Singapore 629413,
Republic of Singapore
Phone: +65-68614511
Facsimile: +65-68623166

**V  Bangkok Office**
496/111-112 Sathupradit Road,
Bangpongpang Yannawa, Bangkok
10120, Kingdom of Thailand
Phone: +66-2-682-2011
Facsimile: +66-2-682-2015

**W  Philippine Office**
Chemdis Bldg., Don Jesus BLVD. Alabang
Hills Village Alabang, Muntinlupa City,
Metro Manila, Philippines
Phone: +63-2-809-8982
Facsimile: +63-2-809-6221

**X  JSW Plastics Machinery
     (H.K.) Co. Ltd.
     Head Office**
Room 907, Corporation Park, 11 On Lai
Street, Sha Tin, New Territories,
Hong Kong
Phone: +852-2648-0720
Facsimile: +852-2686-8204

**Y  JSW Plastics Machinery
     (TAIWAN) Corp.
     Head Office**
1st Floor, No.63, Wenhua 3rd Rd.
Gueishan Shiang, Taoyuan, Taiwan,
R.O.C.
Phone: +886-3-396-2102
Facsimile: +886-3-396-2104

**Z  Tainan Office**
15th Floor-7, No. 689-78, Shiau E. Rd.,
Yung kang City, Tainan, Taiwan, R.O.C.
Phone: +886-6-3114192
Facsimile: +886-6-3114193

**EXHIBIT "3"**

0700.0078/1794

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC | § | |
| COMPONENTS. INC., | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-01-148 |
| | § | |
| JSW PLASTICS MACHINERY. INC. | § | [Assigned to the Hon. Hilda G. Tagle] |
|     Defendant | § |   Stipulated to Magistrate Felix Recio] |

---

## PLAINTIFF'S ANSWERS TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S REQUESTS FOR ADMISSIONS

---

TO:    Defendant, JAPAN STEEL WORKS AMERICA, INC., by and through their attorney of record:

      David G. Garza
      **Garza & Garza, L.L.P.**
      680 East St. Charles, Suite 300
      P.O. Box 2025
      Brownsville, Texas  78522-2025

      NOW COMES, Plaintiff, EXEL BOBBINS AND PLASTIC COMPONENTS, INC., in the

above-styled and numbered cause, and pursuant to the Federal Rules of Civil Procedure, and make

this their "Answers to Defendant's Request for Admissions" as required by said rule.

Respectfully submitted,

**GRIFFITH, HILL & OCHOA, L.L.P.**
One Park Place, Suite 500
100 Savannah Avenue
McAllen, Texas 78503
(956) 971-9446
(956) 971-9451 - facsimile

By:_____
Viola G. Garza
State Bar No. 00787518


Moises M. Salas, Jr.
Law Offices of Moises M. Salas, Jr.
847 East Harrison
Brownsville, Texas 78520
(956) 982-0600
(956) 982-0601 (fax)
ATTORNEYS FOR PLAINTIFF
EXEL BOBBINS AND PLASTIC
COMPONENTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument was forwarded to all counsel of record, to wit:

*Attorney-In-Charge for Defendant:*
David G. Garza
**Garza & Garza, L.L.P.**
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
(956) 541-4914
(956) 542-7403 (fax)

James J. Regan
Regan - Braun Law Offices
2522 Artesia Blvd., Suite 200
Redondo Beach, California 90278
(310) 372-1988
(310) 318-5894 (fax)

via CERTIFIED MAIL, return receipt requested, on this ___ day of January, 2003.

By: _____
　　　 Viola G. Garza

## PLAINTIFF'S ANSWERS AND/OR OBJECTIONS
## TO DEFENDANT JAPAN STEEL WORKS AMERICA, INC.'S
## REQUESTS FOR ADMISSIONS

### REQUEST NO. 1:

Admit that during the year 1999, PLAINTIFF had no COMMUNICATION concerning the CONTRACT with any PERSON who represented themselves to PLAINTIFF as acting on behalf of JSWA.

### RESPONSE:

Admit.

### REQUEST NO. 2:

Admit that during the year 2000, PLAINTIFF had no COMMUNICATION concerning the CONTRACT with any PERSON who represented themselves to PLAINTIFF as acting on behalf of JSWA.

### RESPONSE:

Admit.

### REQUEST NO. 3:

Admit that during the year 2001, PLAINTIFF had no COMMUNICATION concerning the CONTRACT with any PERSON who represented themselves to PLAINTIFF as acting on behalf of JSWA.

### RESPONSE:

Admit.

### REQUEST NO. 4:

Admit that PLAINTIFF did not negotiate the terms and provisions of the CONTRACT with any PERSON who represented themselves to PLAINTIFF as acting on behalf of JSWA.

**RESPONSE:**

Admit.

**REQUEST NO. 5:**

Admit that PLAINTIFF had no COMMUNICATIONS concerning any disputes concerning the CONTRACT with any PERSON who represented themselves to PLAINTIFF as acting on behalf of JSWA.

**RESPONSE:**

Admit.

**REQUEST NO. 6:**

Admit that JSWA is not a party to the CONTRACT.

**RESPONSE:**

Deny.

**REQUEST NO. 7:**

Admit that JSWA is not a signatory to the CONTRACT.

**RESPONSE:**

Admit.

**REQUEST NO. 8:**

Admit that JSWA is not referenced in any manner in the CONTRACT.

**RESPONSE:**

Admit.

## REQUEST NO. 9:

Admit that no representation s concerning the CONTRACT were made to PLAINTIFF by JSWA at any time between January 1, 1999 and December 31, 2001.

## RESPONSE:

Admit.

## REQUEST NO. 10:

Admit that PLAINTIFF has no evidence that the decision by JSW/PMI to extend credit to PLAINTIFF was influenced or determined by JSWA.

## RESPONSE:

Deny.

## REQUEST NO. 11:

Admit that PLAINTIFF has no evidence that the decision by JSW/PMI to sell machinery to PLAINTIFF was influenced or determined by JSWA.

## RESPONSE:

Deny.

## REQUEST NO. 12:

Admit that PLAINTIFF has no evidence that the decision by JSW/PMI to "abandon and renounce the contract," as alleged in the COMPLAINT, was influenced or determined by JSWA.

## RESPONSE:

Deny.

## REQUEST NO. 13:

Admit that PLAINTIFF has no evidence that JSWA owned or controlled any stock in JSW/PMI during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 14:**

Admit that PLAINTIFF has no evidence that JSWA employees, officers or members of its board of directors sat on the board of directors of JSW/PMI at any time during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 15:**

Admit that PLAINTIFF has no evidence that the books and records of JSWA and JSW/PMI have at any time during the period January 1,1999 through the date of YOUR response to this REQUEST been kept other than separately from one another.

**RESPONSE:**

Admit.

**REQUEST NO. 16:**

Admit that PLAINTIFF has no evidence that JSWA employees, officers or members of its board of directors served as an officer of JSW/PMI at any during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 17:**

Admit that PLAINTIFF has no evidence that JSWA and JSW/PMI have shared corporate offices or other business facilities with one another at any time during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 18:**

Admit that PLAINTIFF has no evidence that at any time the period January 1,1999 through the date of YOUR response to this REQUEST. JSWA had any authority, direct or indirect, to direct or affect determinations by JSW/PMI to extend or to not extend credit to JSW/PMI's customers.

**RESPONSE:**

Deny.

**REQUEST NO. 19:**

Admit that PLAINTIFF has no evidence that JSWA and JSW/PMI had common business departments at any time during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Deny.

**REQUEST NO. 20:**

Admit that PLAINTIFF has no evidence that JSWA has existed solely as a holding company for JSW/PMI at any time during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 21:**

Admit that PLAINTIFF has no evidence that JSWA in any manner used the property ans assets of JSW/PMI as if they were JSWA's own property ans assets at any time during the period January 1,1999 through the date of YOUR response to this REQUEST.

**RESPONSE:**

Admit.

**REQUEST NO. 22:**

Admit that PLAINTIFF has no evidence that JSW/PMI was formed for a fraudulent or illegal purpose.

**RESPONSE:**

Plaintiff does not have specific information to either admit or deny.

**REQUEST NO. 23:**

Admit that PLAINTIFF has no evidence that JSWA was formed for a fraudulent or illegal purpose.

**RESPONSE:**

Plaintiff does not have specific information to either admit or deny.

**REQUEST NO. 24:**

Admit that PLAINTIFF has no evidence that JSW/PMI was inadequately capitalized.

**RESPONSE:**

Plaintiff does not have specific information to either admit or deny.

**REQUEST NO. 25:**

Admit that PLAINTIFF has no evidence that JSWA caused the incorporation of JSW/PMI.

**RESPONSE:**

Plaintiff does not have specific information to either admit or deny.