39

700.0078/1794

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| EXCEL BOBBINS AND PLASTIC COMPONENTS, INC. | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. B-01-148 |
| VS. | § | JURY |
| | § | |
| JSW PLASTICS MACHINERY, INC. | § | |
| Defendant | § | |

---

### PLAINTIFF'S OBJECTIONS AND RESPONSE
### TO DEFENDANT JSW PLASTICS MACHINERY, INC.'S
### MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE
### MOTION FOR CONTINUANCE AND REQUEST FOR SANCTIONS

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **Exel Bobbins and Plastic Components, Inc.,** Plaintiff in the above-numbered and styled cause, and filed this its Objections and Response to Defendant JSW Plastics Machinery, Inc.'s Motion for Summary Judgment, or In The Alternative, Motion for Continuance and Request for Sanctions, and in support thereof, would respectfully show the Court the following:

### I.

### OBJECTIONS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. On or about February 7, 2003, Defendant filed Motions for Summary Judgment alleging that they are entitled to summary judgment on all claims alleged in Plaintiff's petition. Said Motions for Summary Judgment were received by Plaintiff's counsel on February 7, 2003. Said Motions were not filed on a timely basis. Defendant's Motions for Summary Judgment should have been filed _prior_ to February 7, 2003, pursuant to the Court's scheduling order of July 31, 2002.

_Plf's Response to Def's_
_MSJ/Alt. Mot. for Continuance -Page 1_

2. Within Defendant's Motions for Summary Judgment, Defendant's counsel indicates that he will be urging Defendant's Motions for Summary Judgment during the currently scheduled pre-trial hearing of February 27, 2003 at 2:00 p.m. Plaintiff would object to the Defendant's attempt to raise and/or urge their Motions for Summary Judgment on February 27, 2003, at 2:00 p.m., as a hearing at that time would come prior to the Plaintiff's deadline to respond to said Motions for Summary Judgment. Pursuant to the local rules, Plaintiff has at least 20 days to respond to said Motion for Summary Judgment. *Local Rules 5(C), (D) and (E).*

3. On Page 3 of Defendant's Motion for Summary Judgment, Defendant alleges that "all discovery in the action has been completed." *See Defendant's Motion for Summary Judgment, Page 3.* Plaintiff objects to Defendant's statement that discovery is complete. Plaintiff would show the Court that the depositions of Plaintiff's and Defendant's experts have not been taken. Further, Plaintiff has requested that Defendant provide them with dates for the depositions of their experts. However, as of this date, Plaintiff has not been given any dates. The depositions of Plaintiff's experts are scheduled for February 27, 2003, and March 4, 2003. *See Exhibits 1 and 2.* In addition, Plaintiff has filed a Motion to Compel the Defendant to provide adequate responses to Plaintiff's Request for Production of Documents. *Plaintiff would request that the Court take judicial notice of the motion on file with the court.* Plaintiff and Defendant are currently attempting to negotiate further on the Motion to Compel but will most likely need some Court intervention.

4. Plaintiff objects to the affidavit of Hatsumi Akeda, as the affidavit is not the best evidence on whether or not an account actually exists, when said account was opened and the current balance in this account. The best evidence would be any and all documents related to the "Exel account" including, but not limited to the bank statements related to said account since the date of the accounts

inception.

5. Finally, Plaintiff would object to the following portions of Defendant's "statement of facts":

a)    "As of the time of the alleged breach of contract and related torts by JSW-PMI, Exel had not made any profit from its operations and in fact had operated at a loss, as shown by the Exel Tax Returns for 2000 and 2001." *See Defendant's Motion for Summary Judgment, Page 5, Lines 14-16.*

Plaintiff objects to this "Statement of Fact" because the same is not a statement of fact, but instead, Defendant's counsel's conclusory statement based upon his reading of a tax return. Defendant's counsel is not designated nor qualified as an expert herein, and therefore, cannot assert his opinion as to alleged facts herein.

b)    "Thereafter, **pursuant to the Contract**, Plaintiff submitted purchase orders to JSW-PMI for three machines as follows: (1) purchase order #98-1811 dated September 5, 2000 for machine Model J385, purchase price $140,000 (Exhibit B, Regan Affd't); (2) purchase order #9 dated November 7, 2000 for machine Model J500, purchase price $202,500 (Exhibit C, Regan Affd't); (3) purchase order #15 dated January 23, 2001 for machine Model J110, purchase price $84,835. *See Defendant's Motion for Summary Judgment, Page 6, Lines 13-17.*

Plaintiff would object to this "Statement of Fact" because it is not supported by the evidence. Plaintiff submitted purchase orders No. 9 and No. 15 pursuant to the contract dated February 29, 2000. *See Exhibit No. 4.* Further, Plaintiff would assert that Defendant's own employee testified that the purchase of the J385 was not part of the $1.5 million line of credit extended on February 29,

2000. *See deposition of Gerald Johnson, Page 143, Line 19 through Page 144, Line 19.*

     c)     "Plaintiff thereafter made no further payments to JSW-PMI." *See Defendant's Motion for Summary Judgment, Page 18, Lines 7-8.*

Plaintiff objects to this "Statement of Fact" as it misrepresents the facts. Plaintiff and Defendant entered into a payment agreement regarding the J385 on July 13, 2001. *See Exhibit 5.*

## II.

## MOTION FOR CONTINUANCE

6. Within their Motion for Summary Judgment, Defendant has indicated that said Motion is set for February 27, 2003, and has advised the Plaintiff by and through their motion that they intend to urge said motion on that date.

7. Plaintiff has not received any order from the Court setting the Defendant's Motion for Summary Judgment on February 27, 2003. Plaintiff would request this Honorable Court continue the hearing set for February 27, 2003, on the Defendant's Motion for Summary Judgment, if in fact there is a hearing on Defendant's Motion for Summary Judgment set for that date. Pursuant to the Local Rules, Plaintiff as non-movant has at least twenty (20) days to respond to Defendant's Motion for Summary Judgment. *Local Rule 5(C), (D) and (E).* Since Plaintiff was served with the Defendant's Motion for Summary Judgment on February 7, 2003, Plaintiff would have, at the very least, until February 27, 2003 at 5:00 p.m. to file its response. Therefore, urging a motion prior to the deadline for Plaintiff to respond would be unjust.

8. Further, Plaintiff would request a continuance on the hearing until all discovery in the case has been completed. Specifically, the completion of the deposition of both parties experts and until after the Defendant has adequately responded to Plaintiff's Request for Production. *See Exhibits 1*

*and 2.*

9. In the alternative, Plaintiff would request that this Court continue the Defendant's Motion for Summary Judgment on the issue of lost profits. *See Defendant's Motion for Summary Judgment, Page 4, Issue #5.* Defendant asserts that Plaintiff is not entitled to lost profits because Plaintiff's business was new, and there is insufficient testimony from the Plaintiff's principles related to lost profits. *See Defendant's Motion for Summary Judgment, Page 13, Lines 2-4.* However, Plaintiff has retained the accounting firm of PricewaterhouseCoopers, LLP as experts to report on Plaintiff's lost profits. Said report will be presented to Defendant's counsel on the date of the deposition of PricewaterhouseCoopers currently scheduled for March 4, 2003. *See Exhibit 1.* Therefore, Plaintiff would request that the Defendant's Motion for Summary Judgment on the issue of Plaintiff's lost profits not be heard until Plaintiff's expert has had an opportunity to provide his report and testimony on the same.

10. In support of its Motion for Continuance, Plaintiff has attached the Affidavit of William Abington as *Exhibit 6*, the same is incorporated by reference herein as if fully copied and set forth at length.

### III.

### SUMMARY OF PLAINTIFF'S ARGUMENTS

11. Plaintiff asserts that Defendant's Motion for Summary Judgment should in all things be denied because Defendant has not established that they are entitled to summary judgment as a matter of law. In the alternative, Plaintiff would show the Court that a genuine issue of fact exists on each issue presented by the Defendant in its Motion for Summary Judgment, and Plaintiff has requested leave of Court to amend their petition to withdraw those causes of action where they have not

responded.

 12. The Defendant submitted six issues to be ruled upon by the Court:

 a) **Issue #1:** Whether there are genuine issues of material fact sufficient for Plaintiff to meet its burden of proving that Plaintiff performed all conditions precedent to JSW-PMI's performance under the contract.

 Plaintiff would assert that there were no conditions precedent to Defendant's performance under the contract other than the payment of the 1/3 of 5% down. At the very least, there is a genuine issue of material fact as to the existence of any condition precedent, therefore, the Defendant's Motion for Summary Judgment on this issue should be denied.

 b) **Issue #2:** Whether there are genuine issues of material fact sufficient for Plaintiff to establish tort liability in the absence of a breach of the contract.

 Plaintiff has amended its petition to withdraw all causes of action sounding in tort.

 c) **Issues #3 & #4:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish the condition to recovery for conversion that it demanded a return of the funds allegedly converted by JSW-PMI which demand JSW-PMI refused; and Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that JSW-PMI's retention of Plaintiff's down payment was unreasonable or inconsistent with Plaintiff's rights.

 Defendant has misstated the law on this issue. A demand for the repayment is not necessary when a possessor's acts manifest a clear repudiation of the Plaintiff's rights. *Edmunds v. Sanders*, 2 S.W. 2d 697 (Tex. App. - El Paso 1999). Plaintiff

would assert that the Defendant's Motion for Summary Judgment on the issue of conversion should be denied as there exists a genuine issue of material fact on whether or not the acts of Defendant manifest a clear repudiation of the rights of Exel Bobbins to the down payment of $4,855.59 and whether Defendant's retention of said money was unreasonable or inconsistent with Plaintiff's rights.

d) **Issue #5:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that its claim for lost profits for a start-up company is not so speculative that recovery is barred as a matter of law.

Defendant has misstated the law on this issue. Plaintiff is not barred from making a claim for lost profits simply because they are a new business. This is but one factor of many for the Court to consider. Other factors to consider include (1) the experience of the person involved in the new enterprise, (2) the nature of the business activity and (3) the relevant market. The issue of whether Plaintiff is entitled to lost profits is a fact intensive question with many considerations. Defendant's Motion for Summary Judgment on this issue should be denied sine Defendant has not met their burden, and because there exists a genuine issue of material fact as to whether or not Plaintiff is entitled to lost profits. In the alternative, Plaintiff has moved for a continuance on this issue, as the discovery on the Plaintiff's lost profits is not complete. The deposition of Plaintiff's expert on lost profits is scheduled for March 4, 2003.

e) **Issue #6:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish by clear and convincing evidence that JSW-PMI acted fraudulently,

maliciously or wilfully or was grossly negligent and is therefore liable to exemplary damages.

> At the very least, Plaintiff would be allowed to submit a question to the jury on exemplary damages related to their conversion cause of action. If the Plaintiff proves that Defendant's acts and/or omissions of retaining the $4,855.59 down payment were done maliciously, then the submission would be appropriate. Plaintiff would assert that there is a genuine issue of material fact on whether or not the Defendant's acts in retaining possession of the $4,855.59, reflective of the down payment, was malicious, wilful and/or grossly negligent. Therefore, Defendant's Motion for Summary Judgment on the issue of exemplary damages should be denied. This is an issue that should be submitted to the jury.

## STANDARD OF REVIEW

13. The purpose of a summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita v. Zevita, 475 U.S. 574 (1986).*

14. Summary Judgment is proper in a case where there is no genuine issue of material fact. *Fed. R.Civ.P. Rule 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).* A defendant who 1) seeks summary judgment on a plaintiff's causes of action **must** demonstrate the absence of a genuine issue of material fact by either submitting summary judgment evidence that negates the existence of a material fact on plaintiff's claims which he seeks motion for summary judgment or, 2) showing there is no evidence to support an essential element of plaintiff's claim. *Celotex Corp. v. Catrett, 477 U.S. at 322-25, 106 S.Ct. 2552-54.*

15. Although summary judgment is proper in a case where there is no genuine issue of

material fact, Defendant cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element of its claim. Rather, Defendant must demonstrate an absence of genuine factual dispute. *See Celotex Corp., 477 U.S. 327, 106 S.Ct. 2555.* Initially, it is the moving party's burden to establish that there is no genuine issue of material fact. *Fontenot v. Up John Co., 780 F2d 1190 (5th Cir. 1986).* It is not enough to move for Summary Judgment with conclusory assertions. *Altex v. Catrett, 477 U.S. at 326.* Only if Defendant meets its burden is Plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

16. In determining whether there is a disputed issue of material fact that precludes summary judgment, the Court must consider all evidence in the light most favorable to the Plaintiff as the non-movant. *H.O.M. vs. Squire, 81 F. 3d 969, 973 (Tenth Cir. 1996).*

## PLAINTIFF'S ARGUMENTS

17. Plaintiff asserts that the Defendant has failed to meet its burden to demonstrate the absence of a genuine factual dispute on the issues raised. Defendant's Motion is littered with misrepresentations of fact and law and conclusory statements which Defendant's counsel draws himself. Defendant's misrepresentations and conclusory statements only confirm that there is a genuine issue of material fact on all of the Plaintiff's causes of action, as the Defendant cannot rely on any evidence to support their motion.

18. Although Plaintiff does not believe that Defendant's motion merits a response because they have not met their burden, out of an abundance of caution, Plaintiff's responses to each of the issues raised by the Defendant will be found below.

**Defendant's Issue Number 1:** Whether there are genuine issues of material fact sufficient for

Plaintiff to meet its burden of proving that Plaintiff performed all conditions precedent to JSW-PMI's performance under the contract.

19. Defendant's Issue Number 1 should in all things be denied, as a simple reading of the contract between the Plaintiff and Defendant does not include any conditions precedent other than the payment of the 1/3 of the 5% down contemplated in the contract. *See Exhibits 4 and 7*. Exhibits 4 and 7 are the two contracts upon which the Plaintiff is basing its breach of contract claim. *Plaintiff would request that the Court take judicial notice of Plaintiff's last amended petition.* Exhibit 7 is a copy of the $1.5 million line of credit which clearly does not contain any conditions precedent to be performed by the Plaintiff. Exhibit 4 is a copy of the contract entered into between Plaintiff and Defendant related to the delivery of the J500 and J110. The only condition precedent contained in this letter is the payment of the $4,855.59 which is 1/3 of the 5% down. On April 30, 2001, Plaintiff, by and through their President, Steve Becker, paid to JSW the total sum of $4,855.59. *See Exhibit 8*. Receipt of this payment is confirmed by Defendant on May 10, 2001. *See Exhibit 9*. The payment of $4,855.59 was the only condition precedent to the Defendant's performance of the contract. Plaintiff performed that condition on April 30, 2001, and asked for the delivery of the first two machines related to the $1.5 million line of credit. *See Exhibit 10*. Defendant failed to deliver these machines. *See deposition of Jerry Johnson, Page 143, Lines 3-5*.

20. Defendant in his Motion for Summary Judgment attempts to mislead the Court into believing that the conditions precedent he listed were part of the contracts between the parties by stating:

> "As the facts clearly indicate:
>
> Condition 1: Plaintiff failed to make timely down payments for ordered equipment;

Condition 2: Plaintiff failed to issue purchase orders in a timely fashion;

Condition 3: UCC financing statements for equipment purchased or to be purchased were not executed by Plaintiff as required; and

Condition 4: JSW-PMI never received a written commitment or copy of a purchase order from Sunbeam-Oster to acquire plastic components from Plaintiff." *See Defendant's Motion for Summary Judgment, Page 8.*

Defendant makes these "statements" without any evidentiary support. Defendant fails to cite any supporting testimony or documentary evidence which would verify that the list of "conditions precedent" in fact exist.

21.  Plaintiff would show the Court that the letter agreements between the parties attached as *Exhibits 4 and 7* comprise the entirety of the contracts between the parties. Said documents fully integrate the terms agreed upon between the parties. Because *Exhibits 4 and 7* reflect the entire agreement between the parties, only these writings may be considered by the Court in determining whether or not there existed any condition precedent for the non-performance of the contract by JSW. At the very least, a genuine issue of material fact exists as to whether or not conditions precedent existed and, if they did, what those conditions were.

22.  Plaintiff is confident that upon review of the documentary evidence submitted by the Plaintiff, that the Court will find that none of the conditions precedent, which Defendant claims are "clearly supported by facts," ever existed and nor are they clearly supported by the facts.

23.  However, should the Court find that the conditions precedent listed by the Defendant are in fact conditions precedent to the performance of JSW, Plaintiff would show the Court that Plaintiff has met all of the alleged conditions triggering performance by JSW.

**Proof of Plaintiff's Performance of Condition 1:**

Plaintiff would refer the Court to a copy of *Exhibit Nos. 8 and 9* which are attached hereto and incorporated by reference herein. Exhibit 8 is proof that Plaintiff made the 1/3 of the 5% down payment on a timely basis. Exhibit 9 is proof that Defendant received the payment and did not complain about the timeliness of the payment.

**Proof of Plaintiff's Performance of Condition 2:**

Attached hereto and incorporated by reference herein are *Exhibit Nos. 11 and 12* which are purchase orders for the J110 and J500 which were timely submitted to the Defendant.

**Proof of Plaintiff's Performance of Condition 3:**

Attached hereto and incorporated by reference herein, are *Exhibits 13 and 14* which are the UCC documents signed by Steve Becker, President of Exel Bobbins.

**Proof of Plaintiff's Performance of Condition 4:**

Attached hereto and incorporated by reference herein, are *Exhibits 3 and 15* . Exhibit 3 is a copy of a letter from Sunbeam forwarded to JSW. Exhibit 15 is the affidavit of Steve Becker indicating that he forwarded said letter to JSW prior to May 10, 2001.

24. Because Plaintiff has provided evidence that they have complied with the "conditions precedent" created by Defendant's counsel, Defendant's Motion for Summary Judgement on this issue should be denied. Again, at the very least, a genuine issue of material fact exists as to whether or not the Plaintiff met the conditiona precedent so as to trigger the performance of JSW. Such issue of material fact should be submitted to a jury.

**Defendant's Issue Number 2:** Dismissed by the Plaintiff.

**Defendant's Issue Number 3:** Whether there are genuine issues of material fact sufficient for

Plaintiff to be able to establish the condition to recovery for conversion that it demanded a return of the funds allegedly converted by JSW-PMI, which demand JSW-PMI refused, and **Defendant's Issue Number 4:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that JSW-PMI's retention of Plaintiff's down payment was unreasonable or inconsistent with Plaintiff's rights.

25.    Defendant argues to the Court that Plaintiff's causes of action for conversion fails because Plaintiff never made a demand for the return of the funds converted. *See Defendant's Motion for Summary Judgment Page 10.* However, Defendant's argument is an obvious excuse for their malicious behavior which they have continually shown in business dealings with Plaintiff.

26.    In general, a Plaintiff must prove that at the time of the conversion, he/she was the owner of the property, had legal possession of it or was entitled to possession. *Edmunds v. Sanders,* 2 S.W. 3d 697 (Tex. App. - El Paso 1999). Defendant has not raised an issue nor provided any evidence that Plaintiff was not the legal owner of the $4,855.59 paid by Plaintiff to Defendant on April 30, 2001.

In fact, Defendant confirms by and through the affidavit of Hatsumi Akeda that the $4,855.59 currently being held belongs to Plaintiff. *See Exhibit 19.* Further, as of the date of filing this response, the $4,855.59 has not been returned. *See Exhibit 15.*

27.    The only issued raised by the Defendant here is the lack of a demand for the return of the down payment. "Ordinarily, the Plaintiff alleging conversion must establish that he demanded return of the property and that the Defendant refused to return it; however, demand and refusal are <u>not</u> necessary when the possessor's acts manifest a clear repudiation of the Plaintiff's rights. *Edmunds* at 703. Defendant's letter of May 10, 2001, whereby Defendant advises Plaintiff that they will apply all other funds from Exel Bobbins received toward the recovery and remarketing of the

Model J385 machine is clear repudiation of Plaintiff's rights related to the $4,855.59." *See Exhibit 9 and Defendant's Motion for Summary Judgment Page 7 and 8* where Defendant confirms they were retaining the funds. Further, attached hereto and incorporated by reference herein is *Exhibit 15*, the affidavit of Steve Becker, President of Exel Bobbins, whereby he states that he believed, based on this letter, that JSW would not be returning the $4,855.59 down payment. *See Exhibit 15.*

28.  In the fourth issue raised by Defendant, Defendant attempts to convince the Court that the retention of the down payment, even if Plaintiff would have made a demand, would not constitute conversion because such refusal to return the funds was made in good faith to resolve a doubtful matter or to investigate the right of the parties. *Citing Edmund v. Sanders, 2 S.W. 3d 697, 704 (Tex. App. - El Paso 1999).* However, Defendant again provides absolutely no evidence in support of this position. Defendant's statements here are entirely conclusory and unsupported by the evidence in this case.

29. The contract between the parties for the purchase of the J500 and J110 required payment of the $4,855.59 prior to delivery. *See Exhibit 4.* The payment by Plaintiff of the $4,855.59 was specifically made for the purchase of the J500 and J110. *See Exhibits 4 and 8.* On May 10, 2001, Defendant confirms that they received the payment and that the payment was representative of the 1/3 of the 5% down on the J500 and J110. *See Exhibit 9.* When the Defendant did not deliver the machines, they should have returned the $4,855.59 down payment. The failure of the Defendant to refund this down payment when they knew they were not going to deliver the machines was a clear repudiation of Plaintiff's rights. At the very least, there exists a genuine issue of material fact on whether or not Defendant's actions and letter of May 10, 2001, was a clear repudiation of Plaintiff's rights.

**Defendant's Issue Number 5:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish that its claim for lost profits for a start-up company is not so speculative that recovery is barred as a matter of law and **Defendant's Issue Number 6:** Whether there are genuine issues of material fact sufficient for Plaintiff to be able to establish by clear and convincing evidence that JSW-PMI acted fraudulently, maliciously or wilfully or was grossly negligent and it therefore liable for exemplary damages.

30. Plaintiff requests the Court continue the hearing on this issue until Plaintiff's expert on lost profits has had an opportunity to provide his report and testimony on this issue. Said deposition is scheduled for March 4, 2003, and the report is expected to be produced on this same date.

31. In the event the Court will not entertain and grant the Motion for Continuance on this issue, the Plaintiff would assert that Defendant's Motion for Summary Judgment on these issues should be denied as there exists a genuine issue of material fact on whether or not Plaintiff is entitled to lost profits.

32. The Defendant has cited some cases in support of its proposition that Plaintiff is not entitled to lost profits because lost profits for a new business are too speculative, and should thus not be awarded. However, the Defendant misstates the applicable law. The Supreme Court of Texas citing some of the same cases cited by the Defendant gives us the applicable law for the recovery of lost profits. *Helena v. Wilkinson, 47 S.W. 3d 486 (Tex. 2001).* The Court states:

"Recovery of lost profits does <u>not</u> require that the loss be susceptible to exact calculations. However, the injured party must do more than show that it suffered some lost profits. The loss amount must be shown by competent evidence with reasonable certainty. This is a fact intensive determination. At a minimum, opinions

or lost profits estimates must be based on objective facts, figures or data from which the lost profit amounts may be ascertained." *Id.*

33.  The Court further held in *Helena* that lack of a profit history does by itself preclude a new business from recovering lost future profits. Citing *Orchid Software, Inc. v. Prentice-Hall, Inc.*, 804 S.W. 2d 208 (Tex. App. - Austin 1991, writ denied).  Rather the Court focused on whether damages can be shown with reasonable certainty. *SZC Zeparik*, 883 S.W. 2d at 649.  This can be accomplished with a profit history or some other objective data, such as future contracts from which lost profits can be calculated with reasonable certainty.  *SZC Zeparik*, 883 S.W. 2d at 649; *Allied Bank W. Loop v. CBD & Assoc., Inc.*, 728 S.W. 2d 4d, 54-55 [Houston 1st Dist.] (1987, writ ref'd n.r.d.).

34.  The Defendant attempts to mislead this Court by citing cases that do not hold what he is suggesting.  Defendant cites *Texas Instrument v. Teletron*, in support of its proposition that a new business is not entitled to lost profits.  However, this case clearly holds the opposite.  The Texas Supreme Court in *Texas Instrument v. Teletron* stated: "When there are firmer reasons to expect a business to yield a profit, the enterprise is not prohibited from recovery merely because it is new. *Texas Instruments, Inc. v. Teletron Energy Management, Inc., 877 S.W. 2d 276 (Tex. 1994).*

35.  In fact, there are several factors to consider in determining whether or not the Plaintiff is entitled to lost profits.  Some of these factors include (1) the experience of the person involved in the enterprise; (2) the nature of the business activity and (3) the relevant market. *Texas Instruments, Inc. v. Teletron Energy Management, Inc., 877 S.W. 2d 276 at 279-80 (Tex. 1994).*

36.  Plaintiff Exel is a corporation owned by Steve Becker and John Annoreno. *See Exhibit 15.*  Exel was formed to make and sell plastic parts. *See Exhibits 17 and 18.*  Combined, Mr. Becker

and Mr. Annoreno have been in this business for over ten (10) years. *See Exhibit 18.* Prior to becoming President of Exel, Mr. Becker worked with Mr. Annoreno at his plastics facility, Exel Plastics, in Chicago, Illinois. *Exhibit 18.* Exel Plastics manufactures and sells plastic parts. *Exhibit 18.* The business of manufacturing and selling plastic parts is not speculative. *Exhibit 15.* Exel Bobbins was opened in Brownsville, Texas because its principals saw a demand for the manufacture of plastic parts which were not being met by the local supply. *Exhibit 17.*

## CONCLUSION

Therefore, based on the evidence presented by the Plaintiff, the Defendant's misstatements of facts and conclusory statements, Defendant's Motions should in all things be denied.

Further, Plaintiff seeks sanctions based upon the filing of Motions filled with blatant misstatements and conclusory statements which are unsupported by any evidence. The filing of this motion forced the Plaintiff to Respond to this Motion for Summary Judgment and incur attorney's fees and expenses, which the Plaintiff seeks to recover from the Defendant.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, EXEL BOBBINS AND PLASTIC COMPONENTS, respectfully requests that this Court deny Defendant's Motion for Summary Judgment and award sanctions in the amount of $2,500.00, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GRIFFITH, HILL & OCHOA, L.L.P.**
One Park Place
100 Savannah, Suite 500
McAllen, Texas 78503
(956) 971-9446
(956) 971-9451 - facsimile

By: _____
    John R. Griffith
    Federal I.D. No. 12186
    State Bar No. 08480750
    Viola G. Garza
    State Bar No. 00787518

    Moises M. Salas, Jr.
    **Law Office of Moises M. Salas, Jr.**
    847 E. Harrison
    Brownsville, TX 78520
    State Bar No. 00786217
    Federal I.D. No. 17506

**ATTORNEYS FOR PLAINTIFF**
**EXCEL BOBBINS AND PLASTIC**
**COMPONENTS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing instrument was forwarded to all counsel of record, to wit:

David C. Garza
**Garza & Garza, L.L.P.**
680 E. St. Charles, Suite 300
Brownsville, TX 78522-2025
(956) 541-4914
(956) 542-7403 (fax)
*Attorney-in-charge for JSW Plastics Machinery, Inc.*

James J. Regan
Lorne Lilienthal
**Regan & Braun Law Offices**
2533 Artesia Blvd, Suite 200
Redondo, CA 90278
(310) 372-1988
(310) 318-5894 (fax)
*Attorneys for JSW Plastics Machinery, Inc.*

On this _____ day of February, 2003

Viola G. Garza

700.0078/1794

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EXCEL BOBBINS AND PLASTIC §
COMPONENTS, INC. §
　　　　　Plaintiff §
§       CIVIL ACTION NO. B-01-148
VS. §       JURY
§
JSW PLASTICS MACHINERY, INC. §
　　　　　Defendant §

## **VERIFICATION**

THE STATE OF TEXAS　　§
　　　　　　　　　　　§
COUNTY OF HIDALGO　　§

BEFORE ME, the undersigned authority, on this day personally appeared VIOLA G. GARZA, known to me to be the person whose name is subscribed hereto, and who stated upon oath, duly given, that she is qualified in all respects to make this affidavit and that the matters contained in the foregoing Plaintiff's Objections and Response to Defendant Jsw Plastics Machinery, Inc.'s Motion for Summary Judgment, Alternative Motion for Continuance and Request for Sanctions are true and correct.

2-26-03
Date signed

_____
Viola G. Garza

SWORN TO AND SUBSCRIBED BEFORE ME on this _____ day of _____, 2003.

_____
NOTARY PUBLIC, In and for the
State of Texas County of Hidalgo

*Plf's Response to Def's
MSJ/Alt. Mot. for Continuance -Page 20*

700.0078/1794                IN THE UNITED STATES DISTRICT COURT
                             FOR THE SOUTHERN DISTRICT OF TEXAS
                                    BROWNSVILLE DIVISION

EXCEL BOBBINS AND PLASTIC          §
COMPONENTS, INC.                   §
                Plaintiff          §
                                   §        CIVIL ACTION NO. B-01-148
VS.                                §             JURY
                                   §
JSW PLASTICS MACHINERY, INC.       §
                Defendant          §

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――

BE IT REMEMBERED, that on the _____ day of _____, 2003,

Defendant JSW Plastics Machinery, Inc.'s Motion for Summary Judgment came before the Court,

and after considering the Motion presented by Defendant's counsel, the Court is of the opinion, as

so finds, that the Defendant's Motion for Summary Judgment should be denied.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant's

Motion for Summary Judgment should be, and the same is **DENIED**.

Signed this _____ day of _____, 2003.


                              _____
                                    JUDGE PRESIDING

cc:
John Griffith, Viola Garza, **Griffith, Hill & Ochoa, L.L.P.**, 100 Savannah, Suite 500, McAllen, Texas 78503

Moises M. Salas, Jr., **Law Office of Moises M. Salas, Jr.**, 847 E. Harrison, Brownsville, TX 78520

David C. Garza, **Garza & Garza, L.L.P.**, 680 E. St. Charles, Suite 300, Brownsville, TX 78522-2025

James J. Regan, **Regan & Braun Law Offices**, 2533 Artesia Blvd, Suite 200, Redondo, CA 90278

# APPENDIX

| Exhibit Number | Description |
| --- | --- |
| 1 | Deposition Notice of Bill Abington |
| 2 | Deposition Notice of Wayne Wells |
| 3 | Letter from Sunbeam |
| 4 | January 30, 2001 contract |
| 5 | July 13, 2001 contract on refinance of J385 |
| 6 | Affidavit of Bill Abington |
| 7 | Contract of February 29, 2000, $1.5 million line of credit |
| 8 | Check for $4,855.59 |
| 9 | May 10, 2001 letter |
| 10 | Confirmation of 1/3 down payment |
| 11 | Purchase Order 15 |
| 12 | Purchase Order 9 |
| 13 | UCC for J110 |
| 14 | UCC for J500 |
| 15 | Affidavit of Steve Becker |
| 16 | Affidavit of Viola G. Garza |
| 17 | Newspaper Article |
| 18 | Steve Becker's letter of qualifications |
| 19 | Affidavit of Hatsumi Akeda |

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § § | [Assigned to the Hon. Hilda G. Tagle] Stipulated to Magistrate Felix Recio |
| vs. | § § § | Date:      February 27, 2003 |
| JSW PLASTICS MACHINERY, INC., | § § § | Time:      9:30 a.m. Location:  Garza & Garza |
| Defendant. | § § § | 680 East St. Charles, #300 Brownsville, Texas 78520 |

---

## NOTICE OF DEPOSITION OF
## WAYNE E. WELLS, Ph.D.

---

PLEASE TAKE NOTICE that Defendant JSW PLASTICS MACHINERY, INC. will take the deposition, on oral examination, of WAYNE E. WELLS, Ph.D. on February 27, 2003 at 9:30 a. m.

The deposition will be taken at Garza & Garza, 680 East St. Charles, Suite 300, Brownsville, Texas 78520.

Notice is further given that at the time and place above-specified for the deposition of WAYNE E. WELLS, Ph.D., said deponent is required to bring with him and to produce books, documents, records and other tangible things described below which is incorporated by reference, in accordance with Rule 30 of the Federal Rules of Civil Procedure.

The deposition will be taken before a notary public authorized to administer oaths in the State of Texas. The deposing party intends to have the proceedings recorded by stenographer and videographer, and if said deposition is not completed on said date, the

REC'D JAN 27 2003

taking thereof will be continued from day to day, excluding Sundays and holidays until

completed.  This notice and the deposition will be taken in accordance with Rule 30 of

the <u>Federal Rules of Civil Procedure</u>.


Dated: January 22,  2003                By: _____

                                             JAMES J. REGAN
                                             CA SBN 80576
                                             REGAN • BRAUN LAW OFFICES
      2522 Artesia Boulevard, Suite 200
      Redondo Beach, California 90278
      Tel: (310) 372-1988
      Fax: (310) 318-5894


      DAVID C. GARZA
      SBN 07731400
      GARZA & GARZA, L.L.P.
      680 East St. Charles, Suite 300
      P.O. Box 2025
      Brownsville, Texas 78522-2025
      Tel: (956) 541-4914
      Fax:(956) 542-7403
      Attorney-in-Charge for JSW PLASTICS
      MACHINERY, INC.

EXHIBIT "1"

REQUEST NO. 1:

Please produce all correspondence from Plaintiff Exel Bobbins, Inc., their attorneys, representatives and/or personnel at any time from January 1, 2001 to the date of deposition regarding the subject matter of this case.

REQUEST NO. 2:

Please produce all writings directed by you to Exel Bobbins, Inc., its attorneys, representatives and/or personnel issued by you at any time from January 1, 2001 to the date of deposition regarding the subject matter of this case.

REQUEST NO. 3:

Please produce all writings in which you consulted to render an opinion in the subject case.

REQUEST NO. 4:

Please produce the entire file that you have on the subject case.

REQUEST NO. 5:

All written calculations that you have made in preparation for rendering an opinion in this case.

REQUEST NO. 6:

All charts, graphs and similar such writings that you have made in preparation for rendering an opinion in this case and/or for presentation at time of trial.

REQUEST NO. 7:

All photographs, videos and other forms of visual expression which you have used in rendering an opinion or intend to present at time of trial.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **NOTICE OF DEPOSITION OF WILLIAM WELLS** have been served on the Plaintiffs' attorney of record as follows to the following address on this the 23rd day of January, 2003:

John R Griffith                     Certified Mail/RRR
Viola G. Garza                      No. 7002 0460 0001 8005 2283
GRIFFITH, HILL & OCHOA, LLP         and Via Fax: (956) 971-9451
One Park Place
100 Savannah Avenue, Suite 500
McAllen, Texas 78503

Moises M. Salas, Jr.                Certified Mail/RRR
LAW OFFICES OF MOISES M. SALAS, JR  No. 7002 0460 0001 8005 2276
847 E. Harrison                     And Via Fax: (956) 982-0601
Brownsville, Texas 78520

                                    James J. Regan

EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

EXEL BOBBINS AND PLASTIC
COMPONENTS, INC.,

      Plaintiff,

vs.

JSW PLASTICS MACHINERY, INC.,

      Defendant.

CIVIL ACTION No. B-01-148

[Assigned to the Hon. Hilda G. Tagle]
  Stipulated to Magistrate Felix Recio

Date:     February 4, 2003
Time:     3:00 p.m.
Location:  Lindeman & Frye
          808 Travis Street, #1605
          Houston, Texas 77002

## NOTICE OF DEPOSITION OF
## WILLIAM ABINGTON, CPA

PLEASE TAKE NOTICE that Defendant JSW PLASTICS MACHINERY, INC.
will take the deposition, on oral examination, of WILLIAM ABINGTON, CPA on
~~February~~ March 4, 2003 at 3:00 p. m.

The deposition will be taken at Lindeman & Frye, 808 Travis Street, Suite 1605,
Houston, Texas 77002

Notice is further given that at the time and place above-specified for the
deposition of WILLIAM ABINGTON, said deponent is required to bring with him and to
produce books, documents, records and other tangible things described below which is
incorporated by reference, in accordance with Rule 30 of the Federal Rules of Civil
Procedure.

The deposition will be taken before a notary public authorized to administer oaths
in the State of Texas. The deposing party intends to have the proceedings recorded by
stenographer and videographer, and if said deposition is not completed on said date, the

RECD JAN 27 2003

taking thereof will be continued from day to day, excluding Sundays and holidays until completed. This notice and the deposition will be taken in accordance with Rule 30 of the Federal Rules of Civil Procedure.

Dated: January 23,  2003

By: JAMES J. REGAN
CA SBN 80576
REGAN • BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel: (310) 372-1988
Fax: (310) 318-5894

DAVID C. GARZA
SBN 07731400
Federal Admissions No. 3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel: (956) 541-4914
Fax:(956) 542-7403
Attorney-in-Charge for JSW PLASTICS
MACHINERY, INC.

EXHIBIT "1"

**REQUEST NO. 1:**

Please produce all correspondence from Plaintiff Exel Bobbins, Inc., their attorneys, representatives and/or personnel at any time from January 1, 2001 to the date of deposition regarding the subject matter of this case.

**REQUEST NO. 2:**

Please produce all writings directed by you to Exel Bobbins, Inc., its attorneys, representatives and/or personnel issued by you at any time from January 1, 2001 to the date of deposition regarding the subject matter of this case.

**REQUEST NO. 3:**

Please produce all writings in which you consulted to render an opinion in the subject case.

**REQUEST NO. 4:**

Please produce the entire file that you have on the subject case including but not limited to all reports, prepared in this case.

**REQUEST NO. 5:**

All written calculations that you have made in preparation for rendering an opinion in this case.

**REQUEST NO. 6:**

All charts, graphs and similar such writings that you have made in preparation for rendering an opinion in this case and/or for presentation at time of trial.

**REQUEST NO. 7:**

All photographs, videos and other forms of visual expression which you have used in rendering an opinion or intend to present at time of trial.

**REQUEST NO. 8:**

All billing records from you to Plaintiff and/or its attorney for work done in this case.

**REQUEST NO. 9:**

A list of all cases you have testified in.

**REQUEST NO. 10:**

A list of all cases you have qualified to be an expert in Federal court.

REQUEST NO. 11:

A list of all cases you have testified in for plaintiff's counsel John Griffith.

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **NOTICE OF DEPOSITION OF WILLIAM ABINGTON, CPA WITH SUBPOENA DUCES TECUM** have been served on the Plaintiffs' attorney of record as follows to the following address on this the 23rd day of January, 2003:

| | |
|---|---|
| John R Griffith<br>Viola G. Garza<br>GRIFFITH, HILL & OCHOA, LLP<br>One Park Place<br>100 Savannah Avenue, Suite 500<br>McAllen, Texas 78503 | Certified Mail/RRR<br>No. 7002 0460 0001 8005 2306<br>and Via Fax: (956) 971-9451 |
| Moises M. Salas, Jr.<br>LAW OFFICES OF MOISES M. SALAS, JR<br>847 E. Harrison<br>Brownsville, Texas 78520 | Certified Mail/RRR<br>No. 7002 0460 0001 8005 2290<br>And Via Fax: (956) 982-0601 |

James J. Regan

EXHIBIT "3"





April 19, 2001

JSW Plastics Machinery Inc.

Dear Sirs:

This letter is a confirmation that Sunbeam-Oster is and will conduct business with Exel Bobbins and Plastic Components Inc. and will book machine time with the said company with production on all machines, we need for the use of running Sunbeam products. This letter doesn't represent a formal commitment with JSW or Exel Plastics until we sign a formal contract, but according the Sunbeam Corp. requirements. Exel comply with all our expectations in price, storage, deliveries, q.c. systems, etc. We appreciate all your cooperation on this project and will expect your full support in all future machine orders pertaining to Exel. Sunbeam will continue to support Exel in future projects and a long lasting relationship

Sincerely,

Lic. Hector Lucio
Purchasing Mgr.

EXHIBIT "4"

*Exhibit D*



**JSW PLASTICS MACHINERY INC.**

January 30, 2001

Mr. Steve Becker
EXEL BOBBINS Inc.
3301 NAFTA Parkway -- Unit C
Brownsville, TX 78521

Dear Steve,

As you will remember, JSW Plastics Machinery, Inc., extended a Line of Credit to your company, EXEL BOBBINS Inc., and now that we are getting close to shipping machines into your facility in Brownsville, TX., we must have an agreement as to the re-payment of this Line of Credit. Therefore, please accept the following proposal. We will be shipping the following Machines, per your Purchase Order #'s 15 and 5.

202,500.00   *per 3/3/2000*
1 – JSW Model J500EII Injection Molding Machine    ~~$ 206,500.00~~    *Quote + our conversation today 3/21/01*
1 – JSW Model J110EII Injection Molding Machine    $  84,835.00
TOTAL INVOICE AMOUNT    *$4788.92*   ~~$291,335.00~~
$ 287,335. 00

A 5% Down Payment of the total order amount is normally required prior to shipment, however we will make a special consideration to EXEL BOBBINS of 3 Equal Monthly Payments of $~~1,355.59~~, with the first payment due prior to shipment of machines, and the next Down Payment Installment is due Thirty (30) days after shipment, and the last Down Payment Installment Sixty (60) days after shipment.
*$ 217,768.23*

After the last Down Payment Installment is made, there will not be any payments due for a period of Six (6) Months. Then, starting on the Seventh (7) Month, EXEL BOBBINS will make Eleven (11) Monthly payments of $5,000.00 until the Twelfth (12) Month, at which time EXEL BOBBINS agrees to make a balloon payment of the balance owed (~~$ 221,768.23~~) to JSW Plastics Machinery. No interest will be charged during this special financing period, however it is agreed that JSW Plastics Machinery will still remain the owner and have recovery rights of this equipment until final payment has been made by EXEL BOBBINS or it's Financial Partner. JSW Plastics Machinery has the right to cancel or withdraw from this agreement after given written notice to EXEL BOBBINS on a Thirty (30) days notice.

Steve, if you are interested in pursuing this agreement, please sign below and return to my attention, a.s.a.p. as we are ready to ship these machines to you. Should you have any questions about this agreement, or require additional information, please feel free to contact Dennis Pochatek at the Chicago Technical Center.

Sincerely,

Jerry Johnson
Vice President Operations

Accepted By: _____
                          Signature
                          President
                          Title
Date: __2/26/01__

CORPORATE OFFICE   3728 EAST MIRALOMA AVENUE, ANAHEIM, CA 92806-2107, PHONE: 714-630-5851   FAX: 714-630-1886
CHICAGO TECHNICAL CENTER   1352 LANDMEIER ROAD, ELK GROVE VILLAGE, IL 60007   PHONE: 847-427-1100   FAX: 847-427-1131
ATLANTA REGIONAL OFFICE   2770 CUMBERLAND POINT DR., SUITE 17, MARIETTA, GA 30067   PHONE: 770-952-0269   FAX: 770-964-9058
DETROIT REGIONAL OFFICE   24464 CATHERINE INDUSTRIAL DR., SUITE 310, NOVI, MI 48375   PHONE: 248-449-5422   FAX: 248-449-6019

# EXHIBIT "5"

# REGAN • BRAUN

### L A W   O F F I C E S

1333 ARTESIA BOULEVARD, SUITE 200
REDONDO BEACH, CALIFORNIA 90278
TEL: (310) 372-4981
FAX: (310) 318-1804
E-MAIL: rregan@regan-law.com
www.regan-law.com

OF COUNSEL

ARTHUR W. FRANCIS, JR.
A PROFESSIONAL CORPORATION

DONALD L. PRICHARD
FRANK D. RORIE

July 13, 2001

**VIA FAX** ( 956) 812-0811
Mr. Steven Becker, President
Exel Bobbins and Plastics Components, Inc.
3301 Nafta Parkway-Unit C
Brownsville, Texas 78521

Re:   $133,000 Owed JSW Plastics Machinery, Inc.
Purchase Order #98-1811

Dear Mr. Becker:

This letter follows up your letter-fax request to JSW Plastics Machinery, Inc. dated July 10, 2001 with a copy to me wherein you requested payment terms as an alternative to a lump sum pay off. Apparently your company Exel Bobbins and Plastics Components ("Exel") was unable to get the pay off monies at this point in time. While JSW-PMI feels strongly these monies are overdue after our discussion, they will try to work you.

JSW Plastics Machinery proposes the following terms and conditions as an addendum to the subject purchase order. Please read carefully. If you are in agreement with the terms and conditions contained herein, please sign at the end of this letter agreement acknowledging your consent to this agreement. Please be aware that your signing of this document will constitute a written contract which can be enforced in a court of law.

In consideration for JSW-PMI foregoing immediate repossession of the 385 JSW EIIP, the parties hereto agree to the additional terms and conditions to Purchase Order No. 98-1811 dated on or about September 5, 2000 are as follows:

1.     All the terms and conditions of Purchase Order No. 98-1811 are reaffirmed in in this agreement subject only to any changes or additions made in this agreement which, if in conflict with the original purchase order, their document's term's and conditions shall prevail

2.     Exel agrees to make a down payment of $10,000 by ~~July 20~~, 2001, pay $2,800 per month commencing August 1, 2001, with a lump sum payment of the outstanding principal and interest due at the end of one (1) year or on July 20, 2002

The outstanding principal of $133,000 shall bear interest at the legal rate of ten percent (10%) on the outstanding balance from April 20, 2001 (per my letter of June 13, 2001) to date of pay off.

Mr Steven Becker President
July 13. 200
Page Two

3    Each installment payment shall be due and payable to JSW-PMI at its Anaheim, California office or wire-transferred on the first day of each month as follows.

Mr. Fumio Hirayama, President
JSW PLASTICS MACHINERY, INC
3726 E. Miraloma Avenue
Anaheim  CA  92806Mr  Steven Becker, President

Bank Name.  Manufacturers Bank
Headquarters Office
Account No:  90-045-270
Routing No.  122226076
Beneficiary:  JSW Plastics Machinery, Inc.

In the event that the payment is not paid by the fifth (5th) day of each month, then, an additional charge shall be made on the outstanding balance

4    In the event that Exel is late on any monthly installment payment, there shall be a one percent (1%) interest charge on the unpaid balance

5    In the event that Exel defaults on the loan repayment plan, then, Exel agrees to not contest JSW-PMI's right to repossess the 385 JSW EIID and will immediately make arrangements for and pay all freight costs to ship the 385 ton press from its present location to JSW-PMI's facility at Anaheim, California

6    Exel and JSW-PMI agree that the sole jurisdiction for any disputes arising from this agreement shall be litigated solely in the County of Los Angeles, State of California  California law shall govern this transaction

7    In the event that a dispute arises as to the interpretation or performance of the subject purchase order or this addendum, then  the prevailing party in such a dispute shall be entitled to reasonable attorney fees and actual costs

8    In the event a UCC Financing Statement has not been executed, then, Exel shall promptly execute any and all financing statements as required by JSW-PMI

Once  you have had an opportunity to review this document, please sign in the area provided below, acknowledging that you have read  agreed, approved and will perform pursuant to this letter agreement

Mr. Steven Becker  President
July 13, 2001
Page Three


Should you have any questions, please do not hesitate to contact me

Sincerely,

/ JAMES J REGAN

JJR cm

c        Mr  umio Hirayama (via fax)
         Mr. erry Johnson (via fax)

READ, AGREED AND APPROVED THIS

__19__ DAY OF JULY, 2001

Steven Becker, President
Exel Bobbins and Plastics Components, Inc
Duly Authorized Agent of the Corporation

EXHIBIT "6"

02/26/2003    17:03    ᴵCEWATERHOUSECOOPERS → 919569719451                    NO.481    P02

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC | § | |
| COMPONENTS, INC. | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. B-01-148 |
| VS. | § | JURY |
| | § | |
| | § | |
| JSW PLASTICS MACHINERY, INC. | § | |
| Defendant | § | |

### AFFIDAVIT OF WILLIAM B. ABINGTON

Before me, the undersigned notary public, personally came and appeared **William B. Abington**, who, being duly sworn, declared as follows:

1.    My name is William B. Abington, I am over 18 years of age, of sound mind, never been convicted of a felony and capable of executing this affidavit. I am a partner with the international accounting and financial consulting firm of PricewaterhouseCoopers LLP ("PwC"). I am based in Houston, Texas, and I lead PwC's Energy Financial Advisory Services practice in the United States. My experience is further detailed in my resumé, which is attached as Exhibit 1.

2.    We have been engaged by Griffith, Hill, & Ochoa LLP ("Griffith") and Exel Bobbins and Plastic Components, Inc. ("Exel Bobbins") to testify regarding PwC's financial analysis related to damages and lost profits to Exel Bobbins in relation to the above referenced matter.

3.    We have reviewed the following information and documentation in calculating the damages and lost profits to Exel Bobbins;

      a.   Exel Bobbins' financial statements 1998 through present

      b.   Contracts between JSW and Exel Bobbins

    c.  Lease agreements entered into by Exel Bobbins

    d.  Operation summaries of Exel Bobbins molding facility

    e.  Correspondence between Sunbeam and Exel Bobbins

    f.  Various Requests for Quotations

    g.  Deposition of Steve Becker and exhibits

    h.  Deposition of Jerry Johnson and exhibits

    i.  Deposition of Hector Lucio and exhibits

4.  Additionally, we have performed the following;

    a.  Discussions with Exel Bobbins management

    b.  Discussions with Wayne Wells

    c.  Tour of the Exel Bobbins facility in Brownsville, Texas

5.  My deposition is currently scheduled for the 4th day of March 2003, at which time I will have a report outlining my current opinions and findings, relating to the damages and lost profits suffered by Exel Bobbins.

Signed at Houston, Texas, this 26th day of February 2003.

William B. Abington

ANDREA E. BRIMMER
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 13, 2006

Notary Public in and for the
State of TEXAS

02/26/2003   17:03   ICEWATERHOUSECOOPERS → 919569719451   NO.481   D05

# EXHIBIT 1

# PRICEWATERHOUSECOOPERS ⓡ                    WILLIAM B. ABINGTON

**POSITION**          Partner - PricewaterhouseCoopers LLP, Houston, Texas.  Directs Firm's Financial
                      Advisory Services, Energy Industry throughout the United States.

**RANGE OF**          Over 20 years of experience in providing litigation and consulting services, audit
**EXPERIENCE**        and tax services, internal control review and financial analysis and valuation.  Is a
                      leader of the Firm's Energy Financial Advisory Services and Environmental
                      Practice.  Litigation and consulting services have included accounting analysis,
                      valuations, lost profits analysis, market share studies, business interruption analysis
                      and various economic calculations.  Has provided services to clients around the
                      world.

**SELECTED**          **Electric and Utilities**
**EXPERIENCE**

                      Performed valuation of an ownership interest in an Indonesian project that
                      included the construction of a co-generation plant and a railroad, as well as the
                      development of a coalmine.  Procedures included analysis of pro-forma financial
                      information for each component of the project.

                      Analyzed trading activity for electricity and natural gas for all regions in the
                      United States.  Analyzed back-to-back trades and other trades that might be
                      considered round trip trades.  Reviewed business purpose of trades and
                      documented methodology and findings.

                      Extracted trading data from computer systems for energy commodities over two-
                      year period.  Determined nature of trade by reviewing trader log books and other
                      documentation, listening to tapes, and interviewing traders.

                      Performed valuation of co-generation facility at various stages of construction.
                      Reviewed gas supply agreement, power purchase agreement, permitting status, and
                      other significant factors that contributed to the value of the facility.

                      Analyzed potential profit associated with non-construction of co-generation facility
                      and lost agreement with Utility Company.  Reviewed co-generation facility
                      construction plans, power source and financial schedules.  Facility was to be built
                      in Colorado and fueled by a nearby natural gas field.

                      Valued a call option for the purchase of electricity.  Reviewed portfolio
                      components, telephone logs and market price information.  Determined the loss
                      associated with the failure to deliver electricity upon exercise of the call.

                      Reviewed coal supply agreement and costs associated with production and loading,
                      for purposes of re-negotiating agreement.  Review involved analysis of fixed fee
                      components and unit price components.  Labor, equipment, maintenance,
                      overhead, supplies and other accounts were analyzed.  Volumes produced were
                      also analyzed and compared to associated costs.

# PRICEWATERHOUSECOOPERS ⓇⒸ                    WILLIAM B. ABINGTON

### Petroleum – Upstream

Analysis of joint venture between government of Turkmenistan and Foreign Party Argentine based Oil Company to develop oil fields near the Caspian Sea. Read contracts and agreements for purposes of understanding responsibilities and obligations of parties. Analyzed capital, operating and financing expenditures.

Analyzed oil purchases made by company pursuant to the terms of a call provision arrangement contained in a Lease and Farmout Agreement. Reviewed pricing and volumetric provisions of the Agreement. Determined the appropriate price to be paid according to the Agreement and compared that price to the price actually paid.

Analyzed royalty payments made to Federal Government on oil production across the United States. Calculated market value at the lease, offshore and onshore, in accordance with federal requirements. Determined royalty price paid to Federal Government and applicable volumes.

Analyzed amount of class settlement to private owners on oil royalty payments and working interest payments made by producer. Determined fairness of settlement based on set standard. Analyzed original royalty and working interest paid, relevant volumes, and settlement price.

Reviewed natural gas royalty payment records of producer. Analyzed production on federal properties and pricing between related parties and third parties. Determined applicable production volume and price paid to Federal Government. Considered U.S. Code of Federal Regulations pricing benchmarks.

Reviewed Company's method for calculating and paying royalties to the Federal Government on oil production. Compared method to the U.S. Code of Federal Regulations. Created electronic model for use in changing variables.

Analyzed price paid for oil and posted prices over a period of ten years. Determined applicable volumes and compared price paid to prices of other buyers. Reviewed oil contracts and production data associated with agreement between producer and buyer.

Coordinated gathering of production data from various oil companies for purposes of identifying volumetric amounts for specific interest owners in specific fields.

Analyzed posted prices for multiple oil companies and compared to other markets such as the New York Mercantile Exchange futures market. Evaluated transportation costs and other differentials as part of overall analysis. Determined value of oil at the lease.

Reviewed royalty terms of Wyoming lease and company payment methodology. Analyzed gas and condensate pricing and compared to market prices. Reviewed company methodology for calculating severance taxes.

Reviewed Company's records and methodology used for paying royalties on natural gas production. Considered whether method used to calculate royalties was fair and consistently applied to multiple royalty owners.

Identified specific natural gas wells in dispute and determination of applicable production. Analyzed related company transportation costs associated with payment of royalties.

2

# PRICEWATERHOUSECOOPERS ⒤    WILLIAM B. ABINGTON

Analyzed costs associated with development of oil field and analyzed cost flows related to development and production. Also reviewed transactions and corporate structure for purposes of piercing the corporate veil.

Analyzed shareholder value associated with Company strategic plan in comparison to hostile takeover offer price. Analysis involved review of multiple divisions of this large oil company, including exploration and production, refining, retail and marketing. Reviewed major underlying assumptions in Company strategic plan and determined the impact that changed assumptions would have on projected shareholder value.

Analyzed and interpreted accounting language of lease agreements, division orders and related agreements. Also, prepared database of all production and pricing factors for royalty calculation scenarios. Issue involved natural gas royalty matter related to operating, pipeline and marketing companies.

Analyzed production on oil lease and associated revenue and expenses. Reviewed Lease Operating Expenses and Capital Expenses. Determined whether lease was producing in paying quantities.

Analyzed Take or Pay contracts in the gas industry and calculated losses as a result of contract breaches. Analysis included review of contract commitments and review of replacement gas.

Reviewed lease terms and calculated loss associated with alleged breach of lease agreement. Plaintiff claimed Defendant breached continuous drilling terms of lease and that Plaintiff was owed revenue subsequent to alleged breach.

## Petroleum - Downstream

Analyzed the financial performance of approximately 30 branded gasoline and convenience store stations and compared the results to a comparable group of stations. Reviewed terms of contract between station owner and oil company, specifically evaluating compliance with measurable components of contract. Analyzed the impact of the performance of the stations to the company as a whole.

Analyzed post purchases price adjustment process. Reviewed pricing terms and accounting provisions of contract. Reviewed adjustments to financial statements. Determined whether adjustments were made in the ordinary course of business and the impact of the adjustments to the value of the business and the purchase price.

Analyzed claimed lost profits of distribution of oil field service tools. Reviewed Distributorship Agreement and Commissioned Sales Agreement for accounting and financial provisions. Analyzed customer base and financial statements of distributor, specifically sales and gross margins.

Analyzed antitrust claim in the natural gas gathering and processing markets. Performed market analysis of business. Analyzed likely causes for particular company successes and failures to gain customers. Analyzed sales, gross margins, capital expenditures and operating expenses of company.

Valued sale of 200 gasoline and convenience stores. Reviewed environmental concerns and analyzed capital expenditures associated with ongoing operations. Determined impact of business plan on value of company.

3

Valued contractor owned gasoline stations and analyzed profits and projected profits. Researched market and business conditions. Prepared financial model to project various revenue scenarios.

Analyzed the profitability of various dealer service stations for purposes of valuing these stations. Used comparable sales and discounted cash flow methods to determine values of service stations.

Analyzed gas plant and gathering system capital and operating expenditures. Separated these expenditures for purposes of unbundling the combined fee for $CO_2$ gas treatment and gas gathering services. Reviewed historical and forecasted data and presented findings to the Mineral Management Service and State of New Mexico.

Led due diligence and review of division of major oil field service company. Review included R&D department, facilities, analysis of historical and projected financial results, and assessment of competitors and customers.

Analyzed gas plant processing agreement and calculations involving liquids inventory, pricing and sales. Issue involved Pipeline Company and natural gas processing contract. Worked on accounting aspects and valuation of agreement concerning purchase of hydrocarbons.

Researched the potential market for oil tool product and analyzed the capability of the Company to market, compete, and profit from the product. Reviewed analysis associated with projected sales and profits in the U.S. market and in foreign markets. Analyzed valuation of Patent.

Analyzed suspected losses associated with natural gas contracts. Reviewed gas contracts, pipeline construction, and financial performance of Joint Venture. Valued Joint Venture interest considering various scenarios with the gas contracts.

Reviewed natural gas liquid agreements between pipeline company and natural gas processing company. Calculated lost profits including analysis of liquids inventory, pricing and sales.

**Environmental**

Compiled and analyzed the costs of clean up efforts related to an oil spill resulting from a ruptured pipeline in navigable waters. Responsible parties were designated pursuant the Oil Spill Pollution Act of 1990. The company's clean up costs, settlement and litigation costs, and other related costs were accumulated for claim purposes.

Analyzed costs associated with environmental clean up effort at contaminated petrochemical site. Analysis included review of NCP requirements, adequacy of cost documentation and accuracy of accounting. The company's process for accumulating costs and allocating to clean up units was also reviewed for adequacy.

Analyzed cost presented to a PRP in a cost contribution claim. Analysis included review of adequacy of documentation using the National Contingency Plan and generally accepted accounting practices.

# PRICEWATERHOUSE**C**OOPERS 🏢          WILLIAM B. ABINGTON

Prepared loss of use and economic loss analysis for city that owns property that was contaminated over many years. Analysis included loss of natural resource use, loss of facility use, diminution of property, and loss of tax revenue.

Reviewed costs associated with oil spill off the California coast. Analyzed activities performed and reasonableness of clean up costs. Reviewed financial controls over operations for purposes of evaluating a cost reimbursement claim.

Analyzed incurred cost claim brought by the United States Coast Guard against responsible parties due to pipeline rupture and petroleum spill. Reviewed USCG documentation of activities and cleanup efforts, USCG Technical Operating Procedures, and procurement controls utilized. Analyzed necessity and reasonableness of costs and determined adequacy of cost documentation.

Served as Trustee responsible for overseeing the cleanup activities and funding associated with nuclear waste site. Responsibilities include contractor procurement management of budget and compliance with applicable regulations.

Prepared cost claim for environmental cleanup activities associated with oil spill in navigable waters. Procedures included identifying activities eligible for cost reimbursement, compiling costs, gathering cost documentation and presenting claim as required by the United States government.

Reviewed EPA and TNRCC documentation in connection with a government incurred cost claim for Superfund Site near Dallas. This included reviewing EPA financial documentation to determine if costs were supported and consistent with the National Contingency Plan, and TNRCC costs to determine that these costs were supported and that EPA had properly accounted for them in the incurred cost claim.

Worked with company to establish processes for the control of remediation costs at large Superfund site. Included developing annual budget process for all contractors, change order process and payment process. Also, adapted accounting system to meet needs of remediation management and provide meaningful and timely financial reports.

Reviewed documentation relating to government-incurred cost claim for an emergency response cleanup on behalf of a principal PRP at a Superfund Site near Odessa. This included a review of the EPA Itemized Cost Summary Report and the summary package of documentation provided by the EPA, to determine that the claimed costs were supported by appropriate documentation and consistent with the NCP.

Analyzed incurred and projected remediation costs in connection with a contractor's claim, against a PRP group for a Superfund Site near Houston. This involved an extensive review and analysis of the contractor's bid, budget documentation, progress reports and accounting records, as well as various EPA remediation documents.

Reviewed reclamation and other contractor billings at environmental site. Determined costs that were reasonable and adequately supported. Established process for Company to manage contractor procurement. Created financial control system to enable owner to manage ongoing construction, reclamation and remediation.

5

# PRICEWATERHOUSECOOPERS 🏢

### WILLIAM B. ABINGTON

Analyzed facility's records for types of waste treated, customers of the facility, profitability of the business and related party transactions for a TSD dump site regulated by RCRA provisions, and subject of an antitrust lawsuit. TNRCC facility records were reviewed for market data.

Reviewed corporate structure and directors and officers of global entities for purposes of piercing the corporate veil and establishing owner operator liability under CERCLA. Analyzed financial and other transactions between related entities and economic reliance of one to another. Dispute involved costs incurred at Superfund Sites.

Analyzed data relating to a deal involving the permitting, construction, and operation of a hazardous waste site regulated by RCRA. Determined potential market and calculated expected revenue, capital costs and operating costs.

Prepared analysis involving residential property value diminution relating to over 250 home sites. Analysis includes preparing database of sales in subject area and comparable areas, regression analysis, and coordination of survey activity. Also analyzed development and demographic patterns.

Estimated company liability for eleven Superfund Sites. Analyzed third party and company costs associated with investigations, feasibility studies, cleanup activities and maintenance. Also analyzed civil claims relating to Sites. Analysis included review of remedial action plans, engineering estimates and company direct involvement.

Reviewed Company process for estimating environmental liability for portfolio of CERCLA and State sites. Interviewed site managers and documented best practices used within Company. Used accounting guidelines, Company objectives and best practices to flowchart the process that Company should use for estimating its environmental liability.

Analyzed costs associated with cleanup of hazardous waste site in Newfoundland. Reviewed remediation process. Determined if costs charged to site were in accordance with Agreement.

Reviewed environmental management process and internal controls over such. Recommended improvements to Management of this oil drilling company.

Analyzed losses associated with oil spill in coastal waters. Work included analysis of personal property loss and commercial lost profits related to fishing and animal breeding.

Analyzed contractor claim related to clean up activities at super-fund site in North Carolina. Reviewed contract, change orders and work performed considering potential changes in scope. Analyzed additional units of work performed by contractor. Compared contractor's budget to actual cost incurred and calculated amount reimbursable to contractor under the terms of he contract.

## Other

Determined economic loss associated with fire at warehouse of major food company. Analyzed incremental cost incurred by company as a result of fire. Calculated lost profits related to lost product and down time of facility.

6

# PRICEWATERHOUSECOOPERS ⓕ      WILLIAM B. ABINGTON

Reviewed economic loss claims and prepared an analysis related to alleged breach of employment contract. Claim against closely held oil company for economic loss included lost earnings and stock option losses.

Analyzed expenses of water utility and built a financial model to calculate the rate that the utility could charge its customers. Testified before the Texas Public Utility Commission.

Analyzed three years of certain financial accounts at this Bank. Various insider transactions and misappropriation of funds were discovered. Presented findings orally and in writing to the Bank Board.

For creditor of large privately owned college dormitory, reviewed four years of financial activity and records of dormitory. Testified in action to have debtor in possession removed as manager of property.

Calculated economic loss experienced by food maker resulting from excess raw material charges and from purchase of bad raw material product.

Reviewed operations of social and recreational club. Analyzed revenue member fees and allocated costs.

Worked for bankruptcy trustee in substantive consolidation matter. Reviewed four years of business activity, management decisions and financial performance to determine substance and nature.

Traced funds associated with this $400 million mortgage-financing scam. Began tracing with six bank accounts and identified another 40 accounts domestically and abroad. Identified third party recipients of funds. Created database to compile and present findings.

**EDUCATION**          Mr. Abington is a 1981 honors graduate of Southwest Texas State University.

**PROFESSIONAL**       Mr. Abington is a Certified Public Accountant and a Certified Fraud Examiner.
**AFFILIATIONS**       He is a member of the American Institute of Certified Public Accountants, Texas Society of Certified Public Accountants, National Association of Certified Fraud Examiners, Petroleum Accountants Society of Houston, and American Bar Association Section of Natural Resources, Energy and Environmental Law.

**EXPERT**             J&E Oil, Inc. v. ATOFINA Petrochemicals, Inc. f/k/a FINA Oil and Chemical Co.
**TESTIMONY**          & Alon, USA, L.P. v. J&E Oil Co., Inc. and Jerry Barth
**PAST FOUR**          206th Judicial District Court of Hidalgo County, Texas Cause
**YEARS**              Number C-2174-00-D-1

American Central Eastern Texas Gas Company, Ltd. Partnership et al. v. Union Pacific Resources Company, et al.
U.S. District Court, Eastern District of Texas, Marshall Division Civil Action Number 2-98-CV-0239-TJW

LG&E Capital Corporation v. Tenaska VI, L.P., et al.
U.S. District Court, District of Nebraska Civil Action Number 8:99 CV 258

7

# PRICEWATERHOUSECOOPERS ⓡ

**WILLIAM B. ABINGTON**

| | |
|---|---|
| **EXPERT**<br>**TESTIMONY**<br>**(CONTINUED)** | LG&E Energy Marketing v. City of Springfield, Illinois, City Water, Light and Power Company<br>U.S. District Court, Western District of Kentucky, Louisville Division<br>Civil Action Number 98 CV 485-H |
| | Lycon Inc. v. EVI Oil Tools, Inc. et al.<br>U.S. District Court, Western District of Louisiana, Lafayette-Opelousas Division<br>Civil Action Number 98 CV-2125 |
| | MDL No. 1206, In Re. Lease Oil Antitrust Litigation<br>U.S. District Court, Southern District of Texas, Corpus Christi Division |
| | Harris County Outdoor Advertising Association et al. v. City of Houston<br>281ˢᵗ Judicial District Court of Harris County Cause Number 87-00827A |
| | Marvin Wolf, et al. v. Chevron U.S.A. Inc., et al.<br>District Court of the Third Judicial District in and for the County of Uinta,<br>State of Wyoming Civil Action 97-132 |
| | FINA Oil and Chemical Company v. Pester Marketing Company et al.<br>In the United States District Court for the District of Kansas<br>Cause Number 95-1367-JTM |
| | Beazer East, Inc. v. CSX Transportation, Inc.<br>U.S. District Court, Western District of Pennsylvania Civil Action<br>Number 93-0861 |
| | H.S. Finkelstein, Individually, et al. v. TransAmerican Natural Gas Corporation, et al. District Court of Zapata County, Texas, 49ᵗʰ Judicial District<br>Cause Number 2824 |
| **PUBLICATIONS** | William B. Abington – Article titled, "Controlling Environmental Remediation Costs and Claims at Hazardous Waste Sites", published in the *Journal of Construction Accounting & Taxation*. |
| | William B. Abington – Co-author of a chapter entitled "Acceleration Claims", published by Wiley Law Publications in the book, *Proving and Pricing Construction Claims*. |

8

EXHIBIT "7"

# JSW Plastics Machinery Inc.

HEAD OFFICE: LOS ANGELES
3726 EAST MIRALOMA AVENUE · ANAHEIM, CALIFORNIA 92806-2107 · PHONE (714) 630-5651 · FAX (714) 630-1886

| | | | |
|---|---|---|---|
| CHICAGO TECHNICAL CENTER | EAST COAST OFFICE | DETROIT OFFICE | ATLANTA OFFICE |
| 1300 LANDMEIER ROAD | P.O. BOX 496 | 44712 HELM STREET | 1700 CUMBERLAND POINT DR., STE 417 |
| ELK GROVE VILLAGE, IL 60007 | DAYVILLE, CT 06241-0486 | PLYMOUTH, MICHIGAN 48170 | MARIETTA, GEORGIA 30067 |
| PHONE: (847) 427-1100 | PHONE: (860) 774-2613 | PHONE: (734) 455-9003 | PHONE: (770) 952-0268 |
| FAX: (847) 427-1131 | FAX: (860) 774-3297 | FAX: (734) 455-9058 | FAX: (770) 956-9058 |

February 29, 2000

To Whom It May Concern:

JSW Plastics Machinery Inc., will support the growth and expansion of Exel Bobbins and Plastic Components Inc., by providing any model of JSW PMI Plastic Injection Molding Machine, which they will require for future projects with Sunbeam-Oster. This also includes maintaining a new machine inventory for quick delivery, based on the demands by Exel Customers, as well as providing full support on an on-going bases. We will assist Exel in any way possible to accommodate the needs of Sunbeam-Oster in all of their molding needs.

As of this date, JSW PMI has extended a credit line of $1,500,000.00 to Exel for the purchase of JSW's products and services, and agrees to a payment term of 5% down payment and balance net 180 days, at 0% interest. In addition, JSW PMI guarantees Exel a stock inventory of Injection Molding Machines at our Anaheim, CA. facility with delivery requirements of fourteen (14) days or less.

Once again, it has been and will be a pleasure doing business with Exel Plastics Inc., and sincerely appreciate our relationship of being a team supplier member of Exel Plastics.

Sincerely,

Jerry Johnson
Vice President

# EXHIBIT "8"

**Balances** **Transactions** **Payments** **Transfers** **E-Mail Us**

---

EXEL BOBBINS & PLASTIC COMPONENTS
3301 NAFTA PKWY UNIT C
BROWNSVILLE, TX 78521
(956) 832-0607 / FAX: (956) 832-0811

TEXAS STATE BANK
86-901/1149

3021

4/30/01

PAY TO THE ORDER OF   JSW Plastics Machinery, Inc          $ 4,855.59

Forty eight hundred fifty five 59/00 ---------------------------- DOLLARS

MEMO   Deposit for 500 ton & 110ton                    John Thomason
                                                       AUTHORIZED SIGNATURE

⑈003021⑈ ⑆114909013⑆ ⑈200125716⑈        ⑈0000485559⑈

☐ SECURITY FEATURES INCLUDED. DETAILS ON BACK. ☐

**View Back of Check**

---

Premier*e*com • **Our People** • **Texas Regional Bancshares, Inc.**  VeriSign

*No One Knows the Valley Like We Do.*

Copyright 1999 Texas Regional Bancshares, Inc.
Federal Reserve System. All rights reserved.

 

Copyright © Information Technology, Inc. 2000

**Balances** | **Transactions** | **Payments** | **Transfers** | **E-Mail Us**



View Front
of Check



No One Knows the Valley Like We Do.

Copyright © 1999 Texas Regional Bancshares, Inc.
Federal Reserve System. All rights reserved.

Copyright © Information Technology, Inc. 2000

3301 Unit C NAFTA Parkway, Brownsville, TX
Phone: 956-832-0807    Fax: 956-832-0811

# Exel Bobbins & Plastic Components Inc.

# Fax

| | | | | |
|---|---|---|---|---|
| **To:** | Jerry Johnson, Brownsville, TX | | **From:** | Steve Becker |
| **Fax:** | 847-427-1131 | | **Pages:** | 2 |
| **Phone:** | 847-427-1100 | | **Date:** | 5/8/01 |
| **Re:** | Delivery 110 & 500 | | **CC:** | Dennis |

☑ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☑ **Please Reply**    ☐ **Please Recycle**

● **Comments:** Thank you for a quick responce



3301 Unit C NAFTA Parkway, Brownsville, TX
Phone: 956-832-0807     Fax: 956-832-0811

# Exel Bobbins & Plastic Components Inc.

# Fax

| To: | Herioma/President JSW PMI | From: | Steve Becker |
|---|---|---|---|
| **Fax:** | 714-630-1886 | **Pages:** | 2 |
| **Phone:** | 714-630-5651 | **Date:** | 5/8/01 |
| **Re:** | Immediate delivery of 110 & 500 | **CC:** | Rick Bell |

☑ **Urgent**     **For Review**     ☐ **Please Comment**     ☑ **Please Reply**     ☐ **Please Recycle**

● **Comments:** Thank you for a quick responce



EXHIBIT "9"



**JSW**

**JSW PLASTICS MACHINERY INC.**

May 10, 2001

Mr. Steve Becker
EXEL BOBBINS Inc.
3301 NAFTA Parkway – Unit C
Brownsville, TX 78521

Sent by Fax and Certified Letter

Dear Steve,

I am in receipt of your fax dated May 8, 2001.

Please understand that your check of $4,855.59 (which represents a 1/3 of the 5% down payment) has been received by JSW Plastics Machinery, and is being applied to our model JSW J-500EII Hydraulic Injection Molding Machine located in our L.A., California facility, and our model J-110EII Hydraulic Injection Molding Machine located in our Chicago facility, which is currently on a hold bases, until we receive full payment on the delinquent past due payment of the model J-385EII machine at your facility in Brownsville, TX facility, which was due on April 23, 2001.

Steve, as you know, we (JSW) have extended special payment terms to Exel Bobbins and Plastics Components, with the full understanding and agreement, that Exel Bobbins and Plastics Components would adhere to the payment terms extended to you, however we (JSW) have not been paid for the first shipment of our model J-385EII machine

Therefore, we must withdraw our initial offer to Exel Bobbins and Plastics Components, the Credit Line of $1,500,000.00, due to non-payment of the original sales agreement.

Per our telephone conversation of May 7, 2001, JSW is extending to you, an extension of payment to May 11, 2001, allowing you to obtain financing for the original payment. Should you not be able to obtain financing, unfortunately, JSW will need to exercise it's right to recover this machine from you facility and cancel all other existing and remaining orders that you have placed with JSW, and applying all other funds from Exel Bobbins and Plastics Components received, toward the recovery and remarketing of the model J385EII machine.

Steve, after reviewing this letter, should you have any questions, or require additional information, please feel free to contact me at the JSW Chicago Technical Center.

Sincerely,

Jerry Johnson
Vice President



**EXHIBIT**

**D**

EXHIBIT "10"

# Exel Bobbins & Plastic Components Inc.

3301 NAFTA Pkwy. Unit C
Brownsville, TX 78521
956-832-0807
fax: 956-832-0811

May 8, 2001

JSW Plastic Machinery Inc.

To whom this may concern:

Exel is releasing P.O. #'s 9 and 15 pertaining quote # CHG00-C03066(500 ton) and CHG 01-C01014(110 ton). Per term agreement proposed on 1/30/01. Our deposit check # 3021 for $4855.59 was delivered on 4/30/01. We need to have confirmation to schedule pick-up 110 ton in Elk Grove, IL and 500 ton in LA, CA. Please repond A.S.A.P.

Sincerely,

Steve Becker
President


FAXED
5/8/01
11:30 PM

3301 Unit C NAFTA Parkway, Brownsville, TX
Phone: 956-832-0807    Fax 956-832-0811

## Exel Bobbins & Plastic Components Inc.

# Fax

| **To:** | Herioma/President JSW PMI | **From:** | Steve Becker |
|---|---|---|---|
| **Fax:** | 714-630-1886 | **Pages:** | 2 |
| **Phone:** | 714-630-5651 | **Date:** | 5/8/01 |
| **Re:** | Immediate delivery of 110 & 500 | **CC:** | Rick Bell |

☑ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☑ **Please Reply**    ☐ **Please Recycle**

● **Comments:** Thank you for a quick responce



**Exel Bobbins & Plastic Components Inc.**

3301 NAFTA Pkwy. Unit C
Brownsville, TX 78521
956-832-0807
fax: 956-832-0811

May 8, 2001

JSW Plastic Machinery Inc.

To whom this may concern:

Exel is releasing P.O. #'s 9 and 15 pertaining quote # CHG00-C03066(500 ton) and CHG 01-C01014(110 ton)  Per term agreement proposed on 1/30/01. Our deposit check # 3021 for $4855.59 was delivered on 4/30/01. We need to have confirmation to schedule pick-up 110 ton in Elk Grove, IL and 500 ton in LA, CA  Please repond A.S.A.P.

Sincerely,

Steve Becker
President


11:30 PM

3301 Unit C NAFTA Parkway, Brownsville, TX
Phone: 956-832-0807    Fax: 956-832-0811

**Exel Bobbins & Plastic Components Inc.**

# Fax

| To: | Jerry Johnson | From: | Steve Becker |
|---|---|---|---|
| Fax: | 847-427-1131 | Pages: | 2 |
| Phone: | 847-427-1100 | Date: | 5/8/01 |
| Re: | Delivery 110 & 500 | CC: | Dennis |

☑ **Urgent**    **For Review**    ☐ **Please Comment**    ☑ **Please Reply**    ☐ **Please Recycle**

• **Comments:** Thank you for a quick responce



EXHIBIT "11"

Exel Bobbins & Plastic Components Inc

3301 NAFTA Parkway
Unit C
Brownsville, TX 78521

# Purchase Order

| DATE | P O NO |
|------|--------|
| 1/21/2001 | 15 |

| Vendor | SHIP TO |
|--------|---------|
| JSW Plastics Machinery Inc<br>3726 E. Miralома Avenue<br>Anaheim, CA 92806<br>Fax. 847-427-1131 | Exel Bobbins & Plastic Components Inc<br>3301 NAFTA Parkway<br>Unit C<br>Brownsville, TX 78521<br>Ph. 956-832-0807  Fax 832-0811 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| J110 EII | J110E-II with a 7.2 oz "B" barrel, wired for 460/3/60 voltage. | 1 | 84,835.00 | 84,835.00 |

| Special Discounted Price - Machine is in stock, subject to prior sale | **Total** | $84,835.00 |

EXHIBIT "12"

Exel Bobbins & Plastic Components, Inc.

# Purchase Orde

3301 NAFTA Parkway
Unit C
Brownsville, TX 78521

| DATE | P.O. NO. |
|------|----------|
| 11/7/2000 | 9 |

| Vendor | SHIP TO |
|--------|---------|
| JSW Plastics Machinery Inc<br>1726 E. Miraloma Avenue<br>Anaheim, CA 92806<br>Fax 817-427-1131 | Exel Bobbins & Plastic Components Inc<br>3301 NAFTA Parkway<br>Unit C<br>Brownsville, TX 78521<br>Ph. 956-832-0807 Fax 832-0811 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| IP2 | 500 Ton Injection Molding Machine; B-Barrel | 1 | 202,500.00 | 202,500.00 |
| | NOTE  Ship to above address, Bill to Exel Plastics<br>302 roma Jean Pkwy.<br>Streamwood, IL 60107 | | | |
| | Per Quote dated March 03, 2000, Per Jerry Johnson | | | |
| | REVISION PER CONVERSATION WITH JERRY AND<br>DENIS ON 3/21/01 | | | |
| Per special terms Jerry Johnson | | | | |

| | Total | $202,500.00 |
|---|-------|-------------|

# EXHIBIT "13"

07960

3. If the space provided for any item(s) on this form is inadequate the item(s) should be continued on additional sheets, preferably 5" x 8" or 8" x 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of the financing statement. Long schedules of collateral, indentures, etc., may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
4. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
5. When a copy of the security agreement is used as a financing statement it is requested that it be accompanied by a completed but unsigned set of these forms, without extra fee.
6. At the time of original filing, filing officer should return third copy as an acknowledgement. At a later time, secured party may date and sign Termination Legend and use third copy as a Termination Statement.

| This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code: | | 3 Maturity date (if any): |
|---|---|---|
| 1 Debtor(s) (Last Name First) and address(es) <br><br> EXEL Bobbins & Plastic <br> Comp. <br> 3301 NAFTA Parkway Unit C <br> Brownsville, TX 78521 <br> Tax ID/Social Security No. | 2. Secured Party(ies) and address(es) <br><br> JSW PLASTICS MACHINERY INC <br> 3726 E. Miraloma ave. <br> Anaheim, CA 92806 <br><br> Tax ID/Social Security No. | For Filing Officer (Date, Time, Number, and Filing Office) |

This financing statement covers the following types (or items) of property:

ONE INJECTION MOLDING MACHINE WITH
ACCESORIES AND PARTS.
MODEL: J110E2
  S/N: 2-99701112

5. Assignee(s) of Secured Party and Address(es)

This statement is filed without the debtor's signature to perfect a security interest in collateral (check [ ] if so)

[ ] already subject to a security interest in another jurisdiction when it was brought into this state.
[ ] which is proceeds of the original collateral described above in which a security interest was perfected:

Check ☒ if covered: [ ] Proceeds of Collateral are also covered  [ ] Products of Collateral are also covered  No. of additional Sheets presented

Filed with:

By: _____ 4/2/01      By: _____
    Signature(s) of Debtor(s)                  Signature(s) of Secured Party(ies)

(1) Filing Officer Copy - Alphabetical      **STANDARD FORM - FORM UCC- 1.**


EXHIBIT

EXHIBIT "14"

07958

... for any item(s) on the form is inadequate the item(s) should be continued on additional sheets preferably 5" 8" or 8 1/2". Only one copy of such additional sheets need be presented to the filing officer with a set of three forms. A standard UCC-1 form may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
4 If collateral is crop goods which are or are to become fixtures describe generally the rea... e and give name of record owner
5 When a copy of ... unty agreement is used as a financing statement, it is requested that it be accompanied by a completed but unsigned set of these forms, without extra fee
3 At the time of original filing, filing officer should return third copy as an acknowledgement. At a later time, secured party may date and sign Termination Legend and use third copy as a Termination Statement

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code | 3. Maturity date (if any).

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| el Bobbins & Plastic Comp. 01 NAFTA Parkway Unit C ownsville, TX 78521 | JSW Plastics Machinery Inc. 3726 E. Miraloma Ave. Anaheim, CA 92806 | |
| ax ID/Social Security No. | Tax ID/Social Security No. | |

This financing statement covers the following types (or items) of property:

E INJECTION MOLDING MACHINE WITH
CESORIES AND PARTS.
DEL: J500E2
S/N: 2-00712005481

5. Assignee(s) of Secured Party and Address(es)

This statement is filed without the debtor's signature to perfect a security interest in col... ... so) | Filed with.

☐ already subject to a security interest in another jurisdiction when it was brough...
☐ which is proceeds of the original collateral described above in which a secu... ... ffected

Check ☒ ... il covered: ☐ Proceeds of Collateral are also covered. ☐ Products ... e also covered. No of additional Sheets presented

By: _____ 4/2/01
Signature(s) of Debtor(s)

By: _____
Signature(s) of Secured Party(ies)

(1) Filing Officer Copy - Alphabetical     **STANDARD FORM - FORM UCC-1.**

EXHIBIT

EXHIBIT "15"

700.0078/1794

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EXCEL BOBBINS AND PLASTIC §
COMPONENTS, INC. §
          Plaintiff §
           § CIVIL ACTION NO. B-01-148
VS. §     JURY
           §
JSW PLASTICS MACHINERY, INC. §
          Defendant §

---

### AFFIDAVIT OF STEVE BECKER IN SUPPORT OF PLAINTIFF
### EXEL BOBBINS AND PLASTIC COMPONENTS, INC.'S
### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
### ALTERNATIVE MOTION FOR CONTINUANCE AND REQUEST FOR SANCTIONS

---

Before me, the undersigned notary public, personally appeared Steve Becker, who, after being

duly sworn, declares the following under penalty of perjury under the laws of the United States:

1.     My name is Steve Becker, I am over the age of twenty-one and I submit this Affidavit

in support of Plaintiff Exel Bobbins and Plastic Components, Inc.'s ("Exel")

Response to Defendant's Motion for Summary Judgment, Alternative Motion for

Continuance and Request for Sanctions.

2.     I am the President of Exel Bobbins and Plastic Components, Inc.

3.     After I read the letter dated May 10, 2001, from JSW, I believed that JSW was not

going to return the $4,855.59 I paid on behalf Exel for the 1/3 of 5% down payment

from the J110 and J500 I ordered from JSW.

4.     As of the date I signed this affidavit, I have not received the money back from JSW.

5.     JSW has kept the $4,855.59 for over a year and a half.

6.     Exel Bobbins was created to manufacture and sell plastic parts.

7.   I have been in this business for over five (5) years, it is not uncertain or speculative.

8.   I decided to start Exel Bobbins in Brownsville because after some investigation, we

saw there was a demand that was not being met by the supply.

9.   Prior to May 10, 2001, I forwarded a copy of the letter from Sunbeam dated April 19,

2001 to JSW.

2-27-03
Date

_____
Steve Becker

SWORN TO AND SUBSCRIBED BEFORE ME on this 27ᵗʰ day of February, 2003.

_____

NOTARY PUBLIC, In and for the State of Texas County of Cameron



EXHIBIT "16"

700.0078/1794      IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXCEL BOBBINS AND PLASTIC | § | |
| COMPONENTS, INC. | § | |
|     Plaintiff | § | |
| | § | CIVIL ACTION NO. B-01-148 |
| VS. | § | JURY |
| | § | |
| JSW PLASTICS MACHINERY, INC. | § | |
|     Defendant | § | |

---

**AFFIDAVIT OF VIOLA G. GARZA IN SUPPORT OF PLAINTIFF
EXEL BOBBINS AND PLASTIC COMPONENTS, INC.'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
ALTERNATIVE MOTION FOR CONTINUANCE AND REQUEST FOR SANCTIONS**

---

Before me, the undersigned notary public, personally appeared Viola G. Garza, who, after being duly sworn, declares the following under penalty of perjury under the laws of the United States:

1. My name is Viola G. Garza, I am over the age of twenty-one and I submit this Affidavit in support of Plaintiff Exel Bobbins and Plastic Components, Inc.'s ("Exel") Response to Defendant's Motion for Summary Judgment, Alternative Motion for Continuance and Request for Sanctions.

2. I am an attorney duly licensed to practice law in all courts of the State of Texas. I am one of the attorneys primarily responsible for representing the Plaintiff Exel in the above-numbered and styled cause and am familiar with the action. I have personal knowledge of the facts set forth herein and if called upon to do so, I could and would competently testify to the matters set forth in this Affidavit.

3. The list of exhibits found below, as well as the excerpts from the depositions of Gerald Johnson and Robert Ferhenbach are true and correct copies :

| Exhibit Number | Description |
|---|---|
| 1 | Deposition Notice of Bill Abington |
| 2 | Deposition Notice of Wayne Wells |
| 3 | Letter from Sunbeam |
| 4 | January 30, 2001 contract |
| 5 | July 13, 2001 contract on refinance of J385 |
| 6 | Affidavit of Bill Abington |
| 7 | Contract of February 29, 2000, $1.5 million line of credit |
| 8 | Check for $4,855.59 |
| 9 | May 10, 2001 letter |
| 10 | Confirmation of 1/3 down payment |
| 11 | Purchase Order 15 |
| 12 | Purchase Order 9 |
| 13 | UCC for J110 |
| 14 | UCC for J500 |
| 15 | Affidavit of Steve Becker |
| 16 | Affidavit of Viola G. Garza |
| 17 | Newspaper Article |
| 18 | Steve Becker's letter of qualifications |
| 19 | Affidavit of Hatsumi Akeda |

2-27-03
_____
Date

_____
Viola G. Garza

SWORN TO AND SUBSCRIBED BEFORE ME on this 27th day of February 2003.

_____
NOTARY PUBLIC, In and for the State of Texas County of Hidalgo

Excerpts from Deposition of Robert Ferhenbach

the one that was doing most of the talking, was it

yourself or was it Jerry Johnson?

    A.    It was Jerry Johnson talking to Sunbeam,

Steve Becker.  I'm not even sure if that's -- you

know, this happened on more than one occasion that

we had tried to make contact and talk to people

that Steve was going to be doing business with in

Texas that ascertain basically the conversation was

to make sure that Steve was getting the business

and Sunbeam was saying, yes, he was getting the

business.  And it takes time to transfer molds and

have the business go to Excel.

    Q.    I just want to be clear, during that

telephone conference in April of 2000, you did

confirm with Sunbeam that Sunbeam was going to give

Excel Bobbins business in Brownsville?

    A.    Yes.

          Sunbeam spoke very highly of Steve and

said that there was quite a lot of business that

was going to be given to Steve through Sunbeam

Corporation, and I'm not exactly whether this was

more than one man at this meeting.  There was a

couple times when we had more than one people from

Sunbeam on the other line.  So --

18

1    machine ready to be shipped into his facility and

2    could be up and running within a minimal period of

3    time, say two weeks, to mold their product.

4        Q.    Was JSW aware that those machines were

5    going to be specifically used for Sunbeam products?

6        A.    They were aware of Sunbeam being one of

7    the primary user of those machines.

8        Q.    Other than the telephone conference with

9    Sunbeam and Jerry Johnson on that day that you got

10    terminated, I won't put a day on there, but do you

11    recall how many other telephone conferences you had

12    where Jerry Johnson was present and over the

13    telephone was a Sunbeam representative?

14        A.    Yeah.  There was a couple conversations,

15    and there was a couple of attempts which we

16    couldn't just make the three-way connection because

17    somebody would be in a meeting, we'd be in a

18    meeting, you know, it -- just we just couldn't make

19    the attempt.  But it was set up for certain days

20    that I would come in here and try to make these

21    conference calls.

22        Q.    So, you recall at least a couple other

23    telephone conferences other than that one?

24        A.    Yes.  It was two or three times that we

34

A.    Yes.  He quoted them.   Right.

Q.    So, Sunbeam was aware at that time of the quotes?

A.    Yes.  They were aware of his pricing.

Q.    So, that was in April or May of 2000, correct?

A.    Of 2000.

Q.    Well, you left in April or May of 2000?

A.    No.  This is -- you specifically said this is the first call.

Q.    All right.

A.    Second call was in the other room.  That was -- that's an altogether different situation. This is preliminary when we were giving Sunbeam conversation.

Q.    Okay.

So, this conversation was prior to April or May of 2000?

A.    Oh, yes.

Q.    Okay.

A.    This is ongoing thing for number of months.

Q.    When was that conversation made, February of 2000?

Excerpts from Deposition of Gerald Johnson

BY MR. GRIFFITH:

Q.    Thank you.  Which was Exhibit 7, correct?

A.    Yes.  Five percent down, balance 180 days.

Q.    And in fact, weren't there two phone calls between yourself and Mr. Becker and individuals at Sunbeam where JSW Plastics through you confirmed that very arrangement, that those machines would be available to Excel Bobbins to support Sunbeam work?

A.    Well, I can only recall one telephone call.

Q.    Okay.

And I think it was Bob Fehrenbach yesterday that said that there were two that he remembered.  Let me ask you about the one that you remember.

Was it, in fact, a conference call between yourself and one or more principals of Sunbeam and Mr. Becker, do you remember that being the parties involved?

A.    The call that I remember was Steve Becker was present at the Sunbeam facilities.

Q.    Okay.

A.    He put me on speaker phone with Hector Lu --

54   1      A.    That is correct.

2      Q.    Okay.

54   3            If you were to formally set up a 1.5

58   4   million line of credit, would there be an

02   5   accounting entry somewhere to that effect?

04   6      A.    No.

04   7      Q.    Would there be a document somewhere to

10   8   that effect?

10   9      A.    No.

10   10     Q.    So, it just -- I mean, this formally

12   11  setting it up versus not is merely in your head?

14   12     A.    No.  I say no because this letter would be

20   13  proof that it was extended to them, but it would be

28   14  the actual machine order entry that would trigger

34   15  that, okay, they went ahead and we shipped them, if

38   16  we shipped them, we shipped them two machines,

42   17  there you go, it's triggered, it's started.

44   18     Q.    Okay.

46   19            So, this line of credit, the 1.5 million

48   20  line of credit would be triggered by the shipment

52   21  of the original -- the original machines?

56   22     A.    Yes.

56   23     Q.    Now, given that fact, is it your testimony

02   24  that this 1.5 million line of credit was never

06  1    formally triggered?

10  2        A.    That's correct.

10  3        Q.    So, there were never any machines shipped

14  4    under this 1.5 million line of credit?

18  5        A.    That is correct.

22  6        Q.    Now, the 1.5 million line of credit, it

26  7    was -- I think we discussed earlier was basically

28  8    for Sunbeam Oster, correct?

30  9        A.    No.    It was to support Excel Bobbins and

34  10   Plastic Components.

36  11       Q.    In whatever they did?

    12       A.    (No audible response.)

38  13       Q.    Okay.

38  14             So, it wasn't limited to Sunbeam Oster?

42  15       A.    No.

44  16       Q.    But it's your testimony that the 1.5

48  17   million line of credit was never formally

50  18   triggered, correct?

50  19       A.    That's correct.

    20       Q.    Okay.

52  21             And that's because no machines were

54  22   purchased under that 1.5 million line of credit?

58  23       A.    Correct.    Because it was withdrawn prior

00  24   to any shipments.

EXHIBIT "17"

*My new incoming customer*

SHOP MONDAY-SATURDAY, 10 A.M. TO 9 P.M., SUNDA...

# VILLE

## rande Valley

COMMUNITY A2
LOS FRESNOS A6
WASHINGTON A8
WORLD A7
EDITORIAL A8

# Plastics firm to hire 55 workers

**Employment:** Exel Plastics to lease facility adjacent to Port of Brownsville.

BY GILBERTO SALINAS
THE BROWNSVILLE HERALD

A demand for plastic casings has prompted a Chicago based company to open up shop at the NAFTA Industrial Park where it expects to hire about 55 workers.

Exel Plastics, Inc. will lease out a 40,000-square-foot facility at the industrial park adjacent to the Port of Brownsville, and will manufacture custom plastic injection casings, also known as bobbins.

Bobbins are plastic mold-

ings used as casings for motors in electronic appliances such as coffee makers, microwave ovens and so on, said Rick Luna, director of communications for the Brownsville Economic Development Council.

"It's not a new industry in the area. There is a lot of plastic molding that is done in the area. But most of it is for automotive and these guys are not automotive," Rick Luna said.

The company, from Streamwood, Ill., arrived in Brownsville due to the

demand from the Matamoros maquiladora industry, which has grown from 55,000 to 65,000 jobs in the last year, maquila officials say.

"This is a quality injection molder with strong business relationships in the area. Some of their biggest customers are maquiladoras located right here in Matamoros," said BEDC president Marie McDermott.

Exel was founded in 1992 and since has grown. In Brownsville, the manufacturer will hire about 55 people in a two-year period, Luna said.

"Their business has grown 100 percent in the last year ... they need room to grow," McDermott said.

In other industrial news, Komtec Electronics will

build a 12,000-square-foot plant on FM 802 and Commercial Drive. The company, which remanufactures car audio systems and repairs CD players, began operating out of the Brownsville Airport Industrial Park in 1991.

The company will move from there into its new plant on the northside where it expect to grow from 34 to 45 workers.

City and company officials will host a groundbreaking ceremony Jan. 23 at the construction site.

"Komtec is a solid company with a good track record in this community," McDermott said. "We look forward to even better things."

# Light her up



# Armed men rob Matamoros bank

THE BROWNSVILLE HERALD

EXHIBIT "18"

# Exel Bobbins & Plastic Components Inc.

3301 NAFTA Pkwy. Unit C
Brownsville, TX 78521

January 17, 2001

Attn Wells Fargo/George Muhoray

Dear Sir or Madam:

Exel Bobbins & Plastic Components Incorporated was established by Steve Becker, President of the company. After my 5 years of college in EGR. I joined my cousin/partner with Exel Plastics Inc. and was learned from my fathers' brother in the business for 45 years. Exel. is where I sought my way into the plastic industry. I had taken many positions from A-Z and perfected each one and learned the skills needed to run and operate my own plant. I seem to have a good combination of customer relations, sales and engineering, so say my customers. Since I started in plastics, I have earned extended education from ISO 9000 Implementing to machine operation and maintenance. Getting new customers is one of my strong points. I have brought in companies like Schumacher Electric Corp., Sunbeam, Magnetek, and am working with Black & Decker, Lucent Technologies, Panasonic, and TrippLite on some big dollar accounts. Unfortunately things do not happen over night in my business but I have about 95% close rate in the Rio Grande Valley. Exel is one of a few custom injection molders in this area and have an edge in the industry being the only one with room to expand from 18,000-sq. ft. to 56,000-sq. ft. that everyone is looking for on the Boarder. Our industry is in high demand and very few molders to provide OEM companies. This is a great opportunity for your financial group to get with our strong growing company. Sunbeam will work with JSW to support Exel in this project and more to come. We will be making Mr. Coffee Makers, hand mixers, etc. for Sunbeam in this project. We are looking to put down 5% down in six months, net six months. In the next 2 years. I project to buy 10-20 molding machines and about 6-10 million dollars of revenues per year. These are not small customers that the Chicago facility is accustomed to. My goals are aimed high and very aggressive in all avenues of injection molding. I mainly look for strong OEM's that have their own product lines, this ensures year round business. We have a lot to accomplish in the next few weeks and year to come. We hope for your support.

Join our crusade and grow with our business.

Sincerely,

Steve B. Becker
President

# EXHIBIT "19"

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § § § § § § § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | | |
| JSW PLASTICS MACHINERY, INC., | | |
| Defendant. | | |

## AFFIDAVIT OF HATSUMI AKEDA IN SUPPORT OF DEFENDANT JSW PLASTIC MACHINERY, INC.'S MOTION FOR SUMMARY JUDGMENT

Before me, the undersigned notary public, personally appeared Hatsumi Akeda, who, after being duly sworn, declares the following under penalty of perjury under the laws of the United States:

1.    My name is Hatsumi Akeda, I am over the age of twenty-one and I submit this Affidavit in support of defendant JSW Plastic Machinery, Inc.'s Motion for Summary Judgment.

2.    I am the accounting manager for JSW Plastics Machinery, Inc. (hereafter "JSW-PMI"), one of the defendants in this action, and my office is located in JSW-PMI's offices at 555 South Promenade Avenue, Unit 104, Corona, California.

*//*

3.      I have personal knowledge of the facts set forth herein and if called upon to do so, I could and would competently testify to the matters set forth in this Affidavit.

4.      As the accounting manager for JSW-PMI, I am responsible for recording, depositing and tracking all monies received and expended by JSW-PMI in connection with all machinery sales to third parties by JSW-PMI.

5.      On or about May 3, 2001, JSW-PMI received a deposit check from Exel Bobbins and Plastic Components, Inc. (hereafter "Exel") in the sum of Four Thousand Eight Hundred and Fifty Five Dollars and 59 Cents ($4,855.59) (hereafter "Deposit").

6.      I logged in the receipt of Exel's Deposit and ordered that the Deposit be placed in a specific account for Exel ("Exel Account").

7.      The Deposit has remained in the Exel Account in full from the time of its receipt until the present time.

8.      The Deposit has at all times, from the date of its receipt until the present time, been available to be applied to any orders for machinery received by JSW-PMI from Exel or to be returned to Exel upon the receipt by me of a written request from Exel for the return of all or any portion of the Deposit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _4TH_ day of February, 2003, at Corona, California.

_____
Hatsumi Akeda
Accounting Manager, JSW Plastics Machinery, Inc.

## NOTARY ACKNOWLEDGMENT

State of California        )     ss.
County of _Riverside_       )

On February ___4th___, 2003, before me _Raquel Villarreal_ [name of

notary] personally, appeared HATSUMI AKEDA personally known to me (or proved to me on

the basis of satisfactory evidence) to be the person whose name is subscribed to the within

instrument and acknowledged to me that she/he executed the same in her/his authorized

capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of

which the person acted, executed this instrument.

WITNESS my hand and official seal.

Signature _Raquel Villarreal_

(SEAL)

RAQUEL VILLARREAL
COMM. #1290080
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires Feb. 6, 2005
BCT 6