47

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 6 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | |
| Defendant. | § § § | |

---

## JOINT PRETRIAL ORDER

---

### 1. <u>APPEARANCE OF COUNSEL</u>

The Plaintiff Excel Bobbins and Plastic Components, Inc. is represented by John R. Griffith, Griffith, Hill & Ochoa, L.L.P., One Park Place, 100 Savannah, Suite 500, McAllen, Texas 78053, telephone number (956) 971-9446, fax number (956) 971-9451, and Moises M. Salas, Jr., Law Office of Moises M. Salas, Jr., 847 E. Harrison, Bronwnsville, Texas 78520.

The Defendant JSW Plastics Machinery, Inc. is represented by David C. Garza, Garza & Garza, L.L.P., 680 East St. Charles, Suite 300, Brownsville, Texas 78522-2025, telephone (956) 541-4914, fax number (956) 542-7403, and James J. Regan, Regan*Braun Law Offices, 2522 Artesia Boulevard, Suite 200, Redondo Beach, California 90278, telephone (310) 372-1988, fax number (310) 318-5894.

### 2. <u>STATEMENT OF THE CASE</u>

c:\dcg\cf\JSW\Joint-Pretrial-Order

The parties could not agree on a joint statement of the case. Therefore, each party is submitting its own version of the statement of the case.

Plaintiff's version of the statement of the case is attached hereto.

Defendant's version of the statement of the case is as follows:

Defendant JSW Plastics Machinery, Inc. ("JSW-PMI"), a Delaware corporation with its principal place of business in Anaheim, California, is engaged in the business of manufacturing and selling plastic injection molding machines. Plaintiff Exel Bobbins and Plastic Components, Inc. ("Exel") a Texas corporation, is engaged in the business of manufacturing and selling plastic components. Exel was incorporated in 1999 and started operations in late 2000. As of the time of the alleged breach of contract and related conversion by JSW-PMI, Exel was a start-up company. In 1999, Exel contacted JSW-PMI and inquired whether JSW-PMI would sell it certain plastic injection molding machines and extend a line of credit to Exel for the purpose of purchasing these machines from JSW-PMI. On February 29, 2000, JSW-PMI issued a letter ("Contract") to Plaintiff addressed "To Whom It May Concern" by which JSW-PMI stated it would provide its plastic injection molding machines to Exel and that JSW-PMI had as of that date extended Exel a $1.5 million line of credit to Exel for the purchase of JSW-PMI's machines on the following terms: five percent (5%) down payment toward each machine purchased with payment of the net balance within 180 days. The line of credit and the credit terms were offered to Exel because JSW-PMI was requested by Exel to assist Exel in securing business with Exel's potential customer, Sunbeam-Oster. In a further effort to assist Exel with obtaining financing, JSW-PMI referred Plaintiff to Wells Fargo Bank and U.S. Bancorp.

Thereafter, pursuant to the Contract, Exel issued purchase orders to JSW-PMI for three machines as follows: (1) purchase order #98-1811 dated September 5, 2000 for machine Model

J385, purchase price $140,000; (2) purchase order #9 dated November 7, 2000 for machine Model J500, purchase price $202,500; (3) purchase order #15 dated January 23, 2001 for machine Model J110, purchase price $84,835. JSW PMI delivered the J380 machine after its receipt from Plaintiff of a down payment in the sum of $7,000. On April 23, 2001, Exel, by its own admission, failed to pay the balance due on the J385 machine, leaving an outstanding balance due on the J385 of $133,000. On May 4, 2001, Steven Becker ("Becker"), Exel's president, called Jerry Johnson, JSW-PMI's Vice President. Becker acknowledged that Exel was behind in its payment for the J385 machine and was attempting to obtain bank financing in order to resume payments. Becker requested that JSW-PMI immediately deliver the J500 and J100 machines. Johnson denied this request on the basis that Exel was in default of its obligations with respect to the J385 machine and had failed to submit a commitment letter from Sunbeam-Oster. Johnson offered to deliver the two remaining machines upon Exel becoming current on its payment obligations with respect to the J380 machine. Although Exel had issued purchase orders for the two remaining machines in November 2000 and January 2001, the required 5% down payment was not made by Exel. By letter agreement dated January 30, 2001 between Exel and JSW-PMI, it was agreed that Exel would pay JSW-PMI a total of $287,355 for both machines, that in lieu of the 5% down payment Exel would make three equal monthly payments of $4,788.92, the first installment being due prior to shipment of the machines. JSW-PMI requested that Becker and John Annoreno ("Annoreno"), a 50% owner of Exel, execute UCC-1 financing statements to secure JSW-PMI's interest in the J100E2 and J500E2 machines but Annoreno never executed either financing statement. Exel, on May 8, 2001, sent JSW-PMI a check, No. 3021, in the amount of $4,855.59 as a depositon the J500 and J110 machines. JSW-PMI responded by letter to Exel dated May 10, 2001, stating that it had received Exel's check

but would not deliver the J500 or J110 machines until Exel became current on its payments for the J385 machine. JSW-PMI advised Exel it would grant Exel an extension until May 11, 2001, in order to obtain financing for the payments due on the J385 machine, but in the event payment was not received within the extension period, JSW-PMI would exercise its right to recover the machine from Exel's facility, would cancel all outstanding machine orders from Exel and would apply the $4,855.59 payment to Exel's outstanding obligation on the J385 machine. JSW-PMI further advised the Exel that it was withdrawing Exel's line of credit as a result of Exel's default in payments.

Exel failed to cure its default by the May 11, 2001 extension date. JSW-PMI, by letter from JSW-PMI's attorney to Exel dated June 13, 2001, demanded immediate payment of the sum of $134,931.32, constituting the outstanding balance and accrued interest on the J385 machine.

### 3. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C.A., Section 1332(a), in that there exists diversity of citizenship between each of the parties to this action. Plaintiff is a Texas corporation with its principal place of business in Brownsville, Texas. Defendant is a Delaware corporation with its principal place of business in Los Angeles County, California.

### 4. MOTIONS

There are pending motions as follows:

1.    Defendant JSW-PMI's Motion for Summary Judgment or, in the alternative, for Summary Adjudication of Issues, was filed February 7, 2003 for hearing on February 27, 2003. This motion has been taken under submission by the Court and has not yet been ruled upon.

2.    Plaintiff's Motion to Compel Production of Documents was filed February 20, 2003 for

hearing on February 27, 2003. This motion has not yet been ruled upon.

3.    Plaintiff's one page motions in limine are attached.

4.    Defendant's motions in limine are attached and are described as follows:

(1)    Defendant's Motion in Limine No. 1 to Exclude Proposed Expert Testimony of William B. Abington Regarding Lost Profits Damages Unless And Until The Reliability Of The Methodology Used To Reach His Conclusions Has First Been Established By Plaintiff;

(2)    Defendant's Motion in Limine No. 2 to Bar Evidence At Trial Regarding (A) Defendant's Alleged Violations Of The Texas Theft Statutes To Demonstrate That Defendant Acted With Malice Or Fraud And (B) The Amount Of Exemplary Damages, If Any, To Be Awarded Plaintiff, Including Evidence Of The Defendant's Profits Or Financial Condition, Until After A Finding By The Trier Of Fact That Defendant Has Acted With Fraud Or Malice; Or, In The Alternative, For Bifurcation of Trial; and

(3)    Defendant's Motion in Limine No. 3 to Bar Plaintiff From Presenting Any Evidence At Trial Regarding Japan Steel Works America Or Other Company Or Corporation Of Which Defendant May Be A Subsidiary.

(4)    Defendant's Motion in Limine No. 4 to Bar Post-Deposition Testimony of Expert Witness William Abington, C.P.A.

## 5. CONTENTS OF THE PARTIES

The contentions of Plaintiff Excel Bobbins and Plastic Components, Inc. are attached hereto:

The contentions of Defendant JSW Plastics Machinery, Inc. are as follows:

1.    Defendant contends that it did not breach any of its obligations to Plaintiff under the contract.

2.    Defendant contends that it did not convert any property belonging to Defendant.

3.    Defendant contends that it did not act with malice or fraud in connection with any of its acts as to Plaintiff.

4.    Defendant contends that it did not violate the provisions of Texas Civil Practice and Remedies Code Section 134.001, et seq. or Texas Penal Code Section 31.03 and further contends that neither statute is applicable to Plaintiff's claims against the Defendant for exemplary damages.

5.    Defendant contends that Plaintiff failed to satisfy conditions precedent to Defendant's obligations under the contract and that Plaintiff's obligations with respect said conditions precedent were not excused.

6.    Defendant contends that Plaintiff failed to request the return of any funds allegedly converted by Defendant or that Defendant refused any such request.

7.    Defendant contends that Plaintiff failed to mitigate its damages.

8.    Defendant contends that Plaintiff did not suffer any consequential damages as a result of any act of the Defendant.

9.    Defendant contends that Plaintiff, as a start-up company with no history of profits, may not recover lost profits damages from Defendant as a matter of law.

## 6. ADMISSIONS OF FACT

1.     Admitted that Plaintiff Exel Bobbins & Plastic Components, Inc. ("Exel") is a corporation incorporated under the laws of the State of Texas with its principal place of business in Brownsville, Cameron County, Texas.

2.     Admitted that Exel Bobbins was incorporated on December 6, 1999.

3.     Admitted that Defendant JSW Plastics Machinery, Inc. ("JSW-PMI"), is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Corona, California.

4.     Admitted that Exel leased three (3) machines from Lucky Goldstar in or about June 2001.

## 7. CONTESTED ISSUES OF FACT

1.     That Defendant breached the contract.

2.     That Plaintiff breached the contract.

3.     That Plaintiff fulfilled all conditions precedent to Defendant's duties under the contract or that Plaintiff was excused from the performance of any such conditions precedent.

4.     That Defendant converted funds belonging to the Plaintiff.

5.     That Plaintiff requested the return of the allegedly converted funds and that such a request was denied by the Defendant or that Plaintiff was excused from the obligation to make such a request.

6.     That Defendant violated the provisions of Texas Civil Practice and Remedies Code Section 134.001, et seq. and/or Texas Penal Code Section 31.03.

7.     That Plaintiff is due a sum for breach of the contract.

8.     That Plaintiff was a start-up company and had profits at the time of the alleged breach by Defendant.

9.      That Defendant had contracts and/or purchase orders with Sunbeam-Oster for Plaintiff's services at or before the time of the alleged breach by Defendant.

10.     That Plaintiff incurred expenses, costs and other liabilities in reliance on representations made to Plaintiff by Defendant.

11.     That Plaintiff mitigated or failed to mitigate its damages

12.     The amount of attorney's fees due Plaintiff, if any.

13.     The amount of exemplary damages due Plaintiff, if any.

## 8. AGREED PROPOSITIONS OF LAW

1.      That the general principles of Texas contract law apply for purposes of determining liability for breach of contract.

2.      That the general principles of Texas tort conversion law apply for purposes of determining liability for conversion.

3.      That preponderance of the evidence is the standard of proof for the issues of breach of contract, conversion and compensatory damages and any affirmative defenses with respect to said issues.

4.      That clear and convincing evidence is the standard of proof on the issue of malice or fraud in connection with Plaintiff's claim for entitlement to exemplary damages.

## 9. CONTESTED PROPOSITIONS OF LAW

1.      That Texas Penal Code Section 31.03 and/or Texas Civil Practice and Remedies Code Section 134.001, et seq., is/are applicable to the issue of fraud or malice in connection with Plaintiff's claim for exemplary damages in connection with its cause of action for conversion.

2.      That Plaintiff, as a start up company with no history of profits, is entitled to recover damages for lost profits.

3.    That Plaintiff is barred by the doctrine of laches from obtaining any relief.

4.    That Plaintiff is barred by the doctrine of estoppel from obtaining any relief.

5.    That Plaintiff is barred by the doctrine of unclean hands from obtaining any relief.

6.    That other than the foregoing, the contested propositions of law are included in the above-listed contested propositions of fact.

## 10. EXHIBITS

1.    Plaintiff's exhibit list is attached.

2.    Defendant's exhibit list is attached.

## 11. WITNESSES

1.    Plaintiff's witness list is attached.

2.    Defendant's witness list is attached.

3.    If other witnesses to be called at the trial become known, their names, addresses, and the subject of their testimony will be reported to opposing counsel in writing as soon as they are known. This does not apply to rebuttal or impeachment witnesses.

## 12. SETTLEMENT

The parties have had minimal settlement discussions. The parties have agreed to non-binding mediation, which is presently scheduled for Friday, May 2, 2003.

## 13. TRIAL

1.    **Length of Trial:** The parties believe that this case can be tried to the court in approximately 50 hours or based on 6 hours testimony per day about 8-10 days.

2.    **Logistical problems:** Both parties may present evidence via videotape exhibits which would require a VCR and television monitor. All of Defendant's percipient witnesses reside out-of- state and will require seven to ten days advanced notice of the trial date and their anticipated

appearance date in order to be able to arrange travel and other matters necessary for them to timely appear at trial for their testimony.  Defendant's Expert Witnesses reside in Texas.

## 14. ATTACHMENTS

1. Plaintiff's version of statement of the case.

2. Plaintiff's contentions.

3. Plaintiff's exhibit list.

4. Plaintiff's witness list.

5. Defendant's exhibit list.

6. Defendant's witness list.

7. Plaintiff's combined proposed findings of fact and conclusions of law

8. Defendant's Proposed Findings of Fact

9. Defendant's Proposed Conclusions of Law

10. Plaintiff's one page Motions in Limine

11. Defendant's Motion in Limine 1

12. Defendant's Motion in Limine 2

13. Defendant's Motion in Limine 3

14. Defendant's Motion in Limine 4

Date: _____

_____
UNITED STATES MAGISTRATE JUDGE

APPROVED:

Date: _March 26, 2003_

_John R. Griffith By David C. Garza by permission_
JOHN R. GRIFFITH
Attorney-in-Charge for Plaintiff
**Excel Bobbins and Plastic Components, Inc.**

Date: _March 26, 2003_

_David C. Garza_
DAVID C. GARZA
Attorney-in-Charge for Defendant
**JSW Plastics Machinery, Inc.**

# Plaintiff's Statement of Facts

EXEL BOBBINS AND PLASTIC COMPONENTS, INC., ("EXEL") is a Texas Corporation with its principal place of business in Brownsville, Cameron County, Texas. JSW PLASTICS MACHINERY, INC., ("JSW") is a Delaware corporation with its principal place of business in Anaheim, California.

Beginning in 1999, EXEL asked JSW to  sell to EXEL certain JSW plastic molding machines. EXEL sought to purchase JSW molding machines in order to provide plastic molding services to its customers, including, but not limited to, Sunbeam-Oster. Further, EXEL asked JSW to extend a line of credit to EXEL, specifically for the purchase of certain JSW machines from JSW. Thereafter, in February of 2000, JSW contracted with EXEL to sell them machines and extend to EXEL a $1.5 Million dollar line of credit. Pursuant to  that JSW promised to provide and sell the molding machines needed by EXEL to provide services to Sunbeam. JSW also extended to EXEL a $1.5 Million dollar line of credit with payment terms of 5% down payment and balance net 180 days, at 0% interest. JSW further guaranteed EXEL a stock inventory of Injection Molding Machines at their Anaheim California facility with delivery requirements of fourteen days or less. Finally, JSW promised their "full support on an ongoing bases" and "to assist EXEL in any way possible to accommodate the needs of Sunbeam". It was projected that Exel would purchase 14-16 machines pursuant to this line of credit. This Contract was signed by Jerry Johnson Vice President for JSW. This contract was never withdrawn.

Thereafter,  EXEL triggered the $1.5 million dollar line of credit and issued purchase orders to JSW for the purchase of two machines:

1. Purchase order #9 dated November 7, 2000 for model J500

2. Purchase order #15 dated January 23, 2001 for model J110.

On January 30, 2001, JSW confirmed the line of credit and agreed to provide to EXEL the above referenced machines for the total sum of $287,355.00 using the $1.5 million dollar line of credit.

JSW contractually agreed to accept the 5% down payment in three equal monthly installments of $4,788.59.  After the last down payment was made, there would not be any payments due for a period of Six Months.  Then, starting on the seventh month, EXEL was to make eleven monthly payments of $5000.00  until the twelfth month, at which time EXEL agreed to make a balloon payment of the balance owed ($217,768.23) Finally, JSW agreed that no interest would be charged.  This contract was signed by the Vice President of operations for JSW (Jerry Johnson), and the President of EXEL (Steve Becker).  The machines (J110 and J500) were to be shipped after the first installment of $4,788.59 was paid.  The remaining two installments were due 30 and 60 days after the shipment of the machines.  JSW did not cancel or withdraw this contract prior to its acceptance by EXEL.

On or about February of 2001, employees of JSW (Jerry Johnson, Bob Fehrenbach and Dennis Pochatek) had two telephone conferences with employees of Sunbeam, whereby JSW, through their employees confirmed to Sunbeam, that JSW had extended a $1.5 Million dollar line of credit to EXEL for the purchase of 14-16 machines.  JSW further advised Sunbeam that JSW as going to supply and sell machines to EXEL and further support EXEL in all of their business dealings with Sunbeam and Sunbeam told JSW that would be sending molds to EXEL for production.

On April 30, 2001, EXEL paid to JSW the $4,788.59 which represented the first installment of the 5% down payment, and expected JSW to deliver the J110 and J500 within fourteen days.  The machines were never delivered causing EXEL damages in the form of lost

profits and other consequential damages.

On May 8, 2001, Steve Becker, president of EXEL, requested in writing that the machines (J500 &J110) be delivered to EXEL pursuant to the Contracts.

By letter dated May 10, 2001, JSW confirmed they had received the $4,788.59. However, JSW stated they would not ship the machines until they received full payment of a past due balance on a model J385 previously purchased by EXEL. This letter further extended to EXEL, **a one day extension** until May 11, 2001, to pay the balance due on the J385. Finally, JSW advised EXEL it would apply the $4,788.59 (down payment for J500 &J110) toward the recovery and remarketing of the J385. This letter further withdrew the $1.5 Million dollar line of credit causing EXEL to lose profits and suffer consequential damages.

JSW never delivered the J500 or J110. Further, JSW did not return the $4,788.59 paid by EXEL as a down payment, despite a request by Steve Becker for the return of such funds.

As a result of JSW actions and/or inactions, EXEL incurred damages including but not limited to lost profits, expenses, costs and other actual and consequential damages.

# Contentions of the Plaintiff

1. Plaintiff contends that JSW breached the Contracts between JSW and EXEL.

2. Plaintiff contends, that JSW's breach was not excused.

3. Plaintiff contends that as a result of JSW breach, EXEL incurred actual and consequential damages including but not limited to lost profits.

4. Plaintiff contends that JSW converted money belonging to EXEL, and they did so with malice.

700.0078/1794

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXCEL BOBBINS AND PLASTIC COMPONENTS, INC. | § | |
| Plaintiff | § | |
| | 1. | CIVIL ACTION NO. B-01-148 |
| VS. | § | |
| | § | |
| JSW PLASTICS MACHINERY, INC. | § | |
| Defendant | § | |

## PLAINTIFF'S TRIAL EXHIBIT LIST

1. Letter dated February 29, 2000, from JSW Plastics Machinery, Inc. signed by Jerry Johnson granting Exel Bobbins a line of credit in the amount of $1.5 million.

2. Letter dated January 30, 2001, from JSW Plastics, Inc. to Exel Bobbins, accepted by Steve Becker on February 26, 2001, with changes dated March 21, 2001.

3. Letter dated April 19, 2001, from Sunbeam-Oster signed by Hector Lucio.

4. Check No. 3021 dated April 30, 2001, in the amount of $4,855.59, along with evidence that the same was cashed by JSW Plastics Machinery, Inc.

5. Letter dated May 10, 2001, from JSW Plastics Machinery, Inc. signed by Jerry Johnson to Exel Bobbins.

6. Purchase Order No. 9 dated November 7, 2000, regarding the 500 ton.

7. Purchase Order No. 5 dated October 10, 2000, regarding the 720 ton.

8. The Order Check Sheet dated October 18, 2000, regarding Exel Bobbins' purchase order No. 5.

9. JSW Plastics Machinery, Inc. invoice number 06288 dated September 6, 2000, regarding the J385.

10. Purchase Order No. 98-1811 from Exel Bobbins regarding the J385 with order date 08-22-00.

11. Check Order Sheet regarding Purchase Order No. 15 with the date of March 21, 2001, from JSW.

12.     Fax from Wells Fargo, George C. Muhora to Dennis Pochatek dated January 22, 2001, with all attachments thereto.

13.     Purchase Order No. 15 from Exel Bobbins dated January 23, 2001, regarding the J110.

14.     Purchase Order No. 20 dated February 8, 2001, regarding the 720.

15.     Letter from JSW dated March 19, 2001, to Exel Bobbins signed by Dennis Pochatek.

16.     Letter from Regan Braun Law Offices dated June 13, 2001.

17.     Letter dated June 21, 2001, from Exel Bobbins to Regan Braun Law Office signed by Steve Becker.

18.     Letter dated June 28, 2001, from Regan Braun Law Offices to Steve Becker signed by James Regan.

19.     Letter dated July 13, 2001, from Regan Braun Law Offices to Exel Bobbins signed by James Regan and Steve Becker.

20.     Letter dated March 19, 2001, from JSW signed by Dennis Pochatek to Steve Becker.

21.     Hand-written notes of Dennis Pochatek regarding machines to be delivered to Exel Bobbins.

22.     Letter dated March 22, 2001, from JSW to John Annoreno and Steve Becker.

23.     Check Order Sheet dated November 9, 2000, regarding Purchase Order No. 9 on the J-110E.

24.     RFQ/Injection Molding Machine dated March 12, 2000, for customer Exel Plastics.

25.     Lease dated August 15, 2000, between Nafta Development Group and Exel Bobbins.

26.     Any and all documents attached to the deposition of Jerry Johnson.

27.     Any and all exhibits attached to the deposition of Dennis Pochatek.

28.     Any and all documents attached as exhibits to the deposition of Steve Becker.

29.     Any and all documents exhibits attached to the deposition of John Annoreno.

30.     The report of Wayne Wells and any and all exhibits attached to his deposition.

31. The report of Bill Abington, including any supplemental reports, and any and all exhibits attached to his deposition, along with enlargements of the same, as well as enlarged charts interpreting the attachments to the exhibits of Bill Abington's report, as well as charts which will analyze and critique the testimony of Richard Cortez.

32. Any and all documents which were produced at the deposition of Jerry Johnson which was represented to Plaintiff by Defendant as the entire file of JSW Plastics Machinery, Inc. on Exel Bobbins.

33. Lease dated August 31, 2001, between Nafta Development Group and Exel Bobbins.

34. Certificate of Attendance of Steve Becker for attending course ISD 9000 Implementation dated September 1997.

35. Letter dated June 1, 2001, from LG International to Steve Becker regarding Lease Agreement and attached Confidential Agreement between LGI and Exel Bobbins.

36. Credit application of LG International dated May 23, 2001, of Exel Bobbins.

37. Letter dated May 23, 2001, from LG International to Steve Becker with attachments.

38. Letter dated May 11, 2001, from Sumitomo Plastics to Steve Becker at Exel Bobbins with attachments.

39. Letter dated May 11, 2001, from LG International to Steve Becker with attachments.

40. Equipment Lease Agreement dated May 31, 2001, between LG International and Exel Bobbins and Plastic Components with attachments.

41. Guarantee dated May 31, 2001, signed by Steve Becker with attachments.

42. Fax from LG International to Exel Bobbins dated August 24, 2001, with attachments.

43. 2000 U.S. Income Tax Return for Exel Bobbins with attachments.

44. Brownsville Development Council Project Financing Guidelines, date of approval February 24, 2000.

45. Letter dated March 30, 1999, from Brownsville Development Board signed by Ben Medina to Exel Bobbins with an attachment dated August 5, 1999, from Brownsville Development Board to Steve Becker signed by Jason Hilts.

46. Letter dated January 6, 2000, from Brownsville Development Board to Exel Bobbins signed by Lochwood D. Larson with attachments.

47.    Fax dated November 1, 1999, from Brownsville Economic Development Council to Exel Plastics with the attached letter dated August 6, 1999, from Brownsville Economic Development Board to Steve Becker.

48.    Employer's Quarterly Report dated January 31, 2002, with fax cover sheet.

49.    E-mail from Hiriyama dated May 4, 2001 to Jerry Johnson and others.

50.    Exel Bobbins' Quality Policy Manual.

51.    Exel Bobbins Quality Procedure Manual.

52.    Profit and Loss Statement of Exel Bobbins from October 2000 through February 2003.

53.    Letter dated March 23, 2001, from JSW to Steve Becker signed by Dennis Pochatek.


Plaintiff intends to use as exhibits all documents produced by Plaintiff in response produced in their Initial Disclosure

700.0078/1794

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXCEL BOBBINS AND PLASTIC COMPONENTS, INC. | § § § | |
| Plaintiff | § § | CIVIL ACTION NO. B-01-148 |
| VS. | § § | JURY |
| JSW PLASTICS MACHINERY, INC. | § § | |
| Defendant | § | |

## PLAINTIFF'S TRIAL WITNESS LIST

**Wayne E. Wells, Ph.D.**
63 Avenida Pizarro
Rancho Viejo, Texas 78575
(956) 574-6664

**William Abington, CPA**
PricewaterhouseCoopers L.L.P,.
1201 Louisiana, Suite 2900
Houston, Texas 77002-5678
(713) 356-4000

**John Annoreno**
302 Roma Jean Parkway
Streamwood, Illinois 60107

**Hector Lucio**
Sunbeam-Oster
549 South Vermillion
Brownsville, Texas 78521

**Arnie Arnez**
Sunbeam-Oster
549 South Vermillion
Brownsville, Texas 78521

**Steve Becker**
Exel Bobbins & Plastic Components
3301 Nafta Parkway, Unit C
Brownsville, Texas 78521

**John R. Griffith**
Griffth, Hill & Ochoa, L.L.P.
100 Savannah, Suite 500
McAllen, Texas 78503

**James J. Regan**
Regan & Braun Law Offices
2522 Artesia Blvd., Suite 200
Redondo, CA 90278

Plaintiff also intends to call as witnesses any individuals listed by the Defendant on their trial witness list, as well as any rebuttal witnesses that may be necessary after the Defendant puts on their case in chief.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § § | |
| JSW PLASTICS MACHINERY, INC., | § § | **EXHIBIT LIST** |
| Defendant. | § § § | |

| List of Defendant JSW PLASTICS MACHINERY, INC.'s Trial Exhibits | Proceeding Trial | Date |
|---|---|---|

| No. | Description | Adm | Exd |
|---|---|---|---|
| 1 | Letter, February 29, 2000, JSW Plastics Machinery, Inc. (Jerry Johnson) "To Whom It May Concern" re Exel Bobbins & Plastic Components, Inc. | | |
| 2 | Purchase Order No. 98-1811, August 22, 2000, Exel Bobbins & Plastic Components, Inc. to JSW Plastics  Machinery, Inc. | | |
| 3 | Invoice No. 06288, September 5, 2000, JSW Plastics Machinery, Inc. to Exel Bobbins & Plastic Component. | | |
| 4 | Purchase Order No. 5, October 18, 2000, Exel Bobbins & Plastic Components, Inc. to JSW Plastics  Machinery, Inc. | | |
| 5 | Purchase Order No. 9, November 7, 2000, Exel Bobbins & Plastic Components, Inc. to JSW Plastics  Machinery, Inc. | | |
| 6 | Purchase Order No. 9, November 7, 2000 (as revised per 3/2/01 conversation), Exel Bobbins & Plastic Components, Inc. to JSW Plastics  Machinery, Inc. | | |

| 7 | Purchase Order Check Sheet (2 pages), November 9, 2000, JSW Plastics Machinery, Inc. re Purchase Order No. 9. | | |
|---|---|---|---|
| 8 | Proposal, January 12, 2001, JSW Plastics Machinery, Inc. (Jerry Johnson) to Exel Bobbins & Plastic Co. (Steve Becker). | | |
| 9 | Fax, January 22, 2001, Wells Fargo Bank (Georg C. Muhoray) to JSW (Dennis Pochatek) with enclosures (11 pages including fax cover sheet). | | |
| 10 | Letter, January 22, 2001, Wells Fargo Bank (Georg C. Muhoray) to Exel Bobbins & Plastic Components, Inc. (Steve Becker). | | |
| 11 | Purchase Order No. 15, January 23, 2001, Exel Bobbins & Plastic Components, Inc. to JSW Plastics Machinery, Inc. | | |
| 12 | Purchase Order Check Sheet (2 pages), March 21, 2001, JSW Plastics Machinery, Inc. re Purchase Order No. 15. | | |
| 13 | Letter agreement, January 30, 2001, JSW Plastics Machinery, Inc. (Jerry Johnson) to Exel Bobbins, Inc. (Steve Becker) (unsigned by Becker). | | |
| 14 | Letter agreement, January 30, 2001, JSW Plastics Machinery, Inc. (Jerry Johnson) to Exel Bobbins, Inc. (Steve Becker) with interlineations, executed by Steve Becker. | | |
| 15 | Purchase Order No. 20, February 8, 2001, Exel Bobbins & Plastic Components, Inc. to JSW Plastics Machinery, Inc. | | |
| 16 | Statement, March 2, 2001, JSW Plastics Machinery, Inc. to Exel Bobbins & Plastic Component. | | |
| 17 | Letter, March 19, 2001, from JSW Plastics Machinery, Inc. (Dennis J. Pochatek) to Exel Bobbins & Plastic Company (Steve Becker). | | |
| 18 | Letter, March 21, 2001, from JSW Plastics Machinery, Inc. (Dennis Pochatek) to Exel Bobbins & Plastic Company (Steve Becker). | | |
| 19 | Letter, March 21, 2001, from JSW Plastics Machinery, Inc. (Angelica Iwamoto ) to Exel Bobbins & Plastic Comp. (Steve Becker). | | |
| 20 | Letter, March 22, 2001, from JSW Plastics Machinery, Inc. (Dennis Pochatek) to Exel Plastics (Steve Becker and John Annoreno). | | |
| 21 | Letter, March 23, 2001, from JSW Plastics Machinery, Inc. (Dennis Pochatek) to "Steve.") | | |
| 22 | Fax transmittal, March 23, 2001, from JSW Plastics Machinery, Inc. (Dennis Pochatek) to Mr. Amaya. | | |

c:\dcg\c\JSW\Exhibit-List

| | | | |
|---|---|---|---|
| 23 | April 2, 2001, Form UCC-1 for Machine Model J500E2, Exel Bobbins & Plastic Comp. (Debtor), JSW Plastics Machinery, Inc. (Secured Party), executed by Steve Becker. | | |
| 24 | April 2, 2001, Form UCC-1 for Machine Model J110E2, Exel Bobbins & Plastic Comp. (Debtor), JSW Plastics Machinery, Inc. (Secured Party), executed by Steve Becker. | | |
| 25 | Letter, April 19, 2001, from Sunbeam (Hector Lucio) to JSW Plastics Machinery, Inc. | | |
| 26 | Letter, April 20, 2001, from JSW Plastics Machinery, Inc. (Dennis Pochatek) to Exel Plastics (John Annoreno). | | |
| 27 | E-mail, April 30, 2001, Rick Bell to Pochatek, Johnson and Akeda. | | |
| 28 | Check No. 3021, April 30, 2001, Exel Bobbins & Plastic Components, Inc. (payor) to JSW Plastics Machinery, Inc. (payee), in the sum of $4,855.59. | | |
| 29 | Check No. 3021 with handwritten notes to Rick Bell dated April 30, 2002 | | |
| 30 | E-mail, May 4, 2001, from Fumio Hirayama to Jerry Johnson. | | |
| 31 | E-mail, May 6, 2001, from Rick Bell to Fumio Hirayama. | | |
| 32 | Letter/fax, May 8, 2001, Exel Bobbins & Plastic Components, Inc. to JSW Plastic Machinery Inc. (To Whom It May Concern). | | |
| 33 | Letter, May 10, 2001, from JSW Plastics Machinery, Inc. (Jerry Johnson) to Exel Bobbins, Inc. (Steve Becker). | | |
| 34 | E-mails (2), May 25, 2001, between JSW Plastics Machinery, Inc. (Jerry Johnson) and Capital Finance and Leasing (Robert Garrido-Lecca). | | |
| 35 | Letter, June 13, 2001, Regan•Braun Law Offices (James J. Regan) to Exel Bobbins and Plastics Components, Inc. (John Annoreno). | | |
| 36 | Letter, June 21, 2001, Exel Bobbins & Plastic Components (Steve Becker) to Regan•Braun Law Offices (James J. Regan). | | |
| 37 | Letter, June 28, 2001, Regan•Braun Law Offices (James J. Regan) to Exel Bobbins and Plastics Components, Inc. (Steve Becker). | | |
| 38 | Letter, July 10, 2001, Exel Bobbins & Plastic Components (Steve Becker) to JSW PMI. | | |

| | | | |
|---|---|---|---|
| 39 | Letter, July 13, 2001, Regan•Braun Law Offices (James J. Regan) to Exel Bobbins and Plastics Components, Inc. (Steve Becker), read and agreed to by Becker. | | |
| 40 | Sales Order No. 04078, cancellation date August 22, 2001, JSW Plastics Machinery, Inc., cancelling Exel Bobbins & Plastic Components, Inc. Purchase Order  No. 98-1811, August 22, 2000. | | |
| 41 | Profit and Loss YTD Comparison, November 2002, Exel Bobbins & Plastic Components. | | |
| 42 | Balance Sheet, as of October 31, 2002, Exel Bobbins & Plastic Components. | | |
| 43 | U.S. Income Tax Return for S Corporation, Form 1120S, 2001, Exel Bobbins & Plastic Components | | |
| 44 | U.S. Income Tax Return for S Corporation, Form 1120S, 2000, Exel Bobbins & Plastic Components. | | |
| 45 | Letter, April 19, 2001, Sunbeam (Hector Lucio) to JSW Plastics Machinery Inc. | | |
| 46 | Any exhibit listed or admitted by the other party | | |
| 47 | All rebuttal exhibits | | |
| 48 | | | |
| 49 | | | |
| 50 | | | |

Dated: March 21, 2003

Respectfully submitted,
**JSW PLASTICS MACHINERY, INC,**
**Defendant**

By: _____

DAVID C. GARZA
State Bar ID No. 0731400
FEDERAL ID #3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel:  (956) 541-4914
Fax: (956) 542-7403
Attorney-in-Charge for JSW Plastics

Machinery, Inc.

JAMES J. REGAN
CAL. SBN 80576
REGAN   BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel:  (310) 372-1988
Fax: (310) 318-5894

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | **WITNESS LIST** |
| Defendant. | § § § | |

List of Witnesses of                                    Proceeding          Date
Defendant JSW Plastic Machinery, Inc.

1.    Gerald Johnson: 780 Yosemite Trail, Roselle, Illinois 60712.
       Will testify as a percipient witness to events occurring in this transaction

2.    Fumio Hirayama: 3726 E. Miraloma Avenue, Anaheim, California 92806.
       Will testify as a percipient witness to events occurring in this transaction

3.    Hatsumi Akeda: 3726 E. Miraloma Avenue, Anaheim, California 92806.
       Will testify as a percipient witness to events occurring in this transaction

4.    Dennis Pochatek: 22500 Lake Road, Suite 103, Rocky River, Ohio 44116.
       Will testify as a percipient witness to events occurring in this transaction

5.    Steven Becker: 3301 Nafta Parkway, Unit C, Brownsville, Texas 78521.
       Will testify as a percipient witness to events occurring in this transaction

6.    John Robert Annoreno:302 Roma Jean Parkway, Steamwood, Illinois 60107.
       Will testify as a percipient witness to events occurring in this transaction

7.    Cindy Garza: 3301 Nafta Parkway, Unit C, Brownsville, Texas 78521.
       Will testify as a percipient witness to events occurring in this transaction

8.   <u>Richard Cortez, CPA (expert witness)</u>:  Burton, McCumber & Cortez,
     LLP, 200 South 10th Street, Suite 1500, McAllen, Texas 78501.

Mr. Cortez will provide expert testimony on the following issues: the injection molding

business and related industries; new business start-ups; problems with companies in bankruptcy;

the capitalization and undercapitalization of companies, including start-ups; Plaintiff's financial

condition and general market conditions during the time period relevant to this action; and the

nature, cause and extent of Plaintiff's claimed damages.

Mr. Cortez is a Certified Public Accountant and a partner in Burton, McCumber &

Cortez, where he is in charge of Litigation Support Services.  He is a member of the Texas State

Board of Public Accountancy (1974), the American Institute of Certified Public Accountants and

the Texas Society for Certified Public Accountants (of which he was President of the local

chapter from 1981-1982).  He received his B.B.A. degree from Pan American College in 1970

and has accumulated in excess of one-thousand hours in continuing professional education

course.  Mr. Cortez has testified and consulted in civil cases involving lost profits and loss of

business value and has acted as a court-appointed receiver, auditor and accountant in a variety of

matters, including the valuation of corporate assets in a domestic matter.  Mr. Cortez's duties and

experience includes conducting audits of small to medium-sized companies, banks, and city and

county governments; the design and implementation of accounting and information systems for

businesses; the compilation and review of financial statements for individuals, partnerships,

corporations, trust and not-for-profit organizations.  Mr. Cortez is an Advisory Board Member of

the International Bank of Commerce-McAllen, in which position he reviews delinquent

accounts, approves loans in excess of $250,000 and administers bank policies.  Mr. Cortez is a

Board Member of the McAllen Economic Development Corporation, the economic development

agency for the City of McAllen, Texas, which is entrusted with recruiting companies to that area and Northern Mexico. Mr. Cortez is a Board Member of the Rio Grande Valley Partnership, a regional chamber of commerce.  Mr. Cortez is a trustee of the McAllen Public Utilities, an elected eight-year position entrusted with administering and establishing policy for the water and sewer services of the City of McAllen, Texas.

9.    Dean Hall (expert witness): LDM Technologies, 5602 East Harrison, Harlingen, Texas 78550.  Mr. Hall will provide expert testimony on the following issues: difficulties involved in start-up companies, including the purchasing of machinery, obtaining supplies and suppliers, quotes, obtaining customers, and general financial considerations; and the administration and management of an injection molding facility.

Mr. Hall is a Plant Manager at LDM Technologies.  Mr. Hall has several years of experience in the injection molding industry.

10.    David Fox, CPA, JD (expert witness): 1875 Century Park East, Suite 700, Los Angeles, California 90067. Mr. Fox will provide expert testimony on the following issues: Plaintiff's business planning and valuation; applicable industry statistics; and the nature, cause and extent of Plaintiff's claimed compensatory and/or punitive damages.

Mr. Fox is a Certified Public Accountant, State of California (1977). Mr. Fox received his B.S. Degree in science and business administration from the University of Colorado (Boulder) (1975) and received his Juris Doctor from Southwestern University School of Law, Los Angeles (1981).  Mr. Fox has completed and passed the ASA Business Valuation courses (BV201-204) and final accreditation is pending.  Mr. Fox has testified as an expert witness in the Federal and Superior Courts in the State of California and has testified therein on  legal and damage issues including economic damages, corporate valuations, lost profits, goodwill and complex corporate

tax and accounting issues. Mr. Fox duties and experience include the preparation and presentation of several thousand business valuations for enterprises in various industries, including companies involved in finance, technology, apparel and textiles, distribution, automotive, biotech, retail, aerospace, healthcare, entertainment, construction, technology, software, and manufacturing companies.

Mr. Fox has owned his own practice since 2001. Prior to that he was Director of CBIZ-Business Valuation Services (2000-2001), specializing in litigation and appraisal services; Senior Manager of KPMG LLP (1998-2000), where he was part of the Forensic & Litigation Services Department, Global Financial Strategies Practice, and where he specialized in general litigation, forensic accounting, economic damages, corporate valuation and buy-sell agreement disputes; and The Accounting Offices of David Fox (1989-1998), where he specialized in litigation support, forensic accounting and appraisal services.

Mr. Fox is a member of the American Institute of Certified Public Accountants and the California Society of Certified Public Accountants.

Dated: March 21, 2003.

Respectfully submitted,
**JSW PLASTICS MACHINERY, INC.,**
**Defendant**

By:

DAVID C. GARZA
State Bar ID No. 0731400
FEDERAL ID #3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel: (956) 541-4914
Fax: (956) 542-7403
Attorney-in-Charge for JSW Plastics

Machinery, Inc.

JAMES J. REGAN
CAL. SBN 80576
REGAN    BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel:  (310) 372-1988
Fax: (310) 318-5894

# Proposed findings of fact and Conclusions of Law

1. There existed a contract between EXEL and JSW.

2. The Contract did not contain any conditions precedent.

3. That JSW breached the contract between EXEL and JSW.

4. JSW's breach was not excused.

5. That EXEL suffered actual and consequential damages as a result of JSW's breach.

6. That JSW converted $4788.59 belonging to EXEL.

7. That EXEL lost profits are not speculative and have been shown by competent evidence to be reasonably certain.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § | CIVIL ACTION No. B-01-148 |
| | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| Plaintiff, | § § | |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | |
| Defendant. | § § § | |

**DEFENDANT JSW PLASTICS MACHINERY, INC.'S
PROPOSED FINDINGS OF FACT**

1.    Plaintiff Exel Bobbins & Plastic Components, Inc. ("Exel") is a corporation incorporated under the laws of the State of Texas with its principal place of business in Brownsville, Cameron County, Texas.

2.    Exel was not incorporated until December 6, 1999 with $500 in capital.

3.    Defendant JSW Plastics Machinery, Inc. ("JSW-PMI"), is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Corona, California.

4.    Exel and JSW-PMI entered into a contract dated February 29, 2000 by which the parties agreed as follows:

a.        JSW-PMI would sell Exel plastic injection molding machines.

b.        JSW-PMI would extend a line of credit to Exel in the amount of $1.5 million dollars on the following terms (i) five-percent (5%) down payment toward each machine purchased; and (ii) the net balance due within one hundred eighty (180) days.

5.    Exel submitted a purchase order to JSW-PMI, P.O. No. 98-1811 dated September 5, 2000, for machine Model J385 at a purchase price of $140,000.

6.    Exel submitted a purchase order to JSW-PMI, P.O. No. 9 dated November 7, 2000, for machine Model J500 at a purchase price of $202,500.

7.    Exel submitted a purchase order to JSW-PMI, P.O. No. 15 dated January 23, 2001, for machine Model J110 at a purchase price of $84,835.

8.    Exel did not make timely payments to JSW-PMI for the J385 machine as required by the terms of the contract.

9.    On April 23, 2001, Exel failed to timely pay the balance due on the J385 machine, the net balance due at that time being $133,000.

10.    On May 4, 2001, Steven Becker, Exel's President, acknowledged to Jerry Johnson, JSW-PMI's Vice-President, that Exel was behind in its payment on the J385 machine, told Johnson that Exel was attempting to obtain bank financing in order to resume payments on the J385 machine and requested that JSW-PMI immediately deliver the J500 and J110 machines to Exel.

11.    Exel's request for immediate delivery of the J500 and J110 machines was refused by JSW-PMI on the grounds that Exel was in default of its payment obligations under the contract with regard to the J385 machine and had failed to provide JSW-PMI with a commitment letter from Sunbeam-Oster

12.    Although Exel had issued purchase order for the J500 and J110 machines in November 2000 and January 2001, respectively, Exel had never made the required 5% down payment to JSW-PMI with respect to either machine.

13.    By letter agreement dated January 30, 2001, Exel and JSW-PMI agreed to the following:

(a) the total payment for the J500 and J110 machines would be $287,355; (b) that in lieu of a 5% down payment, Exel would make three (3) equal monthly payments of $4,788.82, the first installment to be due prior to shipment of the machines.

14.    In connection with the purchase of the J500 and J110 machines, JSW-PMI requested that Steve Becker and John Annoreno execute a UCC-1 Financing Statement in order to perfect JSW-PMI's security interest in both machines.  Becker executed the UCC-1s on or about April 2, 2001.

15.    On or about March 23, 2001, JSW-PMI attempted by letter to obtain the signature of John Annoreno to two (2) UCC-1 Financing Statements naming JSW-PMI as the Secured Party in order to perfect its security interest in the J500 and J110 machines ordered by Exel.

16.    John Annoreno never executed either of the UCC-1 Financing Statements submitted to Exel by JSW-PMI.

17.    On May 8, 2001, Exel sent JSW-PMI a check in the amount of $4,855.59 as a deposit on the J500 and J110 machines.

18.    JSW-PMI responded to receipt of the deposit check by letter dated May 10, 2001, informing Exel that, in accordance with a May 7, 2001, phone conversation between Steve Becker and Jerry Johnson, (a) JSW-PMI would not deliver the J500 or J110 machine until and unless Exel became current on its payments for the J385; (b) JSW-PMI would grant Exel an extension until May 11, 2001 in order to obtain financing for the overdue payments; (c) in the event payment was not received by the close of the extension period, JSW-PMI would exercise its right to recover the machines delivered to Exel's facility, would cancel all outstanding machine orders from Exel and would apply the $4,855.59 deposit to Exel's outstanding obligations with respect to the J385 machine; and (d) the line of credit was being withdrawn as a result of Exel's default in payments.

19.    Exel did not make any further payments to JSW-PMI prior to the May 11, 2001 extension date.

20.    By letter to Exel dated June 13, 2001, JSW-PMI demanded immediate payment of the sum of $134,931.32, which constituted the then outstanding balance and accrued interest due JSW-PMI on the sale of the J385 machine.

21.    Exel never made a written demand on JSW-PMI for the return of Exel's deposit in the sum of $4,855.59.

22.    JSW-PMI never refused any request by Exel for the return of Exel's deposit.

23.    Exel was not excused from making a request to JSW-PMI for the return of any money it contended was being improperly held by JSW-PMI.

24.    Exel was unable to obtain financing from Wells Fargo Bank or U.S. Bancorp due to Exel's financial condition and start-up status.

25.    Exel leased three (3) machines from Lucky Goldstar in or about June 2001.

26.    Exel did not reject, refuse to accept or return any purchase orders it received from Sunbeam-Oster.

27.    Sunbeam-Oster did not issue any purchase orders to Exel on or before May 1, 2001.

28.    Sunbeam-Oster was at all times relevant to this case in a Chapter 11 Bankruptcy.

29.    JSW-PMI did breach the contract with Exel dated February 29, 2000.

30.    Exel failed to perform conditions precedent to the obligations of JSW-PMI, thereby excusing JSW-PMI from further performance of the contract.

31.    Exel was not excused from performing any conditions precedent imposed upon it by the terms of the contract, including the obligation to make timely payments thereunder to JSW-PMI.

32.    JSW-PMI did not convert any funds or other property belonging to Exel.

33.    JSW-PMI did not violate the provisions of Texas Civil Practice and Remedies Code Section 134.001, et seq. and/or Texas Penal Code Section 31.03.

34.    Exel did not suffer any consequential damages, including lost profits damages, or incur any expenses or costs as a result of any breach of contract or tortious conduct on the part of JSW-PMI.

35.    Exel was a start-up company during the relevant time period involved in this case and had no profits through at least June 2001.

36.    Exel did not have any contracts with and/or purchase orders from Sunbeam-Oster either at or before the time of the alleged breach of contract by JSW-PMI.

37.    Exel is not entitled to recover from JSW-PMI any of its attorneys fees.

38.    JSW-PMI did not act with fraud or malice in connection with its dealings with Exel.

39.    Exel is not entitled to recover exemplary damages.

40.    JSW-PMI is entitled to recover from Exel its attorney's fees and/or costs.

Date:  March 21, 2003

Respectfully submitted,
**JSW PLASTICS MACHINERY, INC.,**
**Defendant**

By:    _____

DAVID C. GARZA
State Bar ID No. 0731400
FEDERAL ID #3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel:  (956) 541-4914; Fax: (956) 542-7403
Attorney-in-Charge for JSW Plastics
Machinery, Inc.

JAMES J. REGAN
CAL. SBN 80576
REGAN ◆ BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel:  (310) 372-1988; Fax: (310) 318-5894

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | §<br>§<br>§<br>§ | CIVIL ACTION No. B-01-148 |
| Plaintiff, | §<br>§ | [Assigned to the Hon. Hilda G. Tagle<br>Stipulated to Magistrate Felix Recio] |
| vs. | §<br>§ |  |
| JSW PLASTICS MACHINERY, INC., | §<br>§ |  |
| Defendant. | §<br>§<br>§ |  |

## DEFENDANT JSW PLASTICS MACHINERY, INC.'S
## PROPOSED CONCLUSIONS OF LAW

1.      Alleged violations by Defendant JSW Plastics Machinery, Inc. of Texas Penal Code Section 31.03 and/or Texas Civil Practice and Remedies Code Section 134.001, et seq., are not admissible to show fraudulent or malicious intent in connection with the Plaintiff Exel Bobbins and Plastics Machinery, Inc.'s ("Plaintiff") claim for exemplary damages in connection with its cause of action for conversion.

2.      Plaintiff may not recover damages for lost profits as a matter of law where the enterprise was a start-up enterprise with no history of pre-interference profits.

3.      Plaintiff is barred by the doctrine of laches from obtaining any relief.

4.      Plaintiff is barred by the doctrine of estoppel from obtaining any relief.

5.      Plaintiff is barred by the doctrine of unclean hands from obtaining any relief.

c:\dcg\c\JSW\Proposed-Conclusion-Of-Law

Date:   March 21, 2003

Respectfully submitted,

**JSW PLASTICS MACHINERY, INC.,**
**Defendants**

By: _____

DAVID C. GARZA
State Bar ID No. 0731400
FEDERAL ID #3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel:  (956) 541-4914
Fax: (956) 542-7403


JAMES J. REGAN
CAL. SBN 80576
REGAN ◆ BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel:  (310) 372-1988; Fax: (310) 318-5894

# Plaintiff's motion in limine.

1. To exclude the proposed expert testimony of Richard Cortez regarding lost profits damages unless the Court finds that he is qualified, and that he has established that his methodology is reliable.

2. To exclude the testimony of Dean Hall regarding the molding industry unless the Court finds that he is qualified and that his testimony is relevant and reliable enough to be presented to the jury.

3. To exclude any discussion related to the J385.

4. To exclude any discussion on any machines purchased by Exel Plastics.

5. To exclude any discussion about any witnesses not called to testify.

6. To exclude any discussion about Sunbeam Osters bankruptcy status.