*51*

United States District Court
Southern District of Texas
FILED

MAR 2 6 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | |
| Defendant. | § § § § | |

---

### DEFENDANT'S MOTION *IN LIMINE* NO. 4
### FOR AN ORDER EXCLUDING TESTIMONY OF EXPERT WILLIAM ABINGTON, C.P.A., ABOUT WORK PERFORMED BY HIM AFTER HIS MARCH 4, 2003 DEPOSITION AND PRECLUDING ABINGTON FROM ALTERING HIS DEPOSITION TESTIMONY BASED UPON ANY SUCH WORK; MEMORANDUM OF POINTS AND AUTHORITIES; AFFIDAVIT OF DAVID C. GARZA

---

## I.  INTRODUCTION

Defendant JSW Plastics Machinery, Inc. ("Defendant") hereby moves this Court for an order *in limine* excluding testimony at trial of expert William Abington, C.P.A. ("Abington") about work performed by him after his March 4, 2003 deposition, and precluding Abington from altering his deposition testimony based upon any such work.  This motion is made pursuant to FRCP 26(a)(2)(B) and 26(e)(1) and upon the ground that permitting Abington to testify regarding

1

**Defendant JSW-PMI's Motion *in Limine* No.4**

C:\dcg\c\JSW\JSW-motion-in-limine4

opinions or bases for opinions that he was not prepared to testify to at his deposition would subject JSW-PMI to prejudice and unfair surprise by depriving JSW-PMI of a fair opportunity to prepare for cross-examination and/or rebuttal at trial.

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

### 1.  Factual Background

This litigation concerns a claim by Exel Bobbins and Plastic Machinery, Inc. ("Plaintiff") that Defendant's termination of a line of credit to Plaintiff resulted in damages to Plaintiff, including lost profits, due to Plaintiff's alleged inability to service Sunbeam-Oster because it could not acquire plastic injection molding machines from Defendant in the absence of the credit line.

Plaintiff has designated William Abington, C.P.A , as an expert in this case.  On March 4, 2003, Abington's deposition was taken by David Garza and that same day Plaintiff's produced a report dated March 4, 2003 entitled "Preliminary Expert Report ofWilliam B. Abington.".

At his deposition, Abington made it clear that he had not completed his work and was not prepared at the time of his deposition to testify as to matters on which he intends to testify and may testify at trial and/or which may affect his opinions.  (*See* excerpts from Deposition of William B. Abington ("Abington Depo."), Exhibit "A" to Affidavit of David Garza ("Garza Decl.") attached hereto.)  The following summarizes the preliminary, tentative and incomplete nature of Abington's testimony at his deposition:

- Abington's calculations in his report as produced at his deposition are "our *preliminary* calculations." (Abington Depo., 24/22-23)[1] (Emphasis added)

---

[1]  References are to page/line numbers.

C:\dcg\c\JSW\JSW-motion-in-limine4    **Defendant JSW-PMI's Motion *in Limine* No.4**

- Abington has not visited the Plaintiff's plant but plans to do so. He does not know if such a visit may impact his opinions. (Abington Depo., 53/10-18)

- Abington's report regarding additional lost profits may be supplemented if he obtains any "hard figures" to support his opinion. (Abington Depo., 58/11-23)

- Abington, who was not prepared to express an opinion at his deposition as to the basis of his reported $216,000 damage figure for a  lost incentive rebate from the Greater Brownsville Incentive Corporation, "will continue" to work on his assessment of such damages and will supplement his report as he has "not completed my analysis at this point.". (Abington Depo., 59/11 - 60/10; 60/21 - 61/15)

- Abington testified that "there is [sic] still a couple of areas that I'm working on." (Abington Depo., 83/21 - 84/2)

- With regard to a calculation for expenses relating to the building in which the machines are located, insurance on the machines and ad valorem taxes on the equipment, "there could be some additional items that would go in here, and we are still evaluating that." (Abington Depo., 118/10-18)

- Abington has not considered the issue of the foreseeability of the lost profits damages and has not drawn any conclusions regarding this issue "at this point" but testified he "may" consider the issue. (Abington Depo., 138/18 - 139/5)

2.  **Abington ShouldBe Precluded FromTestifying At Trial Regarding Any Matters About Which He Was Unprepared To Testify At Deposition**

Defendant by this motion seeks simple fairness: to limit Abington's testimony at trial to the conclusions,opinions, bases and factual support about which he was prepared to testify at his

**Defendant JSW-PMI's Motion** *in Limine* **No.4**

March 4, 2003 deposition, and to exclude any testimony at trial that stems from further work and/or review by Abington subsequent to his March 4,2003 deposition. To allow Abington to do further work so as to provide better answers at trial would prejudice Defendant severely. Defendant would be deprived of an adequate opportunity to cross-examine Abington regarding any such answers as Defendant would have not time or opportunity to analyze them with its expert or consultants and would in effect be compelled to conduct what amounts to discovery at trial. The law is clear that Defendant must not be prejudiced in this manner.

3.    **Allowing Abington To Testify To Matters About Which He Was Unprepared To Testify At Deposition Would Prejudice Defendant**

Abington's failure to be completely prepared to testify at deposition about all of his conclusions, opinions, bases and factual support would prejudice the Defendant. Case law makes clear that any such prejudice is a basis for excluding later, undisclosed differences between the expert's initial report or deposition testimony and later changes to the report or testimony arising out of additional expert investigation and analysis.. (*Sheek v. Asia Badger, Inc.*, 250 F.3d 687 (1st Cir. 2000)(portions of expert testimony excluded at trial when expert failed to supplement his report to reflect information obtained shortly before trial); *Licciardi v. TIG Insurance Group*, 140 F.3d 357, 362-67 (1st Cir. 1998)(remanding for new trial when expert's trial testimony differed radically from his report); *Neutrasweet Co. v. X-L Eng'g Co.*,227 F.3d776 (7th Cir.2000)(as a result of the failure to file supplement report on testing done after initial report filed, court properly limited expert's trial testimony to matters contained in his initial report).

4

In the alternative, Defendant requests that the Court grant the Defendant leave to redepose Abington regarding any such supplemental work, data, analysis, opinions and/or reports sufficiently in advance of trial so as not to prejudice the Defendant.

### III.　CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court grant this Motion *in Limine*.

Dated: March 26, 2003.

Respectfully submitted,

**JSW PLASTICS MACHINERY, INC.**
Defendant

By:　_____
DAVID C. GARZA,
State Bar ID No. 0731400
FEDERAL ID #3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel:　(956) 541-4914; Fax: (956) 542-7403
Attorney-in-Charge for JSW Plastics
Machinery Inc.

JAMES J. REGAN
CAL. SBN 80576
REGAN ◆ BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel:　(310) 372-1988; Fax: (310) 318-5894

　**Defendant JSW-PMI's Motion *in Limine* No.4**

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § § | |
| JSW PLASTICS MACHINERY, INC., | § § | |
| Defendant. | § § | |

---

**DEFENDANT'S MOTION *IN LIMINE* NO. 4
FOR AN ORDER EXCLUDING TESTIMONY OF EXPERT WILLIAM ABINGTON,
C.P.A., ABOUT WORK PERFORMED BY HIM AFTER HIS MARCH 4, 2003
DEPOSITION AND PRECLUDING ABINGTON FROM ALTERING HIS DEPOSITION
TESTIMONY BASED UPON ANY SUCH WORK; MEMORANDUM OF POINTS AND
AUTHORITIES; AFFIDAVIT OF DAVID C. GARZA**

---

STATE OF TEXAS     §
                 §
COUNTY OF CAMERON    §

BEFORE ME, the undersigned authority, on this day personally appeared DAVID C.

GARZA, known to me to be the person whose name is subscribed below, who, upon being

duly sworn and under oath, did depose and state:

1 -     My name is *DAVID C. GARZA*.

**DEFENDANT'S MOTION *IN LIMINE* NO. 4**
**FOR AN ORDER EXCLUDING TESTIMONY OF EXPERT WILLIAM ABINGTON**               PAGE 1
c:/dcg/cl/jsw/aff-dcg-mot-limine4

2 -    I am over the age of twenty-one (21) years and am qualified in all respects to make this Affidavit.

3 -    I have never been convicted of a felony or any other crime.

4 -    I am fully competent to make this affidavit.

5 -    I am the attorney in the above captioned matter representing the Defendant JSW PLASTICS MACHINERY, INC.

6 -    I hereby certify that the copies attached to this affidavit are true and correct copies of excerpts from the deposition of WILLIAM ABINGTON taken on March 4, 2003 taken in this case, and more particularly the following:

    (a)    The cover pages with appearances and index, signature page, reporter's certification page, and excerpts of the deposition of the WILLIAM ABINGTON taken on March 4, 2003.

    (b)    The excerpts are found as follows:

        (1)    pages 1 through 5;

        (2)    page 24, lines 22 and 23;

        (3)    page 53, lines 10 through 18;

        (4)    page 58, lines 11 through 23;

        (5)    page 59, lines 11 through 25;

        (6)    page 60, lines 1 through 10;

        (7)    page 60, lines 21 through 25;

        (8)    page 61, lines 1 through 15;

        (9)    page 83, lines 21 through 25;

        (10)    page 84, lines 1 and 2;

        (11)    page 118, lines 10 through 18;

        (12)    page 138, lines 18 through 25;

(13)     page 139, lines 1 through 5;

(14)     pages 166 through 169.

FURTHER AFFIANT SAYETH NOT.

_____
DAVID C. GARZA

SWORN TO AND SUBSCRIBED before me by *DAVID C. GARZA* on this the 25th day of March 2003.

_____
Notary Public in and for Texas
My commission expires: __11/04/06__



VERONICA RENDON
Notary Public, State of Texas
My Commission Expires 11-04-06

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
2                    BROWNSVILLE DIVISION

3
EXEL BOBBINS AND PLASTIC        )
4  COMPONENTS, INC.,            )
        Plaintiff,              )
5                               )
VS.                             )  CIVIL ACTION NO. B-01-148
6                               )
JSW PLASTICS MACHINERY, INC.,)
7      Defendant.               )

8

9  *********************************************************

10

            ORAL DEPOSITION OF WILLIAM ABINGTON, C.P.A.
11                      MARCH 4, 2003

12

   *********************************************************

13

14

15

16          ORAL DEPOSITION OF WILLIAM ABINGTON, C.P.A., produced

17  as a witness at the instance of the Defendant, and duly sworn,

18  was taken in the above-styled and numbered cause on March 4,

19  2003, from 3:01 p.m. to 7:47 p.m., before Rebecca Hutchens,

20  CSR in and for the State of Texas, machine shorthand method,

21  at the offices of PricewaterhouseCoopers, L.L.P., 1201

22  Louisiana, 30th Floor, Houston, Texas 77002, pursuant to the

23  Federal Rules of Civil Procedure and the provisions stated on

24  the record or attached hereto.

25





EXHIBIT

A

1                          APPEARANCES

2

3    COUNSEL FOR PLAINTIFF:

4        Mr. John R. Griffith
         Griffith, Hill & Ochoa, L.L.P.
5        One Park Place
         100 Savannah Avenue, Suite 500
6        McAllen, Texas 78503

7    COUNSEL FOR DEFENDANT:

8        Mr. David C. Garza
9        Garza & Garza, L.L.P.
         680 East St. Charles, Suite 300
10       P.O. Box 2025
         Brownsville, Texas 78522-2025
11

12   ALSO PRESENT:

13       Mr. Aaron Stai

14

15

16

17

18

19

20

21

22

23

24

25

CONTINENTAL COURT REPORTERS, INC.

1

<u>EXAMINATION INDEX</u>

2

<u>THE WITNESS</u>:  WILLIAM ABINGTON, C.P.A.

3
                                                          <u>Page</u>
4     Appearances...................................      2

5         Examination:
              By Mr. Garza...........................      5
6

7     Signature and Changes.........................    165
      Reporter's Certificate........................    167
8

9                      <u>EXHIBIT INDEX</u>

10    <u>NO/DESCRIPTION</u>                                   <u>PAGE</u>

11        Deposition Exhibit 1..........................  5
              Notice of Deposition
12
          Deposition Exhibit 2..........................  5
13            Preliminary Report

14        Deposition Exhibit 3..........................  9
              "Engagement Administration Binder A.1"
15
          Deposition Exhibit 3A......................... 54
16            Engagement Letter

17        Deposition Exhibit 4..........................  9
              "Exel Bobbins Financial Data Binder B.1"
18
          Deposition Exhibit 5..........................  9
19            "Sunbeam RFQ Data Binder B.2"

20        Deposition Exhibit 6.......................... 10
              "Documents Related to JSW Binder B.3"
21
          Deposition Exhibit 7.......................... 10
22            "Documents Received from Client Binder B.4"

23        Deposition Exhibit 8.......................... 10
              "Lost Profits from Lost Sunbeam Products
24            Binder C.1"

25

4

1          EXHIBIT INDEX (continued)

2

3     Deposition Exhibit 8A......................... 59
          Binder C - Memo Written by Aaron Stai
4         Regarding Calls with Dr. Wayne Wells

5     Deposition Exhibit 8B......................... 72
          Summary Sheet Reflecting Utility Expense
6         Coming from the Financial Statements of
          Exel Bobbins
7
      Deposition Exhibit 8C......................... 82
8         Broke Up the 8,712,000-dollar Calculation
          to Two Time periods
9
      Deposition Exhibit 8D......................... 85
10        Machines that would have been required from
          JSW to produce Sunbeam Products and the
11        various purchase amounts associated with the
          individual specific machine
12
      Deposition Exhibit 8E......................... 99
13        Discount of 18 Percent

14    Deposition Exhibit 9.......................... 12
          "Deposition Binder Binder D.1"-Cover Page Only
15
      Deposition Exhibit 9A......................... 12
16        Table of Contents

17    Deposition Exhibit 9B......................... 13
          "Deposition Summary of Hector Lucio"
18
      Deposition Exhibit 9C......................... 13
19        "Deposition Summary of Steve Becker"

20    Deposition Exhibit 10......................... 14
          Deposition Binders
21
      Deposition Exhibit 11......................... 19
22        Summary Page that Summarizes the Lost
          Profits Model
23
      Deposition Exhibit 12......................... 28
24        Affidavit

25

5

| | |
|---|---|
| 1 | (Deposition Exhibits 1 and 2 marked) |
| 2 | WILLIAM ABINGTON, C.P.A., |
| 3 | having been first duly sworn, testified as follows: |
| 4 | EXAMINATION |
| 5 | BY MR. GARZA: |
| 6 | Q.   Would you please state your name. |
| 7 | A.   Sure.  It's William B. Abington. |
| 8 | Q.   Mr. Abington, my name is David Garza.  I'm an |
| 9 | attorney in Brownsville, Texas, and I represent JSW Plastics |
| 10 | Machinery, Inc., in a lawsuit that was brought by Exel Bobbins |
| 11 | and Plastic Components against my client.  Do you understand |
| 12 | that? |
| 13 | A.   Yes, I do. |
| 14 | Q.   Have you ever given a deposition before? |
| 15 | A.   Yes, sir, I have. |
| 16 | Q.   How many depositions have you given before? |
| 17 | A.   I don't know the exact number.  I can estimate for |
| 18 | you, if you would like for me to do that. |
| 19 | Q.   That's fine.  How many? |
| 20 | A.   Okay.  I would estimate 20. |
| 21 | Q.   About 20? |
| 22 | A.   Yes, sir. |
| 23 | Q.   When is the last time you gave one, again, |
| 24 | approximately? |
| 25 | A.   Sure.  I would estimate four months ago. |

3:01P  7

3:02P  13

24

1    talking about Bobbins.   I think you know that.

2    Q.   I understood that.

3    A.   Right.  Okay.  Excel software is the software that we

4    used to build the model.

5    Q.   For example, you know, I see people advertising or

6    maybe folks on the jury see people advertising Quicken, you

7    know, to get your books in order.  That's what I'm saying:  Is

8    there a model that accountants such as you would go to, to

9    Excel software, that says this is a model that you use to

10   develop in coming up with an analysis for lost profits?

3:32P 11  A.   No.  We built a discounted cash flow model tailored

12   specifically for this particular matter.

13   Q.   But that's something that you developed in-house here

14   yourself; that's not a program that I could go buy, you know,

15   Excel software, and plug in the same numbers?

16   A.   You are correct.  We developed that in-house.

17   Q.   So when I was asking you about Number 5 about please

18   produce all written calculations that you have made in

19   preparation for rendering an opinion in this case, Number 11

20   is a compilation of your final calculations as it relates to

21   the lost profits issue?

22   A.   Well, this is our preliminary calculations, yes.

23   Q.   I understand it's still a draft.  But subject to any

24   changes you may make after today, these are the figures that

25   you are working with right now, correct?

53

1      Q.    Would it be fair to say that some of what Mr. Wells

2    has said in his report is information that you have relied

3    upon in forming your opinions, or have you relied on any of

4    his information?

5      A.    Probably more so through a direct inquiry with

6    Mr. Wells.

4:13P  7      Q.    The tour of the Exel Bobbins' facility was not done

8    by you; it was done by Aaron Stai?

9      A.    At this point, yes.

10     Q.    Do you have plans to go visit the plant?

11     A.    I do.

12     Q.    When?

13     A.    I don't have a date.

14     Q.    You don't have a trip scheduled right now?

15     A.    That is correct.

16     Q.    Would a tour of the plant have any impact on your

17   opinion as it presently stands?

18     A.    I don't know.

19     Q.    If the plant wasn't or, in your opinion, did not

20   appear to be functioning properly or had labor problems, that

21   could impact your opinion certainly, right?

22     A.    I don't know.  I can't hypothesize, I suppose, how it

23   might impact my opinion.

24     Q.    Are you saying that if your opinion -- if everybody

25   that was working for him just quit tomorrow, that wouldn't

58

1    other hard figures that you can come up with?

2         A.    That is correct.

3         Q.    And if you do come up with other hard figures, you

4    would supplement your report?

5         A.    Yes.

6         Q.    And, as you sit here today, do you have anything

7    specific that you can identify in the various binders that

8    we've marked as exhibits that you are going to look at for

9    calculations of any potential additional lost profits?

4:32P 10       A.    Specifically, no.

11        Q.    Your next paragraph on Page 7 of Exhibit Number 2,

12   the report says "Lost Profits from Additional Customers and

13   other Sunbeam Products."

14             Do you have any hard figure that you are prepared to

15   testify about today concerning those lost profits?

16        A.    No.    And, to help you understand, that is really a

17   subset under the paragraph that you were just referring to.

18   That is part of what we were just talking about.

19        Q.    So that entire part about additional lost profits,

20   you don't have any hard figures that you have an opinion on

21   today, and if you do, you will supplement your report and add

22   those to it?

23        A.    That is correct.

24        Q.    Now, as I go through in a while for the basis of the

25   opinions where you do have the hard numbers, I'm going to be

59

1  asking you about what documents you relied upon in reaching

2  those conclusions or opinions.  To the extent that any of

3  those documents may also be helpful to you or may be relied

4  upon you to come up with additional lost profits, I would like

5  you to identify them for me as we go through.

4:33P  6      A.   I'll try and remember to do that.

7      Q.   Okay.  And I'll try to remind you as we go through

8  also, but I just want you to understand where I'm going down

9  the road.

10      A.   Okay.  All right.

11      Q.   Okay.  Now, on the bottom of Page 7, there is this

12  "Lost Incentive Rebate from Greater Brownsville Incentive

13  Corporation."

14          Is that a figure that you intend to testify about as

15  a damage that has been sustained by the Plaintiff and is part

16  of the analysis that you were doing under your Engagement

17  Letter?

18      A.   It is an amount that would be an economic loss or an

19  economic damage.  It is my opinion that they did not receive

20  this 216,000-dollar amount.  I've not concluded my opinion as

21  to whether that specific amount is the amount of the economic

22  loss to Exel.

4:35P  23      Q.   So you are not giving an opinion right now that this

24  216,000 is a damage that Exel sustained as a result of the

25  alleged breach of contract by my client?

1    A.    In that amount, no.

2    Q.    Are you working on that still?  Are you going to look

3    at documents to supplement the report on that?

4    A.    Yes, I will continue on that particular subject.

5    Q.    And your opinion may be that it sustained no damage

6    relating to the greater Brownsville Incentive Corporation or

7    it may be that it sustained that much damage?  Is that what

8    you are telling me?

9    A.    It may be this amount.  It may be something less than

10   this amount.  We have just not completed that analysis.

11   Q.    What you did is you took the contract with the

12   Greater Brownsville Incentive Corporation and came up with the

13   numbers what they would have gotten if everything had gone

14   according to plan and that's what they would have received is

15   what you are telling me?

4:36P  16   A.    Yes, that is correct.

17   Q.    And whether the alleged actions taken by my client,

18   JSW, in fact, resulted in them not receiving the full monies,

19   you are not prepared to say right now?

20   A.    Not to give a particular amount associated with it.

21   Q.    And if, in fact, you come up with an opinion on that,

22   you would supplement your report?

23   A.    I will.

24   Q.    And you are not saying whether there is a loss there

25   or not; you are just not sure?

1    A.    I've just not completed my analysis at this point.

2    Q.    Well, as we go through -- well, what documents or

3    what do you need to complete that particular analysis?

4    A.    Probably just a little bit more time to complete this

5    analysis.

6    Q.    Now, continuing through your report, Exhibit 1, of

7    course, is your resume.  Would it be fair to say that a large

8    part, if not most, of your work in financial analysis has had

9    to do with either environmental or oil and gas matters?

4:37P  10    A.    Well, that's certainly the way that this resume --

11    this resume highlights that particular experience.  I've had a

12    lot of experience outside those areas as well that is not

13    highlighted so much on this resume.

14    Q.    Do you continue to still do a large amount of work in

15    financial analysis in the environmental or oil and

16    gas-related-type industry?

17    A.    Not so much in environmental, per se.

18    Q.    Mostly oil and gas?

19    A.    And others as well.

20    Q.    In Exhibit 2 to your report, which has been

21    previously marked as Exhibit 2, it's listing the various

22    things that were reviewed in calculating the damages and lost

23    profits, correct?

4:38P  24    A.    Yes, that's correct.

25    Q.    And it appears that this appears to be exactly the

1        A.    (Witness changes number)

5:15P   2        Q.    Now, have you or the team for Pricewaterhouse gone to

3    see what Exel Bobbins financial statements reflect has, in

4    fact, been the profit that they make -- not the lost profit --

5    but the profit that they made during that time period from

6    May 1, 2001 to March 1st of 2003?

7        A.    That information is on the financial statements, yes.

8        Q.    Do you have something you can show me that shows what

9    it reflects that company has actually made in this time

10   period?

11       A.    Well, I do not think that we have a summary of that

12   work paper in our binders, no.

13       Q.    Now, when you take Exhibit 11, which is the one-page

14   summary with the grand total at the bottom of the lost profits

15   that you calculate --

5:16P  16        A.    Yes.

17       Q.    -- if I understand correctly --

18            MR. GARZA:   Let's go off the record for a

19   minute.

5:17P  20                        (Brief recess)

21       Q.    (By Mr. Garza)  Back on the record.  Do you feel that

22   you acquired sufficient information to express the opinions

23   that you have in your report or do you believe that you are

24   missing any information that you need for your opinions?

5:25P  25        A.    No.  I don't think there's any information that I'm

84

1    missing.  As indicated, as you pointed out earlier, there is

2    still a couple of areas that I'm working on.

3        Q.   Besides the electrical expense we were talking about,

4    looking at Exhibit 11, are there any other areas where there

5    was no independent corroboration done of the figures that you

6    have put into your model?  And by that I mean, for example,

7    I'm just taking, for example, maintenance.  I assume that if I

8    walked you through your book here, you're going to show me a

9    page where you came up with some figures for maintenance and a

10   projected maintenance into the future through April of 2006;

11   is that correct?

5:26P  12       A.   Yes.

13       Q.   Something similar to what you showed me on the

14   electrical?

15       A.   That calculation is in there.

16       Q.   And where would you have gotten -- find me the

17   maintenance one.  Let's look at the maintenance ones.  Can you

18   find that one for me?

5:27P  19       A.   Yes.

20       Q.   Okay.  Again, in Binder 8 behind the "Lost Profit

21   Calculation" tab, there's a document that says in the lefthand

22   side "maintenance sorted by date."

23            Are these actual figures that were used for

24   maintenance?  I don't understand what that figure is.  Can you

25   explain to me what that is?

118

1    Q.    Injection molding.  Machine payments.  That's the

2  purchase of the machines and, I guess, some interest payment

3  for paying the machines over a period of time?

4    A.    This is really a cash flow calculation.  So this

5  would reflect the cash payments associated with the purchase

6  of those machines.

7    Q.    Does your labor up here include employer's share of

8  FICA and all that?

6:20P  9    A.    Well, the labor burden would.

10    Q.    Okay.  Do you not have -- in a model such as this,

11  would you not include any calculation for expenses relating to

12  the building or the part of the building that these machines

13  are in, insurance on the machines, ad valorem taxes on the

14  equipment, on the machines?  There's a variety of things that

15  I don't see listed there that, to me, would affect the net

16  lost profits.

17    A.    Well, there could be some additional items that would

18  go in here, and we are still evaluating that.  I cannot think

19  of anything that is substantial.  When you talk about the

20  space, that is an overhead amount that would not be an amount

21  that would be included in here.  If there are increases in

22  ad valorem taxes associated with machines, that would be an

23  amount that would be included as expenses.

6:21P  24    Q.    And that's not in your calculation?

25    A.    As of today that is not.

1    Brownsville or Cameron County?  Let's say family first.

2        A.    Not that I'm aware of, right, none that would be

3    direct family.

4        Q.    Is there anyone that you know in Brownsville besides

5    me and Mr. Becker?

6        A.    Friends?  Is that you what you said?

7        Q.    Friends.

8        A.    I go down to Brownsville and go fishing from time to

9    time, and so, you know, I know some people in Brownsville.

10       Q.    Have you ever testified in any cases in Brownsville,

11   actually in court in Brownsville?

12       A.    I don't think I have.

13       Q.    Are you going to render any opinion on whether the

14   damages of lost profits were foreseeable?  I know you are

15   rendering an opinion on the calculation of lost profits.  Are

16   you rendering any kind of opinion on whether the damages were

17   foreseeable?

18       A.    I'm not sure.  Foreseeable to whom?

19       Q.    Well, if there was an alleged breach, that they were

20   foreseeable as a consequence of the alleged breach.

21       A.    Well, I haven't thought about that at this point in

22   time.  I may.

23       Q.    But you haven't been asked to render an opinion on

24   that yet?

25       A.    We've talked about just -- Mr. Griffith and I have

1   talked about the claim as a whole and the allegation and the

2   machines and the consequences of not having the machines.  If

3   you consider that as part of the foreseeability, then we've

4   had some of those discussions.  But I've not done any analysis

5   at this point or I've not drawn any conclusion at this point.

6      Q.   What you've done is come up with, assuming everything

7   that the Plaintiff says is right and there was a breach, this

8   is what I calculate the damages are.  Is that fair to where

9   you are at right now?

10     A.   At this point in time, I'm certainly not nor will I

11  give any legal opinion as to a breach.

6:55P 12   Q.   Okay.  Does your lost profits opinion here assume

13  that Exel would have gotten all the business from Sunbeam

14  that's reflected on the RFQ's?

15     A.   It assumes for these particular products that are

16  listed that they would have gotten this business from Sunbeam.

17     Q.   Does your Binder C reflect whether that's a hundred

18  percent of that business into the future or 90 percent or

19  80 percent?

20     A.   Yes.

21     Q.   Do you recall what it -- does it project different

22  amounts for different products?

23     A.   No.  It assumes that the amounts that are contained

24  on the RFQ would actually be produced by Exel Bobbins.

25     Q.   So all the RFQ's that are there, you are projecting

1         I, WILLIAM ABINGTON, C.P.A., have read the foregoing
deposition and hereby affix my signature that same is true and
2   correct, except as noted above.

3

4   _____

5   WILLIAM ABINGTON, C.P.A.

6

7   THE STATE OF_____)
COUNTY OF_____)
8       Before me, _____, on this
day personally appeared WILLIAM ABINGTON, C.P.A., known to me
9   (or proved to me under oath or through (_____)
to be the person whose name is subscribed to the foregoing
10  instrument and acknowledged to me that they executed the same
for the purposes and consideration therein expressed.

11      Given under my hand and seal of office the
12  _____ day of _____, _____.

13

14  NOTARY PUBLIC IN AND FOR
THE STATE OF _____
15

16

17

18

19

20

21

22

23

24

25

CONTINENTAL COURT REPORTERS, INC.

1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
2                          BROWNSVILLE DIVISION

3

EXEL BOBBINS AND PLASTIC          )
4    COMPONENTS, INC.,                 )
         Plaintiff,                    )
5                                      )
VS.                                    ) CIVIL ACTION NO. B-01-148
6                                      )
JSW PLASTICS MACHINERY, INC.)
7        Defendant.                    )

8                         REPORTER'S CERTIFICATION
                  ORAL DEPOSITION OF WILLIAM ABINGTON, C.P.A.
9                            MARCH 4, 2003

10       I, Rebecca Hutchens, Certified Shorthand Reporter in and
     for the State of Texas, hereby certify to the following:
11
         That the witness, WILLIAM ABINGTON, C.P.A., was duly sworn
12   by the officer and that the transcript of the oral deposition
     is a true record of the testimony given by the witness;
13
         That the deposition transcript was submitted on
14   _____to the witness or to the attorney for
     the witness for examination, signature and return to me within
15   30 days;

16       That pursuant to information given to the deposition
     officer at the time said testimony was taken, the following
17   includes counsel for all parties of record:

18   COUNSEL FOR PLAINTIFF:
         MR. JOHN R. GRIFFITH
19       GRIFFITH, HILL & OCHOA, L.L.P.
         ONE PARK PLACE
20       100 SAVANNAH AVENUE, SUITE 500
         McALLEN, TEXAS 78503
21
     COUNSEL FOR DEFENDANT:
22       MR. DAVID C. GARZA
         GARZA & GARZA, L.L.P.
23       680 EAST ST. CHARLES, SUITE 300
         P.O. BOX 2025
24       BROWNSVILLE, TEXAS 78522-2025

25

168

1        I further certify that I am neither counsel for,
related to, nor employed by any of the parties or attorneys in
2   the action in which this proceeding was taken, and further
that I am not financially or otherwise interested in the
3   outcome of the action.

4   *Certified to by me this* 4th *day of*
*March*           , 2003.

5

6

7

8   *Rebecca Hutchens*
REBECCA HUTCHENS, TEXAS CSR No. 2239
9   Expiration Date: 12-31-2004
Continental Court Reporters, Inc.
10  2777 Allen Parkway, Suite 600
Houston, Texas 77019
11  713-522-5080; Fax 713-522-0440

12

13

14

15

16

17

18

19

20

21

22

23

24

25

169

1                         FURTHER CERTIFICATION

2
         The original deposition was/was not returned to the
3    deposition officer on _____;

4        If returned, the attached Changes and Signature page
     contains any changes and the reasons therefor;
5
         If returned, the original deposition was delivered to
6    Mr. David C. Garza, Custodial Attorney;

7        That $_____ is the deposition officer's charges
     to the Defendant for preparing the original deposition
8    transcript and any copies of exhibits;

9        That the deposition was delivered in accordance with Rule
     30(f), and that a copy of this certificate was served on all
10   parties shown herein on and filed with the Clerk.

11       Certified to by me this _____ day of _____,
     2003.

12

13

14   REBECCA HUTCHENS, CSR
     Expiration Date: December 31, 2004
15   Continental Court Reporters, Inc.
     2777 Allen Parkway, Suite 600
16   Houston, Texas 77019.
     713-522-5080; Fax 713-522-0440
17

18

19

20

21

22

23

24

25