IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 19 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| EXCEL BOBBINS AND PLASTIC COMPONENTS, INC., | § § § | CIVIL ACTION No. B-01-148 |
| Plaintiff, | § § | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. | § § | |
| JSW PLASTICS MACHINERY, INC., | § § | Trial Date: May 19, 2003 |
| Defendant. | § § § | |

---

**TRIAL BRIEF OF DEFENDANT JSW PLASTICS MACHINERY, INC. RE PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND CONVERSION**

---

**TO THE HONORABLE JUDGE OF SAID COURT:** Defendant JSW PLASTICS

MACHINERY, INC. ("JSW") hereby files it Trial Brief on Plaintiff Exel Bobbins and Plastic

Components, Inc.'s ("Exel Bobbins") causes of action for (1) breach of contract and (2)

conversion and in support thereof, states as follows:

**I.    FACTUAL SUMMARY**

JSW, a Delaware corporation, is engaged in the business of selling plastic injection

molding machines to commercial clients engaged in the plastic injection molding business, the

business which Exel Bobbins began in Brownsville, Texas, in 2000. Exel Bobbins, a start-up

company jointly owned by Steve Becker and John Annoreno, sought to utilize JSW as a supplier

of plastic injection molding machines. JSW, by letter "To Whom It May Concern" dated

February 29, 2000 ("February 2000 Agreement") stated it would sell machines to Exel Bobbins

and, in that regard, extended to Exel Bobbins a line of credit in the amount of $1.5 million on the

following terms: 5% down with the net balance due in 180 days. (Exhibit "1.")

Thereafter, in August, October and November 2000 and January 2001, Exel Bobbins

issued purchase orders to JSW for four machines (rated in tonnage at, respectively, 110-tons,

385-tons, 500-tons and 720-tons) for a total purchase price of almost $740,000. (Purchase Order

Nos. 98-1811, 5, 9 and 15, collectively Exhibit "2.") Each of these purchase orders reflected the

terms set forth in the February 2000 Agreement: 5% down, net balance 180 days. However, Exel

Bobbins made the required 5% down payment on just one of these machines, the 385-ton

machine costing $140,000, for a required down payment of $7,000. (Invoice dated September 5,

2000, Exhibit "3.") Having received the down payment, JSW delivered the 385-ton machine to

Exel Bobbins. The balance of $133,000 was due on April 23, 2001, calculated from the start-up

date of the machine.

By January 2001, Exel Bobbins was experiencing financial difficulties. JSW therefore

agreed to amend the terms of the February 2000 Agreement by allowing Exel Bobbins to acquire

the 110-ton and 500-ton machines (for a combined purchase price of $287,335) for three monthly

combined down payments of $4,788.92, i.e., delivery would be made upon receipt of 1/3 of the

normal down payment. Payment terms were further extended so that after receipt of the three

initial monthly payments, Exel Bobbins would have no payments for six months. Thereafter

Exel Bobbins would be required to make eleven monthly payments of $5,000 each and in the twelfth month a balloon payment of $217,768.23. This agreement was set forth in a letter dated January 30, 2001 from JSW to Exel Bobbins ("January 2001 Agreement"). (Exhibit "4.") Exel's Steve Becker did not sign this agreement until February 26, 2001 and thereafter, on or about March 21, 2001, Becker made handwritten changes to the January 30 Agreement by which he reduced the price on the 500-ton machine from $208,500 to $202,500. Exel Bobbins did not make the initial down payment for the 110-ton and 500-ton machines until April 30, 2001, when it sent JSW a check for $4,855.59. (Check No. 3021, Exhibit "5.")

Prior to its ultimate receipt of this deposit, JSW, concerned about Exel Bobbins' ability to perform the agreement, sought assurances of that performance. In addition to referring Exel Bobbins to two banks for possible financing, JSW requested from Exel Bobbins a written confirmation that Sunbeam-Oster, the company which Exel Bobbins' hoped would become its primary customer, had committed to purchasing plastic parts from Exel Bobbins. It was not until April 2001 that JSW was provided with a letter from Sunbeam's purchasing manager which, while stating that Sunbeam "will conduct business with Exel Bobbins," also expressly stated that the letter was not a commitment to either JSW or Exel Bobbins and would not be so until a contract was signed. (Letter dated April 19, 2001, Sunbeam to JSW; Exhibit "6.") JSW also sought to obtain the signatures of both owners of Exel Bobbins (Becker and Annoreno) on UCC-1 Financing Statements to secure JSW's continuing security interest in the 110-ton and 500-ton machines. Exel Bobbins never provided JSW with Annoreno's signature. (UCC-1 Financing Statement Nos. 007958 and 007960, collectively Exhibit "7.")

Exel Bobbins failed to make the $133,000 payment on the 385-ton machine which was

due on April 23, 2001 and had been unable to obtain third-party financing for that machine because of its start-up status. Exel Bobbins nonetheless demanded delivery of the 110-ton and 500-ton machines because it had made the $4,855.59 deposit on April 30, 2001. By letter to Exel Bobbins dated May 10, 2001 (Exhibit "8"), JSW informed Exel Bobbins that as no payment had been made on the balance due on the 385-ton machine, JSW was withdrawing the line of credit. Exel Bobbins was informed that the $4,855.59 deposit was being applied as agreed to the 110-ton and 500-ton machines but that they would be held by JSW until full payment on the delinquent account for the 385-ton machine had been made. JSW granted Exel Bobbins until May 11 to obtain financing for this balance. JSW further informed Exel Bobbins that if they were not able to obtain such financing, the 385-ton machine would be recovered and the $4,855.59 deposit applied to that outstanding balance. Exel Bobbins made no subsequent demand for the return of its deposit and JSW never refused any such demand.

By July 2001, Exel Bobbins still had not paid the delinquent balance on the 385-ton machine. Therefore, JSW agreed to allow Exel Bobbins to make a $10,000 payment on that machine and make monthly payments of $2,800 for one year with a lump sum payment on the outstanding principal and interest on July 20, 2002. (Letter dated July 13, 2001; Exhibit "9.")

II.  **EXEL BOBBINS' FAILURE TO PAY CONSTITUTED A FAILURE TO PERFORM A CONDITION PRECEDENT ENTITLING JSW TO WITHHOLD DELIVERY OF GOODS AND CANCEL THE AGREEMENT**

Section 2.511 of the Texas Business and Commerce Code provides: "(a) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete delivery." Upon Exel Bobbins' failure to timely pay the $133,000 balance due on the 385-ton

machine, it was in breach. *Perez v. Alcoa Fujikura, Ltd. 969 F.Supp.* 991, 1013 (W.D. Tex. -

1997) (Where loan contract called for plaintiff to repay debt on or before 4/1/94 and defendant

demanded repayment by letter dated 9/1/95 and plaintiff failed to repay the debt, this was

sufficient to establish a successful breach of contract claim under Texas law); *Godfrey v.*

*Anderson* (1895) (Court of Civil Appeal of Texas) 33 S.W. 997, 998 (where a buyer of

merchandise accepted payment terms of "cash discount of 5% if paid within 10 days from date of

shipment" the failure of the buyer to pay the agreed upon price within 10 days gave rise to a

cause of action in the seller for breach of contract.) Even a partial breach is sufficient it affects a

material part of the agreement. *Hausler v. Harding-Gill Co.*, 15 S.W.2d 548, 549 (Tex. Comm'n

App. 1929, judgm't adopted; *Ennis v. Interstate Distributors, Inc.* 598 S.W.2d 903, 906

(Tex.Civ.App.-Dallas 1980, no writ.

Upon Exel Bobbins' failure to make payment when due, JSW had the right, among other

remedies, to withhold delivery of further machines from Exel Bobbins, resell and recover

damages, or cancel the agreement. Section 2.703 of the Texas Business and Commerce Code

provides:

> "Where the buyer...fails to make a payment when due on or before delivery or
> repudiates with respect to a part or the whole, then with respect to any goods
> directly affected and, if the breach is of the whole contract...then also with respect
> to the whole undelivered balance, the aggrieved seller may
>> (1) withhold delivery of such goods;
>> ***
>> (4) resell and recover damages are hereafter provided;
>> ***
>> (6) cancel."

In *Heating & Air Specialists, Inc. v. Jones* (8th Cir. 1999) 180 F.3d 923, 933, the court held that

under §2.703 by which Texas law adopted the UCC, a franchisor had a right to cancel any

contract with franchisee to deliver goods where franchisee had fallen seriously behind in paying

for such goods, and franchisor was not required to notify franchisor that its past due account was

reason for cancellation, citing *Frigiking, Inc. v. Century Tire & Sales Co.* (N.D.Tex. 1978) 452

F.Supp. 935, 938 (corporation held justified in canceling the distributorship agreements with its

dealer because of its "chronic large overdue balances"; the court concluded that the dealer had

breached the agreements so as to impair the whole contract.)

### III.    EXEL BOBBINS FAILURE TO PROVIDE ASSURANCE OF ITS PERFORMANCE CONSTITUTED A REPUDIATION ENTITLING JSW TO SUSPEND PERFORMANCE

Texas Business & Commercial Code Section 2.609 provides as follows:

> "(a) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
>
> (b) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.
>
> (c) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.
>
> (d) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract."

As of May 10, 2001, when JSW informed Exel Bobbins that it was terminating the line of

credit and would not ship the 110-ton and 500-ton machines until Exel Bobbins had paid its

delinquent balance, JSW had a reasonable basis under commercial standards for insecurity as to

Exel Bobbins' ability to perform the agreement.  The evidence in this case will show that by May

10, 2001, Exel Bobbins had (1) been unable to obtain any third party financing for its venture, (2)

had failed to make a past-due payment of $133,000, (3) over a seven month period had only been

able to make the initial $7,000 down payment on the 385-ton machine and a $4,855.59 down

payment on two others but wanted JSW to assure delivery of $1.5 million in machinery and to

hold machines in JSW's inventory, despite having shown no financial ability to support such an

undertaking, (4) expressed to JSW Exel Bobbins' concerns about its own financial situation, (5)

failed to provide a co-owner's signature on UCC financing statements requested by JSW to

secure its interest in machines to be delivered, (6) failed to provide a written commitment for

orders from Sunbeam-Oster, which JSW then knew was in bankruptcy and (7) required amended

payment terms on two machines extending the time to pay from 6 months to 21 months, and even

after agreeing to such terms, was unable for two months to make the initial deposit which had

been reduced by two-thirds from the original requirement..

Despite repeated requests by JSW to Exel Bobbins for assurance of its performance, by

May 10, 2001, there was none and JSW consequently had the right under Section 2.609 to

repudiate the agreement to extend a line of credit and deliver further machines.  Exel Bobbins has

argued that the delinquency on the 385-ton machine was not part of the line of credit agreement

and therefore any breach with respect to that machine does not excuse JSW's withdrawal of the

line of credit. The UCC comments to Section 2.609 discuss and dispense with this very

argument:

> **"Under commercial standards and in accord with commercial practice, a**

**ground for insecurity need not arise from or be directly related to the contract in question.** [Emphasis added.] The law as to 'dependence' or 'independence' of promises within a single contract does not control the application of this section. Thus, a buyer who falls behind in 'his account' with the seller, even though the items involved have to do with separate and legally distinct contracts, impairs the seller's expectation of due performance...Thus, too, in a situation such as arose in *Jay Dreher Corporation v. Delco Appliance Corporation* (93 F.3d 275, (C.C.A.2, 1937), where a manufacturer gave a dealer an exclusive franchise for the sale of his product but on two or three occasions breached the exclusive dealing clause, although there was no default in orders, deliveries or payments under the separate sales contract between the parties, the aggrieved dealer would be entitled to suspend his performance of the contract for sale under the present section [2.609] and to demand assurance that the exclusive dealing contract would be lived up to. There is no need for an exclusive clause tying the exclusive franchise into the contract for the sale of goods since the situation itself ties the agreements together."

In *Wagal v. SI Diamond Technology, Inc.* (Tex. App.-Houston (1st Dist.) 1999) 998 S.W.2d 299, 300, repudiation of a contract by a buyer was found where the buyer brought laser equipment from the seller and used the equipment at the seller's place of business, paid $15,000 and promised to pay another $15,000 six months later, but six months later buyer told seller it could not pay the second installment and needed more time, seller asked buyer to sign a UCC security agreement and pay rent for equipment but buyer refused. On such a repudiation, the court held the buyer was entitled to resort to any of the remedies provided by the UCC.

## IV.   CONVERSION

Exel Bobbins contends JSW converted the down payment of $4,855.59 by failing to apply it to the 110-ton and 500-ton machines. Conversion in this case must be established by proving that:

(1) At the time of the conversion, Exel Bobbins owned, had legal possession of, or was entitled to possession of the property;

(2) JSW-PMI assumed and exercised dominion and control over the property in an

unlawful and unauthorized manner, to the exclusion of and inconsistent with Exel

Bobbins' rights; and

(3) JSW-PMI refused Exel Bobbins' demand for return of the property.

*Huffmeyer v. Mann,* 49 S.W.3d 554, 558 (Tex. App. – Corpus Christi 2001); *Edmunds v.*

*Sanders,* 2 S.W.3d 697, 703 (Tex App – El Paso 1999).

As the May 10, 2001 letter (Exhibit 7) shows, JSW did not make any use of the deposit

which was inconsistent with Exel Bobbins' rights. The down payment was originally applied as

agreed, i.e., to the first of three down payments on the 110-ton and 500-ton machines but

shipment of these two machines was held back until full payment on delinquent 385-ton machine

and Exel Bobbins was told that if Exel Bobbins could not get financing to make full payment on

the 385-ton machine, JSW would be "applying all other funds from Exel Bobbins received

(which would apparently include the $4,855.59 deposit check) toward the recovery and

remarketing" of the 385-ton machine. This is an expression of a future, contingent event which

has not yet occurred (in other words, JSW had not at this point used the deposit for any purpose

other than as agreed). Moreover, there is no evidence that JSW in fact applied the deposit to any

purpose other than as a deposit on the 110-ton and 500-ton machines and then, as matters

deteriorated, simply held onto the deposit without doing anything specific with it pending

resolution of the payment problems.

Demand by the plaintiff is a required element as against a person who acquired

possession lawfully and without fault. Authority: *Judson Building v. First National Bank of*

*Longview,* 587 F.Supp. 852, 856 (E.D. Tex. 1984)("When possession of property is lawful at the

outset, conversion can only occur when the possessor refuses an owner's demand for return of the property.") To constitute an effective refusal such as will evidence a conversion, the refusal to transfer possession of property to one entitled thereto must be absolute. *Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 204 (Tex Civ App Houston 1975.) It is undisputed that JSW came into possession of the deposit lawfully and without fault. JSW has never plead a demand for the return of its deposit and the evidence in this case will show that JSW never received a demand from Exel Bobbins for its return. Never having received such a demand, JSW was not in a position to decline it. Absent a demand and refusal, Exel Bobbins' cause of action for conversion must fail. Even had JSW received a demand for return of the deposit, a refusal may be proper if made in good faith to resolve a doubtful matter or investigate the rights of the parties. *Edmunds v. Sanders*, 2 S.W.3d 697, 704 (Tex App – El Paso 1999); *Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 204 (Tex Civ App Houston 1975).

## V.    **CONCLUSION**

Based on the foregoing, Defendant JSW Plastics Machinery, Inc. requests that the Court find that:

a.    Defendant did not commit a breach of the agreement;

b.    Plaintiff failed to perform conditions precedent to Defendant's obligations under the agreement, thereby excusing Defendant from further performance;

c.    Plaintiff's actions gave rise to a commercially reasonable insecurity in Defendant regarding Plaintiff's performance of the agreement and Plaintiff having failed to provide timely, reasonable assurance of performance to Defendant, Plaintiff repudiated the agreement and Defendant had the right to exercise its remedies under the UCC, including suspension of

performance and cancellation of the agreement.

       d.  Plaintiff failed to make a demand for the return of its deposit and the making of such

a demand was not excused and therefore Plaintiff may not recover from Defendant for

conversion.

Dated: May 19, 2003.                   Respectfully submitted,

By: _____
      DAVID C. GARZA, SBN 07731400 - Federal id # 3778
      GARZA & GARZA, L.L.P.
      680 East St. Charles, Suite 300
      P.O. Box 2025
      Brownsville, Texas 78522-2025
      Tel: (956) 541-4914; Fax: (956) 542-7403
      Attorney-in-Charge for Japan Steel Works
      America, Inc.

      JAMES J. REGAN
      CAL. SBN 80576
      REGAN ◆ BRAUN LAW OFFICES
      2522 Artesia Boulevard, Suite 200
      Redondo Beach, California 90278
      Tel: (310) 372-1988; Fax: (310) 318-5894

**EXHIBIT  1**

SENT BY: GRIFFITH,SAENZ&HILL    ;    5412884;    SEP-2!  I 16:41;    PAGE 6/7

# JSW PLASTICS MACHINERY INC.

HEAD OFFICE: LOS ANGELES
3726 EAST MIRALOMA AVENUE · ANAHEIM, CALIFORNIA 92806-2107 · PHONE (714) 630-5651 · FAX (714) 630-1888

| | | | |
|---|---|---|---|
| **CHICAGO TECHNICAL CENTER** | **EAST COAST OFFICE** | **DETROIT OFFICE** | **ATLANTA OFFICE** |
| 1300 LANDMEIER ROAD | P.O. BOX 498 | 44712 HELM STREET | 1700 CUMBERLAND POINT DR., STE 17 |
| ELK GROVE VILLAGE, IL 80007 | DAYVILLE, CT 06241-0498 | PLYMOUTH, MICHIGAN 48170 | MARIETTA, GEORGIA 30067 |
| PHONE: (847) 427-1100 | PHONE: (860) 774-2613 | PHONE: (734) 455-9003 | PHONE: (770) 952-0268 |
| FAX: (847) 427-1131 | FAX: (860) 774-3297 | FAX: (734) 455-9058 | FAX: (770) 968-9058 |

February 29, 2000

To Whom It May Concern:

JSW Plastics Machinery Inc., will support the growth and expansion of Exel Bobbins and Plastic Components Inc., by providing any model of JSW PMI Plastic Injection Molding Machine, which they will require for future projects with Sunbeam-Oster. This also includes maintaining a new machine inventory for quick delivery, based on the demands by Exel Customers, as well as providing full support on an on-going bases. We will assist Exel in any way possible to accommodate the needs of Sunbeam-Oster in all of their molding needs.

As of this date, JSW PMI has extended a credit line of $1,500,000.00 to Exel for the purchase of JSW's products and services, and agrees to a payment term of 5% down payment and balance net 180 days, at .% interest. In addition, JSW PMI guarantees Exel a stock inventory of Injection Molding Machines at our Anaheim, CA. facility with delivery requirements of fourteen (14) days or less.

Once again, it has been and will be a pleasure doing business with Exel Plastics Inc., and sincerely appreciate our relationship of being a team supplier member of Exel Plastics.

Sincerely,

Jerry Johnson
Vice President

**EXHIBIT 1**

**EXHIBIT  2**

08/22/2000 16:28 FAX 847 427-1131    JSW TECH CENTER    PMI LOS ANGELES    ☑001

FROM : EXEL PLASTICS INC.          FAX NO. : 630 372 5879

| Purchase Order # | Page |
|---|---|
| 98-1811 | 1 |

# EXEL BOBBINS AND PLASTIC COMPONENTS,INC.

3301 NAFTA PARKWAY UNIT C
BROWNSVILLE, TX 78521
Phone (956) 832-0807
Fax (956) 830-0811

SHIP TO
EXEL BOBBINS

## Purchase Order

VENDOR

JSW Plastics Machinery Inc.
**1300 Landmeier Rd**
Elk Grove Village, IL 60007, U.S.A
(847) 427-1100 fax (847) 427-1131

BILL TO
**EXEL BOBBINS AND
PLASTIC COMPONENTS,INC.
3301 NAFTA PARKWAY UNIT C
BROWNSVILLE , TX 78521**

| REQUESTER EXEL BOBBINS AND PLASTIC COMPONENTS,INC. | | | | DELIVER TO SAME | | |
|---|---|---|---|---|---|---|
| ORDER DATE 8/22/00 | VENDOR CODE | | BUYER JOHN OR STEVE | TERMS 5% down balance 6 months | | SHIP VIA OUR TRUCK |
| F.O.B. | FREIGHT | TAXABLE | P.O. TYPE | ACCOUNT NUMBER | CONFIRM TO John | RESALE NUMBER |

| LINE | PART NUMBER DESCRIPTION | INSP | DELIV DATE | QTY | UOM | UNIT PRICE | EXT | TAX |
|---|---|---|---|---|---|---|---|---|
| 1 | 385 ton molding machine J385EII-P with " B " barrel computer and electronics to be in compliance with Y2K | | | 1 | | $140,000.00 | | |
| | CREDIT MOLD SAMPLE AT AGS,INC | | | | | $1,500.00 | | |
| | | | | TOTAL | | $138,500.00 | | |

EXHIBIT  2

Exel Bobbins & Plastic Components Inc.

# Purchase Order

01 NAFTA Parkway
Unit C
Brownsville, TX 78521

| | DATE | P.O. NO. |
|---|---|---|
| | 10/18/2000 | 5 |

**Vendor**

JSW Plastics Machinery Inc.
3726 E. Miraloma Avenue
Anaheim, CA 92806
Fax: 847-427-1131

**SHIP TO**

Exel Bobbins & Plastic Components Inc.
3301 NAFTA Parkway
Unit C
Brownsville, TX 78521
Ph. 956-832-0807 Fax 832-0811

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| U:2 | :720 Ton Injection Molding Machine; 1.2 Screw; B-Barril | 1 | 312,000.00 | 312,000.00 |
| | NOTE: Ship to above address; Bill to Exel Plastics 302 Roma Jean Pkwy. Streamwood, IL 60107 | | | |
| | Payment Terms as per Sales Rep:Robert Fehrenbach :5% down, Net 4 months | | | |

e appreciate doing business with you.

**EXHIBIT 2**

**Total** $312,000.00

**Purchase Order**

Excel Bobbins & Plastic Components Inc.
3301 NAFTA Parkway
Unit C
Brownsville, TX 78521

| DATE | P.O. NO. |
|------|----------|
| 11/7/2000 | 9 |

**Vendor**

JSW Plastics Machinery Inc.
3726 E. Miraloma Avenue
Anaheim, CA 92806
Fax: 847-427-1131

**SHIP TO**

Excel Bobbins & Plastic Components Inc.
3301 NAFTA Parkway
Unit C
Brownsville, TX 78521
Ph. 956-832-0807  Fax 832-0811

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| IE2 | 500 Ton Injection Molding Machine: B-Barril | 1 | 202,500.00 | 202,500.00 |
| | NOTE: Ship to above address. Bill to Excel Plastics 302 roma Jean Pkwy. Streamwood, IL 60107 | | | |
| | Per Quote dated March 03, 2000, Per Jerry Johnson | | | |
| | REVISION PER CONVERSATION WITH JERRY AND DENIS ON 3/21/01 | | | |

Per special terms Jerry Johnson

Total    **EXHIBIT 2**    $202,500.00

Exel Bobbins & Plastic Components Inc.

# Purchase Order

'1 NAFTA Parkway
Unit C
Brownsville, TX 78521

| | DATE | P.O. NO. |
|---|---|---|
| | 1/23/2001 | 15 |

Vendor

JSW Plastics Machinery Inc
3726 E. Miraloma Avenue
Anaheim, CA 92806
Fax: 847-427-1131

SHIP TO

Exel Bobbins & Plastic Components Inc.
3301 NAFTA Parkway
Unit C
Brownsville, TX 78521
Ph. 956-832-0807  Fax 832-0811

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| J110 ElI | J110I-II with a 7.2 oz "II" barrel, wired for 460/3/60 voltage | 1 | 84,835.00 | 84,835.00 |

**EXHIBIT 2**

†Discounted Price  Machine is in stock, subject to prior sale.

| **Total** | **$84,835.00** |
|---|---|

**EXHIBIT  3**

# JSW   JSW PLASTICS MACHINERY, INC.
3726 E. MIRALOMA AVENUE
ANAHEIM, CA 92806
(714) 630-5651  FAX (714) 630-1886

| PAGE NO. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST. NO. |
|---|---|---|---|---|
| 1 | 06288 | | 09/05/00 | EXE02 |

## INVOICE
04078   0

WORK ORDER NO.   S.O.

CURRENCY: Dollars

EXEL BOBBINS&PLASTIC COMPONENT
3301 NAFTA PARKWAY UNIT C
BROWNSVILLE, TX  78521

S
H
I
P

T
O

EXEL BOBBINS&PLASTIC COMPONENT
3301 NAFTA PARKWAY UNIT C
BROWNSVILLE, TX  78521

| DATE SHIPPED | PURCHASE ORDER NO. | SHIP VIA | | F.O.B. | | TERMS |
|---|---|---|---|---|---|---|
| 09/05/00 | 98-1811 | WILL CALL | | Los Angeles | | Nat 180 Days |

| BUYER | DATE REQUESTED | LOCATION | SALESPERSON | | TERRITORY |
|---|---|---|---|---|---|
| | 09/08/00 | LAHBT | Bob Fehrenbach PE&A | | TEXAS |

| ITEM NO. | DESCRIPTION | QUANTITY ORDERED | QUANTITY BACK ORD. | QUANTITY SHIPPED | UNIT PRICE | EXTENSION | TAX |
|---|---|---|---|---|---|---|---|
| J15E2P/2-95733204 | Injection Molding Machine J385E2P Options: Barre "B" | 1 | | | 1140000.00 | 140000.00 | |

| KIT. | SERIAL/LOT NO. | QUANTITY |
|---|---|---|
| J15E2P/2-95733204 | 2-95733204 | 1 |

*(handwritten notes)*

10-12 - Start up
WATER VALVES

INV. AMT —— 140,000.00
Less 5% D.P. —— < 7,000.00 >
Pd. by ch #7744

Bil Due   133,000.00

Due Date 03/04/01

Due $133,155.45   OWED → MARCH 8, 2001

DUE DATE SHOULD
BE April 12 TO 20
BECAUSE OF LATE
START UP.

EXHIBIT 3

| SUBTOTAL | | INVOICE NO. | PLEASE REMIT THIS AMOUNT |
|---|---|---|---|
| 140000.00 | | 06288 | 140000.00 |

SALES SERVICE

**EXHIBIT  4**



**JSW PLASTICS MACHINERY INC.**

January 30, 2001

Mr. Steve Becker
EXEL BOBBINS Inc.
3301 NAFTA Parkway -- Unit C
Brownsville, TX 78521

Dear Steve,

As you will remember, JSW Plastics Machinery, Inc., extended a Line of Credit to your company, EXEL BOBBINS Inc., and now that we are getting close to shipping machines into your facility in Brownsville, TX., we must have an agreement as to the re-payment of this Line of Credit. Therefore, please accept the following proposal. We will be shipping the following Machines, per your Purchase Order #'s 15 and 5.

1 – JSW Model J500EII Injection Molding Machine      ~~$206,500.00~~   202,500.00 per 3/3/2000
1 – JSW Model J110EII Injection Molding Machine        $ 84,835.00              Quote +
                TOTAL INVOICE AMOUNT         #47788.22   ~~$291,335.00~~   our conversation today 3/21/01
                                                          $ 287,335.00

A 5% Down Payment of the total order amount is normally required prior to shipment, however we will make a special consideration to EXEL BOBBINS of 3 Equal Monthly Payments of ~~$4,555.59~~, with the first payment due prior to shipment of machines, and the next Down Payment Installment is due Thirty (30) days after shipment, and the last Down Payment Installment Sixty (60) days after shipment.
217,768.23

After the last Down Payment Installment is made, there will not be any payments due for a period of Six (6) Months. Then, starting on the Seventh (7) Month, EXEL BOBBINS will make Eleven (11) Monthly payments of $5,000.00 until the Twelfth (12) Month, at which time EXEL BOBBINS agrees to make a balloon payment of the balance owed ($221,768.23) to JSW Plastics Machinery. No interest will be charged during this special financing period, however it is agreed that JSW Plastics Machinery will still remain the owner and have recovery rights of this equipment until final payment has been made by EXEL BOBBINS or it's Financial Partner. JSW Plastics Machinery has the right to cancel or withdraw from this agreement after given written notice to EXEL BOBBINS on a Thirty (30) days notice.

Steve, if you are interested in pursuing this agreement, please sign below and return to my attention, a.s.a.p. as we are ready to ship these machines to you. Should you have any questions about this agreement, or require additional information, please feel free to contact Dennis Pochatek at the Chicago Technical Center.

Sincerely,

Jerry Johnson
Vice President Operations

Accepted By: _____
                    Signature
                    President
                    Title
Date: ___2/26/01___

**EXHIBIT  4**

CORPORATE OFFICE   3728 EAST MIRALOMA AVENUE, ANAHEIM, CA 92806-2107,  PHONE: 714-630-5651   FAX: 714-8 30-1886
CHICAGO TECHNICAL CENTER  1360 LANDMEIER ROAD, ELK GROVE VILLAGE, IL 60007   PHONE; 847-427-1100  FAX: 847-427-1131
ATLANTA REGIONAL OFFICE   730 CUMBERLAND POINT DR., SUITE 17, MARIETTA, GA 30067   PHONE: 770-952-0289  FAX: 770-966-9058
DETROIT REGIONAL OFFICE   24444 CATHERINE INDUSTRIAL DR., SUITE 310, NOVI, MI 48375   PHONE: 248-449-5422  FAX: 248-449-6018



**EXHIBIT 5**



EXEL BOBBINS & PLASTIC COMPONENTS
3301 NAFTA PKWY UNIT D
BROWNSVILLE, TX 78521
(956) 832-0807 / FAX: (956) 832-0811

3021

TEXAS STATE BANK
88-901/1148

4/30/01

PAY TO THE
ORDER OF JSW Plastics Machinery, Inc    $ 4,865.59

Forty eight hundred fifty five .59/00 ——————————— DOLLARS

MEMO  Deposit for 500 ton & 110ton

⑈ SECURITY FEATURES INCLUDED. DETAILS ON BACK ⑈

**EXHIBIT 5**

**EXHIBIT  6**



April 19, 2001

JSW Plastics Machinery Inc.

Dear Sirs:

This letter is a confirmation that Sunbeam-Oster is and will conduct business with Exel Bobbins and Plastic Components Inc. and will book machine time with the said company with production on all machines, we need for the use of running Sunbeam products. This letter doesn't represent a formal commitment with JSW or Exel Plastics until we sign a formal contract, but according the Sunbeam Corp. requirements. Exel comply with all our expectations in price, storage, deliveries, q.c. systems, etc. We appreciate all your cooperation on this project and will expect your full support in all future machine orders pertaining to Exel. Sunbeam will continue to support Exel in future projects and a long lasting relationship

Sincerely,

Lic. Hector Lucio
Purchasing Mgr.

**EXHIBIT  6**

**EXHIBIT  7**

**Registre, Inc.**
514 PIERCE ST.
ANOKA, MN 55303
(612) 421-1713

**007958**

Instructions:
1. PLEASE TYPE this form. Fold along perforation for mailing.
2. Remove Secured Party and
3. If the space provided for any item(s) on the form is inadequate the item(s) should be continued on additional sheets, preferably 5" x 8" or 8" x 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of the financing statement. Long schedules of collateral, indentures, etc., may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
4. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
5. When a copy of the security agreement is used as a financing statement, it is requested that it be accompanied by a completed but unsigned set of these forms, without extra fee.
6. At the time of original filing, filing officer should return third copy as an acknowledgement. At a later time, secured party may date and sign Termination Legend and use third copy as a Termination Statement.

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | 3. Maturity date (if any): |
|---|---|---|
| Exel Bobbins & Plastic Comp. 3301 NAFTA Parkway Unit C Brownsville, TX 78521 | JSW Plastics Machinery Inc. 3726 E. Miraloma Ave. Anaheim, CA 92806 | For Filing Officer (Date, Time, Number, and Filing Office) |
| Tax ID/Social Security No. | Tax ID/Social Security No. | |

4. This financing statement covers the following types (or items) of property:

ONE INJECTION MOLDING MACHINE WITH
ACCESORIES AND PARTS.
MODEL: J500E2
 S/N: 2-00712005481

5. Assignee(s) of Secured Party and Address(es)

This statement is filed without the debtor's signature to perfect a security interest in collateral (check X if so)
☐ already subject to a security interest in another jurisdiction when it was brought into this state.
☐ which is proceeds of the original collateral described above in which a security interest was perfected:

Check ☒ if covered: ☐ Proceeds of Collateral are also covered. ☐ Products of Collateral are also covered. No. of additional Sheets presented:

Filed with:

By: _A.S._ ........ 4/2/01          By: _____
   Signature(s) of Debtor(s)                    Signature(s) of Secured Party(ies)

(1) Filing Officer Copy - Alphabetical          **STANDARD FORM - FORM UCC-1.**

**EXHIBIT 7**

Registr. Inc.
514 PIERCE ST
ANOKA, MN 55303
(612) 421-1713

N

**UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC-1**

INSTRUCTIONS
1. PLEASE TYPE this form. Fold on ___ong perforation for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer. Enclose filing fee.
3. If the space provided for any item(s) on the form is inadequate, the item(s) should be continued on additional sheets, preferably 5" x 8" or 8" x 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of the financing statement. Long schedules of collateral, indentures, etc. may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
4. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
5. When a copy of the security agreement is used as a financing statement, it is requested that it be accompanied by a completed but unsigned set of these forms, without extra fee.
6. At the time of original filing, filing officer should return third copy as an acknowledgement. At a later time, secured party may date and sign Termination Legend and use third copy as a Termination Statement.

**007960**

| This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code: | | **3. Maturity date (if any):** |
|---|---|---|
| **1. Debtor(s) (Last Name First) and address(es)**<br><br>EXEL Bobbins & Plastic<br>Comp.<br>3301 NAFTA Parkway Unit C<br>Brownsville, TX  78521<br>Tax ID/Social Security No. | **2. Secured Party(ies) and address(es)**<br><br>JSW PLASTICS MACHINERY INC<br>3726 E. Miraloma ave.<br>Anaheim, CA  92806<br><br>Tax ID/Social Security No. | **For Filing Officer (Date, Time, Number, and Filing Office)** |

**4. This financing statement covers the following types (or items) of property:**

ONE INJECTION MOLDING MACHINE WITH
ACCESORIES AND PARTS.
MODEL: J110E2
S/N: 2-99701112

**5. Assignee(s) of Secured Party and Address(es)**

| This statement is filed without the debtor's signature to perfect a security interest in collateral _____ (b) | **Filed with:** |
|---|---|
| ☐ already subject to a security interest in another jurisdiction when it was brought _____<br>☐ which is proceeds of the original collateral described above in which a secu_____ | |
| Check ☒ if covered: ☐ Proceeds of Collateral are also covered. ☐ Prod_____ also covered. No. of additional Sheets presented: | |

| By: _____ 4/2/01 | By: _____ |
|---|---|
| Signature(s) of Debtor(s) | Signature(s) of Secured Party(ies) |

(1) Filing Officer Copy - Alphabetical  **STANDARD FORM - FORM UCC-1.**

**EXHIBIT 7**

**EXHIBIT  8**

May 10, 2001


Mr. Steve Becker
EXEL BOBBINS Inc.
3301 NAFTA Parkway – Unit C
Brownsville, TX  78521                          Sent by Fax and Certified Letter


Dear Steve,

I am in receipt of your fax dated May 8, 2001.

Please understand that your check of $4,855.59 (which represents a 1/3 of the 5% down payment) has been received by JSW Plastics Machinery, and is being applied to our model JSW J-500EII Hydraulic Injection Molding Machine located in our L.A., California facility, and our model J-110EII Hydraulic Injection Molding Machine located in our Chicago facility, which is currently on a hold bases, until we receive full payment on the delinquent past due payment of the model J-385EII machine at your facility in Brownsville, TX facility, which was due on April 23, 2001.

Steve, as you know, we (JSW) have extended special payment terms to Exel Bobbins and Plastics Components, with the full understanding and agreement, that Exel Bobbins and Plastics Components would adhere to the payment terms extended to you, however we (JSW) have not been paid for the first shipment of our model J-385EII machine.

Therefore, we must withdraw our initial offer to Exel Bobbins and Plastics Components, the Credit Line of $1,500,000.00, due to non-payment of the original sales agreement.

Per our telephone conversation of May 7, 2001, JSW is extending to you, an extension of payment to May 11, 2001, allowing you to obtain financing for the original payment. Should you not be able to obtain financing, unfortunately, JSW will need to exercise it's right to recover this machine from you facility and cancel all other existing and remaining orders that you have placed with JSW, and applying all other funds from Exel Bobbins and Plastics Components received, toward the recovery and remarketing of the model J385EII machine.

Steve, after reviewing this letter, should you have any questions, or require additional information, please feel free to contact me at the JSW Chicago Technical Center.

Sincerely,


Jerry Johnson
Vice President


**EXHIBIT  8**

**EXHIBIT  9**

07/18/200 : 23:31   9568328811   EXEL BOBBINS & PLAST   PAGE  01

07/13/2001   · · ·   · · ·13·5894   LAW OFFICES J REGAN   PAGE  02

# REGAN · BRAUN

### LAW OFFICES

JAMES J REGAN, PART'R P   1332 ARTESIA BOULEVARD, SUITE 200
MICHAEL J BRAUN, PART'R PA   REDONDO BEACH CALIFORNIA 90278
ALBERT CHANG   TEL (310) 372-1988
LORNE D LILLENTHAL   FAX (310) 318-3894
SHEILA WALSH   E MAIL jregan@reganlaw.com
GENE A WILKER   www.reganlaw.com

OF COUNSEL
ARTHUR W FRANCIS, JR.
A PROFESSIONAL CORPORATION
DONALD L PRICHARD
FRANK D RORIE

July 13, 2001

VIA FAX: (956) 812-0811
Mr Steven Becker, President
Exel Bobbins and Plastics Components, Inc.
3301 Nafta Parkway-Unit C
Brownsville Texas 78521

> Re:   $133,000 Owed JSW Plastics Machinery, Inc.
>        Purchase Order #98-1811

Dear Mr Becker

   This letter follows up your letter-fax request to JSW Plastics Machinery, Inc dated July
10, 2001 with a copy to me wherein you requested payment terms as an alternative to a lump sum
pay off Apparently your company Exel Bobbins and Plastics Components ("Exel") was unable to
get the pay off monies at this point in time  While JSW-PMI feels strongly these monies are
overdue, after much discussion, they will try to work you

   JSW Plastics Machinery proposes the following terms and conditions as an addendum to
the subject purchase order  Please read carefully.  If you are in agreement with the terms and
conditions contained herein, please sign at the end of this letter agreement acknowledging your
consent to this agreement  Please be aware that your signing of this document will constitute a
written contract which can be enforced in a court of law.

   In consideration for JSW-PMI foregoing immediate repossession of the 385 JSW EIIP,
the parties hereto agree to the additional terms and conditions to Purchase Order No  98-1811
dated on or about September 5, 2000 are as follows:

   1.   All the terms and conditions of Purchase Order No  98-1811 are reaffirmed in
in this agreement  subject only to any changes or additions made in this agreement which, if in
conflict with the original purchase order, their document's term's and conditions shall prevail  Per  Jim Regan 7/19/01

                                                          Aug. 1  #12,800.00   SB

   2.   Exel agrees to make a down payment of $10,000 by ~~July 30~~; 2001, pay $2,800
per month commencing August 1, 2001, with a lump sum payment of the outstanding principal
and interest due at the end of one (1) year or on July 20, 2002

   The outstanding principal of $133,000 shall bear interest at the legal rate of ten percent
(10%) on the outstanding balance from April 20, 2001 (per my letter of June 13, 2001) to date of
pay off.                                                          **EXHIBIT 9**

07/18/2001  23:31    956803 911    EXEL BOBBINS  LAST    PAGE 02

07/13/2001  17:1    319-5894    LAW OFFICES J PEGAN    PAGE 03

Mr. Steven Becker, President
July 13, 200
Page Two


3    Each installment payment shall be due and payable to JSW-PMI at its Anaheim,
California of ice or wire-transferred on the first day of each month as follows:

> Mr Fumio Hirayama, President
> JSW PLASTICS MACHINERY, INC.
> 3726 E. Miraloma Avenue
> Anaheim, CA 92806Mr. Steven Becker, President
>
> **Bank Name: Manufacturers Bank**
>            **Headquarters Office**
> **Account No: 90-045-270**
> **Routing No. 122226076**
> **Beneficiary: JSW Plastics Machinery, Inc.**

In the event that the payment is not paid by the fifth (5th) day of each month, then,
an additional charge shall be made on the outstanding balance.

4    In the event that Exel is late on any monthly installment payment, there shall be
a one percent (1%) interest charge on the unpaid balance.

5    In the event that Exel defaults on the loan repayment plan, then, Exel agrees to not
contest JSW PMI's right to repossess the 385 JSW EIP and will immediately make
arrangements for and pay all freight costs to ship the 385 ton press from its present location to
JSW-PMI's facility at Anaheim, California.

6.    Exel and JSW-PMI agree that the sole jurisdiction for any disputes arising from
this agreement shall be litigated solely in the County of Los Angeles, State of California.
California law shall govern this transaction

7.    In the event that a dispute arises as to the interpretation or performance of the
subject purchse order or this addendum, then the prevailing party in such a dispute shall be
entitled to reasonable attorney fees and actual costs.

8    In the event a UCC Financing Statement has not been executed, then, Exel
shall promptly execute any and all financing statements as required by JSW-PMI.

Once you have had an opportunity to review this document, please sign in the area
provided below acknowledging that you have read, agreed, approved and will perform pursuant
to this letter agreement

**EXHIBIT  9**

07/13/2001  · · ·  - 213-5894    LAW OFFICES J PEGAN    PAGE  04

Mr. Steven Becker, President
July 13, 2001
Page Three

Should you have any questions, please do not hesitate to contact me

Sincerely,

JAMES J. REGAN

JJR:cm

c:    Mr. Fumio Hirayama (via fax)
      Mr. Jerry Johnson (via fax)

READ, AGREED AND APPROVED THIS

_19_ DAY OF JULY, 2001

Steven Becker, President
Exel Bobbins and Plastics Components, Inc.
Duly Authorized Agent at the Corporation

**EXHIBIT  9**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **TRIAL BRIEF OF DEFENDANT JSW PLASTICS MACHINERY, INC RE PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT AND CONVERSION** have been served on attorneys of record this the 17th day of May, 2003:

John R. Griffith
Viola G. Garza                    **VIA FAX (956) 971-9451**
GRIFFITH, HILL & OCHOA, LLP
One Park Place
100 Savannah Avenue, Suite 500
McAllen, TX 78503

Moises M. Salas, Jr.
LAW OFFICES OF MOISES M. SALAS, JR.    **VIA FAX (956) 982-0601**
847 East Harrison
Brownsville, TX 78520

Ursula Sherwood