IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EXEL BOBBINS AND PLASTIC COMPONENTS, INC., § § § | | CIVIL ACTION No. B-01-148 |
| Plaintiff, § § | | [Assigned to the Hon. Hilda G. Tagle Stipulated to Magistrate Felix Recio] |
| vs. § § | | |
| JSW PLASTICS MACHINERY, INC., § § | | |
| Defendant. § § § | | |

**DEFENDANT'S BRIEF FOR JUDGMENT FOR JSW-PMI
ON PLAINTIFF'S CAUSE OF ACTION FOR CONVERSION;
MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant JSW Plastics Machinery, Inc. ("JSW-PMI" or "Defendant") asks the court to award judgment for Defendant and to find that Plaintiff Exel Bobbins and Plastics Components, Inc. ("Exel" or "Plaintiff") has failed to sustain its burden of proof on the issue of liability on its cause of action against JSW-PMI for conversion in that Plaintiff has failed to plead or prove the following:

1. Plaintiff has failed to plead or prove that it made a demand for the return of the allegedly converted funds which demand Defendant refused;

2. Plaintiff has failed to plead or prove that it was excused as a matter of law from

making such a demand; and

3. Plaintiff has failed to prove beyond a reasonable doubt that Defendant committed a theft under Texas Penal Code Section 31.03.

## I. INTRODUCTION

Exel has sued JSW-PMI for breach of contract and conversion. The court called the case for a bench trial on the merits on September 9, 2003. The court has heard the complete presentation of the liability case, trial on the issues of liability and damages having been bifurcated on stipulation of the parties. Defendant seeks judgment on the grounds that Plaintiff did not present legally sufficient evidence for Plaintiff to prevail on its two causes of action for conversion.

In its Second Affirmative Defense, Defendant alleges that Plaintiff's claim for conversion is barred by the doctrine of laches from obtaining any of the relief sought herein in that, among other things, Plaintiff has failed to make a timely demand for return of the deposit which is the subject of its claim for conversion. Defendant has maintained the deposit in a manner consistent with the rights of the Plaintiff.

In its Third Affirmative Defense, Defendant alleges that Plaintiff is barred by the doctrine of estoppel with respect to Plaintiff's claim for conversion, Plaintiff, by its failure to make a demand for return of the allegedly converted funds, is estopped from claiming a conversion of said funds by Defendant.

The Eighth Affirmative Defense for Conversion is barred in that plaintiff consented and defendant lawfully received the allegedly converted funds in the form of an agreed-upon deposit. Defendant told plaintiff (5/10/01) Letter, Ex. 33) that defendant acknowledged receipt in application of the funds and plaintiff made no demand for the return of the money. The $4855.59 deposit has been kept by JSW-PMI in a suspense account under General Ledger Account No. 2520-0000 (Trial

Ex. 48).[1]

## II. **FACTUAL SUMMARY**

Exel contends that JSW-PMI converted the sum of $4,855.59, paid by Exel to JSW-PMI on April 30, 2001 as a partial deposit on two plastic injection molding machines, a 110-ton ("J-110") and 500-ton ("J-500) machine. Plaintiff's evidence has shown that by January 2001, Exel was experiencing financial difficulties. In January 2001, JSW-PMI agreed to amend the terms of the February 29, 2000 Agreement. Instead of the previously required 5% deposit, Exel agreed to make three equal monthly payments of $4,855.59. The first such payment was due prior to shipment of the machines, the second thirty days after shipment, and the final sixty days after shipment. Exel was acquiring two plastic injection molding machines, with a combined purchase price of $291,335. Payment terms were further extended so that after receipt of the three initial monthly payments, Exel Bobbins would have no payments for six months. Thereafter Exel Bobbins would be required to make eleven monthly payments of $5,000 each and in the twelfth month a balloon payment of $217,768.23. These amended terms were set forth in a letter agreement dated January 30, 2001 from JSW to Exel Bobbins (Trial Exhibit 13).

Exel's Steve Becker did not sign this agreement until February 26, 2001, and thereafter, on or about March 21, 2001, Becker made handwritten changes to the January 30th Agreement. Becker reduced the price on the J-500-ton from $206,500 to $202,500, reducing the combined purchase price to $287,335, and reduced the three equal installments to $4,788.92. Exel did not make the initial down payment for the J-110 or J-500 until April 30, 2001, when it sent JSW-PMI a check for $4,855.59 (not $4,788.92 as Becker had by interlineation indicated). (Check No. 3021; Trial Exhibit

---

[1]. Unless otherwise stated, all referenced exhibit numbers refer to Defendant Trial Exhibits received into evidence.

28).

Becker, in trial, claims he made oral demand for return of the $4855.59. Messrs. Pochatek and Johnson testify no such demand was made. All parties testify that Becker never made demand for return of the $4,855.59 after May 10, 2001.

Becker's claim that he made demand is refuted by:

1. Becker's motivation on May 7, 2001 was to make the transaction work so he could get the presses. A claim for return of the deposit of $4,855.59 was clearly counter-productive.

2. Johnson testifies Becker stated in the teleconference Becker and Exel would have financing in 2 or 3 days and it was Becker who agreed to the May 11, 2001 date to make payment on the J385.

3. On May 8, 2001, Becker issued a letter to JSW-PMI requesting confirmation to pick up the J-110 and J-500 (See Ex. 32). This letter contradicts Becker's trial testimony that Becker, on May 7, 2001, orally demanded return of the $4,855.59 deposit.

4. In subsequent written correspondence, Becker never made demand for return of the $4,855.59 (see Ex. 36 and 38).

By letter dated May 10, 2001, from Jerry Johnson to Steve Becker (Trial Exhibit 33), JSW-PMI informed Exel that it had received the down payment and that it would be applied to the J-110 and J-500. However, the delivery of these machines was put on hold until JSW-PMI received full payment on a delinquent balance due on a J-385 machine previously sold to Exel. Johnson further stated that in the event Exel did not make full payment on the J-385 by May 11 (a date selected by Steve Becker), all funds received by JSW-PMI to would be applied to recovery and remarketing of the J-385. After a period of negotiation, JSW-PMI and Exel executed an agreement dated July 13,

2001 (Trial Exhibit 39) which provided for periodic payments and a lump sum payment for the balance to be made on July 20, 2002. JSW-PMI suspended delivery to Exel of the J-110 and J-500. JSW-PMI contends that no meaningful nor corroborative demand was ever made by Becker. Thus, Exel did not make any demand for return of its deposit and filed its original complaint in this action on August 31, 2001. Both Pochatek and Johnson testify, Becker never made demand to them for return of the $4855.59.

JSW-PMI's president, Hirayama testified the $4855.59 has been held in a suspense account at JSW-PMI's General Ledger Account No. 2520-0000 (Ex. 48). The money remains in this account today.

### III. ARGUMENT

A. <u>Conversion - Elements of a Claim for Conversion</u>

Exel Bobbins contends JSW converted the down payment of $4,855.59 by failing to apply it to the 110-ton and 500-ton machines. Conversion in this case must be established by proving that:

(1) At the time of the conversion, Exel Bobbins owned, had legal possession of, or was entitled to possession of the property;

(2) JSW-PMI assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Exel Bobbins' rights; and

(3) JSW-PMI refused Exel Bobbins' demand for return of the property.

*Huffmeyer v. Mann,* 49 S.W.3d 554, 558 (Tex. App. – Corpus Christi 2001); *Edmunds v. Sanders,* 2 S.W.3d 697, 703 (Tex App – El Paso 1999); *Judson Building v. First National Bank of Longview,* 587 F.Supp. 852, 856 (E.D. Tex. 1984). Plaintiff has the burden of proving those acts alleged to have constituted the conversion. *Villareal v. Moreno,* 650 S.W.2d 191, 192 (Tex. Civ. App. 1983).

There is no legally sufficient evidentiary basis to find for Exel on its cause of action for conversion because there is a complete absence of pleading or proof on one or more of the elements essential to sustain its cause of action: (1) Exel has failed to prove that JSW-PMI exercised control of the deposit in a manner inconsistent with Exel's rights; (2) Exel has failed to plead or prove that JSW-PMI refused a demand by Exel for the return of the deposit; and, (3) Exel has failed to plead or prove that JSW-PMI so clearly repudiated Exel's rights in the subject property that a demand for its return was excused as a matter of law.

**B.     JSW-PMI Did Not Assume and Exercise Dominion and Control Over the Property in an Unlawful and Unauthorized Manner, to the Exclusion Of and Inconsistent With Exel's Rights**

By Plaintiff's own contention, the down payment which Exel claims was converted by JSW-PMI was originally made as a down payment pursuant to a letter agreement between the parties. (2nd Amended Original Complaint, ¶ 7, and letter agreement dated January 30, 2001 attached to the 2nd Amended Complaint as Exhibit 2.) It is therefore undisputed that JSW-PMI lawfully acquired possession of the down payment.

Possession of legally obtained property may be considered a conversion only, when the use of the property departs so far from the conditions under which it was received as to amount to an assertion of a right inconsistent with that of the owner. *Pierson v. GFH Financial Services,* 829 S.W.2d 311, 314 (Tex Civ App – Austin 1992). As the May 10, 2001 letter (Trial Exhibit 33) shows, JSW-PMI did not make any use of the deposit which was inconsistent with Exel's rights.

The down payment was originally applied as agreed, i.e., to the first of three down payments on the J-110 and J-500 machines but shipment of these two machines was suspended pending full

payment on the delinquent balance owed on the J-385 and Exel was told that if it could not get financing to make full payment on the J-385, JSW-PMI would be "applying all other funds from Exel Bobbins received [which would apparently include the $4,855.59 deposit check] toward the recovery and remarketing" of the J-385. This is an expression of a future, contingent event which had not yet occurred (in other words, JSW-PMI had not at this point used the deposit for any purpose other than as agreed). In fact, the contingency was rendered moot just one month later when Exel and JSW-PMI entered into an agreement for extended payment terms on the J-385, the balance under that agreement becoming due on July 20, 2002. Moreover, there is no evidence that JSW-PMI in fact applied the deposit to any purpose other than as a deposit on the J-110-ton and J-500 machines.

C. **Demand for Return of the Deposit Was Not Made by Exel or Refused by JSW-PMI**

Demand by the plaintiff is a required element as against a person who acquired possession lawfully and without fault. *Judson Building v. First National Bank of Longview, supra,* 587 F.Supp. at 856 ("When possession of property is lawful at the outset, conversion can only occur when the possessor refuses an owner's demand for return of the property.") To constitute an effective refusal such as will evidence a conversion, the refusal to transfer possession of property to one entitled thereto must be absolute. *Earthman's Inc. v. Earthman,* 526 S.W.2d 192, 204 (Tex Civ App Houston 1975.) As the evidence is undisputed that JSW-PMI came into possession of the deposit lawfully and without fault, Exel was required to plead and prove that it made a demand for return of the deposit and that JSW-PMI refused this demand.

Exel delivered the deposit to JSW-PMI on April 30, 2001. Becker claims he made a demand on 5/7/01 for return of the money. However, his testimony (to keep the deal intact)

subsequent conduct and documentary evidence (Ex. 32, 36 and 38) refute this testimony. JSW-PMI notified Exel in writing on May 10, 2001, that it had received the deposit but was withholding delivery of the J-110 and J-500 until Exel made full payment on its delinquent account on the J-385 and that in the event Exel did not become current, JSW-PMI would apply all other funds received from Exel toward recovery and remarketing of the J-385. There is no evidence that JSW-PMI ever applied the deposit to recovery or remarketing of the J-385. By July 13, 2001, Exel and JSW-PMI reached an agreement regarding extended payment terms for the J-385. Without making any further mention of its deposit, including any demand for its return, Exel filed this action against JSW-PMI on August 31, 2001. The original complaint did not contain a cause of action for conversion or make any reference to the deposit. The conversion cause of action was first alleged in Exel's First Amended Original Complaint filed on or about September 11, 2002. The conversion cause of action as set forth in the First Amended Complaint (and thereafter in the Second Amended Original Complaint filed in or about February 2003) does not plead a demand for return of the deposit or a refusal by JSW-PMI to return the deposit.

Having failed to plead or prove that it made a demand on JSW-PMI for the return of its deposit and that JSW-PMI refused such a demand, Exel's cause of action for conversion must fail.

### D. Exel Was Not Excused as a Matter of Law from its Obligation to Demand Return of the Deposit

A demand and refusal is not necessary if the party charged with conversion committed acts manifesting a clear repudiation of the rights of the adverse party. *Edmunds v. Sanders,* 2 S.W.3d 697, 703 (Tex App – El Paso 1999). Plaintiff has not introduced sufficient evidence to sustain its contention that JSW-PMI manifested a clear repudiation of Exel's rights in the deposit.

It is clear that JSW-PMI came into possession of the deposit lawfully and that JSW-PMI

expressly acknowledged its receipt as a deposit on the J-110 and J-500. JSW-PMI's statement that delivery of the machines would be held until the delinquent account on the J-385 was paid in full was either a proper exercise of JSW-PMI's remedies under Chapter 2 of the Texas Business and Commerce Code ("UCC") or a mistaken, but honest, belief that JSW-PMI had a right to exercise such remedies. In either case, this does not support a conclusion that JSW-PMI was repudiating Exel's rights in the deposit.

In addition, Johnson said that if the J-385 account was not paid in full, the deposit would be applied to recovery and remarketing of the J-385. This was a statement of intent based on contingencies that had yet to occur and which became moot a month later when the extended payment agreement was entered into. Exel did not make any protest to Johnson's statement.

Based on the foregoing, it cannot be concluded that JSW-PMI manifested such a clear repudiation of Exel's rights in the deposit that Exel would be excused from its obligation to make a demand for return of its deposit.

### E. There Is Not Evidence Beyond a Reasonable Doubt That JSW-PMI Committed a Theft Under Texas Penal Code Section 31.03

As part of its conversion claim, Exel contends that JSW-PMI violated Texas Penal Code §31.03 (Second Amended Original Complaint, ¶ 16). Section 31.03 provides, in relevant part, that "(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent." To "deprive" one of property in this context means to withhold property from the owner permanently or to dispose of property in a manner that makes recovery of the property by the owner unlikely or to withhold property from the owner for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner. A person acts with

the requisite intent when it is his conscious objective or desire to engage in such conduct. *Texas Criminal Jury Charges, 7-46.*

As previously discussed, JSW-PMI came into possession of the deposit lawfully and pursuant to the parties' agreement, JSW-PMI acknowledged that the deposit would be applied as agreed pending the resolution of certain other matters between them, the deposit was not applied by JSW-PMI in any manner inconsistent with the parties' agreement, and Exel did not protest JSW-PMI's express statement of its intent regarding use of the deposit. On these facts, there is not evidence beyond a reasonable doubt that JSW-PMI intended to withhold the deposit from Exel permanently or for such an extended period of time that its value or enjoyment would be lost to Exel.

Exel has also failed to present evidence establishing beyond a reasonable doubt that JSW-PMI's possession of the deposit was without Exel's effective consent. The evidence shows that (1) Exel delivered the deposit to JSW-PMI pursuant to an agreement between the parties, (2) Exel did not make any objection to JSW-PMI's stated expression of its intended use of the deposit if certain contingencies occurred, (3) Exel failed to demand return of the deposit, and (4) Exel agreed that in the event it defaulted in its payment obligations under the extended payment agreement it would pay for shipment of the J-385 to JSW-PMI in Anaheim, California. On these facts, it is reasonable to conclude that Exel effectively consented to JSW-PMI's retention of the deposit until the issues surrounding payment for the J-385 were entirely resolved.

Based on the foregoing, Exel has failed to present evidence beyond a reasonable doubt that JSW-PMI committed a theft within the meaning of Texas Penal Code §31.03.

## IV. CONCLUSION

For all of the reasons set forth above, the court should find that plaintiff Exel Bobbins and

Plastic Component's, Inc. has failed to meet its burden of proof on its cause of action for conversion and that such cause of action should therefore be dismissed.

Submitted herewith are the Defendant's proposed findings of fact and conclusions of law which support judgment in favor of Defendant.

Dated: September 19, 2003.   Respectfully submitted,

By: _____
DAVID C. GARZA
SBN 07731400
Federal Id No. 3778
GARZA & GARZA, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78522-2025
Tel: (956) 541-4914; Fax: (956) 542-7403
Attorney-in-Charge for JSW Plastics Machinery, Inc.

JAMES J. REGAN
CAL. SBN 80576
REGAN • BRAUN LAW OFFICES
2522 Artesia Boulevard, Suite 200
Redondo Beach, California 90278
Tel: (310) 372-1988; Fax: (310) 318-5894

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **DEFENDANT'S BRIEF FOR JUDGMENT FOR JSW-PMI ON PLAINTIFF'S CAUSE OF ACTION FOR CONVERSION; MEMORANDUM OF POINTS AND AUTHORITIES** has been served on the attorneys of record for the Plaintiff to the following addresses on this 19th day of September, 2003.

| | |
|---|---|
| John R. Griffith<br>Viola G. Garza<br>GRIFFITH, HILL, OCHOA & GARZA, LLP<br>One Park Place<br>100 Savannah Avenue, Suite 500<br>McAllen, Texas 78503 | *Via Certified Mail/RRR*<br>*No. 7003 0500 0003 2609 6351* |
| Moises M. Salas, Jr.<br>LAW OFFICES OF MOISES M. SALAS JR.<br>847 East Harrison<br>Brownsville, Texas 78520 | Via Regular Mail |

_____
David C. Garza